UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HUDA FAKHREDDINE, TROUTT POWELL, and PENN FACULTY FOR JUSTICE IN PALESTINE, | ) ) ) ) | No. 224-CV-01034 |
| | ) | CHIEF JUDGE GOLDBERG |
| *Plaintiffs,* | ) ) ) | |
| v. | ) ) | |
| THE UNIVERSITY OF PENNSYLVANIA, | ) ) | **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| *Defendant.* | ) | |

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs Huda Fakhreddine, Troutt Powell, and Penn Faculty for Justice in Palestine (the "Plaintiffs"), by and through their attorney Shahily Negrón, file this Motion for Preliminary Injunction under Rule 65 of the Federal Rules of Civil Procedure against Defendant University of Pennsylvania. Plaintiffs filed their Complaint on March 9, 2024. Plaintiffs file this Motion for Preliminary Injunction to enjoin Defendant from complying with the U.S. Congressional Committee on Education and the Workforce's January 24, 2024 letter. In support of its Motion, Plaintiffs rely on their supporting Memorandum of Law, Attorney's Declaration, and Plaintiff Huda Fakhreddine's Affidavit.

Respectfully submitted,

/s/ Shahily Negron, Esq.
(332842)
The Law Firm of Shahily Negron, Esq.
d/b/a Negron law
943 Washington Street
Reading, PA 19601
Phone: (646) 484-1491
Fax: (347) 814-1827

i

Email: shahily@lawnegron.com

*Attorney for Plaintiffs Huda Fakhreddine, Troutt Powell, and Penn Faculty for Justice in Palestine (PFJP)*

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................... 1

II.   STATEMENT OF FACTS ...................................................................................... 2

III.  ARGUMENT .......................................................................................................... 3

  A.  Legal Standard .................................................................................................. 3

  B.  Plaintiffs are likely to succeed on the merits of their claims. ........................... 3

      1.  Defendant violates Plaintiffs' First Amendment rights by producing documents to aid the House Committee's infringements on Plaintiffs' freedoms of speech and association. ... 4

      2.  Defendant violates Plaintiffs' right to informational privacy under the Pennsylvania Constitution by disclosing information to the Committee containing Plaintiffs' personal information............................................................................................................... 6

      3.  Defendant violates Plaintiffs' privacy rights under the Fourteenth Amendment by disclosing Plaintiffs' personal information to the Committee without their consent............. 7

      4.  Defendant breaches its contractual obligations to protect Plaintiffs' academic freedom, freedom of expression, and right to confidentiality. ............................................. 8

  C.  If injunctive relief is not granted, Plaintiffs will continue to suffer irreparable harm of chilled speech, discouragement from exploring their academic interests, doxxing, and online threats to their wellbeing and career. ........................................................................ 12

      1.  Defendant's infringement on Plaintiffs' First Amendment rights constitutes irreparable harm. ........................................................................................................................... 12

      2.  Defendant's interference with Plaintiffs' academic freedom irreparably harms Plaintiffs' ability to freely teach in the area of their scholarship. ......................................... 12

      3.  Defendant's contribution to the Committee doxxing Plaintiffs causes irreparable harm to Plaintiffs' safety, reputation, and career. ............................................................. 13

  D.  The balance of equities plainly favors the Plaintiffs, who have much less power than Defendant, a private ivy league institution with a $21 billion endowment. ............................ 14

  E.  An injunction will serve the public interest in preventing private employers from colluding with the government to disclose employees' personal and confidential information and shield the government from constitutional accountability................................................................. 15

IV.   CONCLUSION...................................................................................................... 15

**TABLE OF AUTHORITIES**

CASES

*Acierno v. New Castle Cty.*, 40 F.3d 645, 553 (3rd Cir. 1994) ..................................................... 12

*Allegheny Reprod. Health Ctr. v. Pa. Dep't of Hum. Services*, No. 26 MAP 2021, 2024 WL 318389,
at *70 (Pa. Jan. 29, 2024) .................................................................................................. 6

*Arkansas Times LP v. Waldrip*, 988 F.F3d 453, 461 (8th Cir. 2021) ............................................ 4

*Bd. of Cty. Comm'r, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 674 (1996) ....................... 4

*Campbell v. Reisch*, 986 F.3d 822, 826 (8th Cir. 2021) ............................................................... 7

