UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| HUDA FAKHREDDINE, TROUTT POWELL, and PENN FACULTY FOR JUSTICE IN PALESTINE,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE UNIVERSITY OF PENNSYLVANIA,<br><br>*Defendant*. | No. 224-CV-01034<br><br>CHIEF JUDGE GOLDBERG<br><br><br><br><br><br>**ATTORNEY'S DECLARATION** |

---

**ATTORNEY'S DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

---

State of New York    )
                     ) ss.:
Suffolk County       )

Attorney JONATHAN WALLACE, being duly sworn, deposes and says:

1. I am over 18 years of age, of sound mind and otherwise competent to make this Affidavit. The evidence set out in the foregoing Affidavit is based on my personal knowledge.

2. I am an attorney for Huda Fakhreddine, Troutt Powell, and Penn Faculty for Justice in Palestine (together, the "Plaintiffs") and I submit this Declaration in support of Plaintiffs' Motion for Preliminary Injunction (the "Motion") against Defendant University of Pennsylvania (the "Defendant").

3. This Declaration includes excerpts from the Penn Faculty Handbook[1] (the "Handbook")

---

[1] Handbook for Faculty and Academic Administrators, University of Pennsylvania (Aug. 2, 2023), https://catalog.upenn.edu/pdf/2023-2024-facultyhandbook.pdf.

1

and the Congressional Committee on Education and the Workforce's January 24, 2024 letter to Defendant (the "Information Letter" or "Letter"). The Letter is attached as Exhibit 1. The excerpts and the Exhibit are true and correct copies of and quotes from the Handbook and the Letter. In the Motion, Plaintiffs cite to this Declaration when referencing the Handbook and the Letter.

4. Doxxing is the act of publicly targeting someone and publishing information about them, especially as a form of punishment or revenge for their political speech and/or affiliation. Doxxing campaigns are almost always anonymous and seek to exploit, harass, and threaten their victims. These campaigns leverage public outrage to encourage masses of people to fuel the hate and threaten the victim. Doxxing poses serious risks to victims' physical safety, emotional wellbeing, and financial and professional livelihoods.[2]

5. Websites and social media accounts such as Canary Mission[3] and StopAntisemitism[4] specifically doxx individuals who express support for Palestine and criticism of Israel. As a result, the victim endures threats to their physical safety, career, and overall wellbeing. In many cases, victims are fired from their jobs. At worst, victims are physically harmed. For example, in November 2023, three Palestinian college students were shot at close range while wearing Palestinian *kuffiyehs* (scarves), which symbolize Palestinian solidarity.[5]

6. Paragraphs 7-13 of this Affidavit contain excerpts from the Committee's Letter that

---

[2] *See Dox*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/doxing (last visited Mar. 3, 2024); *also see* Putnam, Patrick, *Doxing: The Dark Side of OSINT*, United States Cybersecurity Magazine (last visited Mar. 2, 2024), https://www.uscybersecurity.net/doxing/.
[3] Canary Mission (last visited Apr. 2, 2024), https://canarymission.org/.
[4] StopAntisemitism (last visited Apr. 2, 2024), https://stopantisemitism.org/.
[5] *Palestinian Students Shot in Vermont Say the Suspect Waited for and Targeted Them*, NBC News (Jan. 17, 2024), https://www.nbcnews.com/news/us-news/palestinian-students-shot-burlington-vermont-interview-hospital-recove-rcna133822.

Plaintiffs cite in their Motion. See Ex. A at 1-14.

7. Request 1 on page 9 of the Letter demands that Defendant produce "[a]ll reports of antisemitic acts or incidents and related documents and communications since January 1, 2021." Ex. A at 9.

8. Request 4 on page 10 of the Letter demands "[d]ocuments sufficient to show the findings and results of any disciplinary processes … toward Penn students, faculty, and staff … related to the conduct involving the targeting of … Israel, Zionists, or Zionism." Ex. A at 10.

9. Request 5 on page 10 of the Letter demands "[d]ocuments sufficient to show the findings and results of any disciplinary processes … toward Penn student organizations related to conduct involving … Israel, Zionists, or Zionism … including, but not limited to, Penn Students Against the Occupation and the Freedom School for Palestine." Ex. A at 10.

10. Request 6 on page 10 of the Letter demands "[a]ll documents and communications relating to or reflecting sources of funding for Penn Students Against the Occupation, the Palestine Writes [Literature] Festival, and the Freedom School for Palestine, including, but not limited to university, departmental, faculty, and student organization funds, as well as foreign donations." Ex. A at 10.

11. Request 12 on page 11 of the Letter demands "[a]ll documents and communications referring and relating to any efforts by then-Chairman of the Board of Trustees and other Trustees, President, Provost, and other senior Penn leaders to address Penn trustees, trustees emeriti, and members of advisory boards (such as as the Wharton Board of Advisors) signing onto an open letter critical of Penn's response to the Palestine Writes Literature Festival, including by raising whether they should continue to serve in their

roles." Ex. A at 11.

12. Request 16 on pages 11 through 12 of the Letter demand "[a]ll documents and communications … involving … [any] entities responsible for investigating and determining consequences for misconduct and violations of university standards, referring and relating to: [t]he Palestine Writes Literature Festival; [t]he activities of Penn Students Against the Occupation since October 7, 2023; [p]osts by Penn students, faculty, staff, and other Penn affiliates on Sidechat and other social media platforms targeting … Israel, Zionists, or Zionism; [a]nti-Israel protests at Penn, and any disruptions to education and student life related to them, since October 7, 2023, including but not limited to the October 16, 2023 protest, [and the] Palestine Freedom School …." Ex. A at 11-12.

