

The Law Firm of Shahily Negrón, Esq.

PA Bar # 332 842  
943 Washington Street  
Reading, PA 19601  

EIN 92-2333666  
www.lawnegron.com  

MA Bar # 711 476  
367 State Street  
New Bedford, MA 02740  

Phone: (646) 484-1491  
Fax: (347) 814-1827  
shahily@lawnegron.com

April 09, 2024

**By ECF**

The Honorable Mitchell S. Goldberg  
U.S. District Court for the Eastern District of Pennsylvania  
17614 U.S. Courthouse  
601 Market Street  
Philadelphia, PA 19106

Re: **Fakhreddine v. University of Pennsylvania, No. 2:24-cv-01034-MSG**

**Plaintiffs' Response to Defendant's April 03, 2024 Letter**

Dear Chief Judge Goldberg:

Defendant, University of Pennsylvania hopes to prevail in dismissing Plaintiff's Complaint based on the arguments that purportedly Plaintiffs lack standing, Defendant is not a state actor, and the Complaint fails to state a claim for breach of contract. As shown below, none of Defendant's arguments have merit, and their Motion will likely fail. However, Plaintiffs welcome a pre-motion conference in anticipation of Defendant's motion to dismiss.

I. **Plaintiffs can successfully argue the Complaint has Subject Matter Jurisdiction because there are sufficient facts to establish Standing to pursue the claims against Defendant.**

Defendants move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on the basis that Plaintiffs fail to identify concrete and impending injuries thereby Plaintiffs lack standing to pursue any legal remedies. The Court should reject Defendant's arguments and deny their motion to dismiss when filed because Plaintiffs' have standing to overcome the certainly impending standard.

In reviewing a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court uses the same standard it would in deciding a Rule 12(b)(6) motion and "consider[s]

In reviewing a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court uses the same standard it would in deciding a Rule 12(b)(6) motion and "consider[s] the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir, 2014) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir, 2012)). Under this standard, the court "must accept as true all material allegations set forth in the complaint and must construe those facts in favor of the nonmoving party," and if those facts "state a claim to relief that is plausible on its face," then the defendants' motion to dismiss must be denied. *In re Schering Plough Corp.*, 678 F.3d at 243 (first quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007), and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

Specifically, for the purposes of establishing standing, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). "In the context of a motion to dismiss . . . the [i]njury-in-fact element is not Mount Everest. The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege some specific, identifiable trifle of injury." *In re Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625, 633 (3d Cir, 2017) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir, 2014)).

To demonstrate standing, a plaintiff must show (1) that he has suffered a concrete and particularized injury that is either actual or imminent, (2) that the injury is fairly traceable to the defendant, and (3) that a favorable decision will likely redress that injury. *See Defenders of Wildlife*, 504 U.S. at 560-61.

"[W]hen standing is challenged on the basis of the pleadings," a court must "accept as true all material allegation of the complaint and . . . construe the complaint in favor of the complaining party." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 (3d Cir, 2015) (alterations in original) (quoting *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996)); see also *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988).

Plaintiffs have a legally cognizable injury-in-fact. Defendant misunderstood Plaintiffs claim – this response letter will clarify – Defendant's continuing cooperation with and disclosure of private and confidential information has put in danger all Plaintiffs who have received a barrage of death and rape threats and hate speech and will further threaten all Plaintiffs with the irreparable harm of renewed attacks.

If Defendant provides records to the Committee on Education and the Workforce ("HEW"), Plaintiffs will continue to be victims of doxxing, threats, and harassment, and will be deeply emotionally affected by every such production of records. Such injuries are both concrete and particularized. There has been past injury, and it has been shown that

the threatened injury is certainly impending if Defendant produces the records from HEW's information request. Plaintiffs will suffer hardship absent a preliminary injunction because producing the records is currently causing injury to Plaintiffs, and that harm will continue unless and until the Court grants relief.

Lastly, Defendant argues that Penn Faculty for Justice in Palestine ("PFJP") "lacks standing to assert the legal rights or interests of its members because it has not provided specific allegations establishing that at least one identified member has suffered or will suffer harm. This argument has no merit.

An association may pursue claims as a representative of its members where "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 283 (3d Cir. 2002) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). "[T]he doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274, 275-76 (1986).

