## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HUDA FAKHREDDINE, TROUTT POWELL, and PENN FACULTY FOR JUSTICE IN PALESTINE,

                   Plaintiffs,

    v.

THE UNIVERSITY OF PENNSYLVANIA,

                   Defendant.

No. 2:24-cv-01034 (MSG)

**ORAL ARGUMENT REQUESTED**

## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE AND OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION ....................................................................................... 1

NOTICE OF MOTION AND MOTION TO DISMISS ............................... 3

    BACKGROUND ....................................................................................... 4

    ARGUMENT ............................................................................................. 6

    I.     All Of Plaintiffs' Claims Fail For Lack of Standing .......................... 6

          A.     Plaintiffs' Claims All Rest On An Impermissibly Speculative Theory Of Future Injury .......................................................... 6

          B.     Penn Faculty for Justice in Palestine Independently Lacks Standing ........ 11

    II.    Plaintiffs' Constitutional Claims Fail Because Penn Is Not A State Actor And Plaintiffs Plead No Plausible Constitutional Injury ...................... 13

          A.     Plaintiffs Have Not Adequately Pled That Penn Is A State Actor ............ 13

               1.     Plaintiffs do not plausibly allege Penn is exercising powers that are traditionally the prerogative of the state. .......................... 15

               2.     Plaintiffs do not plausibly allege Penn is acting in concert with HEW or is a joint participant in HEW's activities ................ 17

          B.     Plaintiffs Fail To State Plausible Claims Under The First And Fourteenth Amendments And The Pennsylvania Constitution ................ 19

               1.     Plaintiffs Fail to State a Plausible First Amendment Claim .......... 19

                    a)     Plaintiffs fail to plausibly allege that Penn committed viewpoint discrimination. ................................ 19

                    b)     Plaintiffs fail to plausibly allege that Penn retaliated against them. ................................................ 20

               2.     Plaintiffs Fail to State a Plausible Fourteenth Amendment Claim ............................................................................ 21

               3.     Plaintiffs Fail to State a Plausible Claim Under the Pennsylvania Constitution ........................................................ 22

    III.   Plaintiffs Fail To State A Breach Of Contract Claim .......................... 23

OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION .............. 25

    BACKGROUND ....................................................................................... 26

    STANDARD OF REVIEW ....................................................................... 26

    ARGUMENT ............................................................................................. 27

    I.     Plaintiffs Are Not Likely to Succeed on the Merits of Their Claims .................. 27

i

A.    The Threshold Deficiencies of Plaintiffs' Complaint Preclude Preliminary Injunctive Relief ................................................... 27

B.    Plaintiffs Cannot Establish that Their Constitutional Claims Would Likely Succeed ............................................................................. 29

1.    Plaintiffs cannot show that Penn's production of documents to HEW restricts protected speech. ................................. 29

2.    Plaintiffs still have not identified any constitutionally protected private information that Penn is producing. .................. 31

C.    Plaintiffs Cannot Establish that Their Breach of Contract Claim Would Likely Succeed ................................................................. 33

II.    Plaintiffs Will Not Suffer Irreparable Harm Absent Injunctive Relief ................ 36

III.    Injunctive Relief Will Harm Other Interested Persons and Is Not in the Public Interest ............................................................................................. 39

CONCLUSION ........................................................................................................... 40

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Adams v. Freedom Forge Corp.*,
204 F.3d 475 (3d Cir. 2000) ............................................................................................36

*American Chiropractic Ass'n v. Am. Specialty Health Inc.*,
625 F. App'x 169 (3d Cir. 2015) .....................................................................................12

*American Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999) ..........................................................................................................18

*United States v. American Telephone & Telegraph*,
551 F.2d 384 (D.C. Cir. 1976) .......................................................................................14

*Anderson v. Haverford College*,
851 F. Supp. 179 (E.D. Pa. 1994) ...................................................................................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................13

*Benn v. Universal Health Sys., Inc.*,
371 F.3d 165 (3d Cir. 2004) ...........................................................................................16

*Missouri v. Biden*,
83 F.4th 350 (5th Cir. 2023) ...........................................................................................18

*Blum v. Yaretsky*,
457 U.S. 991 (1982) ..................................................................................................16, 18

*Borse v. Piece Goods Shop, Inc.*,
963 F.2d 611 (3d Cir. 1992) ...........................................................................................14

*Bradshaw v. Pennsylvania State Univ.*,
2011 WL 1288681 (E.D. Pa. Apr. 5, 2011) ....................................................................24

*Chamber of Commerce for Greater Philadelphia v. City of Philadelphia*,
2017 WL 11544778 (E.D. Pa. May 30, 2017) ...........................................................11, 12

*Chamber of Commerce for Greater Philadelphia v. City of Philadelphia*,
319 F. Supp. 3d 773 (E.D. Pa. 2018) ..............................................................................29

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ............................................................................................2, 6, 9, 10

*Conard v. Pennsylvania State Police*,
    902 F.3d 178 (3d Cir. 2018)................................................................................21

*Continental Group, Inc. v. Amoco Chems. Corp.*,
    614 F.2d 351 (3d Cir. 1980)...............................................................................36

*Cooper v. Muldoon*,
    2006 WL 1117870 (E.D. Pa. Apr. 26, 2006) .........................................................17

*David v. Neumann Univ.*,
    177 F. Supp. 3d 920 (E.D. Pa. 2016) ..................................................................24

*David v. Neumann Univ.*,
    187 F. Supp. 3d 554 (E.D. Pa. 2016) ............................................................35, 36

*Do No Harm v. Pfizer Inc.*,
    96 F.4th 106 (2d Cir. 2024) ..........................................................................28, 29

*Doe ex rel. Doe v. Boyertown Area Sch. Dist.*,
    276 F. Supp. 3d 324 (E.D. Pa. 2017) ..................................................................31

*Doe v. Delie*,
    257 F.3d 309 (3d Cir. 2001)...............................................................................21

*Doe v. Luzerne Cnty.*,
    660 F.3d 169 (3d Cir. 2011)...............................................................................31

*Doe v. Nat'l Bd. of Med. Examiners*,
    199 F.3d 146 (3d Cir. 1999)...............................................................................28

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
    232 F.3d 173 (3d Cir. 2000)...............................................................................20

*Egli v. Strimel*,
    2015 WL 5093048 (E.D. Pa. Aug. 28, 2015) .......................................................34

*Engelhard Corp. v. N.L.R.B.*,
    437 F.3d 374 (3d Cir. 2006)...............................................................................34

*EnVerve, Inc. v. Unger Meat Co.*,
    779 F. Supp. 2d 840 (N.D. Ill. 2011) ..................................................................27

*Fac., Alumni, & Students Opposed to Racial Preferences v. New York Univ.*,
    11 F.4th 68 (2d Cir. 2021) .................................................................................12

*Fleck v. Trustees of University of Pennsylvania*,
    995 F. Supp. 2d 390 (E.D. Pa. 2014) ..................................................................15

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015) ........................................................................28

*Fraternal Order of Police v. City of Philadelphia*,
    812 F.2d 105 (3d Cir. 1987) ...........................................................................22

*Good News Club v. Milford Cent. Sch.*,
    533 U.S. 98 (2001) .........................................................................................19

*Gross v. Taylor*,
    1997 WL 535872 (E.D. Pa. Aug. 5, 1997) ....................................................32

*Gundlach v. Reinstein*,
    924 F. Supp. 684 (E.D. Pa. 1996) .................................................................23

*Hammerhead Enters., Inc. v. Brezenoff*,
    707 F.2d 33 (2d Cir. 1983) .............................................................................21

*Harris v. Saint Joseph's Univ.*,
    2014 WL 1910242 (E.D. Pa. May 13, 2014) .................................................24

*Hart v. Univ. of Scranton*,
    2012 WL 1057383 (M.D. Pa. Mar. 28, 2012) ...............................................25

*Johnson v. TD Bank Nat'l Ass'n*,
    2023 WL 2203572 (3d Cir. Feb. 24, 2023) ...................................................17

*Kach v. Hose*,
    589 F.3d 626 (3d Cir. 2009) ...............................................................15, 16, 17

*Karakozova v. Trustees of University of Pennsylvania*,
    2011 WL 1754468 (E.D. Pa. May 9, 2011) ...................................................15

*KDDI Glob. LLC v. Fisk Telecom LLC*,
    2017 WL 5479512 (D.N.J. Nov. 15, 2017) ...................................................26

*Kortyna v. Lafayette College*,
    2017 WL 1134129 (E.D. Pa. Mar. 27, 2017) ................................................25

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) .......................................................................................11

*Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*,
    508 U.S. 384 (1993) .......................................................................................19

*Leshko v. Servis*,
    423 F.3d 337 (3d Cir. 2005) ...........................................................................14

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983)................................................................................................10

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982)..............................................................................................13

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)................................................................................................6

*Malleus v. George*,
    641 F.3d 560 (3d Cir. 2011)......................................................................21, 22, 31

*Max v. Republican Comm. of Lancaster Cnty.*,
    587 F.3d 198 (3d Cir. 2009)..................................................................................14

*Meadows v. Pelosi*,
    639 F. Supp. 3d 62 (D.D.C. 2022) ........................................................................39

*Mirabella v. Villard*,
    853 F.3d 641 (3d Cir. 2017)..................................................................................21

*Nationwide Ins. Indep. Contractors Ass'n, Inc. v. Nationwide Mut. Ins. Co.*,
    518 F. App'x 58 (3d Cir. 2013) .............................................................................12

*New Dana Perfumes Corp. v. Disney Store, Inc.*,
    131 F. Supp. 2d 616 (M.D. Pa. 2001) ...................................................................38

*New Jersey Physicians, Inc. v. President of U.S.*,
    653 F.3d 234 (3d Cir. 2011)............................................................................12, 13

*Parker v. Governor of Pennsylvania*,
    2023 WL 5814603 (3d Cir. Sept. 8, 2023) .............................................................6

*Parker v. Wolf*,
    506 F. Supp. 3d 271 (M.D. Pa. 2020) ...................................................................10

*Pik v. University of Pennsylvania*,
    2010 WL 3933275 (E.D. Pa. Oct. 7, 2010).....................................................14, 15

*Porrata v. Pennsylvania Interscholastic Athletic Ass'n, Inc.*,
    38 F. Supp. 3d 549 (E.D. Pa. 2014) ......................................................................37

*R.C. Maxwell Co. v. Borough of New Hope*,
    735 F.2d 85 (3d Cir. 1984)....................................................................................21

*Reedy v. Borough of Collingswood*,
    204 F. App'x 110 (3d Cir. 2006) ...........................................................................27

*Reilly v. Ceridian Corp.*,
   664 F.3d 38 (3d Cir. 2011)......................................................................................9

*Reilly v. City of Harrisburg*,
   858 F.3d 173 (3d Cir. 2017)............................................................................27, 39

*Rendell-Baker v. Kohn*,
   457 U.S. 830 (1982)............................................................................14, 15, 16

