# Exhibit 4

# TABLE OF CONTENTS

Faculty Handbook ........................................................... 3

  I. University Structure ................................................ 3

    I.A. Introduction ................................................... 3

    I.B. The Trustees .................................................. 3

    I.C. The Central Administration ............................. 4

    I.D. The Faculties and the Schools ........................ 5

    I.E. General Provisions Concerning a Faculty ............. 6

    I.F. Organization and Responsibilities of Graduate Groups ........ 6

    I.G. Policies Concerning Academic and Administrative Officers ........ 7

    I.H. The University Council, the Faculty Senate, and University Committees ........ 12

    I.I. Academic Planning and Budget Committee ........... 15

    I.J. The Ombuds .................................................. 16

    I.K. Equal Opportunity and Affirmative Action ........... 16

  II. Faculty Policies and Procedures ............................ 17

    II.A. Academic Freedom and Responsibility ............... 17

    II.B. Structure of the Academic Staff ..................... 17

    II.C. Tenure System at the University of Pennsylvania ........... 33

    II.D. Appointments and Promotions ......................... 35

    II.E. Terms and Conditions of Faculty Appointments ........... 38

  III. Policies and Procedures Concerning Faculty Research ........... 59

    III.A. Guidelines for the Conduct of Sponsored Research ........ 59

    III.B. Procedures Regarding Misconduct in Research ........... 61

    III.C. Procedures Regarding Misconduct in Research for Non-faculty Members of the Research Community ........ 64

    III.D. Policy Relating to Copyrights and Commitment of Effort for Faculty ........ 67

    III.E. Patent and Tangible Research Property Policies and Procedures ........ 68

    III.F. Policy on Conflicts of Interest Related to Research ........... 79

    III.G. Consulting and Outside Activities Policies and Procedures ........ 84

    III.H. Guidelines for Student Protection and Student Access to Information Regarding Sources of Financial Support ........ 87

    III.I. Policy Concerning the Exclusion of Foreign Nationals from Specific Research Areas ........ 87

    III.J. Guidelines for Research in the Community ........... 87

    III.K. Human Research Protection Program ............... 88

    III.L. Policy Regarding Human Subject Research in the Sociobehavioral Sciences ........ 89

    III.M. Standard Operating Procedures and Policies of the University of Pennsylvania Institutional Animal Care and Use Committee (IACUC) ........ 91

  IV. Procedures Regarding Admission and Instruction of Students ........ 91

    IV.A. Guidelines for Admissions Policies and Procedures ........ 91

    IV.B. Code of Academic Integrity ......................... 93

    IV.C. Charter of the University Student Disciplinary System ........ 94

    IV.D Faculty Authority to Assign Grades and Academic Integrity ........ 106

    IV.E. School Policies and Practices ....................... 107

    IV.F. Rules Governing Final Examinations ............... 107

    IV.G. Reporting of Final Grades ........................... 107

    IV.H. Policy on Secular and Religious Holidays ........... 108

    IV.I. Guidelines for Addressing Academic Issues of Students with Disabilities ........ 108

    IV.J. Policy on the Confidentiality of Student Records ........ 110

  V. Policies Related to Information ............................... 113

    V.A. Guidelines on Open Expression ....................... 113

    V.B. Confidentiality of Employee Records ............... 116

    V.C. Confidentiality of Health Information under HIPAA ........ 118

    V.D. Closed Circuit Television Monitoring and Recording of Public Areas for Safety and Security Purposes ........ 119

    V.E. Relationships Between Members of the University Community and Intelligence Organizations ........ 121

    V.F. Photocopying for Educational Use ................... 123

    V.G. Protocols for the University Archives and Records Center ........ 125

    V.H. Policy on Acceptable Use of Electronic Resources ........ 127

    V.I. Policy on Privacy in the Electronic Environment ........ 130

    V.J. Policy on Security of Electronic Protected Health Information (ePHI) ........ 132

    V.K. Information Systems Security Incident Response Policy ........ 133

    V.L. Policy on Unauthorized Copying of Copyrighted Media ........ 133

    V.M. Confiscation of Publications ......................... 133

    V.N. Policy on Computer Disconnection from PennNet ........ 133

  VI. Other Policies ................................................... 134

    VI.A. Use of University Name Policy ....................... 135

    VI.B. Acceptance of Gifts, Grants and Contracts ........ 135

    VI.C. Acceptance of Conditional Gifts ..................... 136

    VI.D. Gift Policy ................................................. 136

    VI.E-F. Sexual Misconduct Policy, Resource Offices and Complaint Procedures ........ 136

creed, national or ethnic origin, citizenship status, age, disability, veteran status or any other legally protected class status in the administration of its admissions, financial aid, educational or athletic programs, or other University-administered programs or in its employment practices. Questions or complaints regarding this policy should be directed to the Executive Director of the Office of Affirmative Action and Equal Opportunity Programs, Sansom Place East, 3600 Chestnut Street, Suite 228, Philadelphia, PA 19104-6106; or (215) 898-6993 (Voice) or (215) 898-7803 (TDD).

## I.K.2. Affirmative Action Office

The Office of Affirmative Action exists organizationally under the Office of the President. It is headed by the Director of Affirmative Action and is responsible for the development and functioning of the University's Affirmative Action Program and for providing a formal liaison between the federal, state, and city compliance agencies and the University. The responsibilities include coordinating affirmative action implementation, programs for the handicapped, and overseeing the mechanism for resolving non-academic employee grievances as they relate to equal opportunity and affirmative action.

# II. Faculty Policies and Procedures

- II.A. Academic Freedom and Responsibility (p. 17)
- II.B. Structure of the Academic Staff (p. 17)
- II.C. Tenure System at the University of Pennsylvania (p. 33)
- II.D. Appointments and Promotions (p. 35)
- II.E. Terms and Conditions of Faculty Appointments (p. 38)

# II.A. Academic Freedom and Responsibility

*(Source: Resolution of the Executive Board of Trustees, February 13, 1953; revised, Statutes of the Trustees, Article 10, June 17, 1983; revised as* Article 11, November 2, 2001 (https://secretary.upenn.edu/trustees-governance/statutes-trustees/#eleven)*; revised, Office of the Provost, November 21, 2022)*

The University recognizes the importance of a system of tenure for faculty members as the preeminent means of fostering and protecting academic freedom in teaching and in scholarly inquiry.

There shall be a Senate Committee on Academic Freedom and Responsibility of ten members, consisting of the Faculty Senate Chair-Elect and nine members of the Faculty Senate, three of whom are selected each year in accordance with the Rules of the Senate. This committee shall advise and consult with each faculty's Committee on Academic Freedom and Responsibility, and with administrative officers, on the establishment of appropriate procedures to be followed in the event of a claim of violation of academic freedom or responsibility. At the beginning of each year, the Senate Committee on Academic Freedom and Responsibility shall distribute the "Procedural Principles for Handling Complaints Concerning Academic Freedom and Responsibility" to the members of each faculty's Committee on Academic Freedom and Responsibility. The Committee shall have power to make investigations, reports, and recommendations on any matter relating to academic freedom and responsibility within the University. The Committee shall be governed in its responsibilities and procedures by rules established by the Faculty Senate.

Each faculty shall have a standing Committee on Academic Freedom and Responsibility that shall be elected annually. Each faculty's Committee on Academic Freedom and Responsibility shall, subject to review by the faculty, and to the extent provided in the relevant procedures, including the Procedures Governing Sanctions Taken Against Members of the Faculty adopted on June 20, 1997, and as they may be hereafter amended, represent the faculty in all proceedings that involve temporary exclusion of or imposition of a major sanction on a faculty member; suspension or termination of the appointment of a faculty member, some matters arising from financial exigency proceedings, or other questions concerning an individual faculty member's claim of violation of their academic freedom. The committee shall have power to make investigations, reports, and recommendations on any matter relating to academic freedom and responsibility within the school that may affect one or more faculty members.

Each faculty's Committee on Academic Freedom and Responsibility shall consist of not less than three members. The faculty shall also elect one or more alternate members to serve in the event of the resignation or disqualification of a Committee member. A faculty's Committee on Academic Freedom and Responsibility shall not contain department chairs or administrators. Exceptions, if necessary in small schools, should be allowed with the approval of the Senate Committee on Academic Freedom and Responsibility. Most members of a faculty's committee should be tenured faculty. Such committees shall be elected annually, and in accordance with the bylaws of a faculty, by those faculty members who are members of the Standing Faculty. Elections shall be held not later than the beginning of the academic year. The dean shall report to the Provost, not later than October 15 of each year, giving the names of the members of the faculty Committee on Academic Freedom and Responsibility that is currently in existence. Each faculty Committee on Academic Freedom and Responsibility shall elect its own chair.

It is the policy of the University of Pennsylvania to maintain and encourage freedom of inquiry, discourse, teaching, research, and publication and to protect any member of the academic staff against influences, from within or without the University, which would restrict a member of the academic staff in the exercise of these freedoms in their area of scholarly interest. The teacher is entitled to freedom in research and in the publication of results, subject to the adequate performance of their other academic duties, and to the institutional policies and procedures as set forth in the research policies of the University. Research for pecuniary return should be based upon an understanding with the authorities of the institution.

The teacher is entitled to freedom in the classroom in discussing their subject. The teacher is a member of a learned profession and of an educational institution. When speaking or writing as an individual, the teacher should be free from institutional censorship or discipline, but should note that a special position in the community imposes special obligations. As a person of learning and a member of an educational institution, the teacher should remember that the public may judge the profession and the institution by their utterances. Hence the teacher should at all times show respect for the opinions of others, and should indicate when they are not speaking for the institution.

# II.B. Structure of the Academic Staff

## II.B.1. Standing Faculty

*(Source: Standing Resolution of the Trustees, June 4, 1976; revised, September 9, 1983 and Statutes of the Trustees, Article 9, 1983; revised as Article 10, November 2, 2001 (https://secretary.upenn.edu/trustees-*

In the Schools of Nursing, Medicine and Dental Medicine, the professional careers of Clinical Associates may be in University-owned clinical practices.

**10. Senior Fellow.** A Senior Fellow of the University is a distinguished scholar who holds an appointment outside the Standing Faculty at the University for teaching or research, for a limited period of time.

## II.B.5. Postdoctoral Trainees

*(Source: Office of the Provost, Almanac, May 7, 2002; revised, Almanac, September 7, 2004; revised,* Almanac, January 15, 2008 (https:// almanac.upenn.edu/archive/volumes/v54/n17/policy.html))

The title of Postdoctoral Trainee is accorded to individuals holding the degree of Ph.D, M.D. or the equivalent, who are engaged in a temporary and defined period of mentored advanced training to enhance their professional skills and research independence needed to pursue their chosen career path. An individual who has been designated as a Postdoctoral Trainee by their school receives training conducted in an apprenticeship mode under the supervision of an established faculty member who serves as a mentor. As dictated by the nature of the program, the trainee may be undertaking scholarship, research, service, and teaching activities, all of which provide training essential for career development.

There are three categories of postdoctoral trainees, based upon funding source: postdoctoral researcher (supported from a research grant), NRSA-postdoctoral fellow (supported by an individual or institutional National Research Service Award), and postdoctoral fellow (supported by a private foundation, non-profit charitable organization, or other source). Funding sources may have their own guidelines governing participation in their programs. In instances where these guidelines differ from University policy, the guidelines of the funding source take precedence.

Postdoctoral appointments are for one year, and may be renewed annually based on satisfactory performance and availability of funding. Under current University policy, no person may be a Postdoctoral Trainee for more than five years.

A complete description of the University's Postdoctoral Trainee Policy, which covers appointment and resignation, benefits and leaves, obligations and responsibilities, and training, may be found at the following link: http://www.upenn.edu/almanac/volumes/v54/n17/policy.html

## II.B.6. Staff Appointments of Graduate and Professional Students

The following appointments are limited to persons registered for full time study in the graduate or professional programs of the University of Pennsylvania. Service-related appointments are for one year or less; however, they may be renewed. Service-related appointments cannot require more than twenty hours of service per week. All teaching assistants, teaching fellows, research assistants and research fellows must receive letters of appointment that state the length of the appointment, the level of funding, and the services expected.

### Teaching Assistant

A teaching assistant teaches or guides students under the direction of a faculty member. The teaching assignment is not required of all graduate students in the degree program.

### Teaching Fellow

A teaching fellow teaches or guides students under the direction of a faculty member. The teaching assignment is directly related to the area in which the teaching fellow's degree is to be conferred and equivalent teaching (with respect to duration and the nature of the assignment) is required of all candidates as a condition for receiving such a degree.

### Research Assistant

A research assistant aids the research of an investigator or a member of the faculty.

### Research Fellow

A research fellow is appointed for research under the direction of a faculty member whose research is directly related to the area in which the fellow's degree is to be conferred and in which equivalent research is required of all candidates as a condition for receiving such a degree.

### Pre-doctoral Trainee

A pre-doctoral trainee receives a fellowship that is paid from external grants but does not require service of the student for the term of the appointment.

### Educational Fellow

An educational fellow receives a fellowship that is paid from University of Pennsylvania funds, such as a dean's account or the University Fellowship Fund, and requires no service of the student for the term of the appointment.

## II.B.7. Emeritus Faculty

Emeritus status is conferred upon Professors and Associate Professors in the Standing Faculty and upon Standing Faculty—Clinician-Educators at the time of their retirement. Retiring faculty members have the option of using or not using the modifier "Emeritus" or maintaining their "Professor" title. The same rights and restrictions to being retired apply. (See also section on Retirement (p. 44), which provides information on faculty transition programs, continuing University benefits in retirement and the rights and privileges of retired faculty members.)

# II.C. Tenure System at the University of Pennsylvania

## II.C.1. Purpose of the Tenure System

The protection of the academic freedom of individual teachers and scholars is the instrument by which society at large is protected from hindrances to the search for knowledge and from limits on the dissemination of knowledge. The statutes of the University hold that a system of tenure for faculty members is the preeminent means of fostering and protecting academic freedom of the faculty in teaching and in scholarly inquiry.

The tenure system consists of rules and procedures that establish an essentially self-regulated body of scholars enjoying the continuity of existence and economic security within which academic freedom is both fostered and protected. The protections of academic freedom are extended to all members of the faculty during their terms of appointment. The rights and privileges embodied in the tenure system are extended to all members of the Standing Faculty during their terms of appointment. Certain of these rights and privileges are also extended to members of the Associated Faculty during their terms of appointment.

