## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| HUDA FAKHREDDINE, TROUT POWELL, and PENN FACULTY FOR JUSTICE IN PALESTINE, | : : : : : | |
| PLAINTIFFS, | : : | Docket No. 224-CV-01034 |
| v. | : : | |
| THE UNIVERSITY OF PENNSYLVANIA, | : : | Honorable Mitchell S. Goldberg, Chief Judge |
| DEFENDANT. | : : : : | |

## PLAINTIFFS' REPLY MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' SUPPORT FOR PRELIMINARY INJUNCTION

Shahily Negrón, Esq.
Attorney ID: 332842
The Law Firm of Shahily Negron, Esq.
d/b/a Negron Law
943 Washington Street
Reading, PA 19601
Phone: (646) 484-1491
Fax: (347) 814-1827
Email: shahily@lawnegron.com

Jonathan Wallace, Esq.*
Admitted Pro Hac Vice

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**Table of Contents**...................................................................................................i

**Table of Authorities**...............................................................................................ii

**Point One**

The Standards ....................................................................................................1

**Point Two**

Plaintiffs Have Standing to Bring This Action..............................................1

**Point Three**

Defendant In Its Motion to Dismiss Fails To State Which Documents It Has Already Disclosed To The Committee, Yet Asserts That Harm Is "Speculative"...................................5

**Point Four**

Defendant In Its Motion To Dismiss Ignores The AT&T Case And Its Progeny...................7

**Point Five**

The Complaint States Valid Causes Of Action.............................................9

**Point Six**

The Plaintiffs Should Prevail On Their Preliminary Injunction Motion ...................13

    A.    Plaintiffs Are Likely To Succeed On The Merits Of Their Claims................13

    B.    Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief ..................14

    C.    Plaintiffs Motion For A Preliminary Injunction Will Not Result In Even Greater Harm To Any Party ................16

    D.    Plaintiffs Motion For A Preliminary Injunction Will Be In The Public Interest.................18

**Conclusion** ......................................................................................................19

i

## TABLE OF AUTHORITIES

*11A Charles Alan Wright & Arthur P. Miller, Fed. Prac. & Proc.,* § 2948.1 (3d ed. Apr. 2012 update) ............................................................................................................................................15

*Allegheny Reprod. Health Ctr. v. Pa. Dep't of Hum. Servs.,* 309 A.3d 808 (Pa. 2024) ....................12

*Allegheny Val. Bank of Pittsburgh v Potomac Educ. Found., Inc.,* 2015 US Dist LEXIS 28364 (WD Pa Mar. 9, 2015, Civil Action No. 13-818) ..................................................................................6

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ..................................................................................................1

*Bagic v Univ. of Pittsburgh,* 773 F App'x 84 (3d Cir 2019) ...............................................................7

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) .......................................................................1, 4, 7, 9

*Brookins v. City of Phila.,* No. 24-470, 2024 U.S. Dist. LEXIS 78244 (E.D. Pa. Apr. 30, 2024) .............11

*Brooks v. State Coll. Area Sch. Dist.,* 643 F. Supp. 3d 499 (M.D. Pa. 2022) ..................................13

*Cole v. Trustees of Columbia University,* 300 F. Supp. 1026 (SDNY 1969) ....................................8

*Commonwealth v. Sell,* 470 A.2d 457 (1983) ..................................................................................12

*Connelly v Lane Constr. Corp.,* 809 F3d 780 (3d Cir 2016) ............................................................7

*Ctr. for Investigative Reporting v. SEPTA,* 975 F.3d 300 (3d Cir. 2020) .........................................9

*Davis v Wigen,* 82 F.4th 204 (3d Cir 2023) ....................................................................................8

*Doe v Univ. of the Sciences,* 961 F3d 203 (3d Cir 2020) .................................................................8

*Dougherty v Quicksius, LLC,* 2016 US Dist LEXIS 91705 (ED Pa July 13, 2016, No. 15-6432) .............6

*Drayton v Pilgrim's Pride Corp.,* 2004 US Dist LEXIS 6691 (ED Pa Mar. 31, 2004, No. 03-2334) ...........6

*Elrod v. Burns,* 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976).............................................15

*Emergency Coalition to Defend Educ. Travel v United States Dept. of the Treasury,* 545 F3d 4 (2008) ...........2, 3

*Family Educational Rights and Privacy* Act (20 U.S.C. § 1232g) ...................................................4

*Fenico v City of Phila.,* 70 F.4th 151 (3d Cir 2023) .........................................................................7

*Fowler v UPMC Shadyside,* 578 F3d 203 (3d Cir 2009) .................................................................6

*Fres-co Sys. USA v. Hawkins,* 690 F. App'x 72 (3d Cir. 2017) ......................................................13

*Gibbs v. City of Pittsburgh,* 989 F.3d 226 (3d Cir. 2021) ............................................................ 1

*Givens v. Wal-Mart Stores, Inc.,* No. 22-2989, 2023 U.S. App. LEXIS 28805 (3d Cir.
Oct. 31, 2023) .............................................................................................................................. 1

*Harvey v. Plains Twp. Police Dep't,* 421 F.3d 185 (3d Cir. 2005) .............................................11

*Hickey v Univ. of Pittsburgh,* 77 F.4th 184 (3d Cir 2023) .........................................................12

*In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410 (3d Cir.1997) ..................................... 5

*Jackson v Direct Bldg. Supplies LLC,* 2024 US Dist LEXIS 8811 (MD Pa Jan. 17, 2024,
No. 4:23-CV-01569) ..................................................................................................................... 6

