**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HUDA FAKHREDDINE, TROUTT POWELL, and PENN FACULTY FOR JUSTICE IN PALESTINE,<br><br>　　　　　　　　Plaintiffs,<br>v.<br><br>THE UNIVERSITY OF PENNSYLVANIA,<br><br>　　　　　　　　Defendant. | No. 2:24-cv-01034 (MSG)<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE**

**TABLE OF CONTENTS**

|   |   |   | Page |
|---|---|---|---|
| I. | | All Of Plaintiffs' Claims Fail For Lack Of Standing............................................................1 |
| | A. | Plaintiffs Fail To Allege Any Certainly Impending Injury......................................1 |
| | B. | PFJP Independently Lacks Standing........................................................................4 |
| II. | | Plaintiffs' Complaint Should Be Dismissed Pursuant To Rule 12(b)(6)............................5 |
| | A. | Plaintiffs Still Have Not Pled That Penn Is A State Actor ......................................5 |
| | B. | Plaintiffs Still Have Not Adequately Pled Either Retaliation Or Viewpoint Discrimination Under The First Amendment ...........................................................7 |
| | C. | Plaintiffs Still Have Not Adequately Pled A Privacy Claim Under The Fourteenth Amendment Or Pennsylvania Constitution ..........................................8 |
| | D. | Plaintiffs Fail To State A Breach Of Contract Claim ..............................................9 |
| CONCLUSION..............................................................................................................................10 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................................3

*Barley v. Fox Chase Cancer Center*,
    54 F. Supp. 3d 396 (E.D. Pa. 2014) ....................................................................................5

*Borse v. Piece Goods Shop, Inc.*,
    963 F.2d 611 (3d Cir. 1992)................................................................................................6

*Changizi v. Dep't of Health & Human Services*,
    82 F.4th 492 (6th Cir. 2023) ...............................................................................................3

*City of Harrisburg v. Prince*,
    288 A.3d 559 (Pa. Commw. Ct. 2023) ...............................................................................9

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013).................................................................................................. 1, 3, 4

*Conard v. Pennsylvania State Police*,
    902 F.3d 178 (3d Cir. 2018)................................................................................................8

*Culley v. Cumberland Valley School District*,
    2016 WL 775091 (M.D. Pa. Feb. 29, 2016) .......................................................................4

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)............................................................................................................1

*David v. Neumann University*,
    177 F. Supp. 3d 920 (E.D. Pa. 2016) ..................................................................................9

*David v. Neumann University*,
    187 F. Supp. 3d 554 (E.D. Pa. 2016) ................................................................................10

*Davis v. Samuels*,
    962 F.3d 105 (3d Cir. 2020)................................................................................................6

*Davis v. Wigen*,
    82 F.4th 204 (3d Cir. 2023) ................................................................................................6

*Egbert v. Boule*,
    596 U.S. 482 (2022)............................................................................................................7

*Finkelman v. National Football League*,
   810 F.3d 187 (3d Cir. 2016)...................................................................................................3

*Gaiardo v. Ethyl Corp.*,
   835 F.2d 479 (3d Cir. 1987)...................................................................................................5

*Good News Club v. Milford Central School*,
   533 U.S. 98 (2001).................................................................................................................7

*Harvey v. Plains Township Police Dep't*,
   421 F.3d 185 (3d Cir. 2005)...................................................................................................6

*Hernandez v. Mesa*,
   589 U.S. 93 (2020).................................................................................................................7

*Hickey v. University of Pittsburgh*,
   77 F.4th 184 (3d Cir.), *amended & superseded*, 81 F.4th 301 (3d Cir. 2023).........................10

*Jackson v. Wright*,
   82 F.4th 362 (5th Cir. 2023) ..................................................................................................2

*Johnson v. TD Bank Nat'l Ass'n*,
   2023 WL 2203572 (3d Cir. Feb. 24, 2023).............................................................................6

*Kach v. Hose*,
   589 F.3d 626 (3d Cir. 2009)...................................................................................................6

