IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HUDA FAKHREDDINE et al.,** | |
| *Plaintiffs*, | Civil Action |
| v. | No. 24-cv-1034 |
| **THE UNIVERSITY OF PENNSYLVANIA,** | |
| *Defendant*. | |

### MEMORANDUM OPINION

**GOLDBERG, J.**                                                                                    **June 24, 2024**

An association of faculty and students of the University of Pennsylvania ("Penn"), calling themselves Penn Faculty for Justice in Palestine, as well as two named Penn professors Huda Fakhreddine and Troutt Powell, have sued Penn to stop it from complying with a request for documents from a committee of the United States House of Representatives. Plaintiffs have moved for an interim order prohibiting Penn from sending documents to the House while this lawsuit progresses. Penn has moved to dismiss Plaintiffs' lawsuit for lack of standing and for failure to state a claim upon which relief can be granted.

For the reasons discussed below, I agree with Penn that Plaintiffs lack standing to bring this lawsuit, and I will therefore dismiss Plaintiffs' complaint and deny their motion for a preliminary injunction. However, Plaintiffs will be given leave to file an amended complaint if, in good faith, they can allege facts to support standing.

1

I.  **FACTS**

The following facts are taken from the complaint and viewed in the light most favorable to Plaintiffs:

Plaintiff Huda Fakhreddine is a Penn professor of Arabic literature who, in September 2023, organized an event at Penn called the Palestine Writes Literature Festival. On December 5, 2023, Penn's former President Elizabeth Magill testified before the House Committee on Education and the Workforce ("House Committee"), where Committee members questioned her about Fakhreddine's teaching and the Palestine Writes Literature Festival, demanding to know "why [Fakhreddine] was still employed at Penn." Magill resigned as Penn's president four days later. (Compl. ¶¶ 2, 6, 9, 48-49, 52, 68.)

On January 24, 2024, the House Committee sent a letter to Penn expressing the Committee's "grave concerns regarding the inadequacy of Penn's response to antisemitism on its campus."[1] The letter consists of a narrative of events followed by a request for documents. It mentions the Palestine Writes Literature Festival, which it states included "antisemitic speakers," and criticizes Fakhreddine by name for her statements about Israel. (Letter at 1, 5-6.) The letter's request for documents includes 25 numbered items that seek, among other documents, those regarding "disciplinary … processes," the Palestine Writes Literature Festival, and various Penn-affiliated organizations and events. (Letter at 9-13.) The letter is not a subpoena and does not legally compel Penn to produce documents. Nonetheless, Penn has indicated it will honor the Committee's request. (Compl. ¶ 7.)

---

[1] Plaintiffs described the House Committee's letter in their complaint without attaching it as an exhibit, but later attached the letter to their motion for a preliminary injunction. (ECF No. 20-2.) Both parties reference the letter in conjunction with Penn's motion to dismiss and neither party has objected to the letter being considered as a "document integral to or explicitly relied upon in the complaint." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (emphasis deleted).

Plaintiffs object to Penn complying with the House Committee's request for documents, which they claim is an unfair effort to label their views on Israel antisemitic, an accusation Plaintiffs deny. Plaintiffs allege that following the December 5 hearing, they were "doxxed" (i.e., had their personal information posted online) and "received death threats, threats of violence, and hate speech directed at their nationality, ethnicity, gender, religion, and beliefs." Fakhreddine alleges she has been excluded from faculty meetings, had her emails "censored," and had her events canceled. Powell alleges she was doxxed and "received hundreds of threatening and hateful emails." (Compl. ¶¶ 5, 9-11, 92-94.)

Plaintiffs claim that if Penn produces documents to the House Committee, it will "threaten" them with "a renewed and continued barrage of death and rape threats and hate speech," and could expose "members of [Penn Faculty for Justice in Palestine] who have not previously been doxxed." (Compl. ¶ 119.) Plaintiffs thus seek an order prohibiting Penn from complying with the House Committee's request. Plaintiffs' complaint does not identify the documents or information they believe Penn will produce. In particular, Plaintiffs do not allege whether documents Penn plans to produce would include their personal contact information such as home addresses.

Plaintiffs have moved for interim relief enjoining Penn from producing documents while this litigation progresses.

## II. LEGAL STANDARD

### A. Motion to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Conclusory allegations do not suffice. Id. Twombly and Iqbal's plausibility

3

standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. Plausibility requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim." Phillips v. Cty. Of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). In considering a motion to dismiss under Rule 12(b)(6), factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor. Shorter v. United States, 12 F.4th 366, 371 (3d Cir. 2021).

### B. Motion for a Preliminary Injunction

"Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." Kos Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (quotation marks omitted). To obtain a preliminary injunction, a party must show four things: (1) the party is likely to succeed on the merits of the case; (2) irreparable harm will result if the injunction is not granted; (3) the balance of equities favors an injunction; and (3) the injunction is in the public interest. Id.

## III. DISCUSSION

The doctrine of "standing" limits the ability of bystanders to sue over conduct directed at others. Public Interest Research Group v. Powell Duffryn Terminals, 913 F.2d 64, 72 (3d Cir. 1990). To bring a lawsuit, a person must have a "personal stake in the outcome of the controversy." Warth v. Seldin, 422 U.S. 490, 498 (1975). A "sincere legal, moral, ideological, [or] policy objection[]" to the defendant's conduct is not enough. FDA v. All. for Hippocratic Med., No. 23-235, 2024 WL 2964140, at *14, Slip Op. at 24 (U.S. June 13, 2024). This restriction prevents the federal courts from being used as a forum to air "generalized grievances." United States v. Richardson, 418 U.S. 166, 174 (1974). For example, in TransUnion LLC v. Ramirez, 594 U.S. 413 (2021), a class of plaintiffs sued TransUnion because it had inaccurately listed them as national

security threats. Id. at 419-20. Plaintiffs whose credit reports had been shared with third parties had standing to sue because the information shared was defamatory. Id. at 432. But plaintiffs whose credit report had not been shared lacked standing because they had suffered no harm. Id. at 438.

