# EXHIBIT A

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| | For Prothonotary Use Only (Docket Number) |
|---|---|
| **AUGUST 2024** | **02104** |
| E-Filing Number: 2408036018 | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| HILAH KOHEN | THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 5010 CATHARINE STREET PHILADELPHIA PA 19143 | 2929 WALNUT STREET PHILADELPHIA PA 19104 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| HUDA FAKHREDDINE | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 5010 CATHARINE STREET PHILADELPHIA PA 19143 | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 1 | ☐ Complaint  ☐ Petition Action  ☐ Notice of Appeal |
| | | ☒ Writ of Summons  ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less | ☐ Arbitration | ☐ Mass Tort | ☐ Commerce | ☐ Settlement |
| ☒ More than $50,000.00 | ☒ Jury | ☐ Savings Action | ☐ Minor Court Appeal | ☐ Minors |
| | ☐ Non-Jury | ☐ Petition | ☐ Statutory Appeals | ☐ W/D/Survival |
| | ☐ Other: | | | |

| CASE TYPE AND CODE |
|---|
| 2Z - MISC SUMMONS |

| STATUTORY BASIS FOR CAUSE OF ACTION |
|---|
| |

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|---|
| | **FILED** **PRO PROTHY** AUG 16 2024 | YES          NO |

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: HILAH KOHEN , HUDA FAKHREDDINE

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| SHAHILY NEGRON | 943 WASHINGTON STREET READING PA 19601 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (646)484-1491 | (347)814-1827 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 332842 | shahily@lawnegron.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| SHAHILY NEGRON | Friday, August 16, 2024, 11:11 am |

FINAL COPY (Approved by the Prothonotary Clerk)

Summons
Citacion

# Commonwealth of Pennsylvania
## COUNTY OF PHILADELPHIA

*Filed and Attested by the Office of Judicial Records 16 AUG 2024 13:11 am*

HILAH KOHEN and HUDA FAKHREDDINE,
                    :
*Plaintiff*
                    :
                    :
         vs.            :
THE TRUSTEES OF THE UNIVERSITY
OF PENNSYLVANIA,
                    :
*Defendant*

COURT OF COMMON PLEAS

_____Term, 20_____

No._____

To[1]

### THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA

2929 Walnut Street, Suite 400
Philadelphia, PA 19104

# Writ of Summons

You are notified that the Plaintiff[2]
*Usted esta avisado que el demandante*

### HILAH KOHEN and HUDA FAKHREDDINE

Has (have) commenced an action against you.
*Ha (han) iniciado una accion en contra suya.*

ERIC FEDER
*Director, Office of Judicial Records*

By: _____

Date:_____

10-208 (Rev. 3/20/24)

_____
[1] Name(s) of Defendant(s)
[2] Name(s) of Plaintiff(s)

Case ID: 240802104

IN THE COURT OF COMMON PLEAS OF
PHILADELPHIA CIVIL TRIAL DIVISION
-------------------------------------------------------------x

HILAH KOHEN and HUDA FAKHREDDINE,                    Civil Division

                                        Plaintiffs,           No:

                    -against-

THE TRUSTEES OF THE UNIVERSITY
OF PENNSYLVANIA,

                                        Defendants.
-------------------------------------------------------------x

Filed and Attested by the
Office of Judicial Records
16 AUG 2024 13:17 am

### MOTION FOR PRE-COMPLAINT DISCOVERY

Pursuant to Pa. R.Civ.P. 4003.8, Plaintiffs HILAH KOHEN, and HUDA FAKHREDDINE, by their counsel Shahily Negrón, Esq. file this motion.

This is an action for infringement of Plaintiffs privacy rights under the Pennsylvania and U.S. Constitutions, and breach of contract against the Defendant University. Plaintiffs are a student and faculty at the University, which is voluntarily and in bad faith releasing their confidential documents and files to the House Committee on Education and the Workforce, endangering Plaintiffs' privacy and personal security.

A writ of summons herein was filed on August 16, 2024.

Pursuant to Pa. R.Civ.P. 4003.8, Plaintiffs seek an order permitting pre-complaint discovery, on the grounds that "the information sought is material and necessary to the filing of the complaint and the discovery will not cause unreasonable annoyance, embarrassment, oppression, burden or expense to any person or party".