*Del. River Port Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 923 (3rd Cir. 1974)
.......................................................................................................................................... 15

*Denoncourt v. Com., State Ethics Com'n*, 470 A.2d 945, 948 (1983) ........................................... 6

*Doe v. Delie*, 257 F.3d 309, 315 (3rd Cir. 2001) ........................................................................ 7

*Edwards v. Geisinger Clinic*, 459 F. App'x 125, 129 (3rd Cir. 2012) .......................................... 8

*Elrod v. Burns*, 427 U.S. 347, 373 (1976) ................................................................................ 12

*Fraternal Order of Police, Lodge No. 5 v. City of Phila.*, 812 F.2d 105, 116 (3rd Cir. 1987) ....... 7

*Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589, 603-04 (1967) .................. 13

*Makara v. Albert Einstein Healthcare Network*, No. 08-5545, 2009 WL 1011753 at *4 (E.D. Pa
Apr. 14, 2009) .................................................................................................................. 8

*Manco v. St. Joseph's Univ.*, No. CV 22-285, 2024 WL 299265, at * 7 (E.D. Pa. Jan. 25, 2024). 8

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 452, 461 (1958) ......................................... 5

*NAACP v. Button*, 371 U.S. 415, 438 (1963) ............................................................................ 13

*Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3rd Cir. 1998) .......... 12

*Penncrest Sch. Dist. v. Cagle*, 293 A.3d 783, 801 (2023) ............................................................ 7

iv

*Pileggi v. Aichele*, 843 F.Supp.2d 584, 592 (E.D. Pa. 2012)........................................... 3

*Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3rd Cir. 2017) .................................... 14

*Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). ........................... 4

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 68 (2006) ...................... 5

*Speiser v. Randall*, 357 U.S. 513, 518 (1958)................................................................. 4

*Stenger v. Lehigh Valley Hosp. Ctr.*, 530 Pa. 426, 429 (1992)...................................... 6

*Trump v. Mazars USA, LLP*, 940 F.3d 710, 722 (D.C. Cir. 2019), *vacated*, 591 U.S. 848 (2020) 4

*Watkins v. U.S.*, 354 U.S. 178, 197 (1957). ................................................................. 1

*Whalen v. Roe*, 429 U.S. 589, 599 (1977).................................................................. 7

STATUTES

Pa. Const. art. I, § 1.................................................................................................. 6

U.S. Const. amend. XIV .......................................................................................... 8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HUDA FAKHREDDINE and FACULTY FOR JUSTICE IN PALESTINE, | ) ) ) | No. 224-CV-01034 |
| *Plaintiffs,* | ) ) ) | CHIEF JUDGE GOLDBERG |
| v. | ) ) | |
| THE UNIVERSITY OF PENNSYLVANIA, | ) ) | **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| *Defendant.* | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs Huda Fakhreddine, Troutt Powell, and Penn Faculty for Justice in Palestine ("PFJP") (together, the "Plaintiffs"), by and through their attorney Shahily Negrón, hereby file this Memorandum of Law in support of their Motion for Preliminary Injunction (the "Motion") against Defendant University of Pennsylvania (the "Defendant" or "Penn") to enjoin Defendant from complying with the House Congressional Committee on Education and the Workforce's (the "Committee") January 24, 2024 letter (the "Information Letter" or "Letter").

## I.   INTRODUCTION

"Abuses of the [Congressional] investigative process may imperceptibly lead to abridgment of protected freedoms ... [particularly] when those forced revelations concern matters that are ... unpopular," like they are in this case. *Watkins v. U.S.*, 354 U.S. 178, 197 (1957). Today, the House Committee eagerly assumes the role of the House Un-American Activities Committee ("HUAC") of the 1940s and '50s. Then, Congress investigated and blacklisted individuals alleged to have affiliations with the communist party during the Red Scare of the 1940s and 1950s. Now, Congress investigates and blacklists those who criticize Israel and advocate for Palestinian rights.

Both Committees have achieved their respective political aims by weaponizing public shame and compelling the disclosure of information about individuals' political beliefs, associations, and private affairs. Underlying the Committee's tactic today is its inaccurate assumption that support for Palestinian rights and criticism of Israel is inherently antisemitic. They are not, since assuming so inaccurately conflates criticism of the Jewish nation-state's policies with anti-Jewish hate.