13. Request 17 on page 12 of the Letter demands "[a]ll documents and communications … involving … any academic departments, programs, and centers referring or relating to any efforts by Penn students, faculty, and staff to engage in the BDS[6] movement against Israel since January 21, 2021, and communications by Penn administrators relating to such efforts." Ex. A at 12.

14. Paragraphs 15-18 of this Affidavit contain excerpts from the Handbook that Plaintiffs cite as evidence of Defendant's intent to be contractually bound to the Handbook.

15. Page 129 of the Handbook states, "The University's commitment to the principles of open expression extends to and includes the electronic information environment, and interference in the exercise of those rights is a violation of this policy and of the Guidelines

---

[6] "BDS" is an acronym that stands for Boycott Divestment and Sanctions, a movement inspired by the South African anti-apartheid movement that puts economic pressure on Israel to stop committing human rights violations against Palestinians by boycotting Israeli and other institutions "engaged in violations of Palestinian human rights." *See Here's What You Need to Know About BDS*, TIME (Dec. 7, 2020), https://time.com/5914975/what-to-know-about-bds/.

on Open Expression ….”

16. Page 135 of the Handbook states, "[t]here are no conditions attached to the gift, grant or contract that would in any way jeopardize the University's commitment to the principles of academic freedom."

17. Pages 139 and 154 of the Handbook states, "the commitment to confidentiality does not preclude the sharing of information among University administrators as appropriate to keep members of the University community safe."

18. Page 113 of the Handbook states, "[i]n the case of a conflict between the principles of the Guidelines on Open Expression and other University policies, the principles of the Guidelines shall take precedence."

19. Paragraphs 20-24 of this Affidavit contain excerpts from the Handbook that related to Defendant's contractual obligations to protect Plaintiffs' academic freedom.

20. Page 17 of the Handbook states, "[t]he University recognizes the importance of a system of tenure for faculty members as the preeminent means of fostering and protecting academic freedom in teaching and in scholarly inquiry." Plaintiff Fakhreddine is a tenured professor, and her academic freedom should therefore be protected as required by Defendant's obligations set forth in the Handbook.

21. Page 17 of the Handbook states, "[i]t is the policy of the University of Pennsylvania to maintain and encourage freedom of inquiry, discourse, teaching, resource and publication and to protect any member of the academic staff against influences, from within or without the University, which would restrict a member of the academic staff in the exercise of these freedoms in their area of scholarly interest."

22. Page 17 of the Handbook further states, "[t]he teacher is entitled to freedom in the

classroom in discussing their subject. ... When speaking or writing as an individual, the teacher should be free from institutional censorship or discipline ...."

23. Page 33 of the Handbook states, "[t]he protections of academic freedom are extended to all members of the faculty during their terms of appointment."

24. Page 69 of the Handbook states, "[i]n protecting and managing its intellectual property assets, the University insists that the academic freedom of its faculty and students be preserved and that collegiality and the open expression of ideas by and among members of the University community be encouraged."

25. Paragraphs 26-28 of this Affidavit contain excerpts from the Handbook related to Defendant's contractual obligation to protect Plaintiffs' open expression and freedom of speech.

26. Page 113 of the Handbook outlines the University's Guidelines on Open Expression, which state, "[t]he University of Pennsylvania, as a community of scholars, affirms, supports and cherishes the concepts of freedom of thought, inquiry, speech, and lawful assembly. The freedom to experiment, to present and examine alternative data and theories; the freedom to hear, express, and debate various views; and the freedom to voice criticism of existing practices and values are fundamental rights that must be upheld and practiced by the University in a free society."

27. Page 113 of the Handbook states, "[i]n keeping with the rights outlined above, the University affirms that the substance or the nature of the views expressed is not an appropriate basis for any restriction upon or encouragement of an assembly or demonstration."

28. Page 113 of the Handbook states, "[i]n case of conflict between the principles of the

6

Guidelines on Open Expression and other University policies, the principles of the Guidelines shall take precedence."

29. Paragraphs 29-32 of this Affidavit contain excerpts from the Handbook related to Defendant's contractual obligation to protect Plaintiffs' right to confidentiality.

30. Page 101 of the Handbook states, "[e]xcept as may be otherwise provided by applicable law, all disciplinary proceedings, the identity of individuals involved in particular disciplinary matters, and all disciplinary files, testimony, and findings are confidential, in accordance with University policies and federal law ...."

31. Page 102 of the Handbook states, "[f]ailure to observe the requirement of confidentiality of a disciplinary hearing by any member of the University community, other than the respondent, constitutes a violation of University rules and may subject the individual to the appropriate procedures for dealing with such violations."

32. Pages 116 through 117 of the Handbook address the Confidentiality of Employee Records, stating, "[p]ersonnel records ... are afforded confidential treatment at all times. ... Individually identifiable personal information contained in computerized databases, whether maintained centrally or by schools, departments or other units, is afforded the same confidential treatment that applies to written records."

33. Pages 117 through 118 of the Handbook state, "[u]nless specifically excepted from this policy, the content of personnel records may not be disclosed to third parties without the express written permission of the individual who is the subject of the record. The written permission must describe specifically the records to be disclosed and the persons to whom they are to be disclosed." Plaintiffs' personnel records may fall within the documents provided in response to the Committee's overbroad request. However, Defendant has not

requested, nor have Plaintiffs provided, Plaintiffs' express written consent for Defendant to produce their personnel records to the Committee.

34. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this day April 6, 2024.

_____
Jonathan Wallace