PFJP is a collective of over 80 members who support the teaching and research mission of the University of Pennsylvania, including faculty, lecturers, staff, and graduate employees and students. They have constituted themselves in solidarity with the ongoing and ever-urgent struggles of Palestinians resisting occupation, warfare, and displacement. In furtherance of these goals, PFJP organizes and implements pro-Palestinian educational materials, advocacy initiatives, and recreational activities. Thus, like its members, PFJP has a direct interest in this matter.

The members' interests that PFJP seeks to protect in this suit are germane to PFJP's purpose. See *Pa. Psychiatric Soc., 280 F.3d at 283* (quoting Hunt, 432 U.S. at 343). The germaneness prong of the standing analysis requires a "mere pertinence between litigation subject and organizational purpose" and is "undemanding." *Humane Soc. of the U.S. v. Hodel*, 840 F.2d 45, 58 (D.C. Cir. 1988); see also *Hotel & Restaurant Emps. Union, Local 25 v. Attorney General*, 804 F.2d 1256, 1265 (D.C. Cir. 1986) (germaneness prong is "satisfied when the association's purposes are reasonably related to the challenge it seeks to bring"). PFJP's mission is to protect and advocate Academic Freedom. Thus, because PFJP seeks in this lawsuit to protect its members' interests by protecting disclosure of their records, PFJP seeks to protect interests that are germane to its purpose.

Consequently, Defendant's claims that there is no case here based on lack of standing are nonsensical.

## II. Plaintiffs can successfully argue that Defendant violated Plaintiffs' constitutional rights by aiding and abetting HEW's constitutional violations.

1. <u>Defendant need not be a state actor for Plaintiffs to press constitutional charges against Defendant.</u>

Defendant argues that Plaintiffs fail to plausibly allege that Defendant is a state actor. However, Plaintiffs need not prove that Defendant is a state actor to successfully prove constitutional violations against Defendant. *United States v. Am. Tel. & Tel. Co.*, 551 F.2d 384, 393 (D.C. Cir. 1976). Instead, Plaintiffs have standing to request injunctive relief against Defendant because Plaintiffs have no alternative avenues to vindicate their constitutional rights.

The Supreme Court has made it clear that Congress does not possess "the 'general' power to inquire into private affairs" since the subject of a Congressional inquiry must always be one "on which legislation could be had." *Id* (first quoting *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 504 (1975), and then quoting *McGrain v. Daugherty*, 273 U.S. 135, 173 (1927)). Additionally, Congress cannot seek to "expose for the sake of exposure." *Watkins v. United States*, 354 U.S. 178, 199 (1957).

Here, HEW does just that: it requests documents and information from Defendant for the "sake of exposure" and, in doing so, attempts to inquire into private affairs, which is an exercise of power outside the bounds of its authority. This is clear from HEW's January 24, 2024 letter to Defendant (the "Letter"), which requests a slew of documents and information related to Plaintiffs' pro-Palestine advocacy and involvement in protests, participation in the Palestine Writes Literature Festival, social media posts, discipline, misconduct, and more related to Plaintiffs' anti-Israel or anti-Zionist speech. Att'y Decl. ¶¶ 7-13. In its Letter, HEW not only attempts to inquire into Plaintiffs' private affairs, such as their private social media posts, political associations, and confidential disciplinary information. HEW also conflates pro-Palestine and anti-Israel speech with antisemitism, an assumption that is inaccurate on its face. This assumption wrongfully conflates criticism of a nation-state, which happens to be Jewish, with anti-Jewish hate. A Congressional inquiry into Plaintiffs' private social media posts and political affiliations is McCarthy-esque and outside the purview of Congressional legislation.

2. <u>Defendant violates Plaintiffs' First Amendment rights by producing documents to aid HEW's infringements on Plaintiffs' freedoms of speech and association.</u>

Next, Plaintiffs can successfully prove that Defendant violated Plaintiffs' constitutional rights. Investigations conducted by Congressional Committees, while they can be expansive, are nonetheless restrained by the First Amendment. *Watkins*, 354 U.S. at 196.