*Robert S. v. Stetson Sch., Inc.*,
   256 F.3d 159 (3d Cir. 2001)................................................................................15

*Rogalinski v. Meta Platforms, Inc.*,
   2023 WL 7876519 (9th Cir. Nov. 16, 2023)......................................................18

*Rosenberger v. Rector & Visitors of University of Virginia*,
   515 U.S. 819 (1995)............................................................................................19

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
   547 U.S. 47 (2006).............................................................................................30

*S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*,
   713 F.3d 175 (4th Cir. 2013) ............................................................................12

*Shaughnessy v. Duke Univ.*,
   2020 WL 4227545 (M.D.N.C. July 23, 2020)...................................................36

*Sherwin-Williams Co. v. Cnty. of Delaware, Pennsylvania*,
   968 F.3d 264 (3d Cir. 2020).............................................................................11

*Smart Vent Products, Inc. v. Crawl Space Door Sys., Inc.*,
   2016 WL 4408818 (D.N.J. Aug. 16, 2016) ......................................................38

*Smith v. University of Pennsylvania*,
   534 F. Supp. 3d 463 (E.D. Pa. 2021) ...............................................................24

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)..............................................................................................7

*Stouffer v. Union R.R. Co., LLC*,
   85 F.4th 139 (3d Cir. 2023) .................................................................................8

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009)............................................................................................11

*Thomas v. Independence Twp.*,
   463 F.3d 285 (3d Cir. 2006)...............................................................................20

*Thorne v. Pep Boys Manny Moe & Jack Inc.*,
   980 F.3d 879 (3d Cir. 2020) ..................................................................................... 9

*United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*,
   517 U.S. 544 (1996) ............................................................................................... 11

*VisionQuest Nat'l, Ltd. v. City of Philadelphia*,
   2019 WL 13426202 (E.D. Pa. June 21, 2019) ...................................................... 38

*Vita-Pure, Inc. v. Bhatia*,
   2015 WL 1496396 (D.N.J. Apr. 1, 2015) .............................................................. 38

*Vuyanich v. Smithton Borough*,
   2022 WL 207608 (W.D. Pa. Jan. 24, 2022) .......................................................... 16

*Watkins v. United States*,
   354 U.S. 178 (1957) ................................................................................. 18, 32, 40

*Winter v. NRDC, Inc.*,
   555 U.S. 7 (2008) ............................................................................................ 26, 36

**Docketed Cases**

*Yakoby v. Trustees of the University of Pennsylvania*,
   No. 2:23-cv-04789 (E.D. Pa.) ......................................................................... 4, 16

**State Cases**

*Allegheny Reproductive Health Ctr. v. Pennsylvania Dep't of Hum. Servs.*,
   309 A.3d 808 (Pa. 2024) ........................................................................ 22, 23, 32

*Cavaliere v. Duff's Bus. Inst.*,
   605 A.2d 397 (Pa. Super. Ct. 1992) ..................................................................... 23

*City of Harrisburg v. Prince*,
   288 A.3d 559 (Pa. Commw. Ct. 2023) ................................................................. 23

*Penncrest School District v. Cagle*,
   293 A.3d 783 (Pa. Commw. Ct. 2023) ................................................................. 33

*Pennsylvania State Educ. Ass'n v. Commonwealth Dep't of Cmty. & Econ. Dev.*,
   148 A.3d 142 (2016) ............................................................................................. 32

*Stenger v. Lehigh Valley Hosp. Ctr.*,
   530 Pa. 426 (Pa. 1992) ......................................................................................... 32

**Other Authorities**

Federal Rules of Civil Procedure 12(b) ..................................................................... 3, 8

Pennsylvania Constitution ................................................................................ *passim*

U.S. Const. amend. I ....................................................................................... *passim*

U.S. Const. amend. XIV .................................................................................. *passim*

## <u>INTRODUCTION</u>

Following the October 7, 2023 terrorist attacks in Israel and the ensuing rise of antisemitism on college campuses and around the country, the University of Pennsylvania ("Penn")[1] has faced numerous accusations that it has condoned antisemitism on its campus, spawning both a Title VI lawsuit brought by a handful of Jewish students and an investigation by the House Committee on Education and the Workforce ("HEW").  While Penn strongly disputes the claims leveled in these forums, it is engaging with the proceedings in good faith.  Plaintiffs' lawsuit seeks to intervene in the HEW investigation by enjoining Penn from complying with HEW's request for information about Penn's response to allegations of antisemitism.  As is clear from the face of the Complaint, Plaintiffs' issue is with HEW and not with Penn.  Most of the 143 paragraphs are dedicated to issues like HEW's motives (labeled "McCarthyesque"), the actions of nonparties to this lawsuit (like Canary Mission, a nonprofit that, Plaintiffs allege, has doxed them in the past), HEW's preferred definition of antisemitism, and the inaccuracy of allegations leveled against Penn in the Title VI lawsuit.  Plaintiffs' sole issue with Penn is that it is complying with HEW's investigation.  Plaintiffs even admit they are suing Penn only because (they say) they cannot sue HEW for its supposed infringement of their constitutional rights.  *See* Dkt. 21 at 4.

Plaintiffs seek to make Penn responsible for their generalized grievances and concerns about HEW's conduct through two theories that have no support in the law or the facts.  First, Plaintiffs claim that HEW's conduct violates their free speech and privacy rights under the U.S. and Pennsylvania Constitutions, and that Penn is aiding those supposed violations by producing documents to HEW in compliance with the committee's request.  Second, Plaintiffs claim that

---

[1] "The University of Pennsylvania" does not exist as a legal entity.  The Trustees of the University of Pennsylvania is the correct corporate name for the University and should be substituted as the defendant.

Penn's production of documents violates unidentified contractual obligations because HEW's requests seek information about First Amendment-protected speech in which Plaintiffs engage (though the requests do not specifically demand Plaintiffs' information), student disciplinary actions (though Plaintiffs are faculty), and other unspecified private information.

Plaintiffs' attempt to conjure a legal theory against Penn falls well short of entitling them to any relief.  Indeed, Plaintiffs fail at the starting gate because they lack Article III standing.  They only seek prospective relief, and none of their allegations comes close to showing that any injury they fear might come as a result of Penn's actions is "certainly impending."  To the contrary, the Complaint contains only speculation—speculation about what Penn might produce to HEW, speculation that maybe Plaintiffs' records could be included, speculation about how Penn is producing (and will produce) documents to HEW, and speculation about what might happen with any documents that Penn produces.  Settled precedent forecloses Plaintiffs' effort to conjure up standing on the basis of "speculat[ion]" and "assumptions" about what might happen.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411 (2013).

Even if Plaintiffs had alleged enough to support standing, their claims would fail on the merits.  Start with the obvious:  Three of Plaintiffs' claims are constitutional, and Penn is not a state actor.  Penn cannot be held liable for alleged constitutional violations arising from HEW's conduct, and nothing Plaintiffs allege supports a theory that Penn is acting *as* a state actor or in concert with state actors sufficient to subject it to liability under the U.S. and Pennsylvania Constitutions.  In all events, Plaintiffs also fail to state any kind of constitutional claim.  Plaintiffs do not allege facts suggesting that Penn's production of documents is an act of retaliation or viewpoint discrimination in violation of the First Amendment.  Nor do they plausibly allege facts to support their cursory claims that Penn is producing information protected under the Fourteenth

Amendment and Pennsylvania Constitution—there is no reasonable expectation of privacy for documents and emails held on Penn's servers.  And finally, their breach of contract claim fails because they fail to allege any specific contractual commitments Penn has made to them regarding the subject matter of this litigation, much less how Penn's production of documents to HEW is in breach of any contractual commitment.  Thus, even if this Court concludes that Plaintiffs have standing, it should dismiss the Complaint under Rule 12(b)(6) for failure to state a claim.

Plaintiffs' preliminary injunction motion—filed nearly a month after their Complaint and over two months after HEW sent its letter requesting documents—is also meritless, and Plaintiffs come nowhere close to satisfying their heavy burden of proving they are entitled to extraordinary relief.  Plaintiffs cannot show that they are likely to succeed on the merits where they lack standing; they are pressing meritless constitutional claims against a private entity; and their breach of contract claim fails to allege any contractual commitment Penn made that could conceivably be breached by the challenged conduct.  Moreover, Plaintiffs have not shown (much less proven with evidence) that they will face irreparable harm absent preliminary relief; their speculation as to what third parties might do is patently insufficient to get a preliminary injunction against Penn.  And because Plaintiffs ask this Court to commandeer Penn's decision to comply with requests from Congress, an injunction would harm other interested parties and is contrary to the public interest.

This lawsuit is meritless.  Plaintiffs' request for a preliminary injunction should be denied and the case should be dismissed.

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Penn moves to dismiss the Complaint.  Penn's Motion to Dismiss is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, and the declaration of David Gringer, dated May 7, 2024, and the exhibits attached thereto.

**BACKGROUND**

Penn is one of the many universities that have been rocked by the political maelstrom over events in Israel and Gaza.  Penn's efforts to chart a course through this difficult moment—one that takes seriously the principles of free speech and expression and the need to ensure all members of its community are safe and can participate in university life—has drawn critics from both sides.  On one side are Plaintiffs and others who have accused Penn of not standing more firmly against outside efforts challenging certain viewpoints.  Plaintiffs are faculty who publicly advocate pro-Palestinian views, have faced public backlash for those views, and now seek to blame Penn for how others respond to their views.  *See* Compl. ¶¶ 5-8.  On the other side are people who believe Penn is not doing enough to limit hurtful and antisemitic speech.  Penn has been sued by Jewish students alleging it failed to prevent antisemitism, *Yakoby v. Trustees of the University of Pennsylvania*, No. 2:23-cv-04789 (E.D. Pa.), and Penn's response to allegations of antisemitism has been a subject of HEW's investigation and hearings on antisemitism on college campuses.

HEW has legislative jurisdiction over matters of education generally, including matters relating to institutions of higher education.  Following the October 7, 2023 Hamas attacks on Israel, and ensuing protests on college and university campuses that in some instances led to hateful and antisemitic conduct, HEW began investigating how several institutions of higher education, including Penn, responded to antisemitism on their campuses.  Since late 2023, HEW has held hearings on antisemitism on campuses, calling upon several university presidents and administrators to testify, including Penn's former president, who testified at a hearing on December 5, 2023.  HEW has heard directly from several Jewish students about their concerns with antisemitism on college campuses, including from students who filed a Title VI lawsuit against Penn.  And HEW has requested additional information from several universities, including Penn, about their response to alleged antisemitic conduct.