# Academic Dishonesty Definitions

Activities that have the effect or intention of interfering with education, pursuit of knowledge, or fair evaluation of a student's performance are prohibited. Examples of such activities include, but are not limited, to the following definitions:[1]

1. Cheating: using or attempting to use unauthorized assistance, material, or study aids in examinations or other academic work or preventing, or attempting to prevent, another from using authorized assistance, material, or study aids. Examples: using a "cheat sheet" in a quiz or exam, altering a graded exam and resubmitting it for a better grade.
2. Plagiarism: using the ideas, data, or language of another without specific or proper acknowledgment. *Examples:* copying another person's paper, article, or computer work and submitting it for an assignment; cloning someone else's ideas without attribution; failing to use quotation marks where appropriate.
3. Fabrication: submitting contrived or altered information in any academic exercise. *Examples:* making up data for an experiment, fudging data, citing nonexistent articles, contriving sources.
4. Multiple submission: submitting, without prior permission, any work submitted to fulfill another academic requirement.
5. Misrepresentation of academic records: misrepresenting or tampering with or attempting to tamper with any portion of a student's transcripts or academic record, either before or after coming to the University of Pennsylvania. *Examples:* forging a change of grade slip, tampering with computer records, falsifying academic information on one's resume.
6. Facilitating academic dishonesty: knowingly helping or attempting to help another violate any provision of the Code. *Example:* working together on a take-home exam.
7. Unfair advantage: attempting to gain unauthorized advantage over fellow students in an academic exercise. *Examples:* gaining or providing unauthorized access to examination materials, obstructing or interfering with another student's efforts in an academic exercise, lying about a need for an extension for an exam or paper, continuing to write even when time is up during an exam, destroying or keeping library materials for one's own use.

[1]  If a student is unsure whether his/her action(s) constitute a violation of the Code of Academic Integrity, then it is that student's responsibility to consult with the instructor to clarify any ambiguities.

# IV.C. Charter of the University Student Disciplinary System

*(Source: Office of the Provost, Almanac, December 2, 1980; revised, Almanac, September 4, 1984; revised, Almanac, May 26, 1992; revised, Almanac, September 10, 1996; revised,* Almanac, April 27, 2010 *(https://almanac.upenn.edu/archive/volumes/v56/n31/senate.html))*

## Preamble

In response to increasing concern about sexual assault and its consequences, the U.S. Department of Education, Office for Civil Rights (OCR) issued a new "guidance" document concerning compliance with Title IX of the Education Amendments of 1972. Title IX prohibits discrimination on the basis of sex in educational programs, including sexual misconduct. In this context, the Office of Student Conduct and

the Office of the General Counsel, working closely with other University student affairs professionals, prepared amendments to the Charter of the Student Disciplinary System. As required by the Charter, the amendments have been approved by the Council of Deans, the Faculty Senate and the Provost and are in effect.

*Andrew N. Binns, Vice Provost for Education*
*Susan Herron, Director, Office of Student Conduct*

**Changes**

The significant points of OCR's guidance include the following:

- Once a school knows or reasonably should know of possible sexual misconduct, it must take immediate and appropriate action to investigate or otherwise determine what occurred.
- If sexual misconduct has occurred, a school must take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects, whether or not the sexual violence is the subject of criminal investigation.
- A school must take steps to protect the complainant as necessary, including interim steps taken prior to the final outcome of the investigation.
- A school must provide a procedure for students to file complaints of sex discrimination, including complaints of sexual misconduct. These procedures must include an equal opportunity for both parties to present witnesses and other evidence and the same appeal rights.
- A school's procedures must use the preponderance of the evidence standard to resolve complaints of sexual misconduct. [1]

With the guidance in mind, we developed some special procedures for handling sexual misconduct cases and added a section in the Charter describing these. For the full text of these amendments, please refer to Section II.J. of the amended Charter. The amendments also include other minor clean-up revisions, such as correction of scrivener's errors.

[1] U.S. Department of Education, Office for Civil Rights, Dear Colleague Letter: Sexual Violence, Background, Summary and Fast Facts, April 4, 2011

Introduction

The Charter of the Student Disciplinary System sets forth the procedures under which alleged violations of the University's Code of Student Conduct, Code of Academic Integrity, and other policies, rules, and regulations are resolved.

The Code of Student Conduct sets forth the responsibility of all students at the University of Pennsylvania to exhibit responsible behavior regardless of time or place. This responsibility includes, but is not limited to, the obligation to comply with all provisions of the Code of Student Conduct; with all other policies and regulations of the University, its schools, and its departments; and with local, state, and federal laws.

The Code of Academic Integrity, and similar codes adopted by some of the University's schools, set forth the standards of integrity and honesty that should be adhered to in all student academic activities at the University of Pennsylvania.

Violations of the Code of Academic Integrity or school regulations are also violations of the University's Code of Student Conduct. Further, violations of local, state, and federal laws may be violations of the Code of Student Conduct. Therefore, throughout the Charter references to

violation(s) or alleged violation(s) of the Code of Student Conduct include violations of these other policies and laws.

The University disciplinary process at Penn may involve the following stages:

- Bringing a complaint to the Office of Student Conduct
- Resolving a complaint by mediation
- Investigating a complaint
- Filing charges by the University against a student
- Resolving charges by voluntary agreement to sanctions
- Resolving charges by disciplinary hearing
- Appealing the decision of a hearing panel
- Imposing sanctions on a student
- Fulfilling sanctions imposed by the University

Under the University's Student Disciplinary System, charges are brought on behalf of the University, not on behalf of the complainant(s) who brought the matter to the Office of Student Conduct (OSC) or the party(ies) who may have been directly or indirectly harmed by the alleged violation of University regulations. Therefore, complainants who wish to maintain greater control over the investigation and resolution of their complaints, such as is sometimes appropriate in cases of sexual offenses or in cases involving serious cultural or communicative differences, or those who wish merely to create a record of their complaint without necessarily beginning a formal disciplinary process, may wish to bring their complaint to other University resource offices, particularly the Office of the Ombudsman, which is equipped to handle cases in this manner. Such offices may, when appropriate and helpful in an individual case, consult with relevant campus communities or other resource offices in the process of investigating and resolving a complaint and are able to work closely with both complainants and respondents in resolving such matters. If such efforts fail to arrive at a satisfactory resolution, the complainant still has the option of bringing a complaint to the OSC.

Through the University Honor Council, students play a major role in the Student Disciplinary System by advising the Director of the Office of Student Conduct and the Provost on matters of policy and the operation of the System, and by sitting as members of disciplinary hearing panels. Students also serve as advisors and mediators within the System.

The System places great emphasis on the mediation of disputes, as is appropriate in a University.

# IV.C.1. The Student Disciplinary System
## A. Statement of Purpose

The purpose of the Student Disciplinary System is to further the educational mission of the University of Pennsylvania by providing a fair and effective mechanism for investigating and resolving disputes involving students and alleged violations by students of the University's rules, regulations, and policies.

## B. Jurisdiction of the Student Disciplinary System

1. Through the Office of Student Conduct (OSC), the Student Disciplinary System handles complaints from members of the University community— trustees, faculty, staff or registered students —about alleged violations of the Code of Student Conduct, the Code of Academic Integrity, or other University policies.

2. Except as provided below, the Student Disciplinary System has jurisdiction in all disciplinary matters arising under the regulations of the University against registered students, whether they are undergraduates, graduate or professional students, or others, including students who are on unexpired leaves of absence. Approved or unapproved absence from the University is not a bar to the conduct or completion of disciplinary proceedings under this Charter.

3. In general, a student is any individual who has been admitted, matriculated, enrolled, or registered in any academic program or other educational activity provided by the Trustees of the University of Pennsylvania.

4. The Student Disciplinary System does not handle complaints against graduate and professional students when such cases lie within the jurisdiction of a hearing board or other disciplinary body established by the school of the University in which the student is enrolled. When such a school-based disciplinary procedure exists, it should be the recourse of first resort for the resolution of an alleged violation of University or school regulations, unless the OSC decides, in consultation with the Provost, that it is appropriate in light of the circumstances for the Student Disciplinary System to handle the matter. Schools with such procedures are encouraged to refer disciplinary matters (excluding academic integrity matters) to the University Mediation Program whenever appropriate. When an alleged violation of University regulations by a graduate or professional student is not within the jurisdiction of a disciplinary system established by the student's school, the Student Disciplinary System shall have jurisdiction over the matter.

5. The Student Disciplinary System does not handle alleged violations of the University's parking regulations.

6. Alleged violations of the University's Residential Living policies and contracts are ordinarily handled under the procedures of the Office of College Houses and Academic Services (CHAS) but, if serious enough to warrant sanctions beyond those which the CHAS is authorized to impose, may be referred by the Director of CHAS to the Office of Student Conduct. The fact that proceedings have been held and sanctions imposed under CHAS policies does not preclude proceedings under this charter.

7. The Director of the Office of Student Conduct decides all questions of jurisdiction of the Student Disciplinary System arising under this Charter, consulting with the Provost (or designee) and with the University's General Counsel when necessary. When appropriate, the Office of Student Conduct may refer a complaint to another University office or disciplinary process.

## C. General Principles of the Disciplinary System

1. The University's Student Disciplinary System is not a legal system, and University disciplinary proceedings are not civil or criminal litigation. Thus, they operate under different rules, standards, and procedures, and seek to achieve ends different from criminal or civil proceedings.

2. Any member of the University community—trustees, faculty, staff or registered students—may bring a complaint about student conduct or academic integrity to the attention of the Office of Student Conduct. Doing so in no way limits a complainant(s)'s rights or obligations to bring such matters to the attention of other University offices, officers, or resources, including the Office of the Ombudsman and appropriate deans, or to seek recourse outside the University through civil or criminal legal proceedings.

3. In all cases, the University reserves the right to determine how to process a disciplinary complaint. Once a complaint is brought to the

attention of the Office of Student Conduct, the OSC, on behalf of the University, will decide how the complaint will be handled, including whether disciplinary charges should be brought against a student.

4. It is expected that most matters brought to the OSC can and should be resolved through mediation and will not result in charges or disciplinary hearings. However, because of their seriousness within an academic community, alleged violations of the Code of Academic Integrity will not be referred for mediation. Thus, except in academic integrity matters and matters that warrant treatment as serious violations of the Code of Student Conduct or other University policies, the initial response by the OSC may be to refer the complainant and respondent to the University's mediation program. Only if mediation fails or is inappropriate will the OSC begin the more formal disciplinary processes outlined in this charter.

5. All members of the University community—trustees, faculty, staff or registered students—are required to cooperate with the Student Disciplinary System. Those individuals who may be interviewed or called as witnesses in a disciplinary matter (including respondents and complainants) are obligated to provide honest and complete statements to the OSC and to the Hearing Panel. While in some circumstances a respondent may choose not to answer questions or provide information because of pending civil claims or criminal charges arising out of the same or other events, the respondent's decision not to answer questions or provide information will not be a reason to delay or defer an investigation or proceedings under this Charter. A student who fails, without good cause, to appear for a hearing after receiving notice, or to cooperate with the investigation conducted by the OSC, may be charged with a violation of the Code of Student Conduct. Repeated disruption of disciplinary hearings or the disciplinary process by a student or the student's advisor may result in charges against the student of non-cooperation with the Student Disciplinary System or exclusion of the student or advisor from disciplinary proceedings including disciplinary hearings. Such exclusion is not a bar to the completion of disciplinary proceedings involving that student.

## D. Organization of the Disciplinary System

1. Office of Student Conduct
   The Office of Student Conduct is the central office responsible for resolving alleged violations of University policies by students. The duties of the OSC include determining whether complaints warrant action by the OSC, referring complaints for mediation or resolution by other University offices, investigating complaints, determining whether to charge a student with violations of University policies, resolving complaints by voluntary agreements to sanctions, bringing charges of violations to a disciplinary hearing, presenting evidence at hearings, monitoring and enforcing the fulfillment of sanctions imposed pursuant to voluntary agreements or after disciplinary hearings, maintaining records of all disciplinary matters, providing administrative support for all aspects of the disciplinary process (including hearings), and preparing reports and compiling statistics.

2. University Mediation Program
   The University Mediation Program (UMP) recruits, screens, and trains members of the University community to serve as mediators. The UMP uses the volunteer services of faculty, students, and staff members who have been trained in mediation and dispute resolution and may also use resources available in the University's Law School, in University resource offices such as the Office of the Ombudsman, or outside the University.

3. University Honor Council

The University Honor Council (UHC) educates students, faculty and staff regarding both the standards of academic integrity and of behavioral conduct of the University community. The UHC provides independent advice to the Provost and the Office of Student Conduct regarding policies of academic integrity and of conduct, as well as their implementation; the operation of the University Disciplinary System in the areas of academic integrity and student conduct; the general handling of academic integrity and of conduct cases; and the effectiveness and implementation of the University's Code of Academic Integrity and its codes of conduct. Members of the University Honor Council also sit on Disciplinary Hearing Panels for cases of alleged violations of the Code of Academic Integrity, the Code of Student Conduct and related policies.

The UHC meets regularly with the Director of the Office of Student Conduct and may also meet with appropriate administrators and students, faculty or administrative groups or committees to discuss academic integrity and conduct issues. The UHC also initiates and participates in educational programs in the areas of academic integrity and of student conduct.

The University Honor Council consists of a minimum of twenty undergraduate students, recommended by the Nominations and Elections Committee (NEC) in cooperation with the current members of the UHC, and appointed by the Provost for renewable terms of one year. The NEC and UHC are encouraged to ensure that nominees represent a broad cross section of the undergraduate student body. The UHC selects a chair from among its members by a majority vote of the current members. Faculty members and graduate students designated by the Faculty Senate or the Graduate and Professional Student Assembly to sit on Disciplinary Hearing Panels may participate in the work of the UHC at the mutual convenience of the UNC and the faculty member or graduate student.