*Jackson v Wright,* 82 F.4th 362, 369 (5th Cir 2023) ................................................................... 2

*Jacobs v. Palmer,* No. 14-5797, 2015 U.S. Dist. LEXIS 28853 (E.D. Pa. Mar. 10, 2015) .......... 9

*Meadows v. Pelosi,* 639 F. Supp. 3d 62 (D.D.C. 2022) ........................................................ 16, 17

*Mikula v C.R. Bard, Inc.,* 2022 US Dist LEXIS 46250 (WD Pa Mar. 15, 2022, No. 2:21-
CV-01307-MJH) ............................................................................................................................ 6

*Mohamed Sabra v. Maricopa Cnty. Cmty. Coll. Dist.,* 44 F.4th 867 (9th Cir. 2022) ................. 3

*Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978) ................................................................... 8

*Nebraska Press Ass'n v. Stuart,* 423 U.S. 1327, 96 S. Ct. 251, 46 L. Ed. 2d 237 (1975) ............16

*Nolt v City of Phila.,* 2024 US Dist LEXIS 57372 (ED Pa Mar. 29, 2024, No. 23-0864) ........... 8

*Parson v Farley,* 352 F Supp 3d 1141 (ND Okla 2018) ............................................................... 2

*Pernell v Florida Bd. Of Governors of the State Univ. Sys.,* 2022 US Dist LEXIS 243016
(ND Fla Nov. 22, 2022, No. 4:22cv304-MW/MAF) ..................................................................... 1

*Reilly v. City of Harrisburg,* 858 F.3d 173, 176 (3d Cir. 2017) .................................................. 1

*Riv. Rd. Dev. Corp. v Carlson Corp. - Northeast,* 1990 US Dist LEXIS 6201 (ED Pa
May 23, 1990, Civil Action No. 89-7037) ................................................................................. 5, 6

*Rockefeller Ctr. Props. Sec. Litig. v Rockefeller,* 311 F3d 198 (3d Cir 2002) ............................ 5

*Rumsfeld v Forum for Academic & Inst. Rights, Inc.,* 547 US 47 (2006) .............................. 2, 3

*SanMedica Intl. v Amazon.com Inc.,* 2015 US Dist LEXIS 148775 (D Utah Nov. 2, 2015,
No. 2:13-cv-00169) ....................................................................................................................... 2

*Smart Vent Products, Inc. v. Crawl Space Door Sys., Inc.*, 2016 WL 4408818 (D.N.J. Aug. 16, 2016) .................................................................................................................... 15

*SuperMedia LLC v Affordable Elec., Inc.*, 2012 US Dist LEXIS 203846 (ED Pa Dec. 11, 2012, No. 12-2329) ................................................................................................ 4

*Tannous v. Cabrini Univ.*, No. 23-1115, 2023 U.S. Dist. LEXIS 179616 (E.D. Pa. Oct. 4, 2023) ........................................................................................................................ 12

*Terminix Int'l Co., L.P. v. Kay,* 150 F.R.D. 532 (E.D. Pa. 1993) ................................... 9

*Thomas v. Indep. Twp.*, 463 F.3d 285 (3d Cir. 2006) ..................................................... 9

*Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27 (2d Cir. 1995) ........................ 15

*Trump v. Mazars USA, LLP*, 140 S. Ct. 2019 (2020) .............................................. 8, 17

*Trustees of the Natl. El. Indus. Pension v Access Lift & Serv. Co.*, 2015 US Dist LEXIS 43068 (ED Pa Mar. 30, 2015, No. 14-6516) ........................................................... 7

*United States Fid. & Guar. Co. v Ditoro*, 206 F Supp 528 (MD Pa 1962) ..................... 4

*United States v AT&T*, 419 F Supp 454 (D. D.C. 1976) ...................................... 7, 8, 17

*Value Drug Co. v Takeda Pharms., U.S.A., Inc.*, 2022 US Dist LEXIS 74831 (ED Pa Apr. 25, 2022, No. 21-3500) ............................................................................................. 4

*Watkins V. United States*, 354 U.S. 178 (1957) .............................................................. 18

*Yarnall v. Phila. Sch. Dist.*, No. 11-3130, 2013 U.S. Dist. LEXIS 48716 (E.D. Pa. Apr. 4, 2013) ...................................................................................................................... 11

## Point One

## THE STANDARDS

When deciding a motion to dismiss, the court must "accept as true a complaint's factual allegations and view them in the light most favorable to the plaintiff", *Givens v. Wal-Mart Stores, Inc.,* No. 22-2989, 2023 U.S. App. LEXIS 28805, at *3 (3d Cir. Oct. 31, 2023). The court will not dismiss any claims pursuant to Rule 12(b)(6) unless the plaintiff has failed to plead sufficient facts to state a facially plausible claim for relief, *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). To state a plausible claim, plaintiff must provide "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), and must give the defendant "fair notice of his claim", *Gibbs v. City of Pittsburgh,* 989 F.3d 226, 230 (3d Cir. 2021).

The standard for the grant of a preliminary injunction is that there is (1) "a reasonable probability of eventual success in the litigation, and (2) that [the moving party] will be irreparably injured . . . if relief is not granted . . . . In addition, the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Reilly v. City of Harrisburg,* 858 F.3d 173, 176 (3d Cir. 2017).