*Kortyna v. Lafayette College*,
   2017 WL 1134129 (E.D. Pa. Mar. 27, 2017), *aff'd*, 726 F. App'x 934 (3d Cir. 2018).............9

*Lugar v. Edmondson Oil Co.*,
   457 U.S. 922 (1982)...............................................................................................................6

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)...............................................................................................................2

*McCauley v. Computer Aid Inc.*,
   447 F. Supp. 2d 469 (E.D. Pa. 2006), *aff'd*, 242 F. App'x 810 (3d Cir. 2007) ........................7

*Parker v. Governor of Pennsylvania*,
   2023 WL 5814603 (3d Cir. Sept. 8, 2023) .............................................................................3

*Pernell v. Florida Board of Governors of the State University System*,
   641 F. Supp. 3d 1218 (N.D. Fla. 2022)...................................................................................2

*Pollock v. City of Philadelphia*,
   403 F. App'x 664 (3d Cir. 2010) ............................................................................................8

*Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*,
    123 F.3d 111 (3d Cir. 1997)......................................................................................................3

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011)........................................................................................................3

*Rosenberger v. Rector & Visitors of University of Virginia*,
    515 U.S. 819 (1995)..................................................................................................................7

*Sabra v. Maricopa County Community College District*,
    44 F.4th 867 (9th Cir. 2022) .....................................................................................................4

*Simon v. Eastern Kentucky Welfare Rights Organization*,
    426 U.S. 26 (1976)....................................................................................................................5

*Tannous v. Cabrini University*,
    2023 WL 6465842 (E.D. Pa. Oct. 4, 2023)............................................................................10

*Trump v. Mazars USA, LLP*,
    591 U.S. 848 (2020)...............................................................................................................5, 6

*Trump v. Twitter, Inc.*,
    602 F. Supp. 3d 1213 (N.D. Cal. 2022) ...................................................................................6

*United States v. American Telephone & Telegraph Co.*,
    551 F.2d 384 (D.C. Cir. 1976) .................................................................................................5

*Yarnall v. Philadelphia School District*,
    2013 WL 1389757 (E.D. Pa. Apr. 4, 2013) .............................................................................8

*Zuk v. Eastern Pennsylvania Psychiatric Institute of Medical College of Pennsylvania*,
    103 F.3d 294 (3d Cir. 1996)......................................................................................................3

**Statutes & Codes**

28 U.S.C. § 1927..............................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 11, advisory committee's notes to 1993 amendment ..............................................5

Plaintiffs' opposition brief confirms that this lawsuit lacks any cognizable claim or genuine grievance against Penn. Instead, Plaintiffs really take issue with the scope of a congressional investigation and speculate about its ultimate result. Whatever the merits of those beliefs, it is obvious that they do not give rise to any justiciable controversy involving Penn. Here, Penn's production of documents to Congress—the conduct Plaintiffs challenge—is not plausibly contended to cause a certainly impending injury to Plaintiffs. They concede as much in arguing they do not know enough about Penn's production to allege whether any injury is certainly impending. Opp. 3-4. But their ignorance of their own injury does not (as they argue) entitle them to discovery, let alone the "extraordinary relief" of a preliminary injunction.

Plaintiffs fare no better in trying to save their constitutional and breach of contract claims. Plaintiffs turn the constitution on its head in arguing that they do not need to plead state action for their three constitutional claims to proceed. Then, remarkably, having based their lawsuit on a theory at odds with a proposition any first-year constitutional law student knows, they accuse *Penn* of a Rule 11 violation for opposing it. Opp. 7-9. And they make no serious effort to show that their Complaint has sufficient allegations for their claims to proceed.

The Court should dismiss this meritless lawsuit with prejudice.