Special rules apply when a person brings a lawsuit based on possible future harm, which must be "actual or imminent," "certainly impending," and not "speculative." Reilly v. Ceridian Corp., 664 F.3d 38, 42 (3d Cir. 2011). For example, in Clapper v. Amnesty International, 568 U.S. 398 (2013), a group of lawyers and journalists were denied standing to sue over government surveillance because it was "speculative" whether their own communications would be intercepted. Id. at 410.

In some circumstances, publishing information about a person can provide standing to sue, such as where the information "would subject the victim to hatred, contempt, or ridicule," "cause[] mental suffering, shame or humiliation," or expose the victim to criminal conduct like identity theft. Clemens v. ExecuPharm Inc., 48 F.4th 146, 152 (3d Cir. 2022) (alterations omitted). But where the information disclosed is not harmful, a person does not have standing merely because the information is about them or mentions them personally. See Reilly v. Ceridian Corp., 664 F.3d 38, 43 (3d Cir. 2011). For example, in Reilly, the plaintiffs lacked standing to sue over a data breach because it was speculative whether the breached information would ever be used to steal their identities. Id. at 42.

Here, Plaintiffs are suing to stop Penn from sending documents to the House Committee. Plaintiffs have not been called before the House Committee themselves, nor do they allege Penn will do anything to harm them directly. Instead, Plaintiffs claim they have standing to sue because Penn might produce documents that could subject them to public harassment.

I conclude Plaintiffs lack standing to bring this challenge. They have not alleged what information Penn will disclose or how it will harm them. While the House Committee's letter does mention Plaintiff Fakhreddine by name and thus could suggest that some produced documents might be about her, there is no allegation that those documents would contain defamatory statements or reveal private details such as her home address. See Clemens, 48 F.4th at 152 (describing situations where disseminating information about a person confers standing). The fact that Plaintiffs were harassed before is not enough; Plaintiffs need to show that Penn's documents would contribute to that harassment. See Already, LLC v. Nike, Inc., 568 U.S. 85, 98 (2013) (holding plaintiff lacks standing "merely on the basis of being 'once bitten.'"). As in Clapper, Plaintiffs need more specific allegations of harm before they can bring this lawsuit.

Plaintiffs complain they should not have to allege what only Penn knows—namely, what documents Penn intends to send to the House Committee.[2] Plaintiffs rely on authority holding that the special rules for pleading fraud claims may be relaxed "where the factual information is peculiarly within the defendant's knowledge or control." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997). However, this is not a fraud case, and the requirement to allege a factually supported claim applies to all cases. Iqbal, 556 U.S. at 686-87. Thus the law places the burden on the person invoking the court's jurisdiction to allege facts supporting standing, and does not require the opposing party to allege facts refuting standing. See Fed. R. Civ. P. 8(a)(1). For example, in Clapper, the plaintiffs were denied access to court because they could not say whether any communications the government might intercept would be their own, even though they "ha[d] no actual knowledge of the Government's … targeting practices." 568 U.S. at

---

[2] Penn represents it has redacted personally identifiable information from the documents it has produced so far. (ECF No. 29-2 ¶ 4.) Plaintiffs object to considering this representation because a motion to dismiss is limited to the pleadings.

411. Therefore, Plaintiffs here must come to court with "enough facts to raise a reasonable expectation that discovery will reveal evidence" of standing, which they have not done. See Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016) (quotation marks omitted). Plaintiffs' other cited cases are not analogous, as they either involve direct restrictions on the speech or conduct of the individuals suing,[3] restrictions on access to court documents,[4] or financial expenditure by the suing organization.[5]

For these reasons, Plaintiffs have not alleged facts sufficient to give them a personal stake in the outcome of this litigation, and their complaint will be dismissed for lack of standing. Where a plaintiff lacks standing, a federal court has no authority to enter an injunction. See City of Los Angeles v. Lyons, 461 U.S. 95, 102-03 (1983). Plaintiffs' motion for a preliminary injunction will be denied on that basis.

When a court grants a motion to dismiss, a "curative amendment" should normally be allowed unless it would be "inequitable or futile." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 174 (3d Cir. 2010). I will grant Plaintiffs leave to file an amended complaint, but remind their counsel that an amended complaint should only be filed if Plaintiffs can, in good faith, allege facts to support standing.

---

[3] Pernell v. Fla. Bd. of Governors of the State Univ. Sys., No. 22-cv-304, 2022 U.S. Dist. LEXIS 243016, at *8 (N.D. Fla. Nov. 22, 2022); Jackson v. Wright, 82 F.4th 362, 369 (5th Cir. 2023); Rumsfeld v. F. for Acad. & Institutional Rts., Inc., 547 U.S. 47, 52 n.2 (2006); Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury, 545 F.3d 4, 10 (D.C. Cir. 2008).

[4] Parson v. Farley, 352 F. Supp. 3d 1141, 1148 (N.D. Okla. 2018); SanMedica Int'l v. Amazon.com Inc., No. 13-cv-169, 2015 U.S. Dist. LEXIS 148775, at *7-10 (D. Utah Nov. 2, 2015).

[5] Mohamed Sabra v. Maricopa Cty. Cmty. Coll. Dist., 44 F.4th 867, 873 (9th Cir. 2022).

## IV. <u>CONCLUSION</u>

For the reasons set out above, Penn's motion to dismiss will be granted, and Plaintiffs' motion for a preliminary injunction will be denied.

An appropriate order follows.