Plaintiffs seek disclosure of copies of all documents referring to or referencing them (even if redacted) produced to the House Committee.

Case ID: 240802104

Plaintiffs further request that they not be required by the Prothonotary to file their Complaint pursuant to Pa. R. Civ. P. 1037(a) until at least thirty days from the date of complete production of documents pursuant to this Order.

Wherefore, Plaintiffs HILAH KOHEN and HUDA FAKHREDDINE, respectfully request that this Honorable Court grant their Motion for Pre-Complaint Discovery pursuant to the Attached Order of Court.


Date:  August 16, 2024

_____

Shahily Negrón, Esq.
Attorney ID: 332 842
The Law Firm of Shahily Negrón, Esq.
d/b/a Negrón Law, LLC
943 Washington Street
Reading, PA 19601
Phone: (646) 484-1491
Fax: (347) 814-1827
Email: shahily@lawnegron.com

*Attorney for Plaintiffs*

2

IN THE COURT OF COMMON PLEAS OF
PHILADELPHIA CIVIL TRIAL DIVISION
------------------------------------------------------------x

HILAH KOHEN and HUDA FAKHREDDINE,                    Civil Division

                      Plaintiffs,          No:

       -against-

THE TRUSTEES OF THE UNIVERSITY
OF PENNSYLVANIA,

                      Defendants.
------------------------------------------------------------x

*Filed and Attested by the*
*Office of Judicial Records*
*16 AUG 2024 11:11 am*

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

## FOR PRE-COMPLAINT DISCOVERY

    Plaintiffs, a student and a faculty member at the University of Pennsylvania (Penn"),

bring this motion to take pre-complaint discovery of the University under Pa. R.Civ.P. 4003.8.

    Penn has disclosed confidential documents regarding Plaintiffs to the United States

House of Representatives Committee on Education and the Workforce (the "House Committee")

in response to a letter (the "Information Letter") requesting the voluntary production of materials

regarding Plaintiffs' First Amendment-protected activism and beliefs. Disclosure of these

documents, including complaints about faculty and student disciplinary files, exposes Plaintiffs

(as Penn knows and has been warned) to an inundation of death threats and hate speech.

Plaintiffs seek to review the documents referencing them which Penn has disclosed, in order to

include specifics in their complaint for violations of contract and of privacy against Penn.

### THE FACTS

#### The Plaintiffs

    Plaintiff Hilah Kohen is a graduate student at the University of Pennsylvania, and is a

Case ID: 240802104

Falk Fellow in Jewish Studies at Penn. Their research focuses on relationships between language learning and ethnonational identity, and is deeply connected with Jewish life and Jewish language activism. Kohn has been charged with several student conduct violations in connection with their First Amendment-protected speech and activism opposing Israel's genocide in Gaza, and supporting the Palestinian people. Kohen's student disciplinary files have by the student conduct office's admission, been provided to Penn counsel for production to the House Committee. Even if their name was redacted, anonymous Internet trolls utilizing information about locality, events and Kohen's academic work would make them easily identifiable and a target for threats and hate speech.

Plaintiff Huda Fakhreddine is a tenured professor at Penn, and a leading scholar of Arabic literature, whose work focuses on modernist movements or trends in Arabic poetry and their relationship to the Arabic literary tradition. Fakhreddine (but not the other Plaintiff) is also a plaintiff in a federal case relying on federal question jurisdiction regarding the Information Letter. Fakhreddine has been targeted by the House Committee, which has accused her of antisemitism and called for her to be fired. Fakhreddine as a result has already received death threats and hate speech to her personal and university accounts. The documents disclosed to the House Committee by Penn in violation of her contractual and privacy rights will further put her at risk of physical harm.

### The House Committee

The House Committee has eagerly assumed the role of a new House UnAmerican Activities Committee, investigating and castigating universities for their tolerance of any criticism of the nation-state, Israel, by students and faculty, on the theory, explicitly expressed by the Committee, that "anti-Zionism is antisemitism"-- a false and in fact patently unconstitutional

2

Case ID: 240802104

correlation under the First Amendment.