Despite the House Committee's obvious and egregious viewpoint discrimination, Defendant Penn is aiding the Congressional Committee's efforts to target and silence anti-Israel advocacy on Penn's campus. The Committee is using Defendant as a shield behind which it indirectly violates Plaintiffs' constitutional rights. Defendant is advancing the Committee's infringement on Plaintiffs' speech, association, and privacy rights by complying with the Committee's overbroad request for documents related to pro-Palestine and anti-Israel activities on Penn's campus. Defendant also breaches its contractual obligations to protect Plaintiffs' academic freedom, freedom of expression, and confidentiality. To stop Defendant from aiding and abetting the Committee's efforts to target and censor Plaintiffs' criticism of Israel, Plaintiffs respectfully ask this Court to issue an injunction to prevent further irreparable harm to Plaintiffs.

## II. STATEMENT OF FACTS

On December 5, 2023, the U.S. Congressional Committee on Education and the Workforce (the "Committee") held hearings to investigate charges of antisemitism at Penn, Harvard, and MIT.[1] The Committee summoned then-President of Penn Elizabeth Magill to "voluntarily" appear before it. Magill answered the Committee members' questions about anti-Israel activism on

---

[1] *Holding Campus Leaders Accountable and Confronting Antisemitism: Hearing Before the H. Comm. on Educ. and the Workforce (hearing transcript)*, 118th Cong. 28, 62 (2023), https://www.congress.gov/118/meeting/house/116625/documents/HHRG-118-ED00-Transcript-20231205.pdf.

2

campus and responded to their insinuations that it is inherently antisemitic to criticize Israel and support Palestinian rights. Then, on January 24, 2024, the Committee sent a letter (the "Information Letter" or "Letter") to the Penn trustees and administration requesting documents and information related to antisemitism on campus. Instead, the Letter makes an overbroad request for information related to any and all pro-Palestine and anti-Israel campus advocacy, including Plaintiffs' social media posts, protests, boycotts, and confidential disciplinary processes. At the hearing and in the Letter, the Committee repeatedly targets and identifies Plaintiff Fakhreddine, her scholarship, and the Palestine Writes Literature Festival, which she co-organized, as being antisemitic. Defendant, on information and belief, is currently providing the requested documents to the Committee.

## III. ARGUMENT

### A. Legal Standard

To be granted a preliminary injunction, the moving party must demonstrate: "(1) a likelihood of success on the merits; (2) the probability of irreparable harm if the relief is not granted; (3) that granting injunctive relief will not result in even greater harm to the other party; and (4) that granting relief will be in the public interest." *Pileggi v. Aichele*, 843 F.Supp.2d 584, 592 (E.D. Pa. 2012). Since Plaintiffs satisfy these elements, Defendant should be immediately enjoined from producing information and documents in compliance with the Information Letter.

### B. Plaintiffs are likely to succeed on the merits of their claims.

Plaintiffs are likely to succeed on the merits of their claims against Defendant. Plaintiffs' Complaint alleges: (1) Defendant violates Plaintiffs' freedoms of speech and association under the First Amendment because it is aiding and abetting the Congressional Committee's infringement on these rights; (2) Defendant violates Plaintiffs' right to informational privacy as afforded by the Pennsylvania Constitution by producing documents likely to contain Plaintiffs' emails, addresses,

3

names, and other personally identifiable information; (3) Defendant violates Plaintiffs' Fourteenth Amendment privacy rights by advancing Congress's compelled disclosure of their personal information; and (4) Defendant breaches its contract with Plaintiffs by failing to protect Plaintiffs' freedom of expression, academic freedom, and right to confidentiality.

> **1. Defendant violates Plaintiffs' First Amendment rights by producing documents to aid the House Committee's infringements on Plaintiffs' freedoms of speech and association.**

Investigations conducted by Congressional Committees, while they can be expansive, are nonetheless restrained by the First Amendment. *Watkins*, 354 U.S. at 196; *Trump v. Mazars USA, LLP*, 940 F.3d 710, 722 (D.C. Cir. 2019), *vacated*, 591 U.S. 848 (2020).