First, Defendant is advancing HEW's viewpoint discrimination against Plaintiffs' anti-Israel speech. By requesting that Defendant provide documents related to Plaintiffs' pro-Palestine advocacy, HEW is using Defendant as a conduit through which it infringes

upon Plaintiffs' First Amendment rights. When the government targets an individual's viewpoint, rather than the subject matter more broadly, the government engages in the "egregious" act of viewpoint discrimination. *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). The government cannot indirectly—such as through a University—engage in viewpoint discrimination or other speech violations "which if directly attempted would be unconstitutional." *Arkansas Times LP v. Waldrip*, 988 F.3d 453, 461 (8th Cir. 2021) (citing *Speiser v. Randall*, 357 U.S. 513, 518 (1958)). That is because free speech doctrine recognizes that "constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental efforts that fall short of a direct prohibition against the exercise of First Amendment rights." *Arkansas Times* at 461 (quoting *Bd. of Cty. Comm'r, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 674 (1996)).

Here, Defendant infringes on Plaintiffs' free speech rights because it willingly acts as a shield behind which HEW discriminates against Plaintiffs' anti-Israel viewpoints and "chills" Plaintiffs' speech in support of Palestinian rights. This is clear from the fact that HEW is requesting documents and communications relating to Penn community members' involvement in anti-Israel advocacy, economic boycotts against Israel, the Palestine Writes Literature Festival, social media posts about Israel, and other speech critiquing Israel. Att'y Decl. ¶¶ 8-9, 12-13. In doing so, HEW, through Defendant, indirectly commits viewpoint discrimination against Plaintiffs' anti-Israel and pro-Palestine speech.

Second, Defendant is aiding HEW's violation of Plaintiffs' freedom of association with Palestine-related advocacy groups. The freedom to associate or otherwise "gather together to express ideas" is protected by the First Amendment. *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 68 (2006). The disclosure of an individual's organizational or political affiliations infringes on Plaintiffs' privacy of association and belief. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 452, 461 (1958).

Here, Defendant infringes on Plaintiffs' freedom of association by producing documents disclosing the activities and members of campus advocacy supporting Palestine, including own Plaintiffs' affiliations. HEW seeks "all documents and communications" related to discipline or misconduct for faculty members' support for boycotts against Israel, the Palestine Writes Literature Festival, social media posts criticizing Israel or Zionism, and anti-Israel protests. Att'y Decl. ¶¶ 8-9, 12-13. Defendant's production of documents advances the Committee's efforts to target Plaintiffs' association with Palestine advocacy. The Committee's efforts, by way of Defendant, to target Plaintiffs for their pro-Palestine affiliations subjects them to hostility and discourages them from freely associating with Palestine advocacy. Fakhreddine Aff. ¶¶ 9-13, 18-20, 26-27, 37-44.

3. <u>Defendant violates Plaintiffs' right to informational privacy under the Pennsylvania Constitution by disclosing personal information to HEW.</u>

Under the Pennsylvania Constitution, individuals have a fundamental right to privacy, which includes the right to be left alone and the "explicit protection" of an individual's right to avoid a disclosure of their personal matters. Pa. Const. art. I, § 1;

*Denoncourt v. Com., State Ethics Com'n*, 470 A.2d 945, 948 (1983). The Pennsylvania Supreme Court has repeatedly held that individuals have a constitutional right to "informational privacy," which includes the right to the privacy of information such as names, physical addresses, social security numbers, and telephone numbers. *Allegheny Reprod. Health Ctr. v. Pa. Dep't of Hum. Services*, No. 26 MAP 2021, 2024 WL 318389, at *70 (Pa. Jan. 29, 2024). The goal of this right is to protect an individual from revealing information that could subject the individual "to ridicule or persecution." *Stenger v. Lehigh Valley Hosp. Ctr.*, 530 Pa. 426, 429 (1992).

Here, Defendant aids HEW's violation of Plaintiffs' privacy rights by producing documents containing Plaintiffs' personal information. First, information designated to be "confidential" should be included under an individual's protected private information. HEW's Letter requests information regarding discipline or misconduct involving Penn students, faculty, and staff related to and the Palestine Writes Literature Festival and criticism of Israel. Att'y Decl. ¶¶ 8, 12-13. However, Defendant is contractually required to maintain the confidentiality of disciplinary information as required by the Penn 2023-2024 Faculty Handbook (the "Handbook").[1] Further, Defendant's disclosure of the results of any disciplinary processes involving Plaintiffs violates the state's interest in preventing the disclosure of information that could subject Plaintiffs to public ridicule or shame because of the accusatory and vulnerable nature of discipline, particularly by one's employer.