On January 24, 2024, HEW sent Penn a letter detailing allegations about events at Penn that HEW characterizes as antisemitic and demanding Penn's production of documents in response to 25 requests for information.  Ex. 1.[2]  Among the allegations is HEW's claim that it is "deeply troubling" that "Penn hosted the Palestine Writes Literature Festival on its campus in September 2023," because the event included speakers with a history of offensive statements about Jewish people.  Ex. 1 at 2-3.  While the letter does not reference Plaintiff Fakhreddine's role in organizing the festival, she states she "produced" the event.  Compl. ¶ 7.  This is not the first time Penn has come under fire for Palestine Writes.  Penn was subjected to a public campaign to shut down that event, in response to which Penn made clear it stands emphatically against antisemitism and fiercely supports the free exchange of ideas.  *See* Ex. 2.[3]  Penn's decision not to intervene is now under investigation by HEW, and the committee's letter requests information regarding Penn's response to Palestine Writes, as well as information regarding funding for the event.  Ex. 1 at 10-11.  HEW also requested information on: antisemitic incidents at Penn; Penn's policies and disciplinary procedures relating to "allegations of hate crimes discrimination, bias or harassment"; Penn's policies and procedures to "preserve access to safe and uninterrupted learning environments"; the findings and results of disciplinary processes "related to conduct involving Jews, Israelis, Israel, Zionists, or Zionism"; the investigations of potential misconduct related to a number of enumerated incidents on campus, including protests and antisemitic vandalism; and academic programs related to the Boycott, Divest, Sanctions movement ("BDS"); as well as other topics unrelated to Plaintiffs' allegations.  Ex. 1 at 9-13.

---

[2] Unless otherwise noted, "Ex." citations reference exhibits to the Declaration of David Gringer filed concurrently.

[3] Penn did not organize Palestine Writes, which was a public event that was sponsored by individual faculty, departments and centers, and student organizations, independent of Penn.  *See* Ex. 2.

**ARGUMENT**

I.      **All Of Plaintiffs' Claims Fail For Lack of Standing**

As the parties "invoking federal jurisdiction," Plaintiffs "bear[] the burden" of establishing the "irreducible constitutional minimum" of Article III standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  To establish standing, Plaintiffs must have suffered an "injury in fact" that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted).  Because Plaintiffs seek only prospective relief and allege no actual past injury, they must show that any "threatened injury" is "*certainly impending*."  *Id.* (cleaned up).  "[A]llegations of *possible* future injury are not sufficient."  *Id.* (cleaned up).  Plaintiffs offer nothing but allegations of possible future injury, and the Complaint is full of speculation as to what *could* happen but is awfully thin on allegations of anything that is even arguably (much less certainly) impending.  Because that showing falls far short of what Article III requires, Plaintiffs cannot satisfy their burden and the Court should dismiss the suit in its entirety.

A.      **Plaintiffs' Claims All Rest On An Impermissibly Speculative Theory Of Future Injury**

Plaintiffs allege that they will be doxed because of Penn's production of documents to HEW containing their personal information.  Compl. ¶ 123.  In support of this injury theory, they speculate that Penn's production of documents to HEW will contain their personal information and that HEW is likely to use the information Penn produces to dox Plaintiffs.  *See* Compl. ¶¶ 7, 99, 119.  But they allege no facts that directly support such a theory.  Because this theory hinges on the kind of "necessary guesswork" that "preclude[s] a finding of imminent injury," *Parker v. Governor of Pennsylvania*, 2023 WL 5814603, at *2 (3d Cir. Sept. 8, 2023), *cert. denied*, 144 S. Ct. 813, 218 L. Ed. 2d 26 (2024), Plaintiffs fail their burden to "clearly … allege facts

demonstrating" a certainly impending injury, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted).

Plaintiffs allege in conclusory fashion that HEW requested certain documents from Penn, and "on information and belief" they allege that Penn "has begun producing documents," including "disclos[ing] private and confidential information about Plaintiffs."  Compl. ¶¶ 7, 119; *see also id.* ¶¶ 53, 139.  They then speculate that because Fakhreddine was named elsewhere in HEW's January 24 letter (but not in the information requests), all Plaintiffs' records *may* be included in Penn's productions.  *See id.* ¶ 54.  They offer nothing else.  Although Plaintiffs speculate that HEW seeks (or has requested) their personal information, they identify no specific request that they believe would lead to disclosure of their personal or confidential records.  In fact, HEW's requests do not demand disclosure of information concerning Plaintiffs; rather, they demand information about *Penn's* actions with respect to certain events.  *See, e.g.*, Ex. 1 at 10 (requesting "[d]ocuments sufficient to show the findings and results of any disciplinary processes" "related to conduct involving the targeting of Jews, Israelis, Israel, Zionists, or Zionism").  And Plaintiffs do not allege any facts that even plausibly establish that their sensitive or confidential records are covered by those requests seeking information about Penn's actions.   Though they allege HEW seeks information about the Palestine Writes Literature Festival organized by Fakhreddine, Compl. ¶¶ 7, 53, they allege nothing to suggest that information about a public literature festival would include an organizer's private and sensitive information.  And Plaintiffs do not allege any facts that plausibly suggest Penn is disregarding its privacy or confidentiality obligations under the Family Educational Rights and Privacy Act (FERPA) in its productions (*see* Compl. ¶¶ 120-21)— which they cannot allege because (i) FERPA protects students, not faculty, and (ii) Penn is

redacting FERPA-protected records and other sensitive information from its productions to HEW, *see* Declaration of David Gringer ("Gringer Decl.") ¶ 4.[4]

Moreover, Plaintiffs fail to plausibly allege that any production of their records might cause them actual harm; although they claim generally that third parties (like the Canary Mission) have doxed Plaintiffs *in the past* (well before HEW made its request), and they go on at length about the harms of doxing (*see* Compl. ¶¶ 99-118), they offer no nonconclusory facts that if their records were produced, HEW—or anyone on HEW's staff—would dox Plaintiffs with the produced information. Penn had been producing documents for at least a month by the time Plaintiffs filed their Complaint, *see* Ex. 3, and they do not claim that any doxing resulted from that production. Indeed, Plaintiffs do not even allege that HEW has ever used confidential information to dox anyone, they allege only that HEW has relied upon information from doxing websites in its work. Compl. ¶ 99.

In all events, the conditional conjectures Plaintiffs offer to support their theory of harm cannot satisfy their Article III obligations. Plaintiffs' theory requires the Court to make a series of impermissible inferential leaps and assume (1) that Plaintiffs' sensitive or confidential records are even plausibly covered by HEW's requests; (2) that in complying with HEW's request, Penn will determine that Plaintiffs' records are responsive; (3) that the records Penn produces will include Plaintiffs' private or confidential information; (4) that when Penn produces those records, it will violate federal law and any other statutes requiring redactions or other, similar privacy-protecting measures; and (5) that once those documents are produced, members of HEW might misuse them to target, harass, or otherwise dox Plaintiffs.

---

[4] Under Federal Rule 12(b)(1), the Court may "consider facts outside the pleadings." *Stouffer v. Union R.R. Co., LLC*, 85 F.4th 139, 143 (3d Cir. 2023).

But even if "[t]his chain of conceivable events poses some new non-zero risk" to Plaintiffs—and nothing in the Complaint suggests as much—their "absolute chances of harm are miniscule." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 894 (3d Cir. 2020). *Clapper* instructs that standing cannot rest on speculation about a chain of possibilities that might eventually cause them harm. There, the plaintiffs—a group of "attorneys and human rights, labor, legal, and media organizations"—asserted injury because there was "an objectively reasonable likelihood that their communications with their foreign contacts will be intercepted under" Section 702 of the FISA, which authorizes the Attorney General to conduct surveillance of foreign nationals located abroad. *Clapper*, 568 U.S. at 406-07, 410. The Supreme Court held that those plaintiffs lacked standing because they "ha[d] no actual knowledge of the Government's ... targeting practices" and could "merely speculate and make assumptions about whether their communications with their foreign contacts will be acquired under [§ 702]." *Id.* at 411. A similar chain-of-possibilities theory doomed plaintiffs' assertion of standing in *Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011), where the Third Circuit rejected claims of "hypothetical, future injury" because their contentions all relied on speculation that the hacker who caused the data breach underlying the case "(1) read, copied, and understood their personal information; (2) intends to commit future criminal acts by misusing the information; and (3) is able to use such information to the detriment of [plaintiffs] by making unauthorized transactions in [plaintiffs'] names." *Id.* at 42. So, the court observed, "[u]nless and until these conjectures come true, [plaintiffs] have not suffered any injury; there has been no misuse of the information, and thus, no harm." *Id.*

The same is true here. As in *Clapper*, *Reilly*, and the many other cases since *Lujan* that reject speculative theories of injury, Plaintiffs' allegations are full of "maybes" but noticeably lacking in concrete and particularized allegations of imminent harm. The most Plaintiffs can offer

is that HEW has spoken about Plaintiffs in the past (based on Plaintiffs' public statements and positions and without any relationship to documents held by, or produced by, Penn), and they subsequently received negative attention from third parties that are not parties to this lawsuit or before this Court. But "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy," *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983), and in any event Plaintiffs do not (and cannot) allege that anything Penn has done caused their "past wrongs." Plaintiffs' theory is even weaker because it does not account for Penn's redaction of personally identifiable or sensitive information and of educational record information in accordance with FERPA. Gringer Decl. ¶ 4. Plaintiffs' allegations fall short of showing that any theory of future injury is *plausible*—much less one that is certainly impending.

Nor can Plaintiffs assert standing by pointing to any alleged "chill" caused by the House Committee's request (and Penn's compliance with it). "[B]oth the Supreme Court and Third Circuit have rejected such a theory of Article III injury-in-fact—where plaintiffs self-incur certain costs or injuries without a concrete showing that a violation of their rights is 'certainly impending,' there is no Article III standing." *Parker v. Wolf*, 506 F. Supp. 3d 271, 285 (M.D. Pa. 2020), *aff'd sub nom. Parker v. Governor of Pennsylvania*, 2021 WL 5492803 (3d Cir. Nov. 23, 2021). The Supreme Court rejected the argument in *Clapper*, where the plaintiffs alleged that their fear of surveillance "compel[led] them to avoid certain e-mail and phone conversations" and "to tal[k] in generalities rather than specifics." 568 U.S. at 415 (internal quotation marks and citation omitted). The Third Circuit has likewise held (in a First Amendment challenge) that "an allegation that certain conduct has (or will have) a chilling effect on one's speech must claim a 'specific present objective harm or a threat of specific future harm,'" and it is not enough that they subjectively

decided to silence themselves.  *Sherwin-Williams Co. v. Cnty. of Delaware, Pennsylvania*, 968 F.3d 264, 269-70 (3d Cir. 2020).

Plaintiffs may disagree with Penn's decision to comply with HEW's request.  But that disagreement does not entitle them to this Court's jurisdiction.  Because they have failed to allege enough facts that come close to showing any future injury that is likely to occur—much less certainly impending—their complaint must be dismissed for lack of Article III standing.

### B.      Penn Faculty for Justice in Palestine Independently Lacks Standing

When invoking federal jurisdiction, a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (citation omitted).  So, while an association may sometimes bring claims on behalf of its members, it must show that: (1) "its members would otherwise have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (citation omitted).  Penn Faculty for Justice in Palestine's ("PFJP") attempt at establishing standing fails at the first prong.