4. Disciplinary Hearing Officer
   The Faculty Senate shall appoint a tenured member of the Standing Faculty of the University of Pennsylvania as Disciplinary Hearing Officer (DHO), preferably from among those faculty who have experience with the Student Disciplinary System. The DHO selects members to serve on Disciplinary Hearing Panels; determines the time and location of hearings; and presides over all disciplinary hearings held under this charter. The DHO is responsible for overseeing the procedural integrity of disciplinary hearings. The DHO shall, for example: consider and resolve pre-hearing challenges to the authority or procedures of a Disciplinary Hearing Panel; rule on all disqualification requests and objections to individual panel members; assist parties to adhere to the basic principles of fairness prior to, during, and subsequent to disciplinary proceedings; and may consult at any time with students, faculty members, the University's General Counsel, or others about procedural issues. The DHO also participates in the training of prospective faculty and student members of Disciplinary Hearing Panels. The DHO serves and may be reappointed at the discretion of the Provost, but his/her removal or reappointment may not occur without prior consultation with the UHC and the chairs of the Faculty Senate.

5. Disciplinary Appellate Officer
   Every two years, the Provost, after consultation with the UHC and the chairs of the Faculty Senate, shall appoint a tenured member of the Standing Faculty of the University of Pennsylvania as a Disciplinary Appellate Officer (DAO), preferably from among those faculty who have experience with the Student Disciplinary System. The DAO decides appeals of findings and recommended sanctions made by Disciplinary Hearing Panels based on the record of such proceedings and written submissions from the relevant parties. The DAO serves

and may be reappointed at the discretion of the Provost, but his/her removal or reappointment may not occur without prior consultation with the UHC and the chairs of the Faculty Senate.

6. Disciplinary Hearing Panels

   a. Disciplinary matters are heard by Disciplinary Hearing Panels of five members each. The Disciplinary Hearing Officer randomly selects the undergraduate members of Disciplinary Hearing Panels from the membership of the University Honor Council for academic integrity violations. The Disciplinary Hearing Officer randomly selects the graduate and professional student members of Hearing Panels from lists of thirteen or more graduate and professional students provided annually to the DHO by GAPSA. The Disciplinary Hearing Officer randomly selects the faculty members of Hearing Panels from lists of thirteen or more faculty provided annually to the DHO by the Faculty Senate Executive Committee. GAPSA and the Faculty Senate Executive Committee are encouraged to ensure that nominees represent a broad cross-section of graduate and professional students and faculty, respectively.

   b. In all disciplinary matters except those involving alleged violations of the Code of Academic Integrity, the Disciplinary Hearing Panel is composed of two faculty members and three students of the same category (undergraduate or graduate) as the respondent. If a disciplinary matter involves both undergraduate and graduate respondents, the panel shall include at least one undergraduate and at least one graduate student and two faculty members; the fifth panel member shall be an undergraduate or graduate student selected by the DHO.

   c. In disciplinary matters involving alleged violations of the Code of Academic Integrity, the Disciplinary Hearing Panel is composed of three faculty members and two students of the same category (undergraduate or graduate) as the respondent. If a disciplinary matter involves both undergraduate and graduate respondents, the panel shall consist of one undergraduate student, one graduate student, and three faculty members.

   d. Except for participation on the University Honor Council, no one designated to serve on Disciplinary Hearing Panels may serve simultaneously in any other capacity within the Student Disciplinary System.

   e. If any nominating body chooses fewer than thirteen members to serve on Disciplinary Hearing Panels or cannot make additional members available when needed, the Provost shall make the necessary appointments to fill the complement of the appropriate group. If any member is unable to serve for any reason, a replacement is selected in the same manner that the original member was chosen.

   f. Student members of Disciplinary Hearing Panels must be in good academic and disciplinary standing, as defined by their schools. The University Honor Council, as appropriate, by a vote of two-thirds of its members, may remove a member who fails to perform his or her duties. When a member ceases to be in good standing or is removed by the UHC, a replacement from the same category shall be chosen in the same manner that the original member was chosen.

7. Advisors

   a. Advisors help students involved in disciplinary proceedings to understand the disciplinary process, respect and comply with the provisions of this Charter, and deal with all aspects of the process. Any University faculty member, staff member, or student in good academic and disciplinary standing may serve as an advisor. The OSC maintains lists of individuals who are willing to serve as advisors and who have received training in the operation of the Student Disciplinary System.

   b. Upon receiving notice of a complaint and the accompanying list of trained advisors, a respondent may select an advisor from this list or choose any other University faculty member, staff member, or student in good academic and disciplinary standing to advise the respondent during the disciplinary process. If criminal charges are pending against a respondent or, in the judgment of the Office of the University's General Counsel, are reasonably in prospect, the respondent's advisor may be an attorney who is not a member of the University community. In such instances, the attorney shall be expected to observe the procedures of this Charter and comply fully and promptly with decisions of the DHO or other University officials or bodies charged with the administration of this Charter in the same manner expected of members of the University community.

   c. An advisor may accompany any complainant, witness, or respondent to, and may participate in, any meeting regarding a disciplinary complaint. Advisors also may accompany complainants, respondents, and witnesses to hearings, but generally may not participate directly in such hearings (except as provided in section IV.C.2.F.4.f below). Advisors to respondents may, however, quietly advise the respondent(s) during the hearing and may also make a brief statement at the conclusion of the hearing, before the panel begins its deliberations.

   d. Any advisor who fails to observe the procedures of this Charter or comply fully and promptly with decisions of the DHO may, after appropriate warning, be disqualified by the DHO from continuing to serve. In the event of such disqualification, the hearing may proceed whether or not a replacement advisor is available or it may be rescheduled, at the sole discretion of the DHO. Any person disqualified from serving as an advisor shall be ineligible to serve as an advisor for a period of two years. Repeated disruption of disciplinary hearings or the disciplinary process by an advisor may result in charges against the advisee of non-cooperation with the Student Disciplinary System. If the advisor is a member of the student body, faculty, or staff of the University, disciplinary charges may be brought against the advisor in the appropriate forum.

# IV.C.2. The Disciplinary Process

## A. Bringing a Complaint to the Office of Student Conduct

1. Any student, faculty or staff member who believes that a student has violated University rules, regulations or policies may file a complaint, which must be in writing, with the OSC. A complaint asks the OSC to consider the matter for possible referral or investigation. Students, faculty, or staff members also may consult informally with the OSC staff to determine whether they wish to file a complaint. Complaints made to other University offices or personnel also may be referred to the OSC.

2. The OSC promptly evaluates each complaint it receives to determine whether the University's Code of Student Conduct, Code of Academic Integrity, or other applicable rules, regulations, or policies may have been violated. When the OSC determines that no such violation may have occurred, it may dismiss the matter without further investigation, or it may refer the parties to the University Mediation Program or elsewhere to resolve their dispute. When the OSC determines that a violation may have occurred, it may refer the matter

for mediation or undertake an investigation that may lead to the filing of formal charges against a student or students.

3. A complaint is not a charge that a student has violated University regulations. Charges against a student are only made by the University (not by complainants) following an investigation. Until there is a determination to the contrary by voluntary agreement to sanctions or by a Disciplinary Hearing Panel, there is a presumption that an accused student has not violated University rules, regulations, or policies.

4. When a complaint is filed, the OSC promptly gives written notice of the complaint and its allegations to the student(s) alleged to have violated University rules. A copy of the Charter shall be included with the notice, as well as a list of potential advisors who have received training from the OSC.

## B. Resolving a Complaint by Mediation

1. The University encourages informal mediation whenever practical and appropriate. If the parties agree, at any time the OSC may refer any disciplinary matter other than an alleged violation of the Code of Academic Integrity to the University Mediation Program (UMP) or other resources for mediation. Members of the University community —Trustees, faculty, staff or registered students— may also contact the University Mediation Program directly.

2. It is within the sole discretion of the OSC to determine whether a disciplinary complaint is suitable for mediation. If mediation fails or new information comes to light about an unresolved matter then in mediation, the OSC may proceed with an investigation and the filing of disciplinary charges. The OSC may also set a date after which it will begin to investigate the original complaint or file charges if a matter has not been successfully mediated.

3. If the OSC refers a complaint for mediation and both parties to the dispute agree to participate, the UMP will assign a trained mediator and advise the complainant(s) and respondent(s) in advance of the date, time and place set for mediation. In order to resolve a disciplinary matter by mediation, both the complainant and the respondent must agree, first, to participate in the mediation and, second, to the proposed resolution.

4. If a student fails to comply with the terms of a mediation agreement, the OSC may take steps to enforce the agreement (including use of a Disciplinary Hold or the filing of new charges under the Code of Student Conduct) or may investigate the original complaint and bring disciplinary charges under this Charter.

## C. Investigating a Complaint

1. If, after a preliminary evaluation of a complaint, the OSC determines that a violation of the Code of Student Conduct may have occurred and if the complaint is inappropriate for mediation or mediation fails, the OSC shall investigate the complaint and determine whether to bring charges of a violation.

2. In the course of its investigation, the OSC may interview any witnesses, including the respondent(s) or potential respondent(s). The OSC shall inform each witness that anything they say in such interviews may be introduced as evidence at a hearing.

## D. Filing Charges by the University Against a Student

In light of its investigation of a complaint, the OSC may file charges against a student(s) of a violation(s) of the University's Code of Student Conduct, Code of Academic Integrity, or other University rules, regulations, or policies. The OSC also may add charges beyond the scope of the original complaint, may add additional students as respondents,

or may dismiss the original complaint as unfounded. If the OSC decides to charge a student with a violation of University regulations, the OSC must inform the respondent(s) of the charges in writing, identifying the University rules, regulations, or policies alleged to have been violated. The OSC shall inform both respondent(s) and complainant(s) whether charges have been filed.

## E. Resolving Charges by Voluntary Agreement to Sanctions

1. Following the notice that charges have been filed against a student, the OSC may discuss with the respondent and the respondent's advisor what disciplinary sanction(s) would be appropriate to resolve the matter by voluntary agreement to sanctions. The respondent may accept, reject, or propose an alternative to the proposed sanction(s), and may be accompanied and assisted by an advisor, who may participate in these discussions. Statements made during discussions about whether a respondent will enter into a voluntary agreement to sanctions may not be introduced as evidence at any subsequent hearing, but may provide a basis for further investigation by the OSC.

2. A resolution by voluntary agreement to sanctions may be entered into by written agreement at any time after a complaint has been filed and prior to a disciplinary hearing. All sanctions allowed under this Charter are available to the OSC as part of a resolution by voluntary agreement to sanctions. By agreeing to such a resolution, a respondent waives further proceedings under this Charter.

3. Complainants and complainants' advisors are not parties to voluntary agreements to sanctions.

4. If, in the judgment of the OSC, a voluntary agreement to sanctions is not reasonably in prospect, or if the respondent(s) reject a proposed sanction, the OSC may bring the disciplinary matter to a hearing.

## F. Resolving Charges by Disciplinary Hearing

1. Scheduling Disciplinary Hearings
   a. If disciplinary charges are not resolved by a voluntary agreement to sanctions, the Disciplinary Hearing Officer promptly begins the process of scheduling the Disciplinary Hearing, with due regard for the time required for all parties to prepare for the hearing. The DHO shall provide reasonable advance notice in writing to the complainant(s), respondent(s), and witnesses of the date, time, and place of the hearing and of the names of the panel members assigned to hear the disciplinary matter.

   b. Hearings normally take place as soon as possible after the filing of charges. Upon a showing of good cause by the OSC or the respondent(s), the DHO may grant a reasonable extension of any time limit set forth in the Charter.

   c. The DHO may expedite a Disciplinary Hearing in appropriate circumstances, including disciplinary matters involving students who have been placed on mandatory temporary leave of absence or conditional attendance, graduating students, or students who are about to take a leave of absence or to leave campus to study elsewhere.

2. Disqualification of Hearing Panel Members
   a. Members of the Hearing Panel selected by the DHO should disqualify themselves from hearing a disciplinary matter if they believe in good faith that their capacity for making an objective judgment in the disciplinary matter is, or may reasonably appear to be, impaired. Members should not disqualify themselves for any other reason.

b. The respondent(s) or the OSC may object for specific cause to any panel member selected by the DHO. The objection must be in writing and must be received by the DHO at least 48 hours in advance of the date and time set for the hearing.

c. The DHO will rule upon all disqualification requests and objections to panel members. If the DHO decides that a challenge is valid, or if there is a voluntary disqualification, the DHO, after notifying the respondent(s) and the OSC, will replace the disqualified member with another panel member randomly selected from the same category.

3. Pre-Hearing Exchanges and Testimony

a. Before the hearing, the OSC and the respondent(s) shall exchange among themselves and with the DHO copies of all exhibits to be presented, the names of witnesses to be called, and a brief summary of the substance of testimony expected to be presented to the Hearing Panel.

b. When the DHO believes that it will contribute to the expedition and fairness of a Disciplinary Hearing, he/she may (but need not) ask the OSC to prepare a written statement of its case against the respondent(s) and give the respondent(s) a reasonable opportunity to prepare a written response. The OSC and respondent(s) also may submit statements at their own initiative. The statements and any accompanying exhibits may be considered by the Hearing Panel, in addition to testimony, arguments, or evidence presented at the actual hearing.

c. In exceptional circumstances, when a witness or exhibit does not become known or available until immediately before the hearing, the DHO may, at his/her discretion, permit the evidence to be presented or may reschedule the hearing to a later time.

d. If a respondent or the OSC anticipates that a key witness will be unavailable for a hearing, they may ask the DHO to preserve the testimony of the witness on tape and present it as evidence at the hearing. The OSC and the respondent(s) must be notified in advance of the date, time and place of the taping. All parties who would be permitted to question such a witness at a hearing may question the witness at the taping.