## Point Two

## PLAINTIFFS HAVE STANDING TO BRING THIS ACTION

Defendant's assertion that all Plaintiffs lack standing to bring this action is a curious one, considering they are suing their own employer to enjoin it from harming them, *Pernell v Florida Bd. of Governors of the State Univ. Sys.,* 2022 US Dist LEXIS 243016, at *8 (ND Fla Nov. 22, 2022, No. 4:22cv304-MW/MAF) ("This Court determined that the [professor] Plaintiffs....had established standing for purposes of a preliminary injunction against the members of the Board of Governors");

*Jackson v Wright*, 82 F.4th 362, 369 (5th Cir 2023) ("Specifically, he alleges that the chair of his department told him that the university would eliminate resources previously provided to the Journal and the Center. At the motion to dismiss stage where we must accept all Jackson's allegations as true, he has plainly alleged both a continuing and a future injury sufficient to confer standing for him to seek prospective relief").

Individual professors moving to intervene in various controversies have been found to have Article III standing in circumstances much more nebulous or tangential than this instant case, *Parson v Farley,* 352 F Supp 3d 1141, 1148 (ND Okla 2018), affirmed 800 F. App'x 617 (10th Cir. 2020), *cert den*, 141 S. Ct. 116 (2020) ("[Professor] Volokh has established independent Article III standing to intervene for the limited purpose of seeking public access to judicial records...[B]ut for the Sealing Order, Volokh would be able to gather information from the record and disseminate his opinion regarding this litigation through his blog"); *SanMedica Intl. v Amazon.com Inc.,* 2015 US Dist LEXIS 148775, at *7-10 (D Utah Nov. 2, 2015, No. 2:13-cv-00169) ("Professor Tushnet...alleges that were it not for the protective order she would be able to gather the information from the public opinion and disseminate her opinion on it through her blog"). These professors in pursuit of academic freedom were granted standing against unrelated parties, while Defendant does not appear to believe that Plaintiffs have standing to complain of acute damage to academic freedom in their own institution.

Similarly, associations of professors easily obtain organizational standing, *Rumsfeld v Forum for Academic & Inst. Rights, Inc.,* 547 US 47, 52, n 2 (2006) ("[W]e...agree that FAIR has standing"); *Emergency Coalition to Defend Educ. Travel v United States Dept. of the Treasury,* 545 F3d 4, 10 (2008) ("In considering standing, we must assume the merits in favor of the party invoking our jurisdiction"). It is particularly strange that Defendant argues that the Plaintiffs lack standing to complain that their employer is releasing their confidential information or harming their academic freedom, when even

2

outside organizations have been granted standing against universities when their actual harm was less immediate, *Mohamed Sabra v. Maricopa Cnty. Cmty. Coll. Dist.,* 44 F.4th 867, 873 (9th Cir. 2022) ("CAIR-AZ, a non-profit organization that advocates for the civil rights of American Muslims, alleged that Damask's actions frustrated its mission and caused it to divert resources in order to combat Damask's distorted portrayal of Islam. At the motion-to-dismiss stage, these allegations are sufficient to establish organizational standing"). However, if the Court found that only plaintiff Fakhreddine had standing, that would be sufficient of course for the Complaint to survive the motion. "[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement", *Rumsfeld, supra.*

In its Article III standing argument, the Defendant appears to make an egregious ontological error, confusing the merits of the case with the question of standing, *Emergency Coalition, supra* ("[T]he Government is mixing a merits question into the standing analysis, which is improper"). In fact, the Defendant's Memorandum of Law asserts many contested fact issues in its standing section (and everywhere else): "Plaintiffs do not allege any facts that even plausibly establish that their sensitive or confidential records are covered by those requests seeking information about Penn's actions. Though they allege HEW seeks information about the Palestine Writes Literature Festival organized by Fakhreddine, they allege nothing to suggest that information about a public literature festival would include an organizer's private and sensitive information", Memorandum p. 7. The semiotics of this sentence are particularly interesting: "Plaintiffs' theory requires the Court to make a series of impermissible inferential leaps and assume (1) that Plaintiffs' sensitive or confidential records are even plausibly covered by HEW's requests; (2) that in complying with HEW's request, Penn will determine that Plaintiffs' records are responsive; (3) that the records Penn produces will include Plaintiffs' private or confidential information; (4) that when Penn produces those records, it will violate federal law and any other statutes requiring redactions or other, similar privacy-protecting measures; and (5) that once

3

those documents are produced, members of HEW might misuse them to target, harass, or otherwise dox Plaintiffs". First and foremost, the Court may note that this wording is more suited for a closing statement after trial, not an argument in a motion to dismiss, which tests a *pleading*, not a "theory". Similarly, to survive a motion to dismiss, a pleading requires only "enough facts to state a claim to relief that is plausible on its face", *Twombly, supra*; "inferential leaps" would only be required if the Court was deciding disputed fact issues (as the Defendant requests). Obviously, this Court cannot decide fact issues on a motion to dismiss, *United States Fid. & Guar. Co. v Ditoro,* 206 F Supp 528, 532 (MD Pa 1962) ("On a motion to dismiss... a court should not decide fact issues based on conflicting or incomplete data"); *Value Drug Co. v Takeda Pharms., U.S.A., Inc.,* 2022 US Dist LEXIS 74831, at *4 (ED Pa Apr. 25, 2022, No. 21-3500) ("Watson and Amneal present fact issues inappropriate to resolve in their favor on a motion to dismiss"); *SuperMedia LLC v Affordable Elec., Inc.,* 2012 US Dist LEXIS 203846, at *9-10 (ED Pa Dec. 11, 2012, No. 12-2329) affirmed, 565 Fed. Appx. 144 (3rd Cir. 2014) ("[T]hese....are fact issues which cannot be resolved on a Motion to Dismiss").