## I. All Of Plaintiffs' Claims Fail For Lack Of Standing

### A. Plaintiffs Fail To Allege Any Certainly Impending Injury

Plaintiffs mostly fail to respond to Penn's arguments that they lack standing, including the requirement of a "certainly impending" injury. *See* Dkt. 29 ("Mot.") 6-11; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Rather, they just assert repeatedly that other professors have been found to have standing to sue other universities in other cases. Opp. 1-2. But what is at issue here is whether *these* plaintiffs have standing—not whether academics can ever have standing. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (the standing inquiry "requires"

"ascertain[ing] whether the particular plaintiff is entitled to an adjudication of the particular claims asserted" and for "each form of relief sought").

No case suggests that Plaintiffs' cursory and conclusory assertion of "acute damage to academic freedom," Opp. 2, suffices.  In *Pernell v. Florida Board of Governors of the State University System* (cited at Opp. 1), the plaintiffs challenged a statute that banned professors from expressing certain viewpoints, and they specifically alleged that their intended conduct would violate the statutory regulations and thus expose them to discipline by their universities.  641 F. Supp. 3d 1218, 1250-61 (N.D. Fla. 2022).  In other words, the plaintiffs alleged that they faced imminent discipline caused by the defendant.  Here, Plaintiffs do not contend that they will suffer any concrete and particular imminent harm caused by Penn.  Likewise, in *Jackson v. Wright* (cited at Opp. 2), the plaintiff alleged a concrete, particularized, and ongoing injury—that the defendant was prohibiting his publication of certain scholarship.  82 F.4th 362, 369 (5th Cir. 2023).  The other cases Plaintiffs cite (at Opp. 2) are about public access to judicial records, where the asserted injury—denial of that access—had already occurred.  They do not support standing based on a speculative harm to academic freedom posed by the conduct of a third party, as Plaintiffs allege.

Plaintiffs concede their argument is speculative, but advocate for a relaxed pleading standard, inventing a rule that essentially says if plaintiffs lack a factual basis for their claims, Article III of the U.S. Constitution does not apply.  *See* Opp. 4-7.  That is not the law.  *See* Mot. 6-11. Standing is an "irreducible constitutional minimum," and as the party who seeks to "invok[e] federal jurisdiction," it is Plaintiffs' burden to clearly allege enough facts to establish that any injury is certainly impending.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  None of the cases Plaintiffs cite (at Opp. 5-7) relaxes the Article III pleading burden because plaintiffs filed suit before they had enough facts to clearly plead *their own* injury–indeed, not one concerns

2

standing. It is of course true that the "manner and degree of evidence required at the successive stages of the litigation" affects the weight of Plaintiffs' burden, but they "must have standing at all stages of the litigation" to proceed before this Court—including at the pleading stage. *Public Int. Rsch. Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997).

Plaintiffs' argument that the Court cannot consider the "inferential leaps" on which the Complaint relies without "deciding disputed fact issues," Opp. 3-4, also fails. It is well established that this Court should "not accept as true unsupported conclusions and unwarranted inferences" at the pleading stage, *Finkelman v. National Football League*, 810 F.3d 187, 202 (3d Cir. 2016), and *Clapper* (which Plaintiffs ignore entirely) forecloses their attempt to soften their pleading standards by speculating as to what might happen. *See Clapper*, 568 U.S. at 411 (no standing where plaintiffs "merely speculate and make assumptions" as to what might happen); *Parker v. Governor of Pennsylvania*, 2023 WL 5814603, at *2 (3d Cir. Sept. 8, 2023). Standing is a question of law, and Plaintiffs' speculative theory of injury renders their claims ripe for dismissal. *See, e.g.*, *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (granting motion to dismiss because plaintiffs' standing "contentions rely on speculation" and listing the various conjectures necessary for them to have suffered a cognizable injury); Mot. 9.