On December 5, 2023, the Committee held a hearing, to which it had summoned three university Presidents, including Penn's, Elizabeth Magill. That same day, the House passed Resolution 894 on anti-Semitism, which contains two statements which express a patent intention to violate the First Amendment rights of Americans. The first is a "Whereas" clause, "Whereas the International Holocaust Remembrance Alliance's working definition of antisemitism is widely accepted". The International Holocaust Remembrance Alliance ("IHRA") is an NGO which proposed its own private speech code, never intended to be enacted into law. The IHRA standards if legislated would patently violate the First Amendment; for example, they define as anti-Semitism the comparison of Israelis with Nazis, or the questioning of the right to a Jewish homeland, and even holding Israel to higher moral standards than other nations-- all of which, even if phrased in an upsetting, unpleasant way, are clearly political expression protected by the First Amendment.

Another statement in the resolution which is even more starkly violative of the First Amendment occurs near the end: "resolved, that the House of Representatives....clearly and firmly states that anti-Zionism is antisemitism". This grammatical English sentence is actually as ontologically, and even epistemologically absurd, as if the House resolved that Pi is 7.87 instead of 3.14, or that bananas are vegetables. Zionism is a political ideology, held by some Jewish people (as well as others) which includes both pragmatic, political and some asserted faith-based elements. Many of the founders of Zionism and, later, of the Israeli state, were secular individuals, such as Theodor Herzl, for whom the Old Testament and religious justifications had nothing to do with their desire to establish a Jewish state. Today, there are numerous Jewish people in America, and through-out the world, who are not Zionists, and some

3

of whom actively and publicly criticize Zionism. For example, there are groups of Hasidic Jews who consider themselves anti-Zionist and who even participate in pro-Palestinian demonstrations. Also, many members of Reform and Reconstructionist Judaism are not Zionists, and criticize the actions of the Israeli state towards Palestinians. Many other Jewish intellectuals, writers and critics have rejected an "Israel right or wrong" attitude and have publicly criticized Israel's treatment of Palestinians. The militant minority which believes that Israel can do no wrong, even when it drops 2,000-pound bombs on civilian areas, destroying 80% of housing, hospitals, schools and universities, and kills thousands of children, has no trouble categorizing Jews criticizing Israel as anti-Semitic themselves, self-hating, disturbed, marginal, and not really Jews. The House is in fact privileging a minority of the American Jewish population, not only over Arab Americans and all others criticizing Israel or supporting Palestinians-- the House is in fact privileging this militant minority over all Jewish Americans who do not share their views.

In its actions, the House is committing two textbook violations of the First Amendment, retaliation, and viewpoint discrimination. The House is, exactly as HUAC did in the 1950's, reaching out to chill, threaten and punish Americans whose views it disapproves. It is also taking sides by promoting pro-Israeli political speech over pro-Palestinian political speech, though both are First Amendment-protected.

It is hornbook law that a Congressional subpoena must serve a legitimate legislative purpose. (The House Committee is using the Information Letter in lieu of a subpoena.) Since the House cannot pass legislation stating that anti-Zionism is anti-Semitism or excluding criticism of Israel from the coverage of the First Amendment, the Information Letter serves no legitimate congressional purpose.

The House Committee is eagerly assuming the McCarthyesque role played by HUAC in

4

Case ID: 240802104

the 1950's.  The House Committee's adoption of the unconstitutional IHRA standards and of the improper and untenable proposition that anti-Zionism equals anti-Semitism, its eager use of the Information Letter to seek confidential information on students' and faculty's political views,  its apparent interest in exposure of its targets to harm and censure (making the House Committee a doxxing site itself), all characterize it as  a "rogue committee", off on an illegitimate and malicious mission of its own.

   The House Committee summoned President Elizabeth Magill of Penn to appear before it "voluntarily" on December 5, 2023, along with the Presidents of Harvard and MIT. At the hearing, Magill did her best to answer the House Committee members' malicious, insinuating, trick questions, many of which were based on the assumption that any political criticism of Israel is anti-Semitic.

   Magill, when asked insinuatingly whether pro-Palestinian speech violated Penn's student code of conduct, answered that such a determination would be "context dependent". This was in fact a good faith and honorable answer pursuant to the First Amendment and Penn's commitments regarding academic freedom. However, the House Committee in effect doxxed Magill, accusing her falsely of anti-Semitism, and bringing about a barrage of other voices demanding her resignation, including powerful billionaire donors holding right wing and pro-Israel views. Just four days later, Magill, unable to withstand this doxxing and relentless, hateful pressure, and unprotected by Penn's trustees, resigned as President of Penn.