First, Defendant is advancing the House Committee's viewpoint discrimination against Plaintiffs' anti-Israel speech. By requesting that Defendant provide documents related to Plaintiffs' pro-Palestine advocacy, the Committee is using Defendant as a conduit through which it infringes upon Plaintiffs' First Amendment rights. When the government targets an individual's viewpoint, rather than the subject matter more broadly, the government engages in the "egregious" act of viewpoint discrimination. *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). The government cannot indirectly—such as through a University—engage in viewpoint discrimination or other speech violations "which if directly attempted would be unconstitutional." *Arkansas Times LP v. Waldrip*, 988 F.3d 453, 461 (8th Cir. 2021) (citing *Speiser v. Randall*, 357 U.S. 513, 518 (1958)). That is because free speech doctrine recognizes that "constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental efforts that fall short of a direct prohibition against the exercise of First Amendment rights." *Arkansas Times* at 461 (quoting *Bd. of Cty. Comm'r, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 674 (1996)).

Here, Defendant infringes on Plaintiffs' free speech rights because it willingly acts as a shield behind which the Congressional Committee discriminates against Plaintiffs' anti-Israel viewpoints and "chills" Plaintiffs' speech in support of Palestinian rights. This is clear from the fact that the House Committee is requesting documents and communications relating to Penn community members' involvement in anti-Israel advocacy, economic boycotts against Israel, the Palestine Writes Literature Festival, social media posts about Israel, and other speech critiquing Israel. Att'y Decl. ¶¶ 8-9, 12-13. In doing so, the Committee, through Defendant, indirectly commits viewpoint discrimination against Plaintiffs' anti-Israel and pro-Palestine speech.

Second, Defendant is aiding the Committee's violation of Plaintiffs' freedom of association with Palestine-related advocacy groups. The freedom to associate, or otherwise "gather together to express ideas" is protected by the First Amendment. *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 68 (2006). The disclosure of an individual's organizational or political affiliations infringes on Plaintiffs' privacy of association and belief. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 452, 461 (1958).

Here, Defendant infringes on Plaintiffs' freedom of association by producing documents disclosing the activities and members of campus advocacy supporting Palestine, including own Plaintiffs' affiliations. The Committee seeks "all documents and communications" related to discipline or misconduct for faculty members' support for BDS, the Palestine Writes Literature Festival, social media posts criticizing Israel or Zionism, and anti-Israel protests. Att'y Decl. ¶¶ 8-9, 12-13. Defendant's production of documents advances the Committee's efforts to target Plaintiffs' association with Palestine advocacy. The Committee's efforts, by way of Defendant, to target Plaintiffs for their pro-Palestine affiliations subjects them to hostility and discourages them from freely associating with Palestine advocacy. Fakhreddine Aff. ¶¶ 9-13, 18-20, 26-27, 37-44.

**2. Defendant violates Plaintiffs' right to informational privacy under the Pennsylvania Constitution by disclosing personal information to the Committee.**

Under the Pennsylvania Constitution, individuals have a fundamental right to privacy, which includes the right to be left alone and the "explicit protection" of an individual's right to avoid a disclosure of their personal matters. Pa. Const. art. I, § 1; *Denoncourt v. Com., State Ethics Com'n*, 470 A.2d 945, 948 (1983). The Pennsylvania Supreme Court has repeatedly held that individuals have a constitutional right to "informational privacy," which includes the right to the privacy of information such as names, physical addresses, social security numbers, and telephone numbers. *Allegheny Reprod. Health Ctr. v. Pa. Dep't of Hum. Services*, No. 26 MAP 2021, 2024 WL 318389, at *70 (Pa. Jan. 29, 2024). The goal of this right is to protect an individual from revealing information that could subject the individual "to ridicule or persecution." *Stenger v. Lehigh Valley Hosp. Ctr.*, 530 Pa. 426, 429 (1992).

Here, Defendant aids the Committee's violation of Plaintiffs' privacy rights by producing documents containing Plaintiffs' personal information. First, information designated to be "confidential" should be included under an individual's protected private information. The Letter requests information regarding discipline or misconduct involving Penn students, faculty, and staff related to and the Palestine Writes Literature Festival and criticism of Israel. However, Defendant is contractually required to maintain the confidentiality of disciplinary information as required by the Penn 2023-2024 Faculty Handbook (the "Handbook"). Att'y Decl. ¶¶ 30-33. Further, Defendant's disclosure of the results of any disciplinary processes involving Plaintiffs violates the state's interest in preventing the disclosure of information that could subject Plaintiffs to public ridicule or shame because of the accusatory and vulnerable nature of discipline, particularly by one's employer.