Further, the Pennsylvania Supreme Court has repeatedly assigned a privacy right to personal social media accounts and posts. In the context of Pennsylvania's Right-to-Know law, where "public records" are subject to disclosure, the Supreme Court has consistently held that personal social media accounts and posts are excluded from public disclosure because of privacy concerns. *Penncrest Sch. Dist. v. Cagle*, 293 A.3d 783, 801 (2023) (citing *Campbell v. Reisch*, 986 F.3d 822, 826 (8th Cir. 2021)). The Letter requests all documents and communications relating to misconduct for social media posts made by Penn students, faculty, and staff that are critical of Israel or Zionism. Att'y Decl. ¶ 12. Considering these privacy protections, Defendant's production of Plaintiffs' disciplinary information and social media posts furthers HEW's infringement upon Plaintiffs' right to privacy.

4. <u>Defendant violates Plaintiffs' privacy rights under the Fourteenth Amendment by disclosing Plaintiffs' personal information to HEW without their consent.</u>

Under the Fourteenth Amendment, "an individual has a constitutional right to privacy which protects 'the individual interest in avoiding disclosure of personal matters.'" U.S. Const. amend. XIV; *Doe v. Delie*, 257 F.3d 309, 315 (3d Cir. 2001) (quoting *Whalen v. Roe*, 429 U.S. 589, 599 (1977)). The "essence of private information is its general unavailability and the individuals' treatment of it as confidential." *Fraternal Order of Police, Lodge No. 5 v. City of Phila.*, 812 F.2d 105, 116 (3d Cir. 1987). Further, Congress lacks

---

[1] Handbook for Faculty and Academic Administrators, University of Pennsylvania, 101-02, 116-18 (Aug. 2, 2023), https://catalog.upenn.edu/pdf/2023-2024-facultyhandbook.pdf.

any "general power to expose where the predominant result can only be an invasion of the private rights of individuals." *Watkins*, 354 U.S. at 200.

Here, the Letter requests information relating to Plaintiffs' misconduct, discipline, and personal social media posts criticizing Israel or Zionism. However, Plaintiffs' disciplinary information is confidential, according to Plaintiffs and the Handbook.[2] It therefore constitutes private information, the disclosure of which violates Plaintiffs' privacy. Further, the Committee's predominant intent behind its request is clear: to probe into Plaintiffs' personal online activities and on-campus advocacy to chill their pro-Palestine speech. Since the primary result of Defendant's production of documents as an invasion into Plaintiffs' private affairs, the Committee lacks the authority to compel the disclosure of these documents. Therefore, Defendant's continued disclosure of this information violates Plaintiffs' right to privacy.

### III. Plaintiffs can successfully argue that Defendant breaches its contract with Plaintiffs by failing to protect Plaintiffs' academic freedom, freedom of expression, and right to confidentiality.

Defendant argues that Plaintiff fails to plausibly allege a breach of contract. However, Plaintiffs can successfully prove: (1) the existence of a contract, (2) Defendant breached that contract, and (3) Defendant's breach caused damages to Plaintiffs. *Manco v. St. Joseph's Univ.*, No. CV 22-285, 2024 WL 299265, at * 7 (E.D. Pa. Jan. 25, 2024).

1. <u>The Faculty Handbook constitutes a binding contract between Defendant and Plaintiffs.</u>

A handbook is binding upon an employer if a reasonable person in the employee's position would interpret its terms as evidence of the employer's intent to be bound. *Edwards v. Geisinger Clinic*, 459 F. App'x 125, 129 (3d Cir. 2012). Here, Plaintiffs reasonably interpret Defendant's intention to be bound to the Handbook because of Defendant's repeated and explicit expressions of "[the University's] commitment to the principles of open expression and nondiscrimination" and "commitment to confidentiality."[3] Additionally, the Handbook lacks any disclaimer or similar language stating that it does not form a contract between the parties. *Makara v. Albert Einstein Healthcare Network*, No. 08-5545, 2009 WL 1011753, at *4 (E.D. Pa. Apr. 14, 2009).