Most obviously, PFJP has failed to provide any "specific allegations establishing that at least one identified member ha[s] suffered or [will] suffer harm."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009).  This Court's decision in *Chamber of Commerce for Greater Philadelphia v. City of Philadelphia*, 2017 WL 11544778 (E.D. Pa. May 30, 2017), stated the rule plainly: Under *Summer* and Third Circuit precedent, an organization asserting the rights of its members "must identify a member who will suffer specific harm," and "broad allegations about [the organization's] members simply do not meet the requirements of *Summers*."  *Id.* at *4; *see also Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169, 176 (3d Cir. 2015)

(affirming dismissal and reasoning that "[t]o meet the first prong" "the association must make specific allegations establishing that at least one identified member had suffered or would suffer harm." (citations and internal quotation marks omitted)); *Nationwide Ins. Indep. Contractors Ass'n, Inc. v. Nationwide Mut. Ins. Co.*, 518 F. App'x 58, 63 (3d Cir. 2013) ("associations must present 'at least one identified member' who has suffered a specified harm" and affirming dismissal); *New Jersey Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 (3d Cir. 2011) (same); *Fac., Alumni, & Students Opposed to Racial Preferences v. New York Univ.* ("*FASORP*"), 11 F.4th 68, 76 (2d Cir. 2021) (same).

Under this well-established standard, Plaintiffs' allegations clearly fall short. The Complaint has no allegations even identifying any single member of PFJP or providing any details that might substantiate the conclusory claim that PFJP's members might be affected by Penn's production of documents. Indeed, the Complaint says nothing to suggest that any of PFJP's members may be affected by Penn's activities. PFJP tries to cover for this by pleading generally that it has members and that those members are pro-Palestine. Compl. ¶ 11 (describing PFJP as "a collective of faculty, students, staff, researchers, and graduate employees at the University of Pennsylvania who support Palestinian human rights and liberation from Israeli occupation."). And to the extent PFJP seeks excusal from its pleading requirements by suggesting that all of its members stand equally likely to be affected, that would "'stop[] short of the line between possibility and plausibility'" because the allegations of injury are "terse" and there is no "specific mention of any individual member's injury." *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Indeed, the Third Circuit has rejected similar group-level allegations of

injury, finding it insufficient when an organization pleaded that its members would be "'directly affected by the legislation at issue'" in that case.  *New Jersey Physicians, Inc.*, 653 F.3d at 241.

## II.    Plaintiffs' Constitutional Claims Fail Because Penn Is Not A State Actor And Plaintiffs Plead No Plausible Constitutional Injury

Plaintiffs' First and Fourteenth Amendment Claims under the U.S. Constitution and their claim under the Pennsylvania Constitution are implausible on the face of the Complaint and should be dismissed.  *See Iqbal*, 556 U.S. at 678 ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).  First, Plaintiffs have not adequately pled—and incorrectly argue they are not required to plead, Dkt. 21 at 4—that Penn is a state actor, as they must for all three claims.  Second, even assuming the Court could reach the constitutional claims, Plaintiffs have not plausibly alleged any action on Penn's part meeting the requirements for viable claims.

### A.    Plaintiffs Have Not Adequately Pled That Penn Is A State Actor

Plaintiffs allege that HEW's investigation into antisemitism at higher education institutions is causing a deprivation of their rights under the First and Fourteenth Amendments of the U.S. Constitution and under the Pennsylvania Constitution.  Compl. ¶¶ 127-139.  They elected to sue Penn for this supposed deprivation of their rights under the theory that Penn is "aiding and abetting" HEW's alleged violations by complying with an information request.  *Id.* ¶ 128.  This theory of liability fails, and thus so do Plaintiffs' constitutional claims, because the U.S. and Pennsylvania Constitutions protect individuals only from *state* interference in free speech and privacy, *see Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) ("Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State."); *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 620-21 (3d Cir. 1992) (Pennsylvania Constitution), and Penn is a private actor.

Plaintiffs incorrectly argue they need not prove state action because they "have no alternative avenues to vindicate" HEW's alleged violation of their rights. Dkt. 21 at 4. Not so. The case they rely upon, *United States v. American Telephone and Telegraph*, 551 F.2d 384, 393 (D.C. Cir. 1976), has no relevance to the state-actor question. In that case, the Department of Justice had sued, on national security grounds, to enjoin AT&T from complying with a congressional subpoena seeking records of the FBI's wiretap requests to AT&T. *American Tel.*, 551 F.2d at 385, 388. The D.C. Circuit remanded, directing Congress and the Department to negotiate given their competing constitutional interests. *Id.* at 394-95. The case did not involve any claim that a private party was violating constitutional rights, and Plaintiffs' reading of it is inconsistent with the ample case law dismissing lawsuits against private parties for lack of state action with no consideration of whether the plaintiffs have alternative avenues to sue. *See, e.g.*, *Rendell-Baker v. Kohn*, 457 U.S. 830, 839-43 (1982) (affirming dismissal for lack of state action where plaintiffs claimed violations of First, Fifth, and Fourteenth Amendment rights); *Max v. Republican Comm. of Lancaster Cnty.*, 587 F.3d 198, 200 (3d Cir. 2009); *Leshko v. Servis*, 423 F.3d 337, 340-41 (3d Cir. 2005); *Pik v. University of Pennsylvania*, 2010 WL 3933275, at *5 (E.D. Pa. Oct. 7, 2010). Nor is it correct that Plaintiffs' lack of "alternative avenues to vindicate their constitutional rights" (Dkt. 21 at 4), which they say without citation, allows the Court to sidestep the threshold state-action step.

To state a plausible constitutional claim against Penn, Plaintiffs would have to allege facts sufficient to show that (1) Penn "has exercised powers that are traditionally the exclusive prerogative of the state"; (2) that Penn "has acted with the help of or in concert with state officials"; or (3) that "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*,

589 F.3d 626, 646 (3d Cir. 2009) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d

Cir. 1995)). They have not done so. Plaintiffs' claims hinge entirely on their allegations that Penn

agreed to produce documents requested by HEW—neither a traditional state power nor one that

the state has sufficiently exercised control over to make it state action.

### 1.   Plaintiffs do not plausibly allege Penn is exercising powers that are traditionally the prerogative of the state.

Plaintiffs do not plausibly allege Penn is exercising powers that are traditionally the

prerogative of the state under the first state-action test. Nor can they. This test "imposes a

'rigorous standard' that is 'rarely … satisfied.'" *Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 164-

66 (3d Cir. 2001) (private school was not a state actor even though it provided the same services

to students who had difficulty completing public school that a state agency was required by law to

provide); *see also Rendell-Baker*, 457 U.S. at 842 ("That a private entity performs a function which

serves the public does not make its acts state action."). Courts in this circuit regularly find that

Penn (like other private universities) is not a state actor. *See, e.g., Karakozova v. Trustees of

University of Pennsylvania*, 2011 WL 1754468, at *5 (E.D. Pa. May 9, 2011) ("The University of

Pennsylvania is a private institution whose actions are not fairly attributable to the state and cannot

be sued under section 1983." (cleaned up)); *Pik*, 2010 WL 3933275, at *6 (dismissing plaintiff's

constitutional claims because "Penn's challenged actions are … not fairly attributable to the State"

(cleaned up)).[5]

Plaintiffs offer no reason to deviate from this settled consensus. Their Complaint says

strikingly little about Penn's conduct, focusing instead on larger (and irrelevant) issues plaguing

---

[5] The exception that proves the rule is *Fleck v. Trustees of University of Pennsylvania*, 995 F. Supp. 2d 390 (E.D. Pa. 2014), where the court concluded that the conduct of the Penn Police Department was state action because "Pennsylvania law endows the Penn Police Department with the plenary authority of a municipal police department in the patrol-zone territory, once the 'exclusive prerogative' of the City of Philadelphia." *Id.* at 402-03. None of Plaintiffs' allegations are close to the facts in *Fleck*.

the country and the world at large, Congress' actions, and the merits of a different lawsuit, *Yakoby v. Trustees of the University of Pennsylvania*, No. 2:23-cv-04789 (E.D. Pa.).  Compl. ¶¶ 16-18, 19-52, 56-58, 59-90.  As to Penn, Plaintiffs claim only briefly that Penn has produced documents in response to HEW's January 24, 2024 letter; that those documents might concern Plaintiffs' expressive activities and confidential disciplinary matters; and that Penn *could* have "refus[ed] compliance." *Id.* ¶¶ 53, 55, 119.

Those bare allegations are not enough to establish state action because producing documents to Congress is not an exercise of powers that are traditionally the prerogative of the state.  The involvement of governmental regulation or action alone does not convert private action into state action.  *See Blum v. Yaretsky*, 457 U.S. 991, 1011 (1982) (nursing homes were not performing exclusive state functions despite a state constitutional provision allowing the legislature to provide care for the needy); *Kach*, 589 F.3d at 647-48 (school security was not the exclusive province of the state even though state statute enabled targeted grants to schools to fund programs addressing school violence).  Courts likewise refuse to hold a private actor liable for alleged constitutional violations even when a private actor is complying with state-created statutes because that alone does not constitute the exercise of power traditionally reserved to the state.  *See Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 172 (3d Cir. 2004) (no state action where the defendant applied for plaintiff's involuntary hospital commitment under state law); *Vuyanich v. Smithton Borough*, 2022 WL 207608, at *4 (W.D. Pa. Jan. 24, 2022) (defendant tow truck subcontractor was not a state actor when it cleared vehicles "at the behest of law enforcement"); *see also Rendell-Baker*, 457 U.S. at 842 (reasoning "[t]hat a private entity performs a function which serves the public does not make its acts state action.").  Plaintiffs allege nothing to suggest

that Penn's production of documents in response to a congressional request meets the rigorous threshold for conduct that is traditionally the exclusive prerogative of the state.

### 2. Plaintiffs do not plausibly allege Penn is acting in concert with HEW or is a joint participant in HEW's activities.

Nor have Plaintiffs alleged enough to hold Penn liable on either of the two alternative grounds: "whether the private party has acted with the help of or in concert with state officials" or "whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach*, 589 F.3d at 646 (cleaned up). Under both tests, courts examine "whether the state has exercised control over the particular conduct that gave rise to the plaintiff's alleged constitutional deprivation" and whether the state has "exercised coercive power" such "'that the choice must in law be deemed that of the State.'" *See id.* at 648-49 (citation omitted). Plaintiffs cannot meet either test.