4. Conduct of Hearings

a. Disciplinary hearings are not trials, and they are not constrained by technical rules of procedure, evidence, or judicial formality. They are designed to encourage open discussion among the participants that promotes the hearing panel's understanding of the facts, the individuals involved, the circumstances under which the incident occurred, the nature of the conduct, and the attitudes and experience of those involved. The rules of evidence applicable to legal proceedings do not apply to disciplinary hearings. Information, including hearsay evidence, may be considered if it is relevant, not unduly repetitious, and the sort of information on which responsible persons are accustomed to rely in the conduct of serious affairs.

b. The DHO presides over all hearings and decides all questions about the admissibility of evidence and the conduct of hearings. While the DHO may be present for the Hearing Panel's discussions to answer procedural questions, the DHO does not deliberate or vote with the Panel regarding its findings or its recommendation of sanctions.

c. Disciplinary hearings are held in private unless the respondent(s) and the complainant(s) agree in writing to an open hearing. The DHO may limit attendance at a hearing to ensure fair and orderly proceedings. If a hearing is opened in accord with this procedure, the DHO may, when necessary to maintain order or

to protect the rights of participants, declare the hearing closed to the public. In a case involving important privacy interests, the DHO may close a hearing or part of a hearing that has been opened upon determining that the privacy rights of a participant may be jeopardized.

d. Upon a showing that the required notice was provided, the hearing against a respondent(s) may proceed in his/her absence.

e. At the hearing, the OSC presents the results of the its investigation of the complaint, calls witnesses to testify and presents the University's evidence against the student(s). Members of the Hearing Panel may also call witnesses to testify and may question any witness appearing before it. Respondents may also call witnesses to testify and ask questions of all witnesses.

f. A respondent is responsible for presenting his/her own case before the Hearing Panel. However, at the discretion of the DHO, the respondent's advisor may be permitted to question witnesses on behalf of a respondent or to address the Hearing Panel. The DHO's exercise of discretion in this matter will be guided by the principles that govern disciplinary hearings, specifically, fairness, the need for orderly procedures, and the Hearing Panel's duty to understand the facts and parties in the disciplinary matter.

g. Complainants may attend the hearing, testify if they wish to do so, and may be accompanied by an advisor. Neither complainants nor their advisors may call witnesses or present evidence or arguments.

h. At the conclusion of the hearing the OSC and the respondent(s) or their advisor(s) may make brief statements. At the discretion of the Disciplinary Hearing Officer, the complainant(s) or their advisor(s) may be permitted to make a brief statement. The time allowed for such statements shall be set by the DHO.

i. The OSC shall arrange for a verbatim transcript or recording to be made of all disciplinary hearings. The transcript or recording is the property of the University of Pennsylvania and becomes part of the record of the disciplinary proceedings.

5. Findings and Recommendations of the Hearing Panel

a. Only evidence presented at the hearing shall be considered by the Hearing Panel. The Hearing Panel shall presume a respondent innocent unless proven responsible for a violation by clear and convincing evidence. All decisions of the Hearing Panel require a majority vote.

b. Following the hearing, the members of the Hearing Panel meet to discuss in private their findings, which consist of two parts: 1) a determination of whether the respondent is responsible for any violation; and 2) if so, a recommendation of sanction(s).

c. The OSC may recommend to the Hearing Panel a sanction to be imposed if the Hearing Panel finds the respondent(s) responsible for a violation. The respondent(s) may respond to the OSC's proposed sanction(s). Before the Panel makes its recommendation on sanctions, it shall review any previous disciplinary offenses by and sanctions against the respondent(s).

d. If the Hearing Panel determines that the respondent(s) is not responsible for a violation, no sanction may be recommended against the respondent(s) and the respondent may not be subject to further proceedings under this Charter on the same charge(s).

e. If the Hearing Panel finds that a student is responsible for a violation of University rules or regulations, it shall recommend to the Provost (or designee) appropriate sanctions. Only the Provost (or designee), acting on behalf of the University, may actually impose a sanction on a student. The Provost (or designee) shall not impose a

sanction until after any appeal of the Hearing Panel's decision has been decided by the DAO.

6. Notice of Hearing Panel Decision
The Hearing Panel shall promptly transmit its decision, including its findings and recommendation regarding sanctions, in writing to the DHO, the OSC, the respondent(s) and the Provost as soon as possible after the end of the hearing.

## G. Appealing a Hearing Panel's Decision

1. The Disciplinary Appellate Officer (DAO) has exclusive jurisdiction to decide appeals. Appeals are based solely on the record of the disciplinary hearing and the written submissions and responses of the respondent(s) and the OSC.

2. Only respondent(s) may appeal the Hearing Panel's findings of responsibility except where applicable laws or regulations may extend this right to complainants. Both the respondent(s) and the OSC may appeal the Hearing Panel's recommendation of sanction(s). An appellant must submit any appeal to the DAO in writing within 10 days after the Hearing Panel has rendered its opinion. The appeal must state in detail the specific grounds upon which it is based and must be sent to the OSC or respondent(s), as appropriate.

3. When the appeal is received, the OSC provides the Disciplinary Appellate Officer with a copy of the respondent's charge letter, a copy of the Hearing Panel's findings, a verbatim transcript or tape recording of the Disciplinary Hearing, and any exhibits considered by the panel in reaching its recommendations. The respondent and the OSC have ten days from the date of the appeal to submit to the DAO a written response to the appeal.

4. Appellate review is limited to allegations of material and prejudicial procedural error in the conduct of hearings, error in the interpretation or application of relevant University regulations, consideration of new evidence sufficient to alter the Hearing Panel's findings or severity of the recommended sanctions. If the DAO finds sufficient basis, he/she may reverse or modify the Hearing Panel's findings or proposed sanctions, or may remand the disciplinary matter for further investigation by the OSC or a new hearing before a new Hearing Panel. However, the DAO may not recommend a more severe sanction(s) unless the OSC has appealed the sanction(s) recommended by the Hearing Panel.

5. After considering an appeal, the Disciplinary Appellate Officer shall promptly issue his/her decision in writing and shall provide copies to the OSC, the DHO, the Provost, and the respondent(s).

## H. Imposing Sanctions on a Student

1. Sanctions recommended against a respondent by a Hearing Panel or the DAO are imposed by the Provost, or his designee, and may include any reasonable sanction, including, but not limited to, the following:
Warning--A warning is a written admonition given by the OSC on behalf of the University in instances of minor misconduct.
Reprimand --A reprimand is written censure for violation of the University's rules, regulations, or policies, given by the OSC on behalf of the University, which includes notice to the student that continued or repeated conduct violations shall result in the imposition of more serious sanctions.
Fine--A monetary fine may be levied as a disciplinary sanction and is payable to the Trustees of the University of Pennsylvania. (not appropriate in cases of academic integrity violations).
Restitution--Restitution is reimbursement for the damage, loss, or misappropriation of University, private or public property or compensation for injury to individuals. Restitution may take the

form of monetary payment, property, or appropriate service (not appropriate in cases of academic integrity violations).
Disciplinary Probation--Disciplinary Probation may be imposed for a specified period or indefinitely (i.e., for as long as and whenever a student is a full- or part-time student at the University of Pennsylvania). Probation may be imposed for a single instance of misconduct or for repeated minor misconduct. Any future misconduct or academic integrity violation by a student on Disciplinary Probation, found to have occurred during the probationary period, may be grounds for suspension or, in especially serious instances, expulsion from the University.
Withdrawal of Privileges--Withdrawal of privileges is the denial of specified privileges or the ability to participate in specified activities for a designated period of time.
Suspension--Suspension is the termination of student status and separation from the University until a specified date. Suspension means the loss of all rights and privileges normally accompanying student status. While on disciplinary suspension, students may not obtain academic credit at Penn or elsewhere toward completion of a University of Pennsylvania degree. Students are eligible to return to the University after the specified suspension term has elapsed. Suspension is imposed in instances of serious misconduct; it is generally the minimum sanction imposed for a violation of the Code of Academic Integrity.
Indefinite Suspension--An indefinite suspension is termination of student status and separation from the University for an unspecified period, without an automatic right of return to the University as a student (though specific conditions for return as a student may be specified). When the conditions of an indefinite suspension have been fulfilled, the student must make a formal request, as specified in the conditions, to return to student status. Indefinite suspension is imposed in instances of extremely serious misconduct or in instances of continued serious misconduct following the imposition of probation or suspension for a specified period.
Expulsion--Expulsion is a permanent termination of student status and permanent separation from the University of Pennsylvania. Expulsion is imposed in instances of the most serious misconduct or in instances of continued serious misconduct following the imposition of probation or suspension.

2. In addition to the sanctions defined above, students may be required to perform a designated number of hours of University or other community service or to utilize University or other educational or counseling services related to the nature of the misconduct.

3. Sanctions may be imposed alone or in combination with other sanctions. The Disciplinary Hearing Panel or the DAO may recommend whether the sanctions should appear on the transcript of a respondent, and, if so, for how long.

4. After the imposition of sanctions, a faculty member involved in an academic integrity matter shall be informed of the outcome of the disciplinary proceedings. If the student has been found not to be responsible for an academic integrity violation, the instructor should re-evaluate and assign a grade (which may differ from the grade originally assigned) based on the student's academic performance in the course. If the student has been found responsible for an academic integrity violation, the instructor may assign any grade the instructor deems appropriate. In the event that the student believes the final grade is unfair or fails to take account of the outcome of the disciplinary proceeding, the student may appeal the grade through the existing academic grievance procedure for

the evaluation of academic work established by each school and academic department.

## I. Fulfilling Sanctions Imposed by the University

1. Under the Code of Student Conduct, students are required to comply with all disciplinary sanctions. Failure to do so constitutes a violation of the Code and is itself subject to disciplinary proceedings by the OSC.

2. The OSC monitors the implementation and fulfillment of sanctions. In performing this duty, the OSC shall have the cooperation of the Division of University Life, the respondent(s)'s dean, and other appropriate University offices. No sanction shall be enforced while an appeal is pending.

# IV.C.3. Additional Matters

## A. Administration of the Disciplinary System

1. The Provost is responsible for implementation of this Charter, administrative oversight of the Student Disciplinary System, including the OSC, and ensuring that the Student Disciplinary System functions fairly and in furtherance of the educational mission of the University. The Provost may instruct the OSC regarding the handling of special cases, but he/she may not so instruct the DHO, the DAO, or the members of Disciplinary Hearing Panels.

2. When circumstances warrant, the OSC may take such administrative steps as may be necessary and feasible to effect the prompt resolution of a disciplinary matter, including, but not limited to, tape recording the testimony of witnesses who may be unavailable at the time of hearing; making special arrangements to ensure the attendance of complainants, respondents, witnesses, or other participants at a hearing; and scheduling hearings outside of the normal academic year.

3. In any disciplinary matter in which a member of the Student Disciplinary System cannot perform her/his duties under this Charter, an alternate may be designated by the Provost using the procedures appropriate to that individual's position in the system. In addition, when the Provost determines that circumstances warrant, such as (but not limited to) when a conflict of interest or a particularly complex or controversial disciplinary matter arises, the Provost may appoint a special OSC staff member, a special Disciplinary Hearing Officer, or a special Disciplinary Appellate Officer using the procedures appropriate to the position.

## B. Reports to the University Community

1. Subject to the limitations imposed by law and the University's policies on the confidentiality of student records and information, the OSC, in consultation with the Provost, the University Conduct Council, and the University Honor Council, shall make periodic reports to inform the University community about the character and extent of the work of the Disciplinary System, including the nature of violations of University rules and regulations and the sanctions imposed. The reports of the OSC shall deal both with disciplinary matters that go to hearing and with disciplinary matters that are resolved before hearing, and shall include such information as the total number of disciplinary matters handled during the preceding year broken down by type of resolution (e.g., mediation, voluntary agreement to sanctions, hearing), by type of violation, by type of sanction(s) imposed, and by whether or not the respondent(s) were found responsible for a violation.

2. With the approval of the Provost, the OSC may also make extraordinary reports to the University community concerning the outcome of certain exceptional disciplinary matters, subject to the limitations imposed by law and the University's policies on the confidentiality of student records and information.

## C. Disciplinary Holds

At any time after the filing of a complaint, the OSC, after consulting with the student's academic dean, may place a "Disciplinary Hold" on the academic and/or financial records of any student for the purpose of preserving the status quo pending the outcome of proceedings, enforcing a disciplinary sanction, or ensuring cooperation with the Student Disciplinary System. A Disciplinary Hold may prevent, among other things, registration, the release of transcripts, and the awarding of a degree.

## D. Mandatory Leave of Absence and Conditional Attendance

In extraordinary circumstances, when a student's presence on campus is deemed by the University to be a threat to order, health, safety, or the conduct of the University's educational mission, the Provost (or designee), in consultation with the student's dean or associate dean, may place the student on a mandatory temporary leave of absence or impose conditions upon the student's continued attendance, pending a hearing of disciplinary charges. When reasonably possible, the student shall be provided with an opportunity to be heard before a decision is made by the Provost (or designee) to impose a mandatory temporary leave of absence or conditions on the student's attendance. At the respondent's request, and where feasible, the OSC may expedite the investigation of a complaint and the disciplinary hearing against a student placed on a mandatory temporary leave of absence or conditional attendance.

## E. Civil or Criminal Proceedings

The University may proceed with disciplinary proceedings against a student under this Charter regardless of possible or pending civil claims or criminal charges arising out of the same or other events. The OSC, with the concurrence of the Provost and after consultation with the University's General Counsel, shall determine whether to proceed with charges against a student who also faces related charges in a civil or criminal tribunal. If the University defers proceeding with disciplinary charges against a student in light of related charges in a civil or criminal tribunal, the University may at any subsequent time proceed with disciplinary proceedings against that student under this Charter irrespective of the time provisions set forth in this Charter.

## F. Disciplinary Records

1. Maintenance of Records
   Except as may be otherwise provided by applicable law, records of all complaints, disciplinary proceedings, mediations, and voluntary agreements to sanctions are maintained by the OSC in accordance with the University's Protocols for the University Archives and Records Center and University policies on the confidentiality and maintenance of student records.

2. Confidentiality
   Except as may be otherwise provided by applicable law, all disciplinary proceedings, the identity of individuals involved in particular disciplinary matters, and all disciplinary files, testimony, and findings are confidential, in accordance with University policies and federal law concerning the confidentiality of student records. However, no provision of this Charter or the University's own confidentiality shall be interpreted as preventing a student from seeking legal advice.

3. Violation of Confidentiality

Failure to observe the requirement of confidentiality of a disciplinary hearing by any member of the University community, other than the respondent, constitutes a violation of University rules and may subject the individual to the appropriate procedures for dealing with such violations. The respondent may disclose confidential information pertaining to him/herself, but may not violate the confidentiality of others. If the respondent discloses, causes to be disclosed, or participates in the disclosure of information that is confidential, any person whose character or integrity might reasonably be questioned as a result of such disclosure shall have the right to respond in an appropriate forum, limited to the subject matter of the initial disclosure.

## G. Release of Information on Disciplinary Proceedings

1. To provide students involved in disciplinary matters with appropriate liaison with their school offices in regard to their academic work, the dean or appropriate associate dean of the school(s) of the respondent(s) shall be confidentially-informed when a complaint is filed, when a sanction is imposed, or when a disciplinary complaint is otherwise resolved by the Student Disciplinary System. When a sanction is imposed, the Director of Career Planning and Placement may be informed by the OSC if the sanction(s) is reportable outside the University. When a transcript notation is required as part of a sanction, the University Registrar is also informed and required to implement the sanction as directed by the OSC on behalf of the Provost.