The declaration of attorney David Gringer attached to the brief also asks this Court to resolve a critical fact issue, about the nature of Defendant's compliance with the Information Letter: "In Penn's submissions to the Committee on Education and the Workforce, Penn has made limited redactions of personally identifiable information, including names, email addresses, phone numbers, and addresses, as well as student education record information in accordance with the Family Educational Rights and Privacy Act (20 U.S.C. § 1232g)" (paragraph 4). This statement is clearly made so that the Court may accept it as truth, yet Gringer does not even state that he was personally involved in or saw the redaction, or whether he is relaying hearsay. This too is clearly a matter which Plaintiffs should have the right to inquire in discovery: for example, do the redactions leave information perfectly clear which allow easy identification of individuals, for example: "REDACTED organized the Palestine Writes Festival"?

4

Point Three

**DEFENDANT IN ITS MOTION TO DISMISS FAILS TO STATE WHICH
DOCUMENTS IT HAS ALREADY DISCLOSED TO THE COMMITTEE, YET
ASSERTS THAT HARM IS "SPECULATIVE"**

Plaintiff Huda Fakhreddine makes the following assertions in the Complaint: During the December 12 hearing, she was falsely named by two members of the Committee, Joe Banks and Jim Wilson, as a hateful antisemite and her termination was demanded, on national television (paragraphs 49-52); The Information letter, sent January 24, 2024, mentions Fakhreddine by name as a target for the Committee's inquiries; specific categories of information demanded which clearly pertain to Fakhreddine, include "the Palestine Writes Literature Festival"; "anti-Israel protests"; and posts on Penn social media about "Israel, Zionists and Zionism" (paragraph 53).

Defendant admits that it has begun compliance with the Information Letter: "Penn had been producing documents for at least a month by the time Plaintiffs filed their Complaint,", Memorandum of Law, page 8.   However, Defendant rather remarkably in its papers gives no details at all about its own compliance with the Information Letter. In particular, it never denies having already produced, or planning to produce, documents, naming Fakhreddine and other Plaintiffs. Remaining mysterious about matters of which it is exclusively and fully aware, it leverages its own withholding of information to accuse Plaintiffs of making "speculative" wild claims which fail to establish a cause of action or irreparable harm.

"Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control,... rigid [pleading] requirements  may be relaxed", *Rockefeller Ctr. Props. Sec. Litig. v Rockefeller,* 311 F3d 198, 216 (3d Cir 2002); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir.1997) ("Accordingly, the normally rigorous particularity rule has been relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control"); *Riv. Rd. Dev. Corp. v Carlson Corp. - Northeast,* 1990 US Dist LEXIS 6201, at \*28-29 (ED Pa May 23,

5

1990, Civil Action No. 89-7037) ("I do not believe it necessary for Carlson to identify specific dates and amounts of these conveyances at this time, because this information is peculiarly within the knowledge of counterclaim defendants. Taken as a whole, Carlson's claims under section 357 are set forth with sufficient particularity to survive a motion to dismiss under Rule 12(b)(6)").

In a matter in which a defendant is withholding facts necessary to the decision of a dispositive motion, this Court has discretion to deny the motion pending discovery, *Dougherty v Quicksius, LLC,* 2016 US Dist LEXIS 91705, at *14 (ED Pa July 13, 2016, No. 15-6432) ("Rather, such matters are particularly within the knowledge of Defendant and Plaintiff is not expected to plead such matters with specificity absent the benefit of discovery"); *Allegheny Val. Bank of Pittsburgh v Potomac Educ. Found., Inc.,* 2015 US Dist LEXIS 28364, at *11 (WD Pa Mar. 9, 2015, Civil Action No. 13-818) ("[T]his Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements"); *Drayton v Pilgrim's Pride Corp.,* 2004 US Dist LEXIS 6691, at *17 (ED Pa Mar. 31, 2004, No. 03-2334) ("Although Plaintiff must still present evidence to prove her case, at this stage in the discovery process she has alleged enough to withstand Defendant Pilgrim's Pride's Motion to Dismiss"); *Mikula v C.R. Bard, Inc.,* 2022 US Dist LEXIS 46250, at *4 (WD Pa Mar. 15, 2022, No. 2:21-CV-01307-MJH) ("A pleading party need not establish the elements of a prima facie case at this stage; the party must only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary elements"); *Jackson v Direct Bldg. Supplies LLC,* 2024 US Dist LEXIS 8811, at *22-23 (MD Pa Jan. 17, 2024, No. 4:23-CV-01569) ("[D]iscovery is needed... Requiring Jackson to list other class members who Direct Building Services called before he has access to such names, which are currently within the exclusive possession of Direct Building Services, would likely result in nearly all class actions being stricken before discovery"). "[A] plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element", *Fowler v UPMC*

*Shadyside,* 578 F3d 203, 213 (3d Cir 2009) (cleaned up); *Connelly v Lane Constr. Corp.,* 809 F3d 780, 789 (3d Cir 2016) ("Instead of requiring a prima facie case, the post-Twombly pleading standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements"); *Fenico v City of Phila.,* 70 F.4th 151, 161 (3d Cir 2023) ("[A] plaintiff must detail enough facts to raise a reasonable expectation that discovery will reveal evidence of each necessary element of the claims alleged in the complaint.... The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether they are entitled to offer evidence to establish the facts alleged in the complaint"); *Bagic v Univ. of Pittsburgh,* 773 F App'x 84, 87 (3d Cir 2019) ("[Plaintiff] is not required to prove discriminatory intent at the motion to dismiss stage, rather she need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of it.")