Nor can Plaintiffs overcome their burden at this stage by arguing that their speculation entitles them to discovery to resolve a "fact issue" about the nature of Penn's compliance with the House Committee on Education and the Workforce's (HEW) request. Opp. 4. "[F]ederal courts will not 'unlock the doors of discovery' for a fishing expedition based on a plaintiff's speculative assertions." *Changizi v. Dep't of Health & Hum. Servs.*, 82 F.4th 492, 498 (6th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)); *see also Zuk v. Eastern Pennsylvania Psychiatric Inst. of Med. Coll. of Pennsylvania*, 103 F.3d 294, 299 (3d Cir. 1996) ("[D]iscovery is not intended

3

as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it[.]"). Further, Plaintiffs' baseless representations about the declaration of the undersigned counsel (at Opp. 4) are also inaccurate. Counsel attested to familiarity with the facts set forth in the declaration, Dkt. 29-2 ¶ 1, including the statements about the nature and extent of Penn's redactions, *id.* ¶ 4. In contrast, Plaintiffs allege nothing concrete about whether Penn's production implicates them at all. Plaintiffs must furnish more than "mere speculation" to allege imminent injury, *Clapper*, 568 U.S. at 410, and their opposition brief confirms that they have not done so. The Court should dismiss this lawsuit for lack of standing for injunctive relief.

### B. PFJP Independently Lacks Standing

Plaintiffs likewise fail to show that Penn Faculty for Justice in Palestine (PFJP) has standing. Plaintiffs ignore entirely Penn's argument that dismissal is warranted when an organization asserting the rights of its members fails to identify a member who will suffer specific harm. Mot. 11-13. "[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded." *Culley v. Cumberland Valley Sch. Dist.*, 2016 WL 775091, at *4 (M.D. Pa. Feb. 29, 2016). That concession alone requires dismissal of PFJP's claims. Nor can Plaintiffs assert PFJP's standing on a diversion-of-resources theory of organizational standing, as they suggest. Opp. 3 (citing *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 873 (9th Cir. 2022)). Plaintiffs have not alleged that PFJP has diverted resources or otherwise been harmed as an organization because of Penn's alleged compliance with HEW's information request. The Complaint suggests just that some of PFJP's members have been characterized as antisemitic or doxed by third parties (Compl. ¶¶ 91, 114); it alleges nothing about the effect of Penn's production on PFJP's efforts or resources. But "an organization's abstract concern with a subject that could be affected by an adjudication

4

does not substitute for the concrete injury required by Art. III." *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 (1976).

## II. Plaintiffs' Complaint Should Be Dismissed Pursuant To Rule 12(b)(6)

### A. Plaintiffs Still Have Not Pled That Penn Is A State Actor

Conscious that "Penn is a private actor," Plaintiffs seek a supposed "workaround" to their inability to plead the constitutional prerequisite that Penn is a state actor. Opp. 8, 11. The cases they cite are all factually inapposite.

Plaintiffs are wrong that *United States v. American Telephone & Telegraph Co.*, 551 F.2d 384 (D.C. Cir. 1976) and its "progeny" excuse them from the state action requirement. Opp. 7-9. Instead of responding to Penn's arguments about *AT&T* (*see* Mot. 14), Plaintiffs make the blatantly incorrect accusation that Penn committed a Rule 11 violation by ignoring the "*AT&T* line of cases." Opp. 8-9.[1] Fully to the contrary, Penn's brief discusses the decision at length (at Mot. 14) and distinguishes it. *AT&T* involved the executive branch's attempt to enjoin compliance with a congressional subpoena for national security reasons, and so is factually inapplicable here. Mot. 14. Moreover, Penn explained that Plaintiffs' reading of the case is inconsistent with all state action case law. *Id*.

Plaintiffs' argument that *Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020) relieves them of their burden to show state action is similarly unavailing. That case involved an attempt to prevent an accounting firm and banks from complying with congressional subpoenas on the basis

---

[1] Plaintiffs twice make meritless suggestions that Penn should be sanctioned under Rule 11. *See* Opp. 7, 9. As the Advisory Committee Notes to Rule 11's 1993 Amendments state, "the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." Fed. R. Civ. P. 11, advisory committee's notes to 1993 amendment. *See also Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 485 (3d Cir. 1987) (a court "may impose sanctions on its own initiative when the Rule is invoked for an improper purpose"); *Barley v. Fox Chase Cancer Ctr.*, 54 F. Supp. 3d 396, 408 (E.D. Pa. 2014) (granting cross-motion for sanctions under 28 U.S.C. § 1927 because the sanctions motions "offend Section 1927" and "were filed for the improper purpose of harassing the opponent by burdening her with a needless defense"). Because Plaintiffs are members of the Penn community and counsel represent that they have a small team, Opp. 7, Penn does not seek sanctions for their baseless Rule 11 assertions.