   Also at the December 5 hearing, House Committee members Wilson and Banks both mentioned Plaintiff Fakhreddine, accusing her of antisemitism and demanding her termination.

### The Information Letter

   On January 24, 2024, the House Committee sent the Information Letter to Penn

5

demanding that it produce by February 7, sixteen categories of documents, including certain requests with  ten or eleven subcategories.   The Information Letter also mentions Plaintiff Fakhreddine by name, again accusing her of anti-Semitism.  Although the Information Letter is not a subpoena and has no legal compulsory effect, so that Penn would have been within its rights to protect the academic freedom and privacy of its community by refusing compliance, Penn has already produced documents in response.

Penn's voluntary compliance with the Information Letter violates Plaintiffs' privacy and their contracts with Penn.

Information Letter request #4 calls for "Documents sufficient to show the findings and results of any disciplinary processes, changes in academic status, or personnel actions by Penn toward Penn students, faculty, staff, and other Penn affiliates related to conduct involving the targeting of Jews, Israelis, Israel, Zionists, or Zionism since January 1, 2021".

Request #6 states: "All documents and communications relating to or reflecting sources of funding for Penn Students Against the Occupation, the Palestine Writes Festival, and the Freedom School for Palestine, including but not limited to university, departmental, faculty, and student organization funds, as well as foreign donations".  Requests #12 and 16 also call for information about Palestine Writes, an annual literary festival co-organized by Plaintiff Fakhreddine.

Request #7 calls for: "Documents sufficient to show findings and results of any disciplinary processes, changes in academic status, or personnel actions by Penn toward Penn students, faculty, staff, student organizations, and other Penn affiliates as a result of:  a. allegations of hate crimes, discrimination, bias, or harassment on the basis of religion, ethnicity, national origin, sex, sexual orientation, gender identity, and disability at Penn since January 1,

6

Case ID: 240802104

2021;   b. Reports of denial or disruption of access to safe and uninterrupted learning environments at Penn since January 1, 2021".

Request #16 states: "All documents and communications, including, but not limited to, those involving the Office of the President, Office of the Provost (including University Life), Division for Public Safety (including Penn Police Department), Penn Human Resources, and/or any other entities responsible for investigating and determining consequences for misconduct and violations of university standards, referring and relating to:....(c) Posts by Penn students, faculty, staff, and other Penn affiliates on Sidechat and other social media platforms targeting Jews, Israelis, Israel, Zionists, or Zionism;  (d)Anti-Israel protests at Penn, and any disruptions to education and student life related to them, since October 7, 2023, including but not limited to the October 16, 2023, protest, Palestine Freedom School, and December 3, 2023, protest".

Request #17 demands: "All documents and communications including, but not limited to, those involving the Office of the President, Office of the Provost (including University Life and its Office of Diversity, Equity, Inclusion, & Belonging), and/or any academic departments, programs, and centers, referring or relating to any efforts by Penn students, faculty, and staff to engage in the BDS movement against Israel since January 1, 2021, and communications by Penn administrators relating to such efforts".

Many other requests are for documents which (inappropriately) are likely to mention Plaintiffs, for example, Request #1 for "All reports of antisemitic acts or incidents" made to the President or General Counsel's office; and # 9, " All documents and communications since January 1, 2021, referring and relating to antisemitism involving the Office of the President and Office of the Provost". Although Plaintiffs are not antisemites and have committed no antisemitic acts, the IHRA Standards and Congress' phrasing of the Information Letter ensure that Penn will

7

Case ID: 240802104

disclose non-bigoted, First Amendment-protected criticism of Israel by Plaintiffs to the House Committee, which will then publicly, falsely and harmfully characterize them as antisemites.

Information Letter Requests #'s 4, 5 and 7 call for confidential student disciplinary files. Student disciplinary records are confidential information under the federal FERPA student privacy law, and cannot voluntarily be produced by Penn to any third party without the consent of the student. No attempt has been made to obtain such consent.

The student Plaintiff asked during their hearing with the student conduct office whether the files were being produced to the Committee. The Penn staff member conducting the hearing responded that all student disciplinary determinations were being sent to outside counsel for review and production pursuant to the Information Letter. Other students have been told the same.