Further, the Pennsylvania Supreme Court has repeatedly assigned a privacy right to personal social media accounts and posts. In the context of Pennsylvania's Right-to-Know law, where "public records" are subject to disclosure, the Supreme Court has consistently held that personal social media accounts and posts are excluded from public disclosure because of privacy concerns. *Penncrest Sch. Dist. v. Cagle*, 293 A.3d 783, 801 (2023) (citing *Campbell v. Reisch*, 986 F.3d 822, 826 (8th Cir. 2021)). The Letter requests all documents and communications relating to misconduct for social media posts made by Penn students, faculty, and staff that are critical of Israel or Zionism. Att'y Decl. ¶ 12. Considering these privacy protections, Defendant's production of Plaintiffs' disciplinary information and social media posts furthers the Committee's infringement upon Plaintiffs' right to privacy.

### 3. Defendant violates Plaintiffs' privacy rights under the Fourteenth Amendment by disclosing Plaintiffs' personal information to the Committee.

Under the Fourteenth Amendment, "an individual has a constitutional right to privacy which protects 'the individual interest in avoiding disclosure of personal matters.'" U.S. Const. amend. XIV; *Doe v. Delie*, 257 F.3d 309, 315 (3d Cir. 2001) (quoting *Whalen v. Roe*, 429 U.S. 589, 599 (1977)). The "essence of private information is its general unavailability and the individuals' treatment of it as confidential." *Fraternal Order of Police, Lodge No. 5 v. City of Phila.*, 812 F.2d 105, 116 (3d Cir. 1987). Further, Congress lacks any "general power to expose where the predominant result can only be an invasion of the private rights of individuals." *Watkins*, 354 U.S. at 200.

Here, the Letter requests information relating to Plaintiffs' misconduct, discipline, and personal social media posts criticizing Israel or Zionism. However, Plaintiffs' disciplinary information is confidential, according to Plaintiffs and the Handbook. Att'y Decl. ¶¶ 20-33. It therefore constitutes private information, the disclosure of which violates Plaintiffs' privacy.

Further, the Committee's predominant intent behind its request is clear: to probe into Plaintiffs' personal online activities and on-campus advocacy to chill their pro-Palestine speech. Since the primary result of Defendant's production of documents as an invasion into Plaintiffs' private affairs, the Committee lacks the authority to compel the disclosure of these documents. Therefore, Defendant's continued disclosure of this information violates Plaintiffs' right to privacy.

### 4. Defendant breaches its contractual obligations to protect Plaintiffs' academic freedom, freedom of expression, and right to confidentiality.

Plaintiffs can prove that Defendant breached its contract with Plaintiffs by violating multiple contractual obligations in the Handbook, causing damages. A prima facie case for breach of contract under Pennsylvania requires the plaintiff to demonstrate: (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages resulting from the breach. *Manco v. St. Joseph's Univ.*, No. CV 22-285, 2024 WL 299265, at * 7 (E.D. Pa. Jan. 25, 2024).

#### a. The Faculty Handbook creates a contract between Defendant and Plaintiffs.

The Faculty Handbook creates a contract between Defendant and Plaintiffs. A handbook is binding upon an employer if a reasonable person in the employee's position would interpret its terms as evidence of the employer's intent to be bound. *Edwards v. Geisinger Clinic*, 459 F. App'x 125, 129 (3d Cir. 2012). Here, Plaintiffs reasonably interpret Defendant's intention to be bound to the Handbook because of Defendant's repeated and explicit expressions of its "commitment to the principles of open expression and nondiscrimination" and "commitment to confidentiality." Att'y Decl. ¶¶ 15-18. Additionally, the Handbook lacks any disclaimer or similar language stating that it does not form a contract between the parties. *Makara v. Albert Einstein Healthcare Network*, No. 08-5545, 2009 WL 1011753, at *4 (E.D. Pa. Apr. 14, 2009).