2. <u>Defendant is in breach of its contractual obligations to protect Plaintiffs' academic freedom, freedom of expression, and right to confidentiality as promised under the Handbook.</u>

First, Defendant breaches its contractual obligation to protect Plaintiffs' academic freedom because it supports HEW's efforts to target Plaintiff Fakhreddine and the Palestine Writes Literature Festival, an educational event co-organized by Plaintiff

---

[2] *Id* at 101-02.
[3] *Id* at 128, 135, 139, 145, and 149.

Fakhreddine that is directly tied to her scholarship on Palestinian literature. The Handbook states that it is "the policy of the University of Pennsylvania to maintain and encourage freedom of inquiry, discourse, teaching, resource and publication and to protect any member of the academic staff against influences, from within or without the University, which would restrict a member of the academic staff in the exercise of these freedoms in their area of scholarly interest."[4]

Despite this obligation, Defendant is advancing HEW's efforts to target Plaintiff Fakhreddine for exercising her academic freedom in an area of her scholarship: Palestinian literature. The Letter demands that Defendant produce a range of documents and information relating to the Palestine Writes Literature Festival, including funding sources, any misconduct or university code violations stemming from the festival, and the failure of some University trustees to publicly condemn the festival. Att'y Decl. at ¶¶ 9-12. HEW's request is part of HEW's continued efforts to doxx Plaintiff Fakhreddine, target the festival, and infringe upon her academic freedom to censor her teachings and advocacy on Palestine. In the televised December 5, 2023 hearing, HEW members mentioned Plaintiff Fakhreddine multiple times, condemned her academic curriculum, and alleged that she "endorses hatred" because of her Palestine-related advocacy and curriculum. Fakhreddine Aff. at ¶ 20.

However, Plaintiff Fakhreddine's role in co-organizing the festival was an exercise in her academic freedom as a scholar and professor of Arabic—including Palestinian—literature at the University and a core part of her academic duty as the topic director of the Wolf Humanities Center. Fakhreddine Aff. at ¶ 16-17. HEW, with Defendant's help, clearly seeks to target Plaintiff Fakhreddine for exercising her academic freedom in Palestinian literature, an area of her scholarship. Despite her efforts to educate the Penn community in an area of her scholarship, Defendant has been producing documents in compliance with the Letter.[5] By complying with HEW's efforts to target Plaintiff Fakhreddine, Defendant, itself, targets her academic work, breaching its contractual obligations to protect her academic freedom.

Additionally, Defendant breaches its contract with Plaintiffs by failing to protect them from influences in and outside the University, including Congress and pro-Israel influences, that infringe upon their academic freedom.

Second, Defendant's production of documents in compliance with HEW's efforts to target Plaintiffs' anti-Israel speech constitutes a breach of Defendant's contractual obligations to protect Plaintiffs' freedom of expression. In the Handbook's Guidelines on Open Expression, Defendant states that the University "affirms, supports and cherishes the concepts of freedom of thought, inquiry, speech, and lawful assembly."[6] The Handbook further states, "[t]he freedom to experiment, to present and examine alternative data and theories; the freedom to hear, express, and debate various views; and the

---

[4] *Id* at 17.
[5] Egan, Matt, *UPenn Submits Documents to Congress in Antisemitism Investigation*, CNN (Feb. 7, 2024), https://www.cnn.com/2024/02/07/business/upenn-documents-house-antisemitism-investigation.
[6] The Handbook, *supra* note 1, at 113.

freedom to voice criticism of existing practices and values are fundamental rights that must be upheld and practiced by the University in a free society."[7]