To start, the only conduct at issue here is Penn's production of documents to the government in aid of a congressional investigation, and in numerous cases, courts in this circuit have rejected efforts to convert into state action private entities' furnishing information to the government. In *Johnson v. TD Bank Nat'l Ass'n*, 2023 WL 2203572 (3d Cir. Feb. 24, 2023), the Third Circuit found that TD Bank's decision to provide information to the police in aid of a criminal investigation was not enough to render it a state actor. *Id.* at *1-2. In *Cooper v. Muldoon*, 2006 WL 1117870 (E.D. Pa. Apr. 26, 2006), another court in this district found that "[m]erely calling the police, furnishing information to the police, or communicating with a state official does not rise to the level of joint action necessary to transform a private entity into a state actor." *Id.* at *2. This Court should not depart from those well-reasoned conclusions. Finding that Penn's conduct here converted it into a state actor would threaten with constitutional litigation any private actor that complies with government investigations, which would cripple the vital function of

legislative investigation. *Watkins v. United States*, 354 U.S. 178, 187 (1957) ("It is unquestionably the duty of all citizens to cooperate with the Congress in its efforts to obtain the facts needed for intelligent legislative action.").

Aside from that, Plaintiffs never allege that the state has exercised control over Penn's actions. All they allege is that HEW requested information on activities related to certain viewpoints and that Penn is producing documents in response. Compl. ¶¶ 53, 55. But none of those allegations show that the government is "responsible for" Penn's production, which is "the specific conduct of which the [P]laintiff[s] complain[]." *Blum*, 457 U.S. at 1004. Indeed, Plaintiffs allege the exact opposite: That *Penn* chose "voluntary compliance" rather than "refusing compliance." Compl. ¶ 7. It is well settled that actions taken with "mere approval or acquiescence" of the government does not convert a challenged action into state action. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Instead, Plaintiffs would have to show "entanglement in a party's independent decision-making or … direct involvement in carrying out the decision itself" such that the court "can fairly say it was the state's choice, not the private actor's," *Missouri v. Biden*, 83 F.4th 350, 375 (5th Cir. 2023), and Plaintiffs' bare allegations that HEW requested certain information from Penn in no way establishes that HEW is controlling Penn's response, *see, e.g.*, *Rogalinski v. Meta Platforms, Inc.*, 2023 WL 7876519, at *1 (9th Cir. Nov. 16, 2023) (Meta's flagging false information in posts was not state action where plaintiff alleged the government "flagg[ed] problematic posts" for Meta but did not allege the government did so with "any threat").

Because Plaintiffs have not (and cannot) show state action, this Court should dismiss their constitutional claims with prejudice.

B.     **Plaintiffs Fail To State Plausible Claims Under The First And Fourteenth Amendments And The Pennsylvania Constitution**

Even if Penn were treated as a state actor, Plaintiffs' constitutional claims should be dismissed because they have failed to state claims on which relief can be granted.

1.     **Plaintiffs Fail to State a Plausible First Amendment Claim**

Plaintiffs' First Amendment claim hinges on conclusory assertions that Penn is engaging in viewpoint discrimination and retaliating against them, Compl. ¶¶ 131-133, but none of their allegations support that theory. They allege no retaliatory action, and nothing they allege plausibly suggests that Penn discriminated against them because of their views.

a)     **Plaintiffs fail to plausibly allege that Penn committed viewpoint discrimination.**

Plaintiffs do not plausibly allege that Penn committed viewpoint discrimination. Viewpoint discrimination requires that the defendant restrict speech in a manner that targets a specific viewpoint. *See, e.g.*, *Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993) (holding that a school district could not forbid only views on family issues and child rearing that came from a religious perspective); *Rosenberger v. Rector & Visitors of University of Virginia*, 515 U.S. 819 (1995) (finding that the university's decision to deny funds to a student organization that published a newspaper with Christian editorial viewpoints amounted to viewpoint discrimination); *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001) (finding viewpoint discrimination where public school allowed nonreligious groups to meet at the school but excluded a Christian club). Plaintiffs allege nothing of the sort. Instead, Plaintiffs claim that Penn and HEW engaged in viewpoint discrimination by "privileging, protecting and endorsing pro-Israeli speech in the Penn academic community over pro-Palestinian speech." Compl. ¶ 133. The opposite allegation is levied by the *Yakoby* plaintiffs, suggesting just how far-fetched Plaintiffs' theory is. Indeed, Plaintiffs acknowledge that even as Penn produces documents to

HEW, it is being accused of tolerating antisemitism because Penn has refused to stifle Plaintiffs' viewpoints. Compl. ¶¶ 59-84 (discussing *Yakoby*, No. 23-cv-04789). Regardless, the supposed conduct that is "discrimination" against Plaintiffs' viewpoint is the production of documents to HEW, Compl. ¶¶ 7, 55, 128, and it was HEW, not Penn, that identified the subject matter of the demands, *see id.* ¶¶ 7, 53. No other restriction is identified in Plaintiffs' Complaint.

### b) Plaintiffs fail to plausibly allege that Penn retaliated against them.

To plead a retaliation claim, Plaintiffs must allege: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Under any reasonable reading of the Complaint, Plaintiffs failed to plausibly allege that Penn's production to HEW is an act taken to deter their speech or an act that is causally connected to their speech.

Plaintiffs merely allege that Penn has chosen to comply with HEW's requests for information. Nothing in their Complaint supports an inference that Penn's compliance with HEW is an action directed toward them and their speech.[6] It is obvious from the face of their Complaint that Penn had no role in the drafting of the requests, and it is equally obvious that Penn's compliance is consistent with its history of complying with similar HEW requests. *See, e.g.*, Compl. ¶ 53 (alleging HEW "demand[ed] that [Penn] produce" the documents requested in its January 24, 2024 letter), ¶¶ 43-48 (alleging Penn's former president agreed to appear before HEW and testify). Moreover, Penn's production of documents in response to a congressional request is in no way the type of threat, coercion, or intimidation that would deter similarly situated

---

[6] Even on a motion to dismiss, the Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (cleaned up).

individuals from engaging in expressive conduct.  *Mirabella v. Villard*, 853 F.3d 641, 650-51 (3d Cir. 2017) (retaliatory conduct is a "threat, coercion, or intimidation" that "intimat[es] that punishment, sanction, or adverse regulatory action will follow" (quoting *McLaughlin v. Watson*, 271 F.3d 566, 573 (3d Cir. 2001))); *see also R.C. Maxwell Co. v. Borough of New Hope*, 735 F.2d 85, 88 (3d Cir. 1984) (no censorship where the town council requested third party to remove plaintiff's billboards, because the council could only pursue "civil or administrative proceedings" against the third party); *see also Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33 (2d Cir. 1983) (letters from state official asking stores not to carry objectionable board game not coercive).

Plaintiffs also cannot plausibly allege that their "'constitutionally protected conduct was a substantial or motivating factor' for" Penn's production of documents, i.e., "the retaliatory conduct." *Conard v. Pennsylvania State Police*, 902 F.3d 178 (3d Cir. 2018) (quoting *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016)).  Plaintiffs' theory—that Penn complied with the requests because "its trustees [were] off balance and frightened by the accusations of anti-Semitism," Compl. ¶ 7—refutes any suggestion that their expressive conduct was a motivating factor for Penn's production of documents.

### 2.    Plaintiffs Fail to State a Plausible Fourteenth Amendment Claim

The Fourteenth Amendment provides that "an individual has a constitutional right to privacy which protects 'the individual interest in avoiding disclosure of personal matters.'"  *Doe v. Delie*, 257 F.3d 309, 315 (3d Cir. 2001) (citation omitted).  To state a Fourteenth Amendment claim, Plaintiffs must make allegations concerning information over which they have a constitutionally protected privacy interest.  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Their allegations do not plausibly give rise to a claim for relief under the Fourteenth Amendment.

Plaintiffs do not have a cognizable federal constitutional right over the documents Plaintiffs suggest Penn is going to share—the findings of disciplinary processes, attendance at public events,

and public posts on Penn's social media, Compl. ¶¶ 53, 134-136.   In determining whether information is entitled to protection, the courts look "at whether it is within an individual's reasonable expectations of confidentiality." *Fraternal Order of Police v. City of Philadelphia*, 812 F.2d 105, 112-13 (3d Cir. 1987).   Recognizing that this is a stringent test, the Third Circuit has found three general types of information to warrant Fourteenth Amendment protection:   sexual information, medical information, and some financial information. *Malleus*, 641 F.3d at 564-65. In *Malleus*, the Third Circuit observed that the Fourteenth Amendment concerned itself with "intimate facts about oneself" and declined to find that the case implicated any cognizable privacy rights even though the plaintiff "may not have intended wide-dissemination of her opinion": "she volunteered it to others," and "[t]he information was voluntarily shared, non-intimate (it was not related to sexuality, medical records, or financial information), an opinion rather than fact, and about someone else." *Id.* at 564-65.   The same is true here.

### 3.      Plaintiffs Fail to State a Plausible Claim Under the Pennsylvania Constitution

Plaintiffs also fail to state a plausible claim that Penn disclosed any protected personal information in violation of the Pennsylvania Constitution.   The Supreme Court of Pennsylvania interprets the right of privacy under Article I, Section 1 "to contain at least two often overlapping interests:   the interest in avoiding disclosure of personal matters and the interest in having independence to make certain kinds of important decisions." *Allegheny Reproductive Health Ctr. v. Pennsylvania Dep't of Hum. Servs.*, 309 A.3d 808, 901 (Pa. 2024).

Plaintiffs allege that HEW's letter "request[ed] the disclosure of both faculty and student information by Penn which is confidential under the Pennsylvania Constitution, such as student disciplinary records and faculty personal communications and writings." Compl. ¶ 139.  Despite Plaintiffs' focus on HEW's request for the "findings and results" of disciplinary processes, Ex. 1

at 10; Compl. ¶ 53, 121, 139, they have not alleged facts to support an inference that any Plaintiff's confidential disciplinary records are being disclosed, as Plaintiffs are faculty and they allege only that *student* records are confidential, Compl. ¶ 120.[7]  In any event, none of the requests (including those relating to disciplinary results) even mention personal information of the kind the Supreme Court of Pennsylvania has recognized as requiring protection: "among other things, names, addresses, social security numbers, and telephone numbers." *Allegheny Reproductive Health*, 309 A.3d at 902-03.  Moreover, privacy protections extend only to "an individual's reasonable expectation that the information is of a personal nature," *City of Harrisburg v. Prince*, 288 A.3d 559, 575 (Pa. Commw. Ct. 2023) (citation omitted), and by Plaintiff's own brief description of the documents the House Committee supposedly requested, the information requested concerns public events, public statements, and public attendance, Compl. ¶ 53.  None of these qualify as information over which an individual may have a "reasonable expectation that the information is of a personal nature."  *City of Harrisburg v. Prince*, 288 A.3d at 575.  There is no reasonable expectation of privacy when the information is public.  *See id.*

## III.   Plaintiffs Fail To State A Breach Of Contract Claim

Last, Plaintiffs' breach of contract claim must be dismissed because Plaintiffs cannot meet their burden to "identify the specific benefits [a plaintiff] was allegedly promised, the means by which he was promised them, and the manner in which Defendants allegedly reneged on those promises." *Gundlach v. Reinstein*, 924 F. Supp. 684, 689 (E.D. Pa. 1996); *see also Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397, 401 (Pa. Super. Ct. 1992) (plaintiffs must allege "a specific

---

[7] Plaintiffs' cursory claim that Penn *Faculty* for Justice in Palestine is a "collective of faculty, students, staff, researchers, and graduate employees," Compl. ¶ 11,  is not a sufficient basis to infer that any Plaintiffs are students whose disciplinary records might be at issue.  Plaintiffs fail to allege any information about PFJP's members and their interest in this lawsuit.  *See supra* 11-13.

contractual undertaking which was breached, clearly and directly resulting in at least some demonstrable damages.").