2. As required by law, in disciplinary matters involving allegations of sexual offenses, the complainant(s) shall be informed of the outcome of disciplinary proceedings, including voluntary agreements to sanctions.

## H. Reportability of Sanctions

1. Subject to applicable law and the University's policies on the confidentiality of student records and information, any disciplinary sanction may be reportable outside the University of Pennsylvania, subject to specific policies governing the reporting of sanctions adopted by the Council of Undergraduate Deans for undergraduate students and the Council of Graduate Deans for graduate and professional students.

2. Resolution of disciplinary charges by voluntary agreement to sanctions is treated like a finding of responsibility and is reportable in the same manner as sanctions imposed following a Disciplinary Hearing.

## I. Amendment of the Charter

Amendments to this Charter may be recommended by the University Honor Council, the Office of Student Conduct, University Council, Faculty Senate Executive Committee, or other appropriate members of the University community and proposed by the Provost. Amendments take effect upon the approval of the Council of Deans, except that the Council of Deans may at its discretion refer proposed amendments to the deans and faculties of the individual schools for approval.

## *Applicability of the New Code and System*

*The Code of Academic Integrity and the Charter of the Student Disciplinary System apply to all undergraduates in the School of Arts and Sciences, including the College of Liberal and Professional Studies; the School of Engineering and Applied Science; the Nursing School; and the Wharton School.*

*They also apply to all graduate students in the Annenberg School for Communication, the School of Arts and Sciences, the School of Design, the Graduate School of Education, the Nursing School and the School of Social Policy and Practice and to Ph.D. students in the Wharton School. MBA students in the Wharton School are covered by their own code of conduct.*

*The Schools of Law, Medicine, Dental Medicine and Veterinary Medicine have their own codes and disciplinary systems, as does the Biomedical Graduate Studies program.*

# IV.C.4. Student Disciplinary Procedures for Resolving Complaints of Sexual Assault, Sexual Violence, Relationship Violence and Stalking [1]

*(Source: Office of the Provost, Almanac, January 27, 2015 (https://almanac.upenn.edu/archive/volumes/v61/n20/ pdf/012715supplement.pdf))*

## Introduction

The University of Pennsylvania is committed to providing a safe and healthy environment, free of gender-based misconduct, to all members of our community and visitors to our community.  As such, sexual assault, sexual violence, relationship violence, and stalking will not be tolerated.  In order to ensure the creation of a climate where students are able to thrive and achieve their full potential, the University has developed a wide range of policies, educational programs, broad-based resources, support, and reporting systems.  This amendment to the Student Disciplinary Charter supplements these other policies and initiatives, addressing the process by which complaints against an enrolled University student for a violation of the Sexual Violence, Relationship Violence and Stalking Policy ("Sexual Violence Policy") will be adjudicated and resolved.

## Confidentiality

Confidentiality is of critical importance in ensuring that these sensitive matters are handled appropriately.  The University has an obligation to address complaints with respect to the violation of the Sexual Violence Policy as fairly and expeditiously as possible as soon as it becomes aware of an allegation that the Policy has been violated.  To that end, if any University official is informed of an allegation that the Policy has been violated, the University is required to respond, unless the informed official is serving in a privileged capacity (designated confidential resource, therapists, clergy, or medical providers).

The response to the complaint, however, including seeking a resolution under this procedure, should be treated as confidential, to the extent consistent with the requirements of law.  University staff and faculty may share information with others who have a legitimate need to know in order to fairly and effectively address complaints, but the information should be considered confidential and should be protected to the extent possible consistent with legal obligations.  Such administrators may include, for example, the Office of the Vice Provost for University Life, the Office of the Sexual Violence Investigator, the Title IX Officer, Public Safety, the Office of General Counsel, Counseling and Psychological Services, Student Health, and academic advising offices.

*and Almanac, May 18, 1993; revised,* Personnel Policy Manual Policy 201, March 29, 2005 *(*https://www.hr.upenn.edu/policies-and-procedures/policy-manual/other-policies/confidentiality-of-records/*))*

To insure confidentiality, uniformity, and accuracy of personnel information, it is the responsibility of Division of Human Resources/Information Management/Records (HR/IM/Records) to handle all inquiries, other than subpoenas, which require reference to documentary records concerning past and present staff of the University. Responses to the subpoenas are handled by the Office of the General Counsel. Inquiries received by other offices should be referred to HR/IM/Records. All subpoenas and inquiries from lawyers should be referred to the Office of the General Counsel.

Personnel records, including those established in connection with the selection process, are University property and are afforded confidential treatment at all times.

Individually identifiable personal information contained in computerized databases, whether maintained centrally or by schools, departments or other units, is afforded the same confidential treatment that applies to written records.

The Provost (or designee) shall administer this policy with respect to the records of faculty members. The Vice President for Human Resources (or designee) shall administer the policy with respect to the records of staff members. Deans and directors shall notify the Provost or the Vice President for Human Resources, as appropriate, of the name of the individual who shall serve as custodian for personnel records maintained in their areas of responsibility.

## Exceptions

This policy does not cover disclosures of information that are made on the basis of personal knowledge or recollection.

This policy does not apply to applicants for employment unless they are subsequently hired.

## Access to Records

Both active and retired members of the faculty and staff shall have the right of access to their records as described in this policy.

Individuals who are on leave of absence or whose employment has been terminated for reasons other than retirement with reemployment rights shall have the right of access.

Legal representatives of deceased faculty and staff members shall have the right of access for five years after the death of the individual.

Exceptions to the above may be granted by the Provost or the Vice President for Human Resources.

## Review of Records

A. An individual may review his/her records by making an appointment with HR/IM/Records during regular business hours. HR/IM/Records shall assure that references to others that may be contained in the file are deleted for the purpose of the review. (For exceptions please refer to "Limitations on Review of Records," which follows later in this policy.)

B. The review shall take place in the office where the records are maintained and in the presence of a designated staff member of HR/IM/Records.

C. The individual shall sign a log indicating the date of the inspection of the records.

D. If necessary, an individual may request copies of his/her records. There is no charge for copies of records referred to in the Occupational Health and Safety Act (OSHA) standards for access to medical records; for other records a reasonable charge may be made for reproduction costs.

## Correction of Records

If an individual considers a record to be misleading, if it contains a statement of fact that can be shown to be erroneous, or if it contains information that is not relevant, a correction may be requested.

The request must be submitted in writing to HR/IM/Records.

A request for correction of information such as date of birth must be accompanied by supporting documentation, for example, birth certificate or passport. The designated custodian of the records may consult the Provost (or designee) or the Vice President for Human Resources (or designee), as appropriate. On the basis of this consultation, the custodian should make the correction or indicates the reason why the request is denied.

If a correction is sought on an appropriate ground but is denied, the individual involved may submit for inclusion in the file a short statement explaining the grounds for the request and the correction sought. The Provost or the Vice President for Human Resources may submit a counterstatement, a copy of which is sent to the affected individual. Both statement and counterstatement shall be placed in the Personnel Record.

## Limitations on Review of Records

To protect against inappropriate disclosure of confidential information, certain records, including those containing confidential information about more than one individual and medical records, are not open to review by an individual who is a subject of the record. These records are maintained separately from other benefits records and may be available under separate policies or practices applicable to all recipients of care at the Hospital of the University of Pennsylvania or elsewhere at the University.

Individuals may not review the following:

- records that contain confidential information about other people;
- all letters of recommendation relating to the consideration of a faculty member for appointment, re-appointment, promotion or tenure, or staff member for employment, unless released by written consent of the author;
- documents including records concerning benefits that are being developed or prepared for use in civil, criminal or grievance procedures;
- records relating to the investigation of a possible criminal offense;
- medical and hospital records.

## Records That May Be Disclosed to Third Parties

Information contained in personnel records may be disclosed by the University without the written consent of the subject of the record when the Provost or Vice President for Human Resources concludes that a

constructive purpose would be served or when required by law in the judgment of the Office of the General Counsel.

Unless specifically excepted from this policy, the content of personnel records may not be disclosed to third parties without the express written permission of the individual who is the subject of the record. The written permission must describe specifically the records to be disclosed and the persons to whom they are to be disclosed.

Except for disclosures of directory information and as required by law, the University shall notify any third party to whom disclosures are made that disclosures are made under the condition that the party shall not make any rediscosure of the information without the written consent of the subject of the record.

Certain substantive categories of information may be disclosed:

1. Penn makes certain directory information available to its staff, faculty, and students – and a more limited set of information available to the general public – so that the ordinary University business can be conducted. In some cases, individuals may "opt-out" of having certain data appear. In other cases involving more personal information, such as home contact information, individuals may "opt-in" to having their data appear. Also, individuals can often list organizational contact information, rather than personal contact information, in their directory entries. For more information on the levels of control individuals can exercise over their directory information in disclosures to Penn's faculty, staff and students and to the general public, see Appendix I., Directory Information Privacy Grid (https://www.hr.upenn.edu/policies-and-procedures/policy-manual/other-policies/confidentiality-of-records/directory-information-privacy-grid/).

2. Authorized Individuals: Personnel records may be disclosed to University officials, and authorized individuals performing work for the University who require the information for the performance of their duties.

3. Legal Requirements: The University may release personnel records in response to a lawful subpoena, warrant, or court order or if, in the opinion of the Office of the General Counsel, such records could be required by law to be produced for any reason, including disclosure to a government agency. Whenever possible, notice of disclosure shall be given in advance through the *Almanac* for general categories of personnel records or by mail for individual records.

4. Protection of University Interests: The University may disclose information contained in records to protect its legal interest when it believes the actions of an individual violate or have violated his/her conditions of employment or threaten injury to people or property

5. Collective Bargaining Agreements: Information may be disclosed as required under the terms of a collective bargaining agreement.

6. Emergencies: Information may be disclosed if, in the judgment of the designated custodian of HR/IM/Records, such disclosure is necessary to protect the health, safety or property of any person.

## Exemption to Third Party Disclosure Policy

The Office of Affirmative Action, Division of Human Resources and Office of the General Counsel are exempted from the above section, "Records That May be Disclosed to Third Parties."

# Record Retention Requirements

Records shall be maintained for the period specified by state or federal law, or longer at the direction of the Provost, the Vice President for Human Resources, the University Archivist or the General Counsel.

| Records | Years |
| --- | --- |
| Affirmative Action records | 7 years |
| Information Management/Records | 5 years after death |
| Medical records relating to job qualification | 30 years beyond termination date |
| Records relating to faculty appointment or promotion | 5 years after death |
| Grievance records | 5 years after death |
| Public Safety Records | 5 years after death |
| Payroll[1] | 7 years |
| Occupational Safety and Health Act (OSHA) records of exposure to toxic substances[1] | 30 years |
| Applications (unsuccessful canidates)[1] | 2 years |

[1] Payroll, OSHA records and applications are retained according to this schedule and are not dependent on employment status.

The Department of Public Safety and the Hospital of the University of Pennsylvania shall develop their own record retention policies for security records and medical records.

# V.C. Confidentiality of Health Information under HIPAA

*(Office of Audit, Compliance and Privacy, 2006; revised, 2009)*

All faculty members at the University of Pennsylvania should respect the privacy and security of personal health information. Personal health information may be used for appropriate patient care, teaching, and research purposes, consistent with applicable University policy. Further, faculty should take reasonable steps to safeguard personal health information from unauthorized access, use, and disclosure.

Under the Health Insurance Portability and Accountability Act (HIPAA), certain schools and centers within the University must comply with a number of regulatory requirements that have been incorporated into specific policies addressing the privacy and security of health information. Faculty members within the Perelman School of Medicine, the School of Dental Medicine, and faculty practicing at the Student Health Service and Living Independently for Elders (collectively, "HIPAA-Covered Faculty") should refer to and follow HIPAA privacy and security policies and procedures established for their schools and centers.

HIPAA-Covered Faculty must abide by the following HIPAA requirements:

1. HIPAA-Covered Faculty must receive training on policies and procedures implementing HIPAA and abide by such policies and procedures;

2. In general, HIPAA-Covered Faculty may not use and/or disclose personal health information without the patient's signed HIPAA-compliant authorization, except that:

general public to support the educational, research and service missions of the University.

When demand for computing resources may exceed available capacity, priorities for their use will be established and enforced. Authorized faculty and staff may set and alter priorities for exclusively local computing/networking resources. The priorities for use of University-wide computing resources are:

*Highest:* Uses that directly support the educational, research and service missions of the University.

*Medium:* Other uses that indirectly benefit the education, research and service missions of the University, as well as and including reasonable and limited personal communications.

*Lowest:* Recreation, including game playing.

*Forbidden:* All activities in violation of the General Standards or prohibited in the *Specific Rules* interpreting this policy.

The University may enforce these priorities by restricting or limiting usages of lower priority in circumstances where their demand and limitations of capacity impact or threaten to impact usages of higher priority.

# Implied consent

Each person with access to the University's computing resources is responsible for their appropriate use and by their use agrees to comply with all applicable University, School, and departmental policies and regulations, and with applicable City, State and Federal laws and regulations, as well as with the acceptable use policies of affiliated networks and systems (See Appendices to *Specific Rules*).

*Open Expression in the Electronic Information Environment:* The rights to freedom of thought, inquiry and expression, as defined in the University's Guidelines on Open Expression (http://catalog.upenn.edu/pennbook/open-expression/), are paramount values of the University community. The University's commitment to the principles of open expression extends to and includes the electronic information environment, and interference in the exercise of those rights is a violation of this policy and of the Guidelines on Open Expression (http://catalog.upenn.edu/pennbook/open-expression/). As provided in the Guidelines (http://catalog.upenn.edu/pennbook/open-expression/), in case of conflict between the principles of the Guidelines on Open Expression (http://catalog.upenn.edu/pennbook/open-expression/) and this or other University policies, the principles of the Guidelines (http://catalog.upenn.edu/pennbook/open-expression/) take precedence.

*General Standards for the Acceptable Use of Computer Resources:* Failure to uphold the following General Standards for the Acceptable Use of Computer Resources constitutes a violation of this policy and may be subject to disciplinary action.