Although Plaintiffs choose not to assert a Rule 11 claim regarding the motion to dismiss, in our opinion Defendant's choice to withhold information while claiming Plaintiffs' complaint lacks such details, is unreasonable, and put Plaintiff's two-lawyer *pro bono* team to many hours of work, cf. *Trustees of the Natl. El. Indus. Pension v Access Lift & Serv. Co.,* 2015 US Dist LEXIS 43068, at *10 (ED Pa Mar. 30, 2015, No. 14-6516) ("Filing a motion to dismiss without sufficiently researching the complaint...was not objectively reasonable").

### Point Four

### DEFENDANT IN ITS MOTION TO DISMISS IGNORES THE *AT&T* CASE AND ITS PROGENY

Defendant argues it is not a state actor and that Plaintiff's real dispute is with the Committee, without ever citing *United States v AT&T,* 419 F Supp 454 (D. D.C. 1976), *remanded for attempted settlement,* 551 F.2d 384 (1976), *affirmed* 567 F.2d 121 (D.C. Cir. 1977), and progeny. After years of confusion about whether a plaintiff could sue to quash a Congressional subpoena issued to a third

party, *Cole v. Trustees of Columbia University,* 300 F. Supp. 1026 (SDNY 1969), *AT&T* definitively resolved that, given Congressional immunity under the Speech and Debate Clause, a plaintiff could properly sue the subpoena recipient without naming Congress.  Constitutional arguments  then may be used against the non-state actor third party-- and Congress can always choose to intervene as of right to answer them, as a committee chairperson did in fact do in *AT&T*. Almost fifty years later, *AT&T* is still good law, *Trump v. Mazars USA, LLP,* 140 S. Ct. 2019, 2028 (2020) ("Although named as defendants, Mazars and the banks took no positions on the legal issues in these cases, and the House committees intervened to defend the subpoenas"). The *AT&T* solution is a workaround of the kind in which federal courts are adept, similar to *Monell's* solution to another sovereign immunity issue, *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658  (1978).

Plaintiffs clearly allege in their Complaint that the unbearable pressure being brought by Congress against Defendant is causing the latter to infringe Plaintiffs' rights and violate their contracts, much as the federal Department of Education did in *Doe v Univ. of the Sciences,* 961 F3d 203, 213 (3d Cir 2020) ("Although the 2011 Dear Colleague Letter was provided as 'guidance,' DoEd backed it up by investigating alleged noncompliance...To ensure compliance, OCR put all of a school's federal funding at risk if the school could not show that it was vigorously investigating and punishing sexual misconduct").

The *AT&T* line of cases, uncited by Defendant, renders nugatory Defendant's arguments about state action and Constitutional issues. However, if Plaintiffs were trying to prove state control of Defendant, for the purpose of asserting Constitutional rights, they might be able to do so, *Davis v Wigen,* 82 F.4th 204, 209 (3d Cir 2023) "[P]rivate parties engaging in the federal equivalent of state action, like the private prison here, may be subject to Bivens liability"); *Nolt v City of Phila.,* 2024 US Dist LEXIS 57372, at *10-11 (ED Pa Mar. 29, 2024, No. 23-0864) ("The Third Circuit has identified three different tests arising under Supreme Court jurisprudence to determine whether that nexus

between state and private conduct exists: (1) whether the private actor was delegated a traditionally and exclusively state function (the public function test); (2) whether the private actor has acted in concert with state officials (the close nexus test); and (3) whether the State has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity (the symbiotic relationship test)").  Defendant is certainly acting in concert with the Committee, and may even be symbiotic with it.

Failure to cite controlling authority has been considered a Rule 11 violation, *Terminix Int'l Co., L.P. v. Kay,* 150 F.R.D. 532, 537 (E.D. Pa. 1993) ("A party's position, even if superficially plausible, cannot be accepted as a good faith argument…if, in framing the pleadings, the party ignores the controlling authority"); *Jacobs v. Palmer,* No. 14-5797, 2015 U.S. Dist. LEXIS 28853, at *22 (E.D. Pa. Mar. 10, 2015) (OSC issued as to why "attorney's fees and costs should not be awarded to Defendants due to Plaintiffs' failure to cite to any current, post-*Twombly* precedential case law").

### Point Five

### THE COMPLAINT STATES VALID CAUSES OF ACTION

All of Plaintiff's cases of action are valid and properly pled.

Plaintiff's First Cause of Action is for First Amendment retaliation and viewpoint discrimination. "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action", *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). "[V]iewpoint discrimination…is especially egregious…[V]iewpoint restrictions are impermissible in any forum", *Ctr. for Investigative Reporting v. SEPTA,* 975 F.3d 300, 313 (3d Cir. 2020), cert. den.,142 S. Ct. 73 (2021).