5

that the subpoenas lacked legislative purpose and violated the separation of powers. *Id.* at 857-58. There was no claim that the accounting firm and banks were violating Trump's constitutional rights. Here, this Court is being asked to find that Penn somehow violated Plaintiffs' constitutional rights, which requires showing that Penn was a state actor. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (U.S. Constitution); *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 620-21 (3d Cir. 1992) (Pennsylvania Constitution). Other district courts have recognized this critical distinction, correctly interpreting *Mazars* as a case about the limitations of *Congress's* investigative authority, not (as Plaintiffs urge) the limitations of the state action doctrine. *See, e.g.*, *Trump v. Twitter, Inc.*, 602 F. Supp. 3d 1213, 1224 (N.D. Cal. 2022).

Nor do Plaintiffs substantiate the contention that they "might be able to" prove state control of Penn. Opp. 8. Plaintiffs say that Penn "is certainly acting in concert with the Committee, and may even be symbiotic with it," Opp. 9, but they fail to clothe that naked legal conclusion with any plausible factual allegation. The law is clear that such a theory requires Plaintiffs to show that Congress has "exercised control over" Penn's production of documents such that Penn's production decisions "must in law be deemed that of [Congress]." *Kach v. Hose*, 589 F.3d 626, 648-49 (3d Cir. 2009). No facts to that effect are even alleged. Nor do Plaintiffs dispute that courts in this circuit reject efforts to convert a private entity's furnishing of information to the government into state action. *See, e.g.*, *Johnson v. TD Bank Nat'l Ass'n*, 2023 WL 2203572 at *1-2 (3d Cir. Feb. 24, 2023); Mot. 17-18. Instead, Plaintiffs cite inapposite cases finding state action for a private prison operating on behalf of the government (*Davis v. Wigen*, 82 F.4th 204, 209 (3d Cir. 2023)), and where an officer of the law "used his public authority" to seize property (*Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189-91 (3d Cir. 2005)). Those cases involve defendants exercising "right[s] having [their] source in [government] authority," *Davis v. Samuels*, 962 F.3d

6

105, 112 (3d Cir. 2020), and do not suggest Plaintiffs "might be able," Opp. 8, to show state action where they merely allege Penn cooperated with a request from a committee investigating it. *See McCauley v. Computer Aid Inc.*, 447 F. Supp. 2d 469, 473-74 (E.D. Pa. 2006) ("[T]he fact that compliance with federal law motivated Defendants to terminate the Plaintiff is insufficient to establish them as federal actors[.]"), *aff'd*, 242 F. App'x 810 (3d Cir. 2007).[2]

### B. Plaintiffs Still Have Not Adequately Pled Either Retaliation Or Viewpoint Discrimination Under The First Amendment

Plaintiffs' opposition fails to rescue their claim that Penn's cooperation with HEW's information request is retaliation and viewpoint discrimination in violation of their First Amendment rights. *See* Compl. ¶¶ 131-133. Their only defense of their viewpoint discrimination claim is that "[t]he Committee is 'taking sides by promoting pro-Israeli political speech over pro-Palestinian political speech.'" Opp. 11 (quoting Compl. ¶ 38). This argument has nothing to do with whether *Penn* has restricted speech in a manner that targets a specific viewpoint, as Plaintiffs must show. *See Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829-30 (1995); *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001).