Incidentally, FERPA requires notice to the student if records are sought via compulsory legal process such as a subpoena. Needless to say, the student Plaintiffs have received no such notice either.

Penn has produced documents about Plaintiffs to the House Committee. On February 27, 2024, the *Daily Pennsylvanian* reported that Defendant had begun sending documents to the House Committee. "[T]he University spokesperson told the DP that the process of transferring documents would last multiple weeks....A House education committee spokesperson confirmed to the DP that the committee has received documents and is currently reviewing them." Ethan Crawford, "Penn begins submitting documents to House education committee for antisemitism investigation", *The Daily Pennsylvanian* https://www.thedp.com/article/2024/02/penn-congress-house-education-workforce-investigation-submit-documents

Case ID: 240802104

### The Harm

In today's freakish, dangerous, McCarthyesque environment, private individuals including Plaintiffs, when unjustly accused of antisemitism for their criticism of Israel or pro-Palestinian activism, are deluged with death threats and hate speech to their university and personal email accounts. Penn itself is overwhelmed with emails to its staff and administration demanding that professors be fired and students be expelled. Some Penn staff have already been terminated as a result of this "doxxing" activity, and some students have been suspended or are facing expulsion.

Penn has a duty under the Pennsylvania and US constitutions, FERPA, and its student and faculty codes to protect its students' and faculty privacy. Instead, by its voluntary and wrongful cooperation, Penn is abandoning academic freedom and sacrificing the very people it should protect. It is as if a gang or mob said to Penn, "Push some people out the door for us to beat up", and Penn began pushing out the Plaintiffs.

### The Relief Requested

Plaintiffs seek copies of all documents referring or referencing them (even if redacted) produced to the House Committee. Since Penn has already prepared all such material for the House Committee, and has a file of everything it has produced, the production of this material will not be the least bit burdensome to Penn. Plaintiffs have a cause of action against Penn; access to documents will better help them determine the identity of any additional individual defendants, as well as to understand the full extent and nature of their damages and other relief to be sought.

9

## ARGUMENT

### This Court Should Grant the Motion for Pre-Complaint Discovery

231 Pa. Code § 4003.8 - Pre-Complaint Discovery states as follows: "(a) A plaintiff may obtain pre-complaint discovery where the information sought is material and necessary to the filing of the complaint and the discovery will not cause unreasonable annoyance, embarrassment, oppression, burden or expense to any person or party. (b) Upon a motion for protective order or other objection to a plaintiff's pre-complaint discovery, the court may require the plaintiff to state with particularity how the discovery will materially advance the preparation of the complaint. In deciding the motion or other objection, the court shall weigh the importance of the discovery request against the burdens imposed on any person or party from whom the discovery is sought."

Plaintiffs' motion meets these criteria. The Plaintiffs have a cause of action against Penn under the Pennsylvania and Federal constitutions and FERPA, and for breach of contract (including the covenant of good faith and fair dealing).

Defendant's Faculty Handbook, https://catalog.upenn.edu/faculty-handbook/, states in Section IIA, "Academic Freedom and Responsibility": "The University recognizes the importance of a system of tenure for faculty members as the preeminent means of fostering and protecting academic freedom in teaching and in scholarly inquiry....It is the policy of the University of Pennsylvania to maintain and encourage freedom of inquiry, discourse, teaching, research, and publication and to protect any member of the academic staff against influences, from within or without the University, which would restrict a member of the academic staff in the exercise of these freedoms in their area of scholarly interest". The House Committee, via its noncompulsory Information Letter, is exactly such "an influence... from...without the University", dangerous to Professor Fakhreddine's exercise of academic freedom in her area of

10

Case ID: 240802104

scholarly interest.

The Faculty Handbook uses the word "privacy" 82 times. Faculty personnel actions and grievances, which are among the documents requested by the House Committee, "require[] the highest level of sensitivity to the privacy of all concerned. Members of the Commission, members of panels, grievants, respondents, colleagues, witnesses and all other concerned parties have the professional obligation to maintain confidentiality with respect to oral and documentary evidence presented and deliberations occurring during the processing of grievances. [T]he report of a panel will be treated as confidential by all participants in a grievance hearing and by all members of the University community."