#### b. Defendant breached its contractual obligations to Plaintiffs.

      i.    **Defendant breached its obligation to protect Plaintiffs' academic freedom by targeting their academic scholarship related to Palestinian literature and poetry.**

By producing documents about Plaintiff Fakhreddine's academic scholarship, Defendant breaches its obligation to protect Plaintiffs' academic freedom from institutional censorship and influences in and outside the University as promised in the Handbook. Att'y Decl. ¶¶ 21-22. The Letter identifies Plaintiff Fakhreddine by name and repeatedly alleges that the festival, because of its speakers' critiques of Israel, warrants investigation. The Letter requests "[a]ll documents and communications" related to the festival's funding sources, confidential information about discipline and misconduct stemming from the festival, and whether trustees who have not publicly condemned the festival will continue to serve in their roles. Att'y Decl. ¶¶ 10-12.

As a professor of Arabic literature and poetry, Plaintiff Fakhreddine's work in organizing the Palestine Writes Literature Festival is a core exercise of her academic freedom and advancement of her scholarly interest: Palestinian literature. Fakhreddine Aff. ¶¶ 16-17. Defendant's compliance with the Letter which targets the festival directly infringes on her academic freedom in violation of the Handbook. Defendant also allows outside influences— Congress and pro-Israel interests—to interfere with Plaintiffs' academic freedom, also in violation of the Handbook. As a result, Defendant's actions discourage Plaintiff Fakhreddine from teaching about Palestinian literature and hosting the festival out of fear that she will lose her job. Fakhreddine Aff. ¶¶ 34-36, 43-44.

      ii.   **Defendant breaches its obligation to protect Plaintiffs' freedom of thought and speech by targeting their Palestine-related activism on campus and on their personal social media.**

Defendant's production of documents in compliance with the Committee targeting Plaintiffs' anti-Israel speech constitutes a breach of Defendant's contractual obligations to protect

Plaintiffs' freedom of expression. Att'y Decl. ¶¶ 26-28. The Information Letter requests all documents and communications involving: social media posts by Penn students, faculty, and staff involving criticisms of Israel or Zionism; anti-Israel protests at Penn; and efforts by Penn students, faculty, and staff to engage in boycotts against Israel. Att'y Decl. ¶¶ 12-13. Defendant promised to uphold Plaintiffs' freedom to express their views and critiques, yet it is actively complying with the Committee's discrimination against and censorship of Plaintiffs' anti-Israel speech. Att'y Decl. ¶¶ 26-28. Defendant also promises to cherish Plaintiffs' freedom of lawful assembly yet supports the Committee targeting Plaintiffs' association with Palestine-related advocacy. Att'y Decl. ¶¶ 26-27. In sum, Defendant is in direct breach of its contract with Plaintiffs by advancing the Committee's goals to target Plaintiffs' pro-Palestine speech and assembly.

### iii.    Defendant breaches its obligation to protect Plaintiffs' confidentiality by disclosing confidential disciplinary information to the Committee.

Defendant's production of documents and information about discipline or misconduct relating to advocacy about Israel and Palestine violates Defendant's contractual duty to protect Plaintiffs' confidential disciplinary information. The Letter requests information related to discipline of or misconduct by Penn faculty for critiques of Israel or Zionism, including those made at protests and on their personal social media accounts. Att'y Decl. ¶¶ 8, 12-13. However, Defendant is contractually required to treat all disciplinary information as confidential. Att'y Decl. 30-33. Considering Plaintiffs' involvement in anti-Israel advocacy on campus, Plaintiffs may be referenced in these documents, the disclosure of which would be a breach of contract.

Second, the Defendant also breaches its contractual obligations to maintain the confidentiality of employee records. Att'y Decl. ¶ 32. Once again, the Letter requests "[a]ll documents and communications" involving discipline, misconduct, or violations of university standards relating to the Palestine Writes Literature Festival; posts by Penn faculty criticizing

Israel or Zionism; and anti-Israel protests or boycott activities at Penn. Att'y Decl. ¶ 8, 12. Included within "all documents" are Plaintiffs' employee personnel records. However, Defendant has a contractual obligation not to disclose the information in faculty members' personnel records without their express written consent. Att'y Decl. ¶ 33. Defendant has not obtained or requested such consent from Plaintiffs. Considering Plaintiffs' involvement in anti-Israel advocacy and Plaintiff Fakhreddine's involvement in organizing the festival, Plaintiffs' personnel records may contain the requested information. Therefore, Defendant's production of these records directly breaches its obligation to maintain the confidentiality of Plaintiffs' personnel records.