Meanwhile, the Letter requests all documents and communications involving: social media posts by Penn students, and faculty involving criticisms of Israel or Zionism; anti-Israel protests at Penn; and efforts by Penn students, faculty, and staff to boycott Israel. Att'y Declaration at ¶¶ 12-13. Defendant has violated its contractual obligations to protect this very speech by producing documents to further HEW's efforts to discriminate against and censor Plaintiffs' anti-Israel speech. Defendant's compliance produces a chilling effect on Plaintiffs' speech related to Palestine. This is evidenced by Plaintiff Fakhreddine's fear that Defendant could fire her at any moment for her efforts to speak and educate about Palestine. Fakhreddine Aff. at ¶ 44. Because of HEW's efforts to target her and Defendant's furtherance of HEW's doxxing, she is hesitant to speak on Palestine and host the Palestine Writes Literature Festival or similar public educational event. Fakhreddine Aff. at ¶ 43. This chilling effect demonstrates Defendant's breach of its contractual obligation to protect Plaintiffs' open expression from repressive influences in and outside the University.

Third, Defendant is contractually required to treat all disciplinary information as confidential.[8] The Handbook states that "all disciplinary proceedings, the identity of individuals involved in particular disciplinary matters, and all disciplinary files, testimony, and findings are confidential."[9] It also states that any failure to observe this confidentiality requirement "constitutes a violation of University rules."[10] The Handbook further states that "the content of personnel records may not be disclosed to third parties without the express written permission of the individual who is subject of the record."[11] Meanwhile, the Letter requests information related to discipline or misconduct by Penn faculty for critiques of Israel or Zionism, including those made at protests and on their social media accounts and those stemming from the Palestine Writes Literature Festival. Att'y Decl. at ¶¶ 8-9, 12.

Despite Defendant's obligations to adhere to this confidentiality policy, Defendant likely produces documents related to Plaintiffs' disciplinary and personnel records. Considering Plaintiffs' connections to pro-Palestine advocacy on campus and the Palestine Writes Literature Festival, Plaintiffs may be referenced in many of these documents, the disclosure of which constitutes a breach of contract. Additionally, considering the Letter's overbroad request for "[a]ll information and documents" related to discipline or misconduct for anti-Israel advocacy on and off campus, Plaintiffs' personnel records inevitably fall under the umbrella of "[a]ll … documents." Att'y Decl. at ¶¶ 10-13 Further, Defendant has not obtained or requested express written consent from Plaintiffs before disclosing this information to HEW, a third party. Considering Plaintiffs'

---

[7] *Id.*
[8] *Id* at 101-02, 116-118.
[9] *Id* at 101.
[10] *Id* at 102.
[11] *Id* at 117-18.

involvement in anti-Israel advocacy and Plaintiff Fakhreddine's participation in organizing the festival, Plaintiffs' personnel records may contain the requested information. Therefore, Defendant's production of these records directly breaches its obligation to maintain the confidentiality of Plaintiffs' personnel records.

3.  **Defendant's breaches of contract suppressed Plaintiffs' academic freedom and speech and failed to provide an opportunity to consent to the disclosure of personal information.**

Defendant's breach of its contractual obligations to protect Plaintiffs' academic freedom and speech has caused a chilling effect on Plaintiffs. Due to Defendant's compliance with the Letter, Plaintiff Fakhreddine is extremely discouraged from teaching students about Palestinian literature and poetry, is hesitant to organize the Palestine Writes Literature Festival in the future, and fears that she will lose her job for educating the Penn community about Palestine. Fakhreddine Aff. ¶¶ 43-44. Further, Defendant's breach of its obligation to protect Plaintiffs open expression has caused a chilling effect on Plaintiffs' Palestine-related advocacy. Since being doxed, Plaintiff Fakhreddine is afraid to speak about Palestine publicly, fears for her safety, and moved her class sessions to a room requiring key card access. Fakhreddine Aff. ¶¶ 4, 10-11, 42. Lastly, in breaching its obligation to protect Plaintiffs' confidentiality, Defendant failed to provide Plaintiffs with notice and an opportunity to consent to disclosure. In sum, because Defendant breached its obligations to protect Plaintiffs' freedom of expression, academic freedom, and confidentiality, Plaintiffs suffer concrete harm through censorship, risk of job loss, and public shame.

## IV. Conclusion

For the aforementioned reasons, Defendant's motion to dismiss should be denied.

Respectfully Submitted,

Shahily Negrón, Esq.

/s/ *Jonathan Wallace, Esq.*

Jonathan Wallace, Esq.*
*Admitted Pro Hac Vice*