Plaintiffs allege only that "Penn made specific promises and assertions to all Plaintiffs regarding diversity, freedom of speech, academic freedom, and good faith and fair dealing, in its contracts, student and faculty manuals, on its web sites, and in pronouncements and assertions in writing by officers."  Compl. ¶ 141.  No specific promises and assertions are actually identified, which dooms Plaintiffs' claims.

Moreover, many of these materials could not be considered contracts.  *See Smith v. University of Pennsylvania*, 534 F. Supp. 3d 463, 473 (E.D. Pa. 2021) (finding "informational materials, such as a university's website" are not part of a contract nor are they "statements of school policies or procedures.").[8]  Courts applying Pennsylvania law have routinely dismissed breach of contract claims against educational institutions where plaintiffs fail to identify the specific and definite contractual language that was breached.  *See e.g., David v. Neumann Univ.*, 177 F. Supp. 3d 920, 925 (E.D. Pa. 2016) (dismissing plaintiff's breach of contract claims because Plaintiff only made "general references to the handbook, syllabi, and protocols"); *Harris v. Saint Joseph's Univ.*, 2014 WL 1910242, at *3 (E.D. Pa. May 13, 2014) ("Conclusory allegations … with no clear averments as to what statement or regulations included in the Handbook …. were violated or breached, are insufficient to survive a motion to dismiss."); *Bradshaw v. Pennsylvania State Univ.*, 2011 WL 1288681, at *2 (E.D. Pa. Apr. 5, 2011) (dismissing claim where the plaintiff "d[id] not identify in the complaint the provisions of the handbook that the defendant allegedly

---

[8] Plaintiffs appear to provide additional information about the Faculty Handbook in their response to Penn's April 3, 2024 Letter.  Those supplementary allegations are inappropriate and cannot be considered for the purposes of Defendants' motion to dismiss.  *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 925 (E.D. Pa. 2016).  Even if the Court could consider these new claims, they do not identify any provision with an affirmative, enforceable commitment Penn made to them that could possibly be breached by Penn's compliance with HEW's request.  *See infra* 33-36.

breached"); *Anderson v. Haverford College*, 851 F. Supp. 179, 183 (E.D. Pa. 1994) (dismissing a professor's breach of contract claim because professor could not point to "specific provisions, policies, practices and procedures that [the College] allegedly violated"). The lack of specificity as to what supposed contracts Plaintiffs' claim is based upon is sufficient to dismiss Plaintiffs' claim.

Further, Plaintiffs' conclusory claims that Penn is producing documents to HEW is not enough to plead a breach of contract. *See* Compl. ¶ 143. A complaint "must point to specific failures on the part of a university" to comply with the specified contract terms. *Hart v. Univ. of Scranton*, 2012 WL 1057383, at *3 (M.D. Pa. Mar. 28, 2012). Plaintiffs here point to no provision of Penn's policies that promises not to share information about public academic events, such as the Palestine Writes Literature Festival, social media posts, scholarship, or protests that the congressional letter requests. *See* Compl. ¶¶ 53, 55 (alleging Penn is producing materials about a literature festival, scholarship, and events); *id.* ¶ 143 (alleging Penn's production is a breach of contract); s*ee also Kortyna v. Lafayette College*, 2017 WL 1134129, at *21 (E.D. Pa. Mar. 27, 2017) (dismissing breach of contract claims where professor "fail[ed] to offer plausible allegations" the college "breached the duties prescribed by the [Faculty] Handbook" and to establish that cited sections "gave rise to a duty owed him and/or that this duty was in fact breached"), *aff'd*, 726 F. App'x 934 (3d Cir. 2018). And Plaintiffs do not allege that they have been subject to Penn's disciplinary proceedings, so they do not allege production of information about disciplinary proceedings would be a breach of *their* individual contracts with Penn.

## OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Penn's opposition to Plaintiffs' preliminary injunction motion is based on the following Memorandum of Points and Authorities, the declaration of David Gringer, and Penn's arguments supporting its motion to dismiss, which Penn incorporates in full.

Because the Court should grant Penn's motion to dismiss, it need not reach Plaintiffs' preliminary injunction motion and should dismiss it as moot. *KDDI Glob. LLC v. Fisk Telecom LLC*, 2017 WL 5479512, at *7 (D.N.J. Nov. 15, 2017) (collecting cases dismissing as moot preliminary injunction motions where the Court granted motion to dismiss). But if the Court reaches the preliminary injunction motion, it should deny it because Plaintiffs have come nowhere close to satisfying their heavy burden. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). This "extraordinary remedy ... may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

Plaintiffs strike out on each of these factors.

## BACKGROUND

On January 24, 2024, HEW sent Penn a letter requesting information on Penn's response to allegations of antisemitic conduct on its campus. The letter demanded production of documents by February 7, 2024. *See* Ex. 1. By February 7, Penn publicly confirmed that it had begun producing documents to HEW. *See* Ex. 3. A full month later, Plaintiffs filed their Complaint on March 9, 2024. Dkt. 1. On April 3, 2024, Penn requested a pre-motion to dismiss conference outlining the fatal flaws in Plaintiffs' Complaint. Dkt. 19. Then, on April 6, 2024, Plaintiffs moved for a preliminary injunction claiming they were incurring irreparable harm from Penn's cooperation with HEW's information requests, Dkt. 20, and introducing new allegations, Dkts. 20-3; 20-1—all of which could and should have been alleged in their Complaint, and which plainly aimed to fix the deficiencies identified in Penn's letter.

## STANDARD OF REVIEW

Plaintiffs, as the movants for preliminary injunctive relief, "must demonstrate" (1) that they

"can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not)" and (2) that they are "more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017).  If these "most critical" and "gateway factors" are met, a court "then considers" (3) "the possibility of harm to other interested persons from the grant or denial of the injunction" and (4) "the public interest," "and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 176, 179 (citing *Delaware River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)).

## ARGUMENT

### I.   Plaintiffs Are Not Likely to Succeed on the Merits of Their Claims

#### A.   The Threshold Deficiencies of Plaintiffs' Complaint Preclude Preliminary Injunctive Relief

Plaintiffs cannot prove that they likely can win on the merits given the threshold deficiencies of their Complaint discussed above.  Plaintiffs "bear the burden to demonstrate a likelihood of success on the merits." *Reedy v. Borough of Collingswood*, 204 F. App'x 110, 115 (3d Cir. 2006).  Plaintiffs *sub silentio* try to address these flaws by introducing new factual contentions with their motion, such as Fakhreddine's experience being doxed by third parties well before HEW's January 24, 2024 information demands (and, thus, unrelated to any information Penn has or would share with HEW), and various excerpts of the Faculty Handbook that supposedly demonstrate Penn's contractual obligation to comply with anything in the Handbook. But the irrelevance of their new allegations (most of which are unsubstantiated) and Plaintiffs' failure to respond to Penn's dispositive arguments compel the conclusion that they have not satisfied their burden. *See EnVerve, Inc. v. Unger Meat Co.*, 779 F. Supp. 2d 840, 843 (N.D. Ill.

2011) ("failure to address the potentially dispositive argument[s] raised by [defendant] leads this Court to conclude that [plaintiff] has not established likelihood of success on the merits").

**Standing.**  Penn's standing arguments (*supra* 6-13) carry even greater weight here, since "at the preliminary injunction stage, allegations are not enough to support standing." *Doe v. Nat'l Bd. of Med. Examiners*, 199 F.3d 146, 153 (3d Cir. 1999).  "[T]he 'merits' on which plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (citation omitted).  Thus, the standing inquiry at the preliminary injunction stage is akin to what Plaintiffs would have to show at summary judgment, and Plaintiffs must be able to show that they would have standing "under the heightened standard for evaluating a motion for summary judgment." *Id.* at 912;  *see also Do No Harm v. Pfizer Inc.*, 96 F.4th 106, 114-15 (2d Cir. 2024) ("to establish standing on a motion for a preliminary injunction, 'a plaintiff cannot rest on such mere allegations as would be appropriate at the pleading stage but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true.'").  Here, Plaintiffs have provided no relevant evidence to establish that any harm to them is certainly impending.  Plaintiffs' new factual allegations (and Fakhreddine's affidavit) simply confirm that nothing Penn does is likely to injure Plaintiffs at all.  To the contrary, their allegations establish that the harms they predicate this suit on—a fear that third parties might dox them—began well before HEW's letter and have never had anything to do with Penn's actions (much less Penn's production of certain documents to HEW).  But regardless, Plaintiffs' lack of relevant evidence dooms their preliminary injunction motion, and their (insufficient) speculation—already too meager to survive a motion to dismiss—cannot make up for their unsubstantiated assertions.

Much the same is true for PFJP's standing.  Courts *require* identifying an association's members by name at the preliminary injunction stage, *see Do No Harm*, 96 F.4th at 114 (finding that *Summers* dictates that at the preliminary injunction stage, "a plaintiff association seeking to establish standing on the basis of injuries to its members [must] identify at least one injured member by name"), and Plaintiffs have not done so.

*State action.*  Plaintiffs' failure to address the arguments Penn raised in its pre-motion letter regarding the state action doctrine—which would be dispositive for Plaintiffs' constitutional claims (*supra* 13-18)—likewise shows that Plaintiffs have not satisfied their burden to show a likelihood of success on the merits.  Indeed, Plaintiffs' motion does not even cite—or try to distinguish—cases unambiguously holding that Penn is not a state actor, and they do not try to argue that Penn falls into any of the narrow exceptions to the state action doctrine.

**B.  Plaintiffs Cannot Establish that Their Constitutional Claims Would Likely Succeed**

**1.  Plaintiffs cannot show that Penn's production of documents to HEW restricts protected speech.**

Even assuming Plaintiffs could show state action (which they cannot), to prevail on their motion for a preliminary injunction, they must show that Penn's conduct that they seek to enjoin restricts their constitutionally protected expression.  *See Chamber of Com. for Greater Philadelphia v. City of Philadelphia*, 319 F. Supp. 3d 773, 782 (E.D. Pa. 2018) ("[I]n First Amendment cases … [t]he initial burden of proving that a law restricts protected speech lies with the challenger."), *vacated in part on other grounds, sub nom. Greater Philadelphia Chamber of Com. v. City of Philadelphia*, 949 F.3d 116 (3d Cir. 2020).  They cannot make this showing because any incidental burden on their speech is the result of third-party conduct and not Penn's.  Fakhreddine's affidavit makes this clear:  She states she has been subjected to hostility for her pro-Palestine activities by online harassers, by unnamed people on Penn's campus, and in statements

by members of Congress, *e.g.*, Dkt. 20-3 ¶¶ 10, 12, 18, 20, 26, which is the sole support Plaintiffs offer for their argument that they are "discourage[d] … from freely associating with Palestine advocacy," Pls. Mot. 5.  But because those burdens are coming from non-parties to this lawsuit, Plaintiffs cannot show that Penn's conduct—or what they seek here to enjoin—has (or will) burden any of the rights they allege are implicated.