The General Standards for the Acceptable Use of Computer Resources require:

- Responsible behavior with respect to the electronic information environment at all times;
- Behavior consistent with the mission of the University and with authorized activities of the University or members of the University community;
- Respect for the principles of open expression;

- Compliance with all applicable laws, regulations, and University policies;
- Truthfulness and honesty in personal and computer identification;
- Respect for the rights and property of others, including intellectual property rights;
- Behavior consistent with the privacy and integrity of electronic networks, electronic data and information, and electronic infrastructure and systems; and
- Respect for the value and intended use of human and electronic resources.

Enforcement and Penalties for Violation: Any person who violates any provision of this policy, of the *Specific Rules* interpreting this policy, of other relevant University policies, or of applicable City, State, or Federal laws or regulations may face sanctions up to and including termination or expulsion. Depending on the nature and severity of the offense, violations can be subject to disciplinary action through the Student Disciplinary System or disciplinary procedures applicable to faculty and staff.

It may at times be necessary for authorized systems administrators to suspend someone's access to University computing resources immediately for violations of this policy, pending interim resolution of the situation (for example by securing a possibly compromised account and/or making the owner of an account aware in person that an activity constitutes a violation). In the case of egregious and continuing violations suspension of access may be extended until final resolution by the appropriate disciplinary body.

System owners, administrators or managers may be required to investigate violations of this policy and to ensure compliance.

# Amendment

Formal amendment of the General Standards of Acceptable Use of Computing Resources or other aspects of this policy may be promulgated by the Provost following consultation with the University Council Committee on Communications, publication "For Comment" in *Almanac*, a reasonable waiting period, and publication "Of Record" in *Almanac*.

# Interpreting this Policy

As technology evolves, questions will arise about how to interpret the general standards expressed in this policy. The Vice President for Information Systems and Computing shall, after consultation with the University Council Committee on Communications, and subject to the same waiting period and publication provisions as above, publish specific rules interpreting this policy.

# Waiver

When restrictions in this policy interfere with the research, educational or service missions of the University, members of the University community may request a written waiver from the Vice President for Information Systems and Computing (http://www.upenn.edu/computing/isc/) (or designee).

# Further Information

For further information about University computing regulations or Commonwealth of Pennsylvania and Federal computing laws, contact the University Information Security Officer at (215) 898-2172 or send email to: security@isc.upenn.edu.

# VI.A. Use of University Name Policy

*(Source: Office of the Secretary, 1969 Handbook for Faculty and Administration; revised, Almanac, October 14, 1997; revised, Almanac, May 16, 2000; revised, Almanac, October 24, 2017 (https://almanac.upenn.edu/uploads/media/102417.pdf))*

On September 30, 1791, an act confirmed an agreement which united the University of the State of Pennsylvania with the College, Academy and Charitable School and provided that the name of the institution would be "The Trustees of the University of Pennsylvania."[1]  To facilitate communication both internally and externally, the institution's name is commonly simplified as the "University of Pennsylvania," or, more recently, "Penn."

The University regulates use of its name, the names of its schools and programs, its shield and related insignia, trademarks and logos ("insignia") to ensure that such use is related to the University's educational, service and research missions and promotes its objectives. Responsibility for overseeing use of the University's names and insignia lies with the Secretary of the University.

## Official Use

When representing the University in an official capacity, all units of the University and members of the faculty and administration must use "University of Pennsylvania" in their publications and documents. Approved University stationery must be used for official correspondence.

University names and insignia may be used in connection with any academic University program provided that the program has been approved in advance by the responsible department chair and dean or director, and Provost, as appropriate. University units, faculty, staff and student organizations that wish to use University names or insignia in connection with any non-academic University program, activity, service or product must obtain the approval of the Secretary of the University before proceeding. Requests to use University names or insignia must first be presented to the appropriate department chair and dean, director, or, in the case of student organizations, to the Vice Provost for University Life, for review. If approved by the dean, director, or Vice Provost, a request with supporting information must be submitted to the Secretary for review. The Secretary will review the proposed use and determine, in consultation with appropriate colleagues, whether it is properly related to the University's missions and whether the benefits of the proposed use outweighs any risks associated with the use. The Secretary may approve the proposed use, with or without conditions, or disapprove the proposed use.

## Licensed Uses by Outside Entities

University names or insignia may be used on products or in connection with services offered by outside entities only under license from the University. Requests for such licenses are processed jointly through the Office of the Vice President for Business Services ("Business Services") and the Penn Center for Innovation ("PCI"), and with guidance from the Office of the University Secretary.

Outside sponsors of University programs or activities often seek to use University names or insignia in promotional or advertising materials. While the University is pleased to recognize the contributions of sponsors, such recognition must not suggest University endorsement of the sponsor's activities. Therefore, University names or insignia may not be used in connection with any outside entity's name or logo without prior approval of the Secretary of the University. In general, the Secretary will approve uses which recognize or acknowledge the sponsor's contribution to the University program or activity. Uses which, in the Secretary's judgment, may suggest University endorsement or approval of the sponsor's goods or services will not be permitted.

## Private Use

University faculty, staff and students may refer to their affiliation or status with the University in connection with personal activities, including consulting, provided that the affiliation or status is accurately represented and any title or position is accurately identified, and provided that such use does not imply University endorsement of the activity. In some cases, a disclaimer of University endorsement may be required. (See, for example, Handbook for Faculty and Academic Administrators, section II.E.10 (p. 38)). Use of University insignia in connection with personal activities is prohibited. The University's name must not be used in any announcement, advertising matter, publication, correspondence, or report in connection with personal or non-University activities if such use in any way could be construed as implying University endorsement of or responsibility for any project, product, or service.

## Related Policies

All faculty, staff and students are reminded that University equipment, stationery, campus mail service, and electronic media are to be used solely for University business by authorized University personnel and by officially recognized campus organizations. See Human Resources Policy No. 003 (https://www.hr.upenn.edu/policies-and-procedures/policy-manual/other-policies/uses-of-university-resources/). Additional information on faculty and staff involvement in extramural activities and organizations can be found in the *Conflict of Interest Policy for Faculty Members, and Human Resources Policy Nos.* 005 (https://www.hr.upenn.edu/policies-and-procedures/policy-manual/other-policies/conflict-of-interest/) *and* 006 (https://www.hr.upenn.edu/policies-and-procedures/policy-manual/other-policies/guidelines-for-extramural-activities-associations-and-interest-for-staff/).

[1]  *Statutes of the Trustees of the University of Pennsylvania*, p. 1.

# VI.B. Acceptance of Gifts, Grants and Contracts

*(Source: Offices of the President and Provost, Almanac, March 21, 1978; revised, Almanac, May 23, 1978 (https://almanac.upenn.edu/archive/v24pdf/n32/052378.pdf))*

The University of Pennsylvania enjoys financial support for its programs of instruction and research from many sources, public and private; faculty and staff are encouraged to pursue such support with vigor. Programs undertaken with the aid of external funding must, however, be fully consonant with the standards, character and responsibilities of the University. Conditions for the acceptance of gifts, grants and contracts include:

1. That the purposes to be served are academically worthy, are in accord with the needs and priorities of the University, and are not impediments to the achievement of other academically worthy aims or programs;

2. That there are no conditions attached to the gift, grant or contract that would in any way jeopardize the University's commitment to the principles of academic freedom and nondiscrimination;

a report, refer to the Clery Act & Crime Reporting page at https://www.publicsafety.upenn.edu/clery/.

# I. Sexual Harassment, Sexual Violence, Relationship Violence, and Stalking Policy

All forms of sexual harassment, sexual violence, relationship violence and stalking and attempts to commit such acts are considered to be serious misconduct and may result in disciplinary action up to and including expulsion or termination of employment. In addition, such acts may violate federal, state and local laws and perpetrators of such acts may be subject to criminal prosecution. This policy, which prohibits behaviors that are more generally addressed by the University's Sexual Misconduct Policy, applies to faculty, postdoctoral and other trainees, students, staff and visitors to the University campus and facilities.

**Sexual Harassment**

For the purposes of University policy, the term "sexual harassment"[1] refers to any unwanted conduct that is based on an individual's sex, sexual orientation, gender identity, or gender expression and that:

- Conditions an educational or employment benefit on participation in unwelcome sexual conduct; or
- A reasonable person would determine is so severe, pervasive, and/or objectively offensive that it effectively denies a person equal access to an educational or employment program or activity.

**Sexual violence** includes a range of behaviors in which an act of a sexual nature is taken against another individual without that person's consent or when the individual is unable to consent. There are various types of sexual violence, including but not limited to sexual assault and rape (defined below).

**Sexual assault** (including but not limited to rape) is defined as having committed any of the following acts:

- Any physical sexual contact that involves the use or threat of force or violence or any other form of coercion or intimidation.
- Any physical sexual contact with a person who is unable to consent due to incapacity or mental or physical impairment. "Incapacity" or "impairment" include but are not limited to being under the influence of alcohol or drugs or being too young to consent.

**Rape** is defined as sexual assault involving an act of penetration (and includes such assaults when the individuals know one another).

**Non-forcible sex acts** include unlawful sex acts where consent is not relevant, such as sexual contact with an individual under the statutory age of consent as defined by Pennsylvania law.

**Consent** is an affirmative decision to engage in mutually agreed upon sexual activity and is given by clear words or actions. Consent may not be inferred from silence, passivity or lack of resistance alone. Furthermore, consent to one form of sexual activity does not imply consent to other forms of sexual activity and the existence of a current or previous dating, marital or sexual relationship is not sufficient to constitute consent to additional sexual activity. Assent shall not constitute consent if it is given by a person who, because of youth, disability, intoxication or other condition, is unable to lawfully consent.

**Relationship violence**, also commonly known as dating violence, is defined as an act or a pattern of abuse committed by a person involved in a social, sexual or romantic relationship, past or present, with the victim. Relationship violence can encompass a broad range of behaviors that may include physical violence, sexual violence, emotional violence and economic violence.

**Domestic violence** is defined as abuse committed against an adult who is a spouse, former spouse, cohabitant, someone with whom the person has a child, someone with whom the person has an existing dating or engagement relationship, or someone with whom the person had a dating or engagement relationship in the past.

**Stalking** means engaging in a course of conduct directed at specific person(s) that would cause a reasonable person to fear for their safety, the safety of others, or to suffer substantial emotional distress.

In determining whether the alleged conduct violates this policy, consideration will be given to the totality of the circumstances, including the nature of the conduct and the context in which the alleged incident occurred. Generally, complaints of sexual harassment, sexual violence, relationship violence and stalking are made by members of the University community and those made by individuals who are not students, faculty, staff, postdoctoral or other trainees, or alumni will be directed to external resources available to respond to their complaint or provide support and advice.

The University regards such behavior as a violation of the standards of conduct required of all members of its community. Accordingly, as noted in the University's *Handbook for Faculty and Academic Administrators, Human Resources Policy Manual, Pennbook* and other publications, persons engaged in such behavior are subject to the full range of internal disciplinary actions, including separation from the institution. The same range of disciplinary actions will be applied in the event of retaliation against an individual who in good faith makes an allegation of sexual misconduct, who cooperates in an investigation into such allegations, or who opposes any act of sexual misconduct as defined in this policy.

Not every act that might be offensive to an individual or a group necessarily will be considered a violation of the University's standards of conduct. In determining whether an act constitutes sexual misconduct, the totality of the circumstances surrounding the conduct must be carefully reviewed. Due consideration must be given to the protection of individual rights, open expression, and academic freedom.

## A. Resources

Schools, centers and administrative divisions should make known to all of their members the available resource offices for information, counseling and support, as well as the informal and formal procedures for resolving complaints of sexual harassment within the appropriate school, center, division, or at the University level. These resources include the following:

### 1. CONFIDENTIAL RESOURCES FOR INFORMATION, COUNSELING AND SUPPORT

Resource offices are available to assist members of the Penn community and visitors to the campus who have been, or know someone who has been, the victim of sexual violence, relationship violence or stalking. The staff of these offices are available to provide counseling and support, as well as information about and assistance with making a complaint.

Generally, the information shared with confidential resources will be held in confidence, consistent with the University's obligation to address complaints of sexual misconduct, unless the person sharing the information gives their consent to the disclosure of that information. Non-identifying information regarding complaints should be provided

to the AVP for purposes of assuring compliance with Title IX and other applicable laws and regulations. Confidential resources are not obligated to share identifying information with the AVP when an incident of sexual misconduct is shared with them. However, the commitment to confidentiality does not preclude the sharing of information among University administrators as appropriate to keep members of the University community safe. In addition, confidential resources should submit non-identifying information about incidents of sexual misconduct to the Division of Public Safety for the purpose of crime statistics reporting under the Clery Act. (For additional information regarding requirements, see the Clery Act & Crime Reporting page at https://www.publicsafety.upenn.edu/clery/.) The University's confidential resources are:.

- African-American Resource Center (http://www.upenn.edu/aarc/) (resource for students, staff or faculty)
- Employee Assistance Program (https://www.hr.upenn.edu/myhr/worklife/healthy/eap/) (resource for staff or faculty)
- Lesbian Gay Bisexual Transgender Center (http://www.vpul.upenn.edu/lgbtc/) (resource for students, staff or faculty)
- Office of the University Chaplain (http://www.upenn.edu/chaplain/) (resource for students, staff, faculty, postdoctoral and other trainees, or visitors)
- Office of the Ombuds (http://www.upenn.edu/ombuds/) (resource for students, staff, faculty, postdoctoral and other trainees, or visitors)
- Penn Violence Prevention (https://secure.www.upenn.edu/vpul/pvp/) (resource for students)
- Penn Women's Center (http://www.vpul.upenn.edu/pwc/) (resource for students, staff or faculty)
- Special Services Department (https://www.publicsafety.upenn.edu/about/special-services/), Division of Public Safety (resource for students, staff, faculty, postdoctoral and other trainees or visitors)
- Student Health and Counseling (http://www.vpul.upenn.edu/shs/) (including its Sexual Trauma Treatment Outreach and Prevention Team, also known as STTOP; resource for students)

## 2. INFORMAL AND FORMAL MECHANISMS FOR COMPLAINT RESOLUTION

If both parties agree and the AVP deems it to be an appropriate instance for an informal resolution of a complaint, the AVP (or the AVP's designee) will meet with the parties individually, and others as appropriate, in an effort to resolve the complaint. When informal resolution is not chosen, one of the parties is not satisfied with the results, or the proposed resolution is not appropriate, the formal mechanisms described below should be used.

A formal complaint of sexual misconduct against any member of the Penn community should be initiated by contacting the AVP. Formal complaints will be handled in accordance with the applicable procedures as set forth below.