The Complaint satisfies all these requirements: "Professors, at Penn and nationwide, are left wondering whether it is any longer safe to teach courses about the history of colonialism, or to present a nuanced view in a classroom of the history of the Middle East....There has not been such a grotesque limitation on academic freedom since the McCarthy era...The Committee's relentless attack on academic freedom at Penn is in fact consistent with other declared goals of the Congresspeople involved and their party, to eliminate diversity, equity, and inclusion and all 'woke' ideas in higher education". Paragraphs 95-97. "Penn and numerous other universities have already fired and sanctioned members of their academic communities based solely on doxxing 'evidence'...Plaintiff Fakhreddine and numerous members of PFJP have been doxxed as a result of their First Amendment-protected speech and have received death and rape threats" (paragraphs 113-114). "The 'Palestine Writes Literature Festival,' held at Penn last September, [was] co-organized by Plaintiff Fakhreddine and co-sponsored by several Penn departments and programs" (paragraph 68). The Committee is specifically seeking information about the festival (paragraph 53).  "Plaintiff Fakhreddine has been excluded from faculty meetings, her emails to the members of her department censored, and co-sponsorship of events canceled" (paragraph 93). Plaintiffs also assert that the Committee is targeting their First Amendment-protected speech and seeking to get them terminated and exposed to public censure (Complaint Paragraphs 2-6; 19-58; 97-118). These assertions and others provide factual support for all elements of a First Amendment claim, First Amendment-protected speech (Palestine Writes, teaching a history of the Middle East); chilling retaliatory action (Fakhreddine being excluded from meetings and events and email blocked; PFJP members afraid of being doxed, afraid to teach their classes) and causation (Fakhreddine targeted because of Palestine Writes; faculty fired based on doxing "evidence").

Although viewpoint discrimination is not a separate cause of action, Plaintiffs have also pled it with sufficient specificity: The Committee is "taking sides by promoting pro-Israeli political speech over pro-Palestinian political speech, though both are First Amendment-protected" (paragraph 38).

Although Penn is a private actor, its entanglement and cooperation with the Committee (see Point Four) will intensify harmful effects, for example by exposing Plaintiffs to more doxing including death threats, and exposing PFJP members previously unknown to the public to doxing, when the Committee mentions them publicly or releases their documents. Defendant and the Committee at this point are in full cooperation, harming and threatening Plaintiffs. "[A]lthough not an agent of the state, a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of § 1983", *Harvey v. Plains Twp. Police Dep't,* 421 F.3d 185, 190 (3d Cir. 2005), *cert. den.* 547 U.S. 1175 (2006).

Plaintiffs' Fourteenth Amendment personal privacy claim (Second Cause of Action) is similar to that asserted in *Yarnall v. Phila. Sch. Dist.,* No. 11-3130, 2013 U.S. Dist. LEXIS 48716, at *26 (E.D. Pa. Apr. 4, 2013) "[T]he information contained in the Plaintiffs' personnel files is intimate and private and within Plaintiffs' reasonable expectations of confidentiality. Plaintiffs' likewise had a reasonable expectation that Defendant would not needlessly share such information with co-workers or for the purpose of harassment. As such, Plaintiffs' allegations against Defendant state a claim for violations of their Fourteenth Amendment right to privacy"); *Brookins v. City of Phila.,* No. 24-470, 2024 U.S. Dist. LEXIS 78244, at *12 (E.D. Pa. Apr. 30, 2024)  ("The Fourteenth Amendment right to privacy shields individuals from unwarranted governmental intrusions into their personal lives [including] the right not to have intimate facts concerning one's life disclosed without one's consent").

Plaintiffs also assert their rights of privacy under the Pennsylvania Constitution (the Third Cause of Action), which include a "comprehensive right to be left alone,...the interest in avoiding disclosure of personal matters and the interest in having independence to make certain kinds of

important decisions...("[O]nly a compelling state interest will override one's privacy rights under the Pennsylvania Constitution");", *Allegheny Reprod. Health Ctr. v. Pa. Dep't of Hum. Servs.,* 309 A.3d 808, 889, 901 (Pa. 2024); *Commonwealth v. Sell,* 470 A.2d 457, 467 (1983) ("This Court has not hesitated to interpret the Pennsylvania Constitution as affording greater protection...than the federal Constitution"). As to the contract issue (Fourth Cause of Action), contrary to Defendant's assertions in its brief, the Third Circuit has recognized a university's duty to keep the promises on which members of the academic community relied in making their choice to join, *Hickey v Univ. of Pittsburgh,* 77 F.4th 184, 194 (3d Cir 2023) ("Pennsylvania courts have recognized that students may bring breach of contract claims for specific undertakings that a university promised but failed to deliver, such as a certain curriculum, accreditation, or degree"). A university's implied obligation of good faith and fair dealing under Pennsylvania law obliges it to keep the promises it makes about academic freedom in its Faculty handbook, *Tannous v. Cabrini Univ.,* No. 23-1115, 2023 U.S. Dist. LEXIS 179616, at *18-19 (E.D. Pa. Oct. 4, 2023) (Complaint survived motion to dismiss which alleged that "the faculty handbook made a promise of continued employment consistent with an obligation of good faith and fair dealing, which in context also included complying with general principles of academic freedom"). Defendant's Faculty Handbook, attached to its motion to dismiss as Exhibit 4, states in Section IIA, "Academic Freedom and Responsibility": "The University recognizes the importance of a system of tenure for faculty members as the preeminent means of fostering and protecting academic freedom in teaching and in scholarly inquiry....It is the policy of the University of Pennsylvania to maintain and encourage freedom of inquiry, discourse, teaching, research, and publication and to protect any member of the academic staff against influences, from within or without the University, which would restrict a member of the academic staff in the exercise of these freedoms in their area of scholarly interest." Is not the Committee, via its noncompulsory Information Letter, not an influence from

without the University, dangerous to Professor Fakhreddine's exercise of academic freedom in her area of scholarly interest?