Plaintiffs have backed away from their factually unsupported theory that Penn's cooperation with HEW is "an act of retaliation for protected speech." Compl. ¶ 132. Instead, they now advance a different, but equally untenable, claim that Penn is retaliating by censoring on-campus expression. Opp. 10 (citing Compl. ¶¶ 93, 113). First, they argue cursorily that Penn and other universities have fired or sanctioned members based on "do[x]ing evidence." Opp. 10. If Plaintiffs have a grievance with other universities, they may challenge those decisions with the

---

[2] To the extent Plaintiffs attempt to style their suit into a *Bivens*-like action (*see* Opp. 8-9), they fail to show not only state action, but also that *Bivens* liability extends to a supposed deprivation of rights caused by an employer's response to a congressional request. *See Egbert v. Boule*, 596 U.S. 482, 499 (2022) ("[T]here is no *Bivens* action for First Amendment retaliation."); *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020) ("separation-of-powers principles" are "central to" whether to extend *Bivens* liability to new claim) (cleaned up).

relevant universities. But neither the Complaint nor the opposition identifies any individual that Penn fired (let alone any Plaintiff that Penn fired). Likewise, they fail to connect so-called "doxing evidence" with a retaliation claim. Second, Plaintiffs argue that Penn retaliated against Fakhreddine for her work on the Palestine Writes Literature Festival and her scholarship because she has been "excluded" from meetings, had emails "censored," and her "co-sponsorship of events canceled." Opp. 10 (citing Compl. ¶ 93). These general allegations lack the requisite specificity to state a viable claim, and the Complaint is devoid of facts substantiating the claim that her work on the festival and scholarship was "a substantial or motivating factor for" these alleged acts. *Conard v. Pennsylvania State Police*, 902 F.3d 178, 183 (3d Cir. 2018) (cleaned up). Rather, the Complaint alleges that despite wide criticism of the festival, it was still "held at Penn" and "co-sponsored by several Penn departments." Compl. ¶ 68. Penn received considerable criticism for allowing that independent festival to take place; Plaintiffs' argument that Penn has somehow denied their academic freedom because of it is stunning. In any event, it is not retaliation.[3]

### C. Plaintiffs Still Have Not Adequately Pled A Privacy Claim Under The Fourteenth Amendment Or Pennsylvania Constitution

Plaintiffs' opposition does not point to any facts supporting the claim that Penn's production of documents to HEW burdens their Fourteenth Amendment privacy rights. They assert that their privacy claim is "similar to" allegations in a different case involving "personnel files" with "intimate and private" information. Opp. 11 (citing *Yarnall v. Philadelphia Sch. Dist.*, 2013 WL 1389757, at *8 (E.D. Pa. Apr. 4, 2013)). The "similarity" is certainly not discernible from anything in their Complaint, which does not allege Penn is producing Plaintiffs' "personnel

---

[3] Fakhreddine's additional allegations of censorship submitted in support of her preliminary injunction cannot be considered on a motion to dismiss. Dkt. 20-3. In any event, they fail to provide the necessary causal link between her work on Palestine Writes in September 2023 and past scholarship and incidents in her department in spring 2024. *See Pollock v. City of Philadelphia*, 403 F. App'x 664, 668 (3d Cir. 2010) (no causal link between the protected activity and the alleged retaliation where "approximately six weeks elapsed" between the two).

files" or "intimate and private" information; it merely alleges Penn is producing the findings of disciplinary processes, attendance at public events, and public posts on Penn's social media. Compl. ¶¶ 53, 134-136; *see also* Mot. 21-22. Except for Penn's findings in disciplinary proceedings, these materials are public and thus not "intimate and private." And as Plaintiffs do not allege they have been subject to discipline, they have not shown that Penn's disciplinary findings could implicate their private information.

In support of their Pennsylvania Constitution privacy claim, Plaintiffs simply quote the pleading standard, without explaining how they possibly meet it. That standard, which requires them to show "a reasonable expectation" that *Penn*'s disciplinary findings in unidentified cases and information about public events and public social media posts "is of a personal nature," is not met here. *City of Harrisburg v. Prince*, 288 A.3d 559, 575 (Pa. Commw. Ct. 2023); *see* Opp. 11-12. As Penn demonstrated in its Motion, Plaintiffs have no viable privacy claim, and nothing in Plaintiffs' opposition contests Penn's arguments. *See* Mot. 22-23.