Penn's Student Handbook https://catalog.upenn.edu/pennbook/, in which the word "privacy" is used 52 times, states: "As a general rule, personally identifiable information from education records may not be disclosed to other parties without the student's prior written or electronic consent. Such consent shall be signed (on paper or using an appropriate electronic signature method) and dated and specify records or information to be disclosed, the purpose(s) of the disclosure, and the party or class of parties to whom disclosure may be made." As an exception to this obligation, Penn states: "To comply with a judicial order or lawfully issued subpoena provided that the University makes a reasonable effort to notify the student whose records are involved in advance of disclosing the information". The Information letter is not a subpoena or "judicial order"-- and Penn has made no effort to notify the students.

It seems ironic that Penn warns its students against violations of the very rules it itself is egregiously disregarding. On the section on the privacy and protection of electronically stored information, Penn warns that the illegal disclosure of student data may result in the following claims: "Defamation: Someone may seek civil remedies if they can show that they were clearly

11

Case ID: 240802104

identified as the subject of defamatory messages and suffered damages as a consequence....Common law actions for invasion of privacy: Someone may...seek civil remedies for invasion of privacy on several grounds....Public disclosure of private facts: the widespread disclosure of facts about a person, even when true, may be deemed harmful enough to justify a lawsuit....False light: a person wrongfully attributes views or characteristics to another person in ways that damage that person's reputation....Wrongful intrusion: the law often protects those areas of a person's life in which they can reasonably expect they will not be intruded upon".

Plaintiffs' Fourteenth Amendment personal privacy claim is similar to that asserted in *Yarnall v. Phila. Sch. Dist.,* No. 11-3130, 2013 U.S. Dist. LEXIS 48716, at *26 (E.D. Pa. Apr. 4, 2013) "[T]he information contained in the Plaintiffs' personnel files is intimate and private and within Plaintiffs' reasonable expectations of confidentiality. Plaintiffs' likewise had a reasonable expectation that Defendant would not needlessly share such information with co-workers or for the purpose of harassment"); *Brookins v. City of Phila.,* No. 24-470, 2024 U.S. Dist. LEXIS 78244, at *12 (E.D. Pa. Apr. 30, 2024)  ("The Fourteenth Amendment right to privacy shields individuals from unwarranted governmental intrusions into their personal lives [including] the right not to have intimate facts concerning one's life disclosed without one's consent"). Plaintiffs also assert their rights of privacy under the Pennsylvania Constitution which include a "comprehensive right to be left alone,...the interest in avoiding disclosure of personal matters and the interest in having independence to make certain kinds of important decisions...("[O]nly a compelling state interest will override one's privacy rights under the Pennsylvania Constitution");", *Allegheny Reprod. Health Ctr. v. Pa. Dep't of Hum. Servs.,* 309 A.3d 808, 889, 901 (2024); *Commonwealth v. Sell,* 470 A.2d 457, 467 (1983) ("This Court has not hesitated to interpret the Pennsylvania Constitution as affording greater protection...than the federal

12

Case ID: 240802104

Constitution").

In Pennsylvania, student records have strong privacy protection under both FERPA and the state Constitution, *Cent. Dauphin Sch. Dist. v. Hawkins*, 286 A.3d 726, 729 (2022) ("[S]chool bus surveillance video [was] an education record subject to FERPA"); *W. Chester Univ. of Pa. v. Rodriguez*, 216 A.3d 503, 511 (Pa. Commw. Ct. 2019) (Student emails; "Education records must be maintained in some way that preserves them and tracks requests for access to them, but placement within a single student's permanent file is not the only action that could constitute such maintenance....We appreciate that the University has raised, on appeal, the prospect that the instant case requires a balancing analysis to protect alleged constitutional privacy rights in the requested records"); *Maroof Haque v Swarthmore Coll.*, 2016 US Dist LEXIS 206033, at *1, n 1 (ED Pa June 23, 2016, No. 15-CV-1355) ("We agree, as do the parties, that disciplinary records of non-party student comparators fall under FERPA"); *Doe v Princeton Univ.*, 2020 US Dist LEXIS 121337, at *3-4 (DNJ July 10, 2020, No. 3:20-CV-4352-BRM-TJB) (citing cases nationwide which affirm privacy of student disciplinary records).