### c. Defendant's breach suppressed Plaintiffs' academic freedom and speech and failed to provide an opportunity to consent to the disclosure of personal information.

Third, Defendant's breach of its contractual obligations to protect Plaintiffs' academic freedom and speech has caused a chilling effect on Plaintiffs. Due to Defendant's compliance with the Letter, Plaintiff Fakhreddine is extremely discouraged from teaching students about Palestinian literature and poetry, is hesitant to organize the Palestine Writes Literature Festival in the future, and fears that she will lose her job for educating the Penn community about Palestine. Fakhreddine Aff. ¶¶ 43-44. Further, Defendant's breach of its obligation to protect Plaintiffs' open expression has caused a chilling effect on Plaintiffs' Palestine-related advocacy. Since being doxxed, Plaintiff Fakhreddine is afraid to speak about Palestine publicly, fears for her safety, and even moved her class sessions to a library room requiring key card access. Fakhreddine Aff. ¶¶ 4, 10-11, 42. Lastly, in breaching its obligation to protect Plaintiffs' confidentiality, Defendant failed to provide Plaintiffs with notice and an opportunity to consent to disclosure. In sum, because Defendant breached its obligations to protect Plaintiffs' freedom of expression, academic freedom, and

confidentiality, Plaintiffs suffer concrete harm by way of censorship, risk of job loss, and public shame.

> **C. If injunctive relief is not granted, Plaintiffs will continue to suffer irreparable harm of chilled speech, stifled academic freedom, doxxing, and online threats to their wellbeing and career.**

To show that Plaintiffs will suffer irreparable harm without injunctive relief, Plaintiffs must show that the harm cannot be repaired by any legal, equitable, or financial remedy. *Acierno v. New Castle Cty.*, 40 F.3d 645, 553 (3d Cir. 1994). Irreparable harm can include "loss of control of reputation." *Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998). If Defendant continues to produce documents and information to contribute to the Committee targeting Plaintiffs for their Palestine-related advocacy, Plaintiffs will continue to suffer interference with their academic freedom, chilled speech, invasions of privacy, threats to their physical and emotional safety, and permanent harm to their reputation and careers.

> **1. Defendant's infringement on Plaintiffs' First Amendment rights constitutes irreparable harm.**

The loss of one's First Amendment freedoms, even for a moment, unequivocally constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Here, Defendant's advancement of Congress's infringement on Plaintiffs' freedoms of speech and association undoubtedly caused irreparable injury to Plaintiffs. Without an injunction, Defendant will produce documents related to Plaintiffs' pro-Palestine speech and contribute to the Committee's efforts to target and suppress that speech. As a result, Plaintiffs' speech will continue to be chilled, and they will continue to endure death threats and public hostility for their criticisms of Israel.

> **2. Defendant's interference with Plaintiffs' academic freedom irreparably harms Plaintiffs' ability to freely teach in the areas of their scholarship.**

A professor's academic freedom protections fall under the First Amendment. *Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589, 603-04 (1967). Therefore, since an individual's loss of First Amendment freedoms automatically constitute irreparable harm, Plaintiffs suffered irreparable harm for the chilling effect that Defendant has caused on Plaintiffs Fakhreddine's scholarship on Palestine. When a professor like Plaintiff Fakhreddine wonders what conduct or speech might cause her to lose her position, she is deterred from fully exercising her academic freedom in the area of her scholarship. *See e.g.*, *Speiser*, 357 U.S. at 526; *also see NAACP v. Button*, 371 U.S. 415, 438 (1963)). Here, Defendant interfered with Plaintiff Fakhreddine's academic freedoms by complying with the Committee's shameless targeting of her and her Palestine-related scholarship. She fears she will be fired for teaching about Palestinian literature and organizing the Palestine Writes Literature Festival, both of which are a core part of her curriculum and scholarship on Arabic literature. This interference with her academic freedom constitutes irreparable harm.

### 3. Defendant's contribution to the Committee doxxing Plaintiffs causes irreparable harm to Plaintiffs' safety, reputation, and career.