Grasping for any First Amendment hook, Plaintiffs make two arguments based on inapposite law and incorrect facts.  First, they argue that "[t]he government" is "indirectly … through [Penn]," "engag[ing] in viewpoint discrimination" that would be unconstitutional if the government directly legislated that discrimination.  Pls. Mot. 4.  But Plaintiffs are suing to enjoin *Penn*'s conduct, not the government's conduct.  And their only legal basis for this theory is an out-of-circuit, vacated case on the unconstitutional conditions doctrine.  *See* Pls. Mot. 4-5 (citing *Arkansas Times LP v. Waldrip*, 988 F.3d 453, 460 (8th Cir. 2021), *reh'g en banc granted, opinion vacated* (June 10, 2021), *on reh'g en banc sub nom. Arkansas Times LP v. Waldrip as Tr. of Univ. of Arkansas Bd. of Trustees*, 37 F.4th 1386 (8th Cir. 2022)).  That doctrine, which limits "Congress' ability to place conditions on the receipt of funds" that infringe upon constitutionally protected speech, *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 59 (2006), is irrelevant to their claims.  Plaintiffs allege neither that Congress has made government funding to Penn contingent on Penn's production of documents, nor that Penn is a state actor conditioning benefits to Plaintiffs on restrictions to speech.

Second, Plaintiffs argue that Penn's cooperation with HEW's requests infringes on their rights of association by disclosing their organizational or political affiliations.  Pls. Mot. 5.  This is plainly wrong on the facts.  Contrary to Plaintiffs' suggestion (*see* Pls. Mot. 5), HEW has not requested the membership of groups, *see* Ex. 1 at 9-13—indeed, the Complaint does not even

allege HEW made such a request, *see* Compl. ¶ 53.  Because Plaintiffs' factual basis for their First Amendment claims is flawed (and they lack any evidence that supports their evolving guesswork), they have not shown any infringement on their expressive or associational rights.

> **2.      Plaintiffs still have not identified any constitutionally protected private information that Penn is producing.**

Plaintiffs' privacy claims presume a general, undefined, right to privacy that reaches all documents and emails belonging to Penn and held on Penn's servers.  No such right exists for Plaintiffs.  Plaintiffs cannot show that Penn's productions to HEW place a burden on any privacy rights protected under the U.S. or Pennsylvania constitutions, and thus have no chance of success on the merits of their privacy claims.

**Fourteenth Amendment.**  Plaintiffs' motion asserts a federal constitutional privacy right in information deemed confidential under an employee-employer handbook, such as information about disciplinary proceedings.  *See* Pls. Mot. 7-8.  Plaintiffs offer no support in constitutional law for such an expansive fundamental right under the Fourteenth Amendment.  Nor could they.  The Constitution shields "only that information which involves deeply rooted notions of fundamental personal interests derived from the Constitution."  *Doe v. Luzerne Cnty.,* 660 F.3d 169, 176 (3d Cir. 2011) (citing *Nunez v. Pachman*, 578 F.3d 228, 232 (3d Cir. 2009)); *Doe ex rel. Doe v. Boyertown Area Sch. Dist.*, 276 F. Supp. 3d 324, 383 (E.D. Pa. 2017) ("Generally, a fundamental right" is "such that 'neither liberty nor justice would exist if they were sacrificed.'" (citation omitted)), *aff'd*, 890 F.3d 1124 (3d Cir. 2018), and *aff'd*, 897 F.3d 518 (3d Cir. 2018).  Plaintiffs cannot succeed on the merits of a due process privacy claim by merely asserting that private parties agreed to keep information confidential, *see* Pls. Mot. 7-8, without even attempting to show that the information is protected under the Fourteenth Amendment.  *See Malleus*, 641 F.3d at 562, 565 (holding information provided by the plaintiff for a school board investigative report that the

plaintiff was told would remain confidential was not the type of "intimate or personal" information protected by the Fourteenth Amendment, and affirming motion to dismiss); *Gross v. Taylor*, 1997 WL 535872, at *13 (E.D. Pa. Aug. 5, 1997) (the fact that "a policy, code, or regulation [] deemed personnel files confidential" "alone would not create a constitutional privacy right").

**Pennsylvania Constitution.**   In support of their motion for preliminary injunction, Plaintiffs speculate that Penn is "producing documents *likely* to contain Plaintiffs' emails, addresses, names, and other personally identifiable information."  Pls. Mot. 3-4 (emphasis added). While such information can, in certain circumstances, be protected under the Pennsylvania constitution where an individual's interest in privacy outweighs the public interest in disclosure, *see Allegheny Reproductive Health*, 309 A.3d at 902 & n.112 (citing cases protecting information from disclosure under right to know laws); *Pennsylvania State Educ. Ass'n v. Commonwealth Dep't of Cmty. & Econ. Dev.*, 148 A.3d 142, 157-58 (2016) (protecting information from disclosure under Right to Know Law), Plaintiffs' argument fails at the gate because they have not presented any evidence that Penn is producing their "emails, addresses, names, and other personally identifiable information," Pls. Mot. 3-4.  Nor have Plaintiffs made any showing that any privacy interest would outweigh the "public benefit which would result from disclosure" of information to a congressional investigation, *Pennsylvania State Educ. Ass'n*, 148 A.3d at 154-55 (citation omitted); *see also Wakins v. United States*, 354 U.S. 178, 187 (1957), particularly where Penn is redacting sensitive information, including FERPA-protected information, Gringer Decl. ¶ 4—the only information Plaintiffs allege is protected from disclosure by law, Compl. ¶ 120.  *See Stenger v. Lehigh Valley Hosp. Ctr.*, 530 Pa. 426, 434-35 (Pa. 1992) ("While we respect [the right to avoid disclosure of personal matters], we are persuaded that this privacy interest is not offended by the anonymous nature of the disclosure permitted by the Superior Court.").

While Plaintiffs argue that Penn is producing "the results of" disciplinary proceedings, which Penn is allegedly required to keep confidential under the Faculty Handbook, Pls. Mot. 6, they still fail to allege (much less prove, using evidence) that their disciplinary records could be among the documents produced.  To the contrary, their motion only claims that they "may be referenced" in other people's disciplinary records because they are involved in public anti-Israel advocacy on campus and HEW seeks the findings and results of discipline relating to critiques of Israel or Zionism.  Pls. Mot. 10.  But Plaintiffs have not shown that they have a cognizable privacy interest in other people's disciplinary records; that such a privacy interest accrues if they are *mentioned* in those records; that those records would contain their private information, as opposed to information about their *public* activities; or that Penn will produce their unredacted private information.  Last, Plaintiffs' motion suggests that Penn is producing their social media posts, Pls. Mot. 7, but HEW requested "documents and communications relating to misconduct for social media posts," *id.*; Ex. 1 at 11-12, which facially is not a request for Plaintiffs' social media posts.[9]

### C.    Plaintiffs Cannot Establish that Their Breach of Contract Claim Would Likely Succeed

Attempting to bolster their Complaint, which does not identify any contract Penn purportedly breached, Plaintiffs newly claim in their motion for a preliminary injunction that Penn breached contractual obligations in the Faculty Handbook.  Even with this new argument, Plaintiffs still fail to identify specific contractual commitments that could conceivably constrain Penn's ability to cooperate with HEW's requests.

Plaintiffs contend that they "reasonably interpret" Penn's commitment to be bound to the entire 174-page Faculty Handbook because the Handbook makes statements about Penn's

---

[9] Even if the requests encompassed social media posts, the privacy rights analysis conducted in *Penncrest Sch. Dist. v. Cagle* would not apply because that analysis was limited to whether posts could be considered a public record under Pennsylvania's Right-to-Know Law.  293 A.3d 783, 786-93 (Pa. Commw. Ct. 2023).

"commitment" to open expression, nondiscrimination, and confidentiality of disciplinary proceedings. Pls. Mot. 8. As supposed evidence for their interpretation, Plaintiffs quote random phrases of the Handbook. But when these phrases are read in context with the surrounding text, as they must be, *see Engelhard Corp. v. N.L.R.B.*, 437 F.3d 374, 381 (3d Cir. 2006) (noting the "well established principles of contract construction-to read, if possible, all provisions of a contract together as a harmonious whole"), it is clear that many of the phrases have nothing to do with the issues raised by this lawsuit. Neither this lawsuit nor HEW's requests pertain to allegations of sexual misconduct, yet Plaintiffs argue that statements about the importance of confidentiality in Penn's Sexual Harassment, Sexual Violence, and Stalking Policy and Penn's Procedures for Resolving Complaints of Sexual Misconduct Against Staff demonstrate contractual undertakings supporting their claims. *Compare* Dkt. 20-1 ¶ 17 (excerpting phrase from pages 139 and 154 of the Handbook) *with* Ex. 4 at 138-139, 150-154. Such statements, which are inapplicable to persons in Plaintiffs' position, cannot establish an enforceable confidentiality obligation that Penn owes to Plaintiffs. *See Egli v. Strimel*, 2015 WL 5093048, at *5 (E.D. Pa. Aug. 28, 2015) (dismissing Plaintiff's breach of contract claims because there was "no express intention in the Agreement to benefit Plaintiff or individuals in Plaintiff's position."). Plaintiffs—who are faculty—also rely on statements from the Charter of the University *Student* Disciplinary System in claiming Penn's production to HEW breached a commitment of confidentiality to them. *See* Pls. Mot. 10 (citing Dkt. 20-1 ¶¶ 30-31 in arguing Penn is "contractually required to treat all disciplinary information as confidential"); Dkt. 20-1 ¶¶ 30-31 (excerpting phrases from pages 101 and 102 of the Handbook); Ex. 4 at 94-102 (incorporating Charter of University Student Disciplinary System).[10]

---

[10] To the extent there are any students in PFJP, the organization does not have standing to sue for any claims individual members may allege for breach of contract. *See supra* 11-13.

Elsewhere, Plaintiffs claim Penn's compliance breaches confidentiality provisions in Penn's Employee Records Policy because Penn "has not obtained or requested" consent from Plaintiffs to disclose their personnel files, which they claim is required by the policy.  Pls. Mot. 10-11 (citing Dkt. 20-1 ¶¶ 32-33).  Once again, they have no evidence that Penn would produce their personnel files, just speculation—speculation which is untethered to the actual HEW requests at issue.  The request Plaintiffs cite as seeking their personnel records, asks for documents and communications concerning misconduct and violations of university standards related to various events.  Pls. Mot. 10; Ex. 1 at 11.  They do not allege they have ever been disciplined or even investigated for misconduct, so they lack even bare allegations to support this conjecture that Penn will produce their personnel records without seeking their consent.