### Complaints Against Faculty

Any member of the University community, visitor to campus or a participant in a University-sponsored activity may bring a complaint of sexual harassment, sexual violence, relationship violence, stalking or inappropriate romantic or sexual relationships in the workplace or educational setting or workplace against a faculty member, instructor, postdoctoral or other trainee, or teaching assistant. The complaint should be made to the AVP, who will meet with the complainant, determine the appropriate process under University policy for investigation, and oversee that process. If a determination is made that the complaint

involves a possible violation of the Sexual Harassment, Sexual Violence, Relationship Violence and Stalking Policy, then the AVP will direct the process in accordance with the Procedures for Resolving Complaints of Sexual Misconduct Against Faculty. If a determination is made that the complaint involves a possible violation of the Consensual Romantic and Sexual Relationships in the Workplace and Educational Settings Policy, then the AVP will oversee the formal or informal resolution process(es), advising the Dean of the applicable school that a complaint has been made and discussing any interim measured that may be needed. In either case, for Standing Faculty, the Procedure Governing Sanctions Taken Against Members of the Faculty, Handbook for Faculty and Academic Administrators, Part II.E.16, will be followed where applicable.

### Complaints Against Staff

Any member of the University community visitor to campus or a participant in a University-sponsored activity may bring a complaint of sexual harassment, sexual violence, relationship violence, stalking or inappropriate romantic or sexual relationships in the workplace or educational setting, against a staff member. The complaint should be made to the AVP who will meet with the complainant and coordinate with the Office of Staff and Labor Relations in the Division of Human Resources, as appropriate. If a determination is made that the complaint involves a possible violation of the Sexual Harassment, Sexual Violence, Relationship Violence and Stalking Policy, then the AVP will direct the process in accordance with the Procedures for Resolving Complaints of Sexual Misconduct Against Staff or the applicable collective bargaining agreement. If a determination is made that the complaint involves a possible violation of the Consensual Romantic and Sexual Relationships in the Workplace and Educational Settings Policy, the AVP will oversee the formal or informal resolution process(es), advising the Dean, Vice President, or Vice Provost of the applicable administrative division that a complaint has been made and discussing any interim measured that may be needed.

### Complaints Against Enrolled Students

Any member of the University community, a visitor to campus, or a participant in a University-sponsored activity may bring a complaint of sexual harassment, sexual violence, relationship violence, stalking or inappropriate romantic or sexual relationships in the workplace or educational setting against an enrolled student. The complaint should be directed to the AVP who will oversee the investigative and resolution\ process(es). If a determination is made that the complaint involves a possible violation of the Sexual Harassment, Sexual Violence, Relationship Violence and Stalking Policy, then the AVP will direct the process in accordance with the Student Disciplinary Procedures for Resolving Complaints of Sexual Misconduct. If a determination is made that the complaint involves a possible violation of the Consensual Romantic and Sexual Relationships in the Workplace and Educational Settings Policy, the AVP will oversee the formal or informal resolution process(es), advising the Dean of the applicable school that a complaint has been made and discussing any interim measures that may be needed.

Members of the University community who would like assistance with making a formal complaint may contact any of the confidential resources identified above. As further set forth below, all formal complaints involving Sexual Misconduct are to be initiated by contacting the Associate Vice President for Equity and Title IX Officer ("AVP") who will be responsible for deciding whether the conduct described would violate the Sexual Misconduct Policy, and if so, which investigative or resolution process to pursue.

(215) 768-6527 Nights/Weekends
3611 Locust Walk
https://sis.vpul.upenn.edu

**Office of Student Conduct**
(215) 898-5651
Suite 400, 3440 Market Street
https://www.osc.upenn.edu/

**Office of Staff and Labor Relations, Division of Human Resources**
(215) 898-6093
Suite 600, Franklin Building
https://www.hr.upenn.edu/workplace-issues/staff-labor-relations
(https://www.hr.upenn.edu/workplace-issues/staff-labor-relations/)

### 3. INVESTIGATIVE OFFICE FOR ALL SEXUAL MISCONDUCT COMPLAINTS

The official office for reporting, initiating a formal complaint, and investigation of violations of the Sexual Misconduct Policy, including violations of the Sexual Harassment Policy, is the Office of the Associate Vice President for Equity and Title IX Officer. The contact information for that Office is:

**Associate Vice President for Equity and Title IX Officer**
(215) 898-2887
3901 Walnut Street, Suite 320
https://titleixoffice.upenn.edu

# V. Procedures for Resolving Complaints of Sexual Misconduct Against Staff

## A. Introduction

The University of Pennsylvania is committed to providing a safe and healthy environment, free of gender-based misconduct, to all members of our community and visitors to our community. As such, sexual harassment, sexual assault, sexual violence, relationship violence, and stalking will not be tolerated. In order to ensure the creation of a climate where members of the community are able to thrive and achieve their full potential, the University has developed a wide range of policies, educational programs, broad-based resources, support, and reporting systems. These procedures supplement these other policies and initiatives, addressing the process by which complaints against a University staff member for a violation of its Sexual Misconduct Policy (which includes its Sexual Harassment, Sexual Violence, Relationship Violence and Stalking Policy ("Sexual Harassment Policy") and the Consensual Romantic and Sexual Relationships in the Workplace and Educational Settings Policy) will be investigated and resolved.

## B. Confidentiality

Confidentiality is of critical importance in ensuring that these sensitive matters are handled appropriately. The University has an obligation to respond to violations of its Sexual Misconduct Policy as fairly and expeditiously as possible when a complaint is received. University staff and faculty may share information with others who have a legitimate need to know in order to fairly and effectively address complaints, but the information should be considered confidential and should be protected to the extent possible consistent with legal obligations. Such administrators may include, for example those in, the Division of University Life, the Division of Human Resources, the Office of the Associate Vice President and Title IX Officer (AVP), the Division of Public Safety, Senior Vice President for Institutional Affairs and Chief Diversity Officer, the Office

of General Counsel, the Employee Assistance Program, Deans, Vice Provosts, and Vice Presidents of administrative divisions.

## C. Reporting Complaints of Sexual Misconduct
### 1. OFFICE OF THE ASSOCIATE VICE PRESIDENT AND TITLE IX OFFICER

The Office of the Associate Vice President and Title IX Officer (AVP) will be responsible for ensuring that all complaints made against a University staff member alleging a violation of the University's Sexual Misconduct Policy (which includes the Sexual Harassment and Consensual Romantic and Sexual Relationships in the Workplace and Educational Settings Policies) are handled appropriately. All AVP responsibilities as described in these procedures will be performed directly by the AVP or by the AVP's designee.

Complaints must either be presented in writing or based upon information provided by the complainant or another individual making the report to the AVP (or designee) who will then memorialize the allegations in writing and ask the complainant to confirm the allegations. Complainants may include University students, staff, or faculty members, participants in a University-sponsored activity, or others alleging a violation of the Policy by a current University staff member.

### 2. OFFICE OF THE DISTRICT ATTORNEY AND OFFICE FOR CIVIL RIGHTS

Complainants may also choose to file a report with the District Attorney, the Office for Civil Rights of the U.S. Department of Education, or other external agencies. The University's processes and the legal system work independently of one another, and the University has its own interest in, and responsibility for, the enforcement of its Sexual Harassment Policy.[15] Therefore, the University will not unilaterally defer its processes pending the outcome of a criminal process, nor will the outcome of any legal process be determinative of the University result. The University will, however, comply with reasonable requests by law enforcement for cooperation, and upon reasonable request, may temporarily suspend its factfinding process in a sexual misconduct investigation so as not to impede the law enforcement process.

### 3. SUPPORT, COUNSELING AND ADVICE
In making a decision about whether to file a complaint, complainants may seek support, counseling, and advice from other offices on campus. A list of these offices is provided in Section III below. Should the complainant decide to proceed with a University investigation and resolution process against a University staff member, the Office of the AVP will be the single place to initiate the process.[16]

### 4. TIMEFRAME FOR SUBMITTING A COMPLAINT

The University does not limit the timeframe for making a report of a violation of the Sexual Misconduct Policy. Reports may be made at any time, although the University's ability to investigate or take action may be limited by the passage of time, or by changes in the employment relationship of the alleged respondent at the time the report is made.

### 5. COMPLAINANT REQUEST FOR CONFIDENTIALITY
The University is required by Title IX to weigh the complainant's request for confidentiality/privacy with the University's commitment to provide a reasonably safe and nondiscriminatory environment. In situations where a complainant requests confidentiality, the University's ability to investigate and respond to the allegations may be limited. The AVP will notify the complainant if the University cannot, in unusual cases, maintain the complainant's confidentiality/privacy. The complainant's and respondent's identities will only be revealed to those individuals who

need to know their names in order to investigate, resolve the complaint or provide interim measures. If the University becomes aware of behavior or a pattern of behavior by one or more respondents, the University will take appropriate action in an attempt to protect the University community.

## D. Investigation and Resolution of Complaints

The Office of the Associate Vice President for Equity and Title IX Officer (AVP) is responsible for overseeing the informal or formal resolution of all complaints made against a University staff member for a violation of the University's Sexual Misconduct Policy. Complaints should be made with the AVP who will ensure that complaints are investigated by a trained Investigative Officer (IO), who will select a co-investigator to form the Investigative Team. The Investigative Team will consult with the Dean of the school or Vice President of the division in which the respondent works, or the Vice President for Human Resources in any case for which the Dean or Vice President has an actual or the appearance of a conflict of interest or is implicated in the complaint.

Complaints must either be presented in writing or based on information provided by the complainant or another individual making the report who will then memorialize the allegations in writing and ask the complainant to confirm them. Complainants may include University students, staff or faculty member, as well as others both within and outside the University community, alleging a violation of the University's Sexual Misconduct Policy by a University staff member.

### 1. TIMELY RESOLUTION

The process of resolving complaints, exclusive of any appeal, should be completed, unless there are special circumstances, within 60 business days of the filing of the written complaint. The appeal should be completed, absent special circumstances, within 30 business days of the filing of the appeal.

The complainant and the respondent will both be provided with a copy of the Investigative Team's decision and given 10 business days from the date of the transmittal of that decision to file an appeal.

### 2. RIGHTS AND PROTECTIONS FOR COMPLAINANT AND RESPONDENT

(a) The complainant and respondent have the right to a process that is fundamentally fair, and free of bias or prejudice.

(b) The complainant and respondent have the right to be treated with respect, dignity, sensitivity, and fairness throughout the entire process. They are both entitled to seek support from the University and to be informed about the process both before the process is initiated and throughout the process as it unfolds.

(c) Both parties have the right to participate in the process, or to refrain from participation.[17] The failure to participate will not be used as evidence against either party, but also will not prevent the process from proceeding unless the complainant withdraws the complaint and the University agrees to abide by that request

(d) Both parties may have an advisor present when being interviewed by the Investigative Team, but the advisor will not be permitted to present statements, seek the production of evidence, or question any witnesses during the investigative stage of the process.

(e) Evidence of prior sexual conduct by the complainant or respondent with other partners will not be considered in the process, and any evidence of a prior sexual relationship between the parties will not be determinative of the issue of consent. If there is credible evidence of a

pattern of violations of the Sexual Misconduct Policy, evidence that helps to establish such a pattern may be considered.

(f) While the process is underway, appropriate interim measures will be taken to protect the parties. The Office of Staff and Labor Relations in the Division of Human Resources (or another appropriate office), in consultation with the respondent's supervisor, will implement interim measure to protect the parties consistent with principles of fairness. The Office of Staff and Labor Relations in the Division of Human Resources (or other appropriate office) will work with the complainant and respondent to ensure that both parties have access to support and assistance during the process.

**Consensual Romantic and Sexual Relationships in the Workplace and Educational Settings**

If the AVP determines that the complaint involves a possible violation of the Consensual Romantic and Sexual Relationships in the Workplace and Educational Settings and not the Sexual Harassment, Sexual Violence Relationship Violence or Stalking Policy, the complaint will be investigated by an IO, working with the appropriate Dean or Vice President, or in the event of an actual or perceived conflict of interest, the Vice President for Human Resources. The facts, conclusions, and recommendations reached by the IO will be reported to the appropriate Vice President or Dean. In the event of a finding of responsibility for a violation of the Sexual Misconduct Policy, appropriate disciplinary action will be taken.

Any disciplinary action taken against a staff person is subject to appeal by either party in writing to the Vice President for Human Resources (or designee) and the Dean of the school, Vice President of the division, or Vice Provost of the division in which the respondent works, who jointly have exclusive jurisdiction to decide appeals.

i. Appeals should be submitted to the AVP within 10 business days of transmission of the decision of the Investigative Team. Letters of appeal should specifically state whether the objection is to the judgment of a violation of University policy, the recommended sanction, or both, and explain in detail the grounds for appeal.

ii. The Vice President for Human Resources (or designee) and the Dean or Vice President of the school or division will review the report of the Investigative Team to ensure that the process was consistent with University policy and that the decision was not arbitrary or capricious. Any supporting evidence, and any other relevant materials may also be reviewed by the Vice President for Human Resources (or designee) and the Dean or Vice President of the relevant school or division at their discretion.

iii. After considering the appeal, the Vice President for Human Resources (or designee) and the relevant Dean or Vice President (or designee) will promptly notify the parties in writing as to whether the Investigative Team's decision will be upheld or modified. The decision of the relevant Dean or Vice President and the Vice President for Human Resources will be final.

**Sexual Harassment, Sexual Violence, Relationship Violence and Stalking**

If the AVP determines that the complaint involves a possible violation of the Sexual Harassment, Sexual Violence Policy, Relationship Violence and Stalking Policy (Sexual Harassment Policy) the procedures set forth below will apply.

## 1. PRELIMINARY DETERMINATION

Upon receiving a complaint, the AVP will make a preliminary determination as to whether the complaint falls within the purview of the Sexual Misconduct Policy and whether, on its face, there appears to be a sufficient basis to conduct a full investigation. In making this determination, the AVP may interview the complainant and the respondent (after advising the respondent of the allegations in writing) and conduct whatever preliminary investigation the AVP deems necessary to determine if the actions alleged in the complaint would, if true, constitute a violation of the University's Sexual Harassment Policy) and there is a reasonable basis for investigating the complaint. If the AVP concludes there is insufficient basis to proceed, the matter will be concluded, and the parties so advised.