**Point Six**

**THE PLAINTIFFS SHOULD PREVAIL ON THEIR
PRELIMINARY INJUNCTION MOTION**

In determining whether to grant a request for a preliminary injunction, courts consider four factors: (1) "whether the movant has shown a reasonable probability of success on the merits"; (2) "whether the movant will be irreparably injured by the denial of relief"; (3) "whether granting preliminary relief will result in even greater harm to the nonmoving party"; and (4) "whether granting the preliminary relief will be in the public interest." *Brooks v. State Coll. Area Sch. Dist.*, 643 F. Supp. 3d 499, 504 (M.D. Pa. 2022) (where a preliminary injunction was granted against the school district). Pennsylvania courts have made clear that the relative strength of the four factors for a preliminary injunction will typically vary, and some may weigh more heavily than others. *Fres-co Sys. USA v. Hawkins*, 690 F. App'x 72, 73 (3d Cir. 2017). Plaintiffs have satisfied these elements and Plaintiffs Motion for a Preliminary Injunction should be granted.

A.      ***Plaintiffs are likely to succeed on the merits of their claims***

As discussed in length above and in Plaintiffs' Motion for a Preliminary Injunction, Plaintiffs are likely to succeed on the merits of ALL their claims against Defendant which alleges: (1) Defendant violates Plaintiffs' freedoms of speech and association under the First Amendment because it is aiding and abetting the Committee's infringement on these rights; (2) Defendant violates Plaintiffs' right to informational privacy as afforded by the Pennsylvania Constitution by producing documents likely to contain Plaintiffs' emails, addresses, names, and other personally identifiable information; (3) Defendant violates Plaintiffs' Fourteenth Amendment privacy rights by advancing Congress' s compelled disclosure of their personal information; and (4) Defendant breaches its contract with

13

Plaintiffs by failing to protect Plaintiffs' freedom of expression, academic freedom, and right to confidentiality.

In their reply to Plaintiffs Motion for Preliminary Injunction, Defendant makes several assertions that Plaintiffs claims do not have merit. However, Defendant's assertions fail. As stated above, Plaintiffs has shown that UPenn's production of documents to the Committee restricts protected speech. Defendant is advancing the Committee's viewpoint discrimination against Plaintiffs' pro-Palestine speech. We stated before, by requesting that Defendant provide documents related to Plaintiffs' pro-Palestine advocacy, the Committee is using Defendant as a conduit through which it infringes upon Plaintiffs' First Amendment rights. Defendant accuses Plaintiffs of grasping for any First Amendment hook. This is incorrect. It is clear that by aiding the Committee, UPenn is assisting the committee in egregious act of viewpoint discrimination. Plaintiffs are not grasping for anything other than protecting Plaintiffs from the harm caused by complying with the Committee's request.

**B.**      ***Plaintiffs will suffer irreparable harm absent injunctive relief***

Plaintiffs can show and has shown that Plaintiffs will suffer irreparable harm absent injunctive relief. If Defendant continues to produce documents related to Plaintiffs' pro-Palestine advocacy, they will continue to be doxxed and suffer irreparable harm to their wellbeing, reputation, and career. In addition to the past harm and current harm, Plaintiffs will undoubtedly continue to face future, long-term harm should Defendant continue to comply with the Committee's request letter.

Defendant continues to argue and circle around the notion that Plaintiffs' harm is merely speculative and no evidence has been produced. Plaintiff Fakhreddine's Affidavit clearly states the past harm, current harm and future harm that is irreparable and injunction relief should be granted. Defendant is merely criticizing this evidence and dismissing it solely because the timeline does not agree with their narrative. Yes, some harm Plaintiffs have suffered began before January 24, 2024, but

to label that all harm is independent of anything UPenn has done while complying with the Committee's request letter is a reach.

Defendant amusingly states that Plaintiffs fail to show irreparable harm and are not at risk of imminent harm due to an alleged delay in moving for a preliminary injunction. They cite to several cases trying to bolster this argument and they provide the Court with a timeline of this cases procedural history. However, Defendant may have overlooked some other factors that do not exist in the cases they cited.

The Committee's letter may have been sent to UPenn on January 24, 2024, however, Plaintiffs only became aware of the letter about a month or so after. Unlike in *Smart Vent Products*, the case Defendant cites (a New Jersey District Court), where the injunctive relief sought was seven months after the events that form the essential marker of the injunctive request. *Smart Vent Products, Inc. v. Crawl Space Door Sys., Inc.*, 2016 WL 4408818, at *35 (D.N.J. Aug. 16, 2016). Yes, one can argue that a delay of that magnitude may "knoc[k] the bottom out of any claim of immediate and irreparable harm." *Id.* However, we do not have that issue here. There was no delay in filing the motion for a preliminary injunction. Plaintiffs reacted with appropriate speed, based on the information they had. "[A] delay in filing suit will not rebut the presumption of irreparable harm if the plaintiff does not know how severe the infringement is. Similarly, a delay caused by a plaintiff's good faith efforts to investigate an infringement does not rebut the presumption of irreparable harm." *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 39 (2d Cir. 1995).

Lastly and most importantly, a presumption of irreparable harm attaches to a deprivation of a First Amendment right. See *11A Charles Alan Wright & Arthur P. Miller, Fed. Prac. & Proc.*, § 2948.1 (3d ed. Apr. 2012 update) ("When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable injury is necessary."); see also *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976)

(plurality) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Nebraska Press Ass'n v. Stuart*, 423 U.S. 1327, 1329, 96 S. Ct. 251, 46 L. Ed. 2d 237 (1975) ("[A]ny First Amendment infringement that occurs with each passing day is irreparable.") Here, Defendant's advancement of Congress's infringement on Plaintiffs' freedoms of speech and association undoubtedly caused irreparable injury to Plaintiffs.