### D. Plaintiffs Fail To State A Breach Of Contract Claim

Finally, Plaintiffs' opposition does not justify allowing their breach of contract claims to advance. Plaintiffs attempt to cure the Complaint's deficiencies by adding allegations that Penn breached a provision of the Faculty Handbook's guidelines for Academic Freedom and Responsibility. *See* Opp 12. These allegations are not in their Complaint, and thus "cannot be considered for purposes of [Penn's] motion to dismiss." *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 925 (E.D. Pa. 2016). Even if Plaintiffs could rely on that provision, they fail to establish that it "gave rise to a duty owed [to them] and/or that this duty was in fact breached." *Kortyna v. Lafayette Coll.*, 2017 WL 1134129, at *21 (E.D. Pa. Mar. 27, 2017), *aff'd*, 726 F. App'x 934 (3d Cir. 2018). As Plaintiffs acknowledge, the provision states "tenure" is the "preeminent means" by which Penn fosters and protects academic freedom, Opp. 12, but Plaintiffs have not alleged Penn

terminated them because of speech related to their scholarship (or even that Penn might do so). Nor have they plausibly alleged that Penn's response to HEW's requests relates to their employment status or otherwise imposes restrictions on their scholarly work.

The cases Plaintiffs cite only highlight the insufficiency of their allegations. Opp. 12. In *Tannous v. Cabrini University*, the complaint identified specific provisions of the faculty handbook that promised continued employment consistent with academic freedom and alleged the university breached that promise by terminating Tannous for antisemitic tweets. *See* 2023 WL 6465842, at *7-8 (E.D. Pa. Oct. 4, 2023). That case is distinguishable because the breach of contract claim survived in large part because the motion to dismiss was based on a version of the handbook the court could not consider undisputedly authentic. *Id.* In any event, Plaintiffs come nowhere close to making a similar showing here where no Plaintiff has been terminated and there is no comparable provision of the handbook that has been breached. And as Tannous relied on an explicit provision of his alleged contract with the university, that case does not support Plaintiffs' claim that Penn violated a supposed "implied obligation of good fair and fair dealing" (which is not in their Complaint). *See also David v. Neumann Univ.*, 187 F. Supp. 3d 554, 560-61 (E.D. Pa. 2016) (no implied duty of good faith and fair dealing where the plaintiff "failed to identify a specific contractual duty"). Nor is *Hickey v. University of Pittsburgh* (Opp. 12) analogous. That case found that students reasonably alleged that access to in-person classes was part of their agreement to pay tuition in exchange for matriculation, which their school's failure to refund payments during the pandemic breached. 77 F.4th 184, 194 (3d Cir.) *amended & superseded*, 81 F.4th 301 (3d Cir. 2023). Here, Plaintiffs fail to point to any agreement that implicates Penn's response to HEW, let alone allege that Penn's response breaches any promise Penn made to them.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: June 6, 2024                                            Respectfully submitted,

/s/ David Gringer
David Gringer (*pro hac vice*)
Alan Schoenfeld (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8864
Facsimile: (212) 230-8888
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Seth P. Waxman (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
seth.waxman@wilmerhale.com

Sean V. Burke
Jason G. Canavan
Office of General Counsel
University of Pennsylvania
FMC Tower at Cira Centre South
2929 Walnut Street, Suite 400
Philadelphia, PA 19104-5099
Telephone: (215) 746-5254
Facsimile: (215) 746-5222

*Attorneys for Defendant University of Pennsylvania*

11

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on June 6, 2024, a true and correct copy of the foregoing Defendant's Reply in Support of Defendant's Motion to Dismiss the Complaint with Prejudice was filed electronically through the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: June 6, 2024

Respectfully submitted,

*/s/ David Gringer*
David Gringer