Pennsylvania law is definitive that private universities such as Penn are strictly bound, on a contract theory, by the promises they make in their codes, *Reardon v. Allegheny Coll.*, 926 A.2d 477, 480-81 (Superior Court 2007) ("The relationship between a privately funded college and a student has traditionally been defined in this Commonwealth as strictly contractual in nature....As such, we review the agreement between the parties concerning disciplinary procedures, contained within a portion of the student handbook.... as we would any other agreement between two private parties"); *Datto v. Thomas Jefferson Univ.*, No. 1573, 2007 Pa. Dist. & Cnty. Dec. LEXIS 457, at *9 (Common Pleas Court Dec. 21, 2007) (""[T]he relationship between a private educational institution and an enrolled student is contractual in nature;

13

Case ID: 240802104

therefore, a student can bring a cause of action against said institution for breach of contract where the institution ignores or violates portions of the written contract"); *PSI Upsilon of Phila. v. Univ. of Pa.,* 591 A.2d 755, 758 (1991), appeal denied, 528 Pa. 637 (1991) ("'T]he only caveat applied to this principle is that the disciplinary procedures established by the institution must be fundamentally fair"); *Boehm v. Univ. of Pa. Sch. of Veterinary Med.,* 392 Pa. Super. 502, 508 (Superior Court 1990) ("The case before us requires something more than an informal interview with an administrative authority of the college"); *Alpha Tau Omega Fraternity v. Univ. of Pa.,* 10 Phila. 149, 169 (Common Pleas Court Philadelphia County 1983) ("The proceeding before the Fraternity/Sorority Board did not comport with even the most minimal standards of fairness"); *Britt v. Chestnut Hill Coll.,* 429 Pa. Super. 263, 270 (Superior Court 1993) ("[W]here a college or university promises a student, upon enrollment, a certain amount of life experience credits, the purpose of which is to enable that student, to graduate at an accelerated rate, provided that he or she successfully completes the course chosen, the institution cannot breach its promise").

Some of the relevant case law has to do with Penn itself as a defendant, *Ferrer v. Trs. of the Univ. of Pa.,* 573 Pa. 310, 340 (2002) (applying Faculty handbook, including academic freedom provisions: "[A] breach of contract claim may be brought by a tenured professor when it is asserted that the University failed to comply with the procedures established by the parties' contractual agreement"); *Alpha Tau Omega Fraternity v. Univ. of Pa.,* 10 Phila. 149, 150 (1983) ("The University of Pennsylvania hearing did not comport with even the most minimal standards of fairness").

Case ID: 240802104

## Conclusion

The motion for pre-complaint discovery should be granted.

Date: August 16, 2024

_____
Shahily Negrón, Esq.
Attorney ID: 332 842
The Law Firm of Shahily Negrón, Esq.
d/b/a Negrón Law, LLC
943 Washington Street
Reading, PA 19601
Phone: (646) 484-1491
Fax: (347) 814-1827
Email: shahily@lawnegron.com

*Attorney for Plaintiffs*

15

Case ID: 240802104

IN THE COURT OF COMMON PLEAS OF
PHILADELPHIA CIVIL TRIAL DIVISION
------------------------------------------------------------x

HILAH KOHEN and HUDA FAKHREDDINE,                     Civil Division

                              Plaintiffs,                     No:

         -against-

THE TRUSTEES OF THE UNIVERSITY
OF PENNSYLVANIA,

                           Defendants.
------------------------------------------------------------x

**ORDER OF COURT**

     AND NOW this _____ day of _____ 2024, after consideration of Plaintiffs'

Motion for Pre-Complaint Discovery pursuant to Pa. R.Civ.P. 4003.8, it is hereby ORDERED,

ADJUDGED AND DECREED that Plaintiffs' Motion is Granted.

     Defendant THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA are

compelled to produce the following: Copies of all documents referring to or referencing

Plaintiffs (even if redacted) produced to the House Committee on Education and the Workforce.

     It is further ORDERED, ADJUDGED AND DECREED that these documents be

produced within thirty days from the date of this Order, and that the Defendant is precluded from

ruling Plaintiffs to file a Complaint pursuant to Pa. R.Civ.P. 1037(a) until at least the expiration

of thirty days from the date of compliance with this Order.

                                           _____ J

Case ID: 240802104