If Defendant continues to produce documents related to Plaintiffs' anti-Israel and Palestine-related advocacy, they will continue to be doxxed and suffer irreparable harm to Plaintiffs' wellbeing, reputation, and career. After the Committee targeted Plaintiff Fakhreddine at the televised December 5 hearing, she received a wave of violence threats and hate speech targeting her ethnicity, nationality, gender, religion, and political beliefs. Fakhreddine Aff. ¶ 26. The condemnation of the Palestine Writes Literature Festival caused faculty to exclude her from meetings and the department to revoke its sponsorship of her event. Fakhreddine Aff. ¶ 38-39. The doxxing caused her to lose a job promotion opportunity, online petitions circulated calling for her to be fired, and she fears that Defendant will fire her for her pro-Palestine speech. Fakhreddine

Aff. ¶¶ 18, 41. The doxxing, and Defendant's contribution to it, has left a permanent, defamatory mark on Plaintiffs' reputations and career prospects.

In addition to current harm, Plaintiffs will undoubtedly continue to face future, long-term harm should Defendant continue to comply with the Congressional Committee's public vilification of Plaintiffs. Transcripts, videos, and comments from the December 5 hearing remain online. So do tweets, messages, and other public hate comments directed toward Plaintiffs. Callously calling Plaintiffs antisemitic online leaves a permanent scar on Plaintiffs' reputations and job prospects. Such information will be available to Plaintiffs' potential employers and may cost them future jobs, financial security, and the right for their skills and expertise to be fairly considered.

### D. The balance of equities plainly favors the Plaintiffs, who have much less power than Defendant, a private ivy league institution with a $21 billion endowment.

A court should next consider, when relevant, "the possibility of harm to other interested persons form the grant or denial of the injunction." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). Additionally, "the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *Id.*

Here, the balance of equities plainly favors the Plaintiffs. Plaintiffs are at immediate harm of doxxing, which includes threats to Plaintiffs' careers, reputations, and safety. Issuing an injunction would prevent more net harm to Plaintiffs than it would produce for Defendant. The Letter is just that: a letter. It is not a subpoena, and Defendant would therefore not be held in contempt, nor would it face any obvious legal repercussions for failing to comply with the Letter. Further, Defendant is a private ivy league university with a highly regarded reputation and an endowment of approximately $21 billion that possesses significantly more power, resources, and protection than Plaintiffs. Considering Defendant's minimal legal obligations to comply with the

Letter and Plaintiffs' imminent, ongoing risk of harm, the balance of equities certainly lies with the Plaintiffs.

> **E. An injunction will serve the public interest in preventing private employers from colluding with the government to disclose employees' personal and confidential information and shield the government from constitutional accountability.**

Issuing an injunction against Defendant will serve the public interest in preventing the government from using private entities, like Penn, as barriers behind which they indirectly violate individuals' constitutional rights with impunity. Courts must balance the possibility of harm to interested parties and whether an injunction will serve the public interest. *Del. River Port Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 923 (3d Cir. 1974). If the result favors granting a preliminary injunction, this Court may do so even if the plaintiff does not demonstrate a strong likelihood of their claims' success. *Id.* Here, the public has a strong interest in preventing Congress from using private employers, like Defendant, as a shield behind which it commits egregious civil rights violations. An injunction would serve the public interest in ensuring that private employers do not comply with government bodies seeking to evade constitutional checks on their power. In sum, an injunction will serve the public's interest in preserving constitutional rights.

## IV. CONCLUSION

For the aforementioned reasons, Plaintiffs respectfully ask this Court to grant Plaintiffs' Motion for Preliminary Injunction.

## CERTIFICATE OF SERVICE

I, Shahily Negron, hereby certify that on April 6, 2024, the foregoing filing was served on counsel for Defendant via email to:

Seth Waxman

Wilmer Cutler Pickering Hale and Dorr, LLP
 2100 Pennsylvania Ave. NW
Washington, D.C. 20037

Phone: (202) 663-6800
Fax: (202) 663-6363
seth.waxman@wilmerhale.com

*Attorney for Defendant University of Pennsylvania*

Respectfully submitted,

/s/ Shahily Negron, Esq.
(332842)

The Law Firm of Shahily Negron, Esq.
d/b/a Negron law

943 Washington Street
Reading, PA 19601

Phone: (646) 484-1491
Fax: (347) 814-1827
Email: shahily@lawnegron.com

*Attorney for Plaintiffs Huda Fakhreddine,*
*Troutt Powell, and Penn Faculty for Justice*
*in Palestine (PFJP)*

16