Plaintiffs also cannot show that Penn's cooperation breaches any of the Handbook provisions concerning open expression and academic freedom that they identify, which either do not pertain to obligations of Penn or do not express sufficiently definite contractual undertakings. *See David v. Neumann Univ.*, 187 F. Supp. 3d 554, 559-61 (E.D. Pa. 2016) (where a plaintiff "fail[s] to identify a specific contractual duty" "the Court is unable to look at the University's actions or inactions to determine whether it has in fact adhered to those contractual duties").  Much of the 174-page Faculty Handbook concerns the obligations of *faculty* and other Penn community members, not Penn's.  Yet, Plaintiffs make no attempt to identify specific undertakings Penn has made to them, and instead point to obligations of faculty, staff, and students.  *E.g., compare* Ex. 4 at 128 (stating Penn's "commitment to the principles of open expression extends to and includes the electronic information environment" in describing the responsibilities of "[e]ach person with access to the University's computing resources") *with* Dkt. 20-1 ¶ 15; *compare* Ex. 4 at 135 (stating that conditions for "faculty and staff" "acceptance of gifts, grants and contracts" include "[t]hat

there are no conditions attached … that would in any way jeopardize the University's commitment to the principles of academic freedom and nondiscrimination") *with* Dkt. 20-1 ¶ 16.  Penn cannot be bound by purported contract provisions that unambiguously express an obligation of other parties.  Plaintiffs also rely on purely aspirational language in the Handbook, such as statements that Penn "cherishes the concepts of freedom of thought, inquiry, speech, and lawful assembly," Dkt. 20-1 ¶ 26, which cannot create any contractual obligation.  *See David*, 187 F. Supp. 3d at 559-60 (determining that statements evincing school's general policy against harassment were not sufficiently definite to create an "affirmative, enforceable duty on the part of the University"); *Shaughnessy v. Duke Univ.*, 2020 WL 4227545, at *5 (M.D.N.C. July 23, 2020) (finding that the university's policy on academic freedom could not "be the basis of a breach of contract claim").  Accordingly, Plaintiffs fail to point to any provision that states a specific and definite duty on Penn's part corresponding to its general policy to encourage academic freedom, much less a duty that would constrain Penn's cooperation with the United States Congress.  Plaintiffs stand no chance of success on the merits of their breach of contract claim.

## II.    Plaintiffs Will Not Suffer Irreparable Harm Absent Injunctive Relief

For many of the same reasons they lack standing, Plaintiffs also cannot show that they will suffer irreparable harm absent injunctive relief.  Plaintiffs must show not just some "possibility" of harm, but "that irreparable injury is likely in the absence of an injunction."  *Winter*, 555 U.S. at 22.  This requires proving "a presently existing actual threat; (an injunction) may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." *Continental Group, Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (citation omitted).  The Third Circuit has instructed that "the risk of irreparable harm must not be speculative," and at the preliminary injunction stage it must be supported by "evidence."  *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000); *see id.* at 488 n.13 (collecting cases).

Plaintiffs are nowhere near satisfying their burden of showing irreparable harm.  Plaintiffs' theory of harm is inherently speculative.  Like their Complaint, Plaintiffs can only offer speculation as to what Penn might produce, how it might produce it, and what non-parties to this suit *might* do with the information.  *See supra* 6-10.  Their speculation is even more deficient at the preliminary injunction stage, where they must also furnish *evidence* of imminent and irreparable harm.  They have not done so.  They have not provided any evidence about what Penn might produce (or how it might do so), or anything else that might nudge their allegations away from vague speculation.

Their theory of irreparable harm further fails because they cannot show that injunctive relief will *prevent* any of the alleged harms they face.  Courts will refuse to find irreparable harm where the alleged relief would not be available even upon the issuance of a preliminary injunction. *See, e.g.*, *Porrata v. Pennsylvania Interscholastic Athletic Ass'n, Inc.*, 38 F. Supp. 3d 549, 586 (E.D. Pa. 2014) (finding that plaintiff "could not demonstrate irreparable harm because he could not demonstrate that Palisades H.S. would rehire him in any event").  And here, the only evidence Plaintiffs offer—Fakhreddine's affidavit—establishes that the alleged harms they have suffered began well before January 24, 2024, and are independent of anything Penn has done while complying with HEW's information request.  Fakhreddine contends that she has been targeted "because of [her] Palestine-related scholarship and advocacy at Penn," and she asserts that those attacks from "[p]ro-Israel entities" began in 2023—well before HEW sent its letter to Penn, and well before Penn decided to comply.  *See* Dkt. 20-3, ¶¶ 3, 7-8.  She alleges that the doxing she allegedly suffered was undertaken by unrelated third parties (like Canary Mission) as a result of her pro-Palestine advocacy—and not because of Penn's compliance with HEW's information request.  *See id.* ¶ 26.  And she alleges that all of this harm came from HEW's "publicly identifying

and targeting [her] at the December 5 hearing for [her] criticism of Israel and involvement in the literature festival." *Id.* ¶ 27.  But the negative attention directed at Fakhreddine for the festival happened well before any of the facts at issue in this case—preceding by months HEW's January 24, 2024 information request and Penn's decision to comply.

In all events, Plaintiffs' delay in moving for a preliminary injunction proves they are not at risk of imminent harm.  "A several month delay in bringing a preliminary injunction motion can undermine an asserted claim of imminent, irreparable harm." *Vita-Pure, Inc. v. Bhatia*, 2015 WL 1496396, at *4 (D.N.J. Apr. 1, 2015).  A months-long delay in moving for such extraordinary relief "knocks the bottom out of any claim of immediate and irreparable harm." *Smart Vent Products, Inc. v. Crawl Space Door Sys., Inc.*, 2016 WL 4408818, at *12 (D.N.J. Aug. 16, 2016) (citation omitted).  Such delay "compels denial of relief," particularly where "Plaintiff[s] offer[] no reason for sitting on [their] rights." *VisionQuest Nat'l, Ltd. v. City of Philadelphia*, 2019 WL 13426202, at *3 (E.D. Pa. June 21, 2019).  Plaintiffs concede that HEW sent its letter to Penn on January 24, 2024. Dkt. 20 at 3.  They waited well over a month—until March 9, 2024—to file suit.  Dkt. 1. They then waited an additional four weeks—until April 6, 2024, to move for a preliminary injunction. Dkt. 20.  Courts have found that even shorter periods than that undermine any assertion of irreparable or imminent harm.  *See, e.g.*, *New Dana Perfumes Corp. v. Disney Store, Inc.*, 131 F. Supp. 2d 616, 630 (M.D. Pa. 2001) (finding that because plaintiffs waited two months before moving for a preliminary injunction, "[their] failure to act sooner than [they] did undercuts the sense of urgency that typically accompanies a motion for preliminary injunctive relief").  This Court should do the same.

**III.    Injunctive Relief Will Harm Other Interested Persons and Is Not in the Public Interest**

Because Plaintiffs cannot meet the "gateway" factors of likelihood of success on the merits and likelihood of irreparable harm, their motion should be dismissed, and the Court need not balance the other two preliminary injunction factors.  *See Reilly*, 858 F.3d at 179.  However, even the remaining factors—whether the grant of injunctive relief will harm other interested persons and will be in the public interest—require the denial of Plaintiffs' motion.

This is, fundamentally, a lawsuit about the activities of HEW.  *See, e.g.*, Compl. ¶ 2 (alleging HEW "has eagerly assumed the role of the House Unamerican Activities Committee of old"), ¶ 36 (alleging "the House is committing two textbook violations of the First Amendment, retaliation, and viewpoint discrimination"), ¶ 42 (alleging HEW adopted "the unconstitutional IHRA standards"), ¶¶ 6, 49, 52 (alleging HEW members slandered Fakhreddine at a hearing), ¶¶ 7, 53-54 (alleging HEW seeks information about Fakhreddine's scholarly activities); ¶ 58 (alleging HEW is "penalizing and will soon criminalize certain First Amendment-protected speech its members detest"); *see also* Pls. Mot. 2 (decrying HEW's "obvious and egregious viewpoint discrimination").   However, Plaintiffs cannot enlist a federal court to decide their claims challenging HEW's investigation of antisemitism on university campuses and requests for information from Penn to further that investigation.  *See Meadows v. Pelosi*, 639 F. Supp. 3d 62, 68-69 (D.D.C. 2022) (the Constitution's Speech and Debate Clause precludes subject-matter jurisdiction for claims challenging legislative acts).  They have thus sued Penn seeking to obtain the same outcome as if they sued HEW – obstructing the activities they deem "McCarthyesque." Compl. ¶ 41;  Dkt. 21 at 4 (arguing Plaintiffs can sue Penn for "aiding and abetting" HEW's "constitutional violations" as they "have no alternative avenues to vindicate" their rights).

As a result, HEW is an interested party that would be harmed by an injunction because it would be prevented from obtaining information pertaining to its investigation that Penn would otherwise produce.  Penn would also be harmed because it is subject to numerous governmental regulators and oversight bodies and granting Plaintiffs' injunction would be precedent for anyone to sue Penn whenever it cooperates with governmental requests.

Finally, there is no public interest served by a federal court preventing an employer from cooperating with a congressional investigation because the employer's employees disagree with the premise of the investigation. *See Watkins*, 354 U.S. at 187 ("It is unquestionably the duty of all citizens to cooperate with the Congress in its efforts to obtain the facts needed for intelligent legislative action.").  That is even more true where, as here, the plaintiffs' claims call upon the Court to determine that a congressional committee is violating the Constitution by using investigatory tools at its disposal, based on plaintiffs' belief that those legislative activities are driven by unconstitutional motives.  *See* Compl. ¶ 40 (alleging the information request "serves no legitimate congressional purpose"); Pls. Mot. 15 (arguing their motions should be granted because "the public has a strong interest in preventing Congress from using private employers, like Defendant, as a shield behind which it commits egregious civil rights violations").  None of the preliminary injunction factors favor Plaintiffs' motion and the Court should deny it.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice and Plaintiffs' Motion for a Preliminary Injunction should be denied.

Dated:  May 7, 2024

Respectfully submitted,

*/s/ David Gringer*

David Gringer (*pro hac vice*)
Alan Schoenfeld (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8864
Facsimile: (212) 230-8888
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Seth P. Waxman (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
seth.waxman@wilmerhale.com

Sean V. Burke
Jason G. Canavan
Office of General Counsel
University of Pennsylvania
FMC Tower at Cira Centre South
2929 Walnut Street, Suite 400
Philadelphia, PA 19104-5099
Telephone: (215) 746-5254
Facsimile: (215) 746-5222

*Attorneys for Defendant University of
Pennsylvania*