## 2. INVESTIGATION

If the AVP makes the determination that there is a sufficient basis to proceed, a Statement of Charge Letter will be issued, based on the complaint and any preliminary investigation conducted. The Charge Letter will be provided to the complainant and the respondent. The respondent will be provided the opportunity to respond in writing to the Charge, and any response will be shared with the complainant. The Dean or Vice President of the division i in which the respondent is employed will also receive a copy of the Charge Letter.

The AVP will appoint an Investigative Officer (IO) to lead a thorough and impartial investigation, assisted by one or more co-investigators who may come from the school or center of one of the parties or from elsewhere in the University (the "Investigative Team"). The co-investigator(s) will be University staff or faculty members appropriately trained to investigate and handle sexual misconduct cases who will be selected for individual cases by the IO. The investigation will include interviews of the complainant and respondent, interviews of witnesses, and review of documentation, physical evidence, and any other relevant evidence.

Prior to interviews, the complainant, the respondent, and any relevant witnesses will be informed by the IO that statements they make during the process may be admissible in concurrent or subsequent civil or criminal court proceedings and will accordingly also be informed of their rights as outlined in Section B above. The parties will be advised of the seriousness of the proceeding and the expectation that the information they provide is both accurate and complete. Any false or misleading statements may subject the party making such statements to proceedings under the applicable University policy, handbook, code and/or charter. The complainant and respondent may have their advisors[18] and/or outside counsel present for their interviews, but the advisors or outside counsel will not be permitted to participate in the interview other than to provide advice to the person they have accompanied, and they may be excluded from the interview for disruptive behavior.

In conducting the investigation, the Investigative Team may, as appropriate, also consult with other campus officials including but not limited to administrators in the relevant division(s), school(s), Public Safety, the AVP and Title IX Officer, the Senior Vice President for Institutional Affairs and Chief Diversity Officer, or the Vice President for Human Resources. The Investigative Team may also consult with the Office of General Counsel, who may determine in particular cases to engage outside counsel to assist the University throughout this process. The Investigative Team may engage forensic and other experts, as needed.

## 3. INVESTIGATIVE REPORT

At the conclusion of the investigation, the Investigative Team will prepare a draft report, including assessments of credibility, a finding as to whether there has been a violation of University policy, and, if applicable, recommended disciplinary action. In making a determination regarding responsibility, the Investigative team will use a preponderance of the evidence standard. In other words, to find a staff member responsible for violating the Sexual Misconduct Policy, the Investigative Team must be convinced that it is more likely than not that a violation of the Policy has occurred.

### (a) Opportunity for Review and Comment

The draft investigative report and related exhibits and evidence will be provided to both the complainant and respondent for review and comment, under strict instructions that they are and at all times remain strictly confidential, and are not to be shared with anyone other than their families and advisors or outside counsel, as described above without the expressed consent of the AVP. Sharing of the draft report by either party, their families, advisors or outside counsel with any additional persons is strictly prohibited and anyone with whom the report is shared must be so advised. The complainant and the respondent will be given the opportunity to respond to and comment on the draft investigative report in writing.

### (b) Final Report

As a result of the response and comments received, the Investigative Team may conduct a further investigation and/or amend the draft report, if the Team determines either action to be warranted. A final investigative report will be prepared, incorporating any changes, and shared with the complainant and the respondent. The complainant and respondent may submit formal objections or comments to the final report, which will be shared with the other party and be appended to the final report of the matter.

## 4. RESOLUTION WITHOUT A HEARING

The matter may be resolved at this stage if both parties agree to the recommendations of the Investigative Team with respect to responsibility and, if applicable, sanctions, or if the parties otherwise reach a mutually acceptable resolution. The University, however, will not compel either the complainant or the respondent to engage in face-to-face mediation or to accept the recommendations of the Investigative Team.

## 5. HEARING PANEL

If the matter is not resolved at this stage in a mutually acceptable manner, either party may request a hearing before a Hearing Panel (Panel) within 10 business days of transmission of the final report.

### (a) Panel Membership

The Panel will be comprised of three (3) faculty members and the Designated Hearing Officer (DHO), who will be a non-voting member. The DHO will make all decisions about the organization of the Panel, including decisions regarding the admissibility of evidence, witnesses to appear before the panel, or any additional decisions regarding the administration of the hearing process.[19] Members of the Panel, including the DHO, will observe the following guidelines:

i. Members will be selected from a pool of faculty who have agreed to serve for a term of one or more years.

ii. Only mixed-gender panels of faculty who have participated in training on handling complaints involving sexual misconduct will hear sexual misconduct cases.

iii. Faculty appearing on a Panel may not share an academic department affiliation (e.g., has a faculty appointment or is enrolled in a course of study) with either of the parties, nor may any faculty member serve on the Panel who has a professional, or personal relationship with either of the parties. Faculty asked to serve must recuse themselves or be dismissed if they have any personal or professional ties to either of the parties or to individuals with whom the parties are closely associated. Faculty with personal knowledge of the alleged incident of sexual misconduct also must recuse themselves or be dismissed.

iv. The University will train members of the pool to fulfill their responsibilities as adjudicators according to the procedures and policies outlined here and to ensure compliance with Title IX and other applicable state and federal guidelines. In addition, the Panel will be provided with "just in time" training on adjudicating sexual misconduct cases, unless the Panel members have recently been trained.

v. No member of the Investigative Team may serve on the Panel; however, any such individual may be interviewed by the Panel regarding the investigation. The AVP or IO may assist the DHO as needed in organizational and administrative matters related to the Panel.

vi. The complainant and respondent will be notified of the membership of the Panel in advance of the Hearing. Any challenges for cause against individual Panel members must be made promptly to the DHO so as not to delay the conduct of the Hearing. The DHO will give serious consideration to any challenges made to ensure impartiality of the proceedings.

vii. All proceedings must be kept strictly confidential among the parties, witnesses and members of the Panel. All individuals involved in such Hearings must agree to such conditions of confidentiality.

**(b) Hearing Procedures**
Hearings must be prompt, fair and impartial, affording the complainant's allegations and the respondent's defenses all due consideration and protecting the rights of both parties. The Panel will review the Investigative Team's final report, including any responses, objections or comments provided by the parties. The Panel will also carefully review the evidentiary record, including witness statements, documents and physical evidence.

**Hearing Panel Interviews**

i. The Panel will interview separately the IO (and co-investigator(s) if the Panel so chooses), the complainant and the respondent. The Panel will provide the complainant and respondent with ten days (10) advance notice of the Hearing. If reasonably possible, interviews will be conducted on one day, but if such scheduling would require an unreasonably long day, or if such scheduling would unreasonably delay the proceeding, the Hearing may be scheduled over multiple days.

ii. The Panel may seek additional evidence from the Investigative Team and interview key witnesses on whom the Investigative Team relied in drawing their conclusions, as well as request additional evidence from the IO to clarify the evidentiary record, provided that it can do so without unreasonably delaying the process. In the event that a new witness comes forward during the Hearing who was not originally interviewed by the Investigative Team, or new evidence is discovered after the Investigative Team has issued their report, the DHO may allow that witness to be interviewed or admit the evidence to the hearing, but only if the DHO judges the new witness or evidence to be relevant to an accurate and fair determination of the outcome.

iii. The Hearing will be held in private. Only the person being interviewed (and in the case of the parties, that person's advisor or outside counsel) will be present when the Hearing is in session. The complainant or respondent (and their advisor or outside counsel, as applicable) will be able to view interviews from separate rooms via closed-circuit television or similar video transmission.

iv. Subject to the protections set forth in Section D2 above, the Panel has wide latitude when questioning the complainant, the respondent and any witnesses in order to determine the accuracy of the report.

v. The complainant and respondent may propose witnesses and provide specific questions in advance that they believe important to ask of other parties or witnesses. The parties' advisors may also interview the other party and witnesses called by the Panel. The DHO, in consultation with the Panel, will determine the relevance as well as the appropriateness of witnesses and questions, and may accordingly place restrictions on, include or exclude witnesses or other information.

vi. When the Panel is conducting the interview of the complainant and respondent, each may bring an advisor or outside counsel with them to provide advice and support. The advisor or outside counsel will be permitted to direct relevant questions to the other party or to witnesses. The advisor or outside counsel may be excluded from the interview by the DHO for disruptive behavior.

vii. The interviews by the Panel will be recorded (audio only). No observers will be permitted to make any audio or video recordings.

**(c) Hearing Panel Decision**
After the Hearing concludes, the Panel will immediately deliberate in private to decide whether, by a preponderance of the evidence, the respondent has violated the University's Sexual Misconduct Policy. Preponderance of the evidence means that the Panel must find that it is more likely than not that the staff member is responsible for a violation of the Policy. A finding of responsibility requires a majority vote of the members of the Panel.

i. If the respondent is found responsible, the Panel will also recommend an appropriate sanction, by majority vote, based upon the facts of the case and University precedent, with a presumption in favor of the sanction recommended by the Investigative Team.

ii. The Panel will arrive at its conclusion as expeditiously as possible and will promptly advise both the complainant and the respondent in writing of its decision with respect to responsibility and, if applicable, recommended sanctions. In keeping with guidelines for timely resolution as provided in Section A above, the written decision will be provided as soon after the conclusion of the proceeding as is possible.

# E. Appeals

Either party may appeal the decision of the Hearing Panel by submitting a written request within 10 business days of transmission of the decision of the Hearing Panel. Letters of appeal should specifically state whether the objection is to the judgment of a violation of University policy, the recommended sanction, or both, and explain in detail the grounds for appeal. The request for an appeal (including any attachments) will be shared with the other party who will have the opportunity to respond or to direct comments to the DAO within 10 business days. Any such response or comments will be shared with the other party.

The DAO will review the report of the Investigative Team and supporting evidence, the audio record of the Panel Hearing, and any other material the DAO deems relevant, in addition to the decision of the Panel to ensure

that the process was consistent with University policy, that the result was not arbitrary or capricious, that there were no procedural irregularities, that there was no demonstrated bias or conflict of interest on the part of any fact-finder, and that no new evidence has been brought forward that would alter the outcome of the Hearing.

After considering the appeal, the DAO will promptly issue their decision in writing and will provide copies to the DHO, the Provost, the Senior Vice President for Institutional Affairs and Chief Diversity Officer, the Vice President for Human Resources, the complainant, respondent, and other appropriate parties.

## F. Resource Offices

### 1. CONFIDENTIAL RESOURCES

Generally, the information shared with confidential resources will be held in confidence, consistent with the University's obligation to address complaints of sexual misconduct, unless the person sharing the information gives their consent to the disclosure of that information. Non-identifying information regarding complaints should be provided to the AVP for purposes of assuring compliance with Title IX and other applicable laws and regulations. Confidential resources are not obligated to share identifying  information with the AVP when an incident of sexual misconduct is shared with that resource. However, the commitment to confidentiality does not preclude the sharing of information among University administrators as appropriate to keep members of the University community safe. In addition, confidential resources should submit non-identifying information about incidents of sexual misconduct to the Division of Public Safety for the purpose of crime statistics reporting under the Clery Act. (For additional information regarding requirements, see the Clery Act & Crime Reporting page at https://www.publicsafety.upenn.edu/clery/). The University's confidential resources are:

**Special Services Department, Division of Public Safety**
24-hours/7 days per week: (215) 898-6600
4040 Chestnut Street
http://www.publicsafety.upenn.edu/special-services/

**Penn Women's Center**
(215) 898-8611
3643 Locust Walk
http://pwc.vpul.upenn.edu

**Lesbian Gay Bisexual Transgender Center**
(215) 898-5044
3907 Spruce Street
https://lgbtc.vpul.upenn.edu/

**African-American Resource Center**
(215) 898-0104
3643 Locust Walk
http://www.upenn.edu/aarc/

**Office of the University Chaplain**
(215) 898-8456
240 Houston Hall, 3417 Spruce Street
http://www.upenn.edu/chaplain/

**Office of the Ombuds**
(215) 898-8261
113 Duhring Wing, 236 S. 34th Street
http://www.upenn.edu/ombuds/

**Employee Assistance Program, Health Advocate**

(866) 799-2329
www.healthadvocate.com/upenn (http://catalog.upenn.edu/faculty-handbook/vi/vi-e/www.healthadvocate.com/upenn/)

### 2. OFFICIAL REPORTING OFFICES FOR SEXUAL MISCONDUCT COMPLAINTS

If reports of sexual misconduct are made with or come to the attention of the following offices, they must ensure that appropriate action is taken, including notifying the University's AVP and Title IX Officer:

**Office of Affirmative Action and Equal Opportunity Programs**
Suite 421, Franklin Building
(215) 898-6993
http://www.upenn.edu/affirm-action/

**Student Intervention Services, VPUL**
(215) 898-6081
(215) 768-6527 Nights/Weekends
3611 Locust Walk
https://sis.vpul.upenn.edu

**Office of Student Conduct**
Suite 400, 3440 Market Street
(215) 898-5651
https://www.osc.upenn.edu/

**Office of Staff and Labor Relations, Division of Human Resources**
Suite 600, Franklin Building
(215) 898-6093
https://www.hr.upenn.edu/workplace-issues/staff-labor-relations (https://www.hr.upenn.edu/workplace-issues/staff-labor-relations/)

### 3. INVESTIGATIVE OFFICE FOR SEXUAL MISCONDUCT COMPLAINTS

The official office for reporting, initiating a formal complaint, and investigation of violations of the Sexual Misconduct Policy, including violations of the Sexual Harassment Policy, is the Office of the Associate Vice President for Equity and Title IX Officer. The contact information for that Office is:

**Associate Vice President for Equity and Title IX Officer**
3901 Walnut Street, Suite 320
(215) 898-2887
https://titleixoffice.upenn.edu

---

[1] The terms "harassment" and "sexual harassment" are used throughout and are defined as a matter of University policy, and are not necessarily identical or limited to the uses of the term in external sources, including governmental guidelines, laws, regulations or legal decisions. The Sexual Harassment, Sexual Violence, Relationship Violence and Stalking Policy and the Consensual Romantic and Sexual Relations in the Workplace and Educational Setting Policy are sometimes referred to together as the "Sexual Misconduct Policy."

[2] For purposes of this policy, "faculty" includes (but is not limited to) standing faculty, clinical faculty, associated faculty, and academic support staff, as well as clinical or lab supervisors, postdoctoral fellows, house staff, residents, graduate and undergraduate teaching assistants, and any other person providing instruction, academic advising, or academic oversight of an enrolled student in any school, course, or program, including summer and off-campus programs, irrespective of geographical location.