**C.**     ***Plaintiffs motion for a preliminary injunction will not result in even greater harm to any party***

Defendant boldly accuses Plaintiffs of trying to enlist a federal court to decide claims challenging the Committee's investigation of antisemitism on university campuses and the Committee's requests for information from UPenn to further that investigation. Defendant further accuses Plaintiffs of suing UPenn to seek the same outcome as if the Committee was sued. They use this argument as a basis to state that the Committee is an interested Party that would be harmed by an injunction because it would be prevented from obtaining information pertaining to its investigation that UPenn would otherwise produce. They further argue that UPenn would be harmed because it is subject to numerous governmental regulators and oversight bodies and granting plaintiffs' injunction would be precedent for anyone to sue UPenn whenever it cooperates with governmental requests. They are awfully incorrect.

Plaintiffs are seeking the Court's help in preventing further harm by granting an injunction to stop UPenn from producing documents based on a request letter from the Committee. A letter requesting documents from UPenn is not a legislative act, it is merely a request. Here our case is very distinct from the case cited by Defendant where they argue the Constitution's Speech and Debate Clause precludes subject-matter jurisdiction for claims challenging legislative acts. *Meadows v. Pelosi*, 639 F. Supp. 3d 62, 68-69 (D.D.C. 2022). However, the issues in Meadows and the issues in Plaintiffs case are staggeringly different.

The Supreme Court's decision in *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 207 L. Ed. 2d 951 (2020), does not upset this scheme. There (like in AT&T), the congressional committees that subpoenaed President Trump's personal financial information intervened to defend their subpoenas in a suit initially brought against the subpoenas' third-party targets, *id.* at 2028; the committees were not "made defendants." See *AT&T II*, 567 F.2d at 129. In that context, the Supreme Court explained that "a careful analysis that takes adequate account of the separation of powers principles at stake" is necessary when evaluating the validity of congressional subpoenas for the President's personal information. *Mazars*, 140 S. Ct. at 2035. But the Court did not apply that analysis to Speech or Debate Clause immunity, and as discussed above, such considerations are typically inapplicable in that context. See *AT&T II*, 567 F.2d at 128-30.

Further, *Meadows* must be read in the context of its distinct facts when using its analysis for the purpose of defining a legislative act. The issue in *Meadows* stems from the horrendous events on January 06, 2021, where the joint session of Congress was interrupted by a violent riot that infiltrated the U.S. Capitol Building. In response, the House of Representatives established the Select Committee to Investigate the January 6th Attack on the United States Capitol. The Select Committee was charged with investigating the facts, circumstances, and causes relating to the domestic terrorist attack on the Capitol and reporting back to the full House with its findings and recommendations for corrective measures. On September 23, 2021, the Select Committee issued a subpoena to Mark Meadows, who served as chief of staff to President Donald Trump from March 31, 2020, until January 20, 2021, President Trump's final day in office. The subpoena demanded both documents and deposition testimony.

UPenn cannot be successful in arguing that a request letter from the Committee and the Subpoena issued in *Meadows* are the same. They are not. The request letter from the Committee is

being used to further harm individuals exercising their first amendment protected right in pro-Palestine speech by labeling and investigating their speech as being anti-sematic.

The Committee cannot be an interested party solely because it is requesting documents from UPenn. In fact, it strengthens our argument that UPenn has become a state actor because it is aiding and abetting the Committee's investigation by violating Plaintiffs constitutional rights.

**D.**   *Plaintiffs motion for a preliminary injunction will be in the public interest*

Defendant argues there is no public interest served by a federal court preventing UPenn from cooperating with the Committee solely because employees disagree with the grounds of the investigation. Defendant cites *Watkins*, to support their argument that it is unquestionably the duty of all citizens to cooperate with Congress in its efforts to obtain the facts needed for intelligent legislative action. *Watkins v. United States* at 187. Not surprisingly, however, Defendant omits any discussion of the underlying facts of that case. Not only is *Watkins* factually inapposite, but it misinterprets key factors that distinguishes its analysis from Plaintiffs' case.

To begin, in *Watkins* the court stated:

> The Bill of Rights is applicable to investigations as to all forms of governmental action. Witnesses cannot be compelled to give evidence against themselves. They cannot be subjected to unreasonable search and seizure. Nor can the First Amendment freedoms of speech, press, religion, or political belief and association be abridged.

*Watkins V. United States*, 354 U.S. 178, 187-88 (1957).

As it is true, it is the duty of all citizens to cooperate with Congress, however, the court in *Watkins* stated that duty is not unlimited. The Committee is violating the constitutional rights of Plaintiffs, thereby UPenn in aiding the Committee, is violating the constitutional rights of Plaintiffs as well. Here, the public has a strong interest in preventing the Committee from using UPenn to commit civil rights violations and it will prevent UPenn from violating Plaintiffs rights by aiding the Committee.

18

## CONCLUSION

Plaintiffs' motion for a preliminary injunction should be granted. Defendant's motion to dismiss the Complaint should be denied.

Dated:          May 21, 2024

Respectfully Submitted,

_____
Shahily Negron, Esq.
Attorney ID: 332842
The Law Firm of Shahily Negron, Esq.
d/b/a Negron Law
943 Washington Street
Reading, PA 19601
Phone: (646) 484-1491
Fax: (347) 814-1827
Email: shahily@lawnegron.com

Jonathan Wallace, Esq.*
Admitted Pro Hac Vice

*Attorneys for Plaintiffs Huda Fakhreddine,
Eve Trout Powell, and Penn Faculty For Justice
In Palestine*