**THIS UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HUDA FAKHREDDINE, EVE TROUTT POWELL, and PENN FACULTY FOR JUSTICE IN PALESTINE, | |
| Plaintiffs, | No. 2:24-cv-01034 (MSG) |
| v. | **ORAL ARGUMENT REQUESTED** |
| THE UNIVERSITY OF PENNSYLVANIA, | |
| Defendant. | |

**PENN'S MOTION TO DISMISS
THE AMENDED COMPLAINT WITH PREJUDICE**

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION TO DISMISS ......................................................... 1

INTRODUCTION .............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

        A.    HEW's Document Requests ............................................................. 2

        B.    The Court Dismisses Plaintiffs' First Complaint ......................... 3

        C.    HEW's Recent Requests For Additional Information ................... 3

ARGUMENT ..................................................................................................................... 4

I.     Plaintiffs' Claims Still Fail For Lack Of Standing ............................................... 4

III.   Plaintiffs' Constitutional Claims Continue To Fail Because Penn Is Not A State
Actor And Plaintiffs Plead No Plausible Violation Of The U.S. And Pennsylvania
Constitutions .......................................................................................................... 9

        A.    Plaintiffs Still Do Not Adequately Plead That Penn Is A State Actor .................... 9

                1.    Plaintiffs do not plausibly allege Penn is exercising powers that are
traditionally the prerogative of the state ................................... 10

                2.    Plaintiffs do not plausibly allege Penn is acting in concert with
HEW or is a joint participant in HEW's activities ..................... 11

        B.    Plaintiffs Fail To State Plausible Claims Under The First And Fourteenth
Amendments And The Pennsylvania Constitution ................................. 13

                1.    Plaintiffs fail to plausibly allege Penn committed viewpoint
discrimination ............................................................................ 13

                2.    Plaintiffs fail to plausibly allege Penn retaliated against them ................. 14

                3.    Plaintiffs fail to state a plausible Fourteenth Amendment claim ................ 15

                4.    Plaintiffs fail to state a plausible claim under the Pennsylvania
Constitution ............................................................................... 16

III.   Plaintiffs Still Fail To State A Breach Of Contract Claim ................................ 17

IV.   Plaintiffs' New Conspiracy Claim Fails ........................................................... 19

CONCLUSION ................................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allegheny Reproductive Health Center v. Pennsylvania Dep't of Human Services*,
309 A.3d 808 (Pa. 2024) ........................................................................................16

*American Manufacturers Mutual Insurance Co. v. Sullivan*,
526 U.S. 40 (1999)..................................................................................................12

*Aulson v. Blanchard*,
83 F.3d 1 (1st Cir. 1996) .........................................................................................20

*Blum v. Yaretsky*,
457 U.S. 991 (1982)................................................................................................11

*Borse v. Piece Goods Shop, Inc.*,
963 F.2d 611 (3d Cir. 1992)......................................................................................9

*Brayboy v. Johnson*,
2018 WL 6018863 (E.D. Pa. Nov. 16, 2018) .........................................................20

*Cavaliere v. Duff's Business Institute*,
605 A.2d 397 (Pa. Super. Ct. 1992) ........................................................................17

*City of Harrisburg v. Prince*,
288 A.3d 559 (Pa. Commw. Ct. 2023) .............................................................16, 17

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)...............................................................................................6, 8

*Conard v. Pennsylvania State Police*,
902 F.3d 178 (3d Cir. 2018).....................................................................................15

*Cooper v. Muldoon*,
2006 WL 1117870 (E.D. Pa. Apr. 26, 2006) ..........................................................12

*David v. Neumann University*,
187 F. Supp. 3d 554 (E.D. Pa. 2016) .................................................................17, 18

*Farber v. City of Paterson*,
440 F.3d 131 (3d Cir. 2006)...........................................................................19, 20, 21

*Finkelman v. National Football League*,
810 F.3d 187 (3d Cir. 2016)......................................................................................14

*Fleck v. Trustees of University of Pennsylvania,*
   995 F. Supp. 2d 390 (E.D. Pa. 2014) .................................................................10

*Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia,*
   812 F.2d 105 (3d Cir. 1987)...............................................................................15

*Good News Club v. Milford Central School,*
   533 U.S. 98 (2001)............................................................................................13

*Griffin v. Breckenridge,*
   403 U.S. 88 (1971)............................................................................................19

*Gundlach v. Reinstein,*
   924 F. Supp. 684 (E.D. Pa. 1996), *aff'd*, 114 F.3d 1172 (3d Cir. 1997)................17

*Hammerhead Enterprises, Inc. v. Brezenoff,*
   707 F.2d 33 (2d Cir. 1983).................................................................................15

*Hart v. University of Scranton,*
   2012 WL 1057383 (M.D. Pa. Mar. 28, 2012).......................................................18

*In re Retreat Behavioral Health LLC,*
   2024 WL 1016368 (E.D. Pa. Mar. 7, 2024)...........................................................6

*Johnson v. TD Bank Nat'l Ass'n,*
   2023 WL 2203572 (3d Cir. Feb. 24, 2023)...........................................................12

*Kach v. Hose,*
   589 F.3d 626 (3d Cir. 2009)........................................................................9, 11, 12

*Karakozova v. Trustees of University of Pennsylvania,*
   2011 WL 1754468 (E.D. Pa. May 9, 2011) ..........................................................10

*Kortyna v. Lafayette College,*
   2017 WL 1134129 (E.D. Pa. Mar. 27, 2017), *aff'd*, 726 F. App'x 934 (3d Cir. 2018)...........18

*Lamb's Chapel v. Center Moriches Union Free School District,*
   508 U.S. 384 (1993)..........................................................................................13

*Los Angeles v. Lyons,*
   461 U.S. 95 (1983)..............................................................................................7

*Lugar v. Edmondson Oil Co.,*
   457 U.S. 922 (1982)............................................................................................9

*Lundy v. Hochberg,*
   91 F. App'x 739 (3d Cir. 2003) ............................................................................7

*Malleus v. George*,
    641 F.3d 560 (3d Cir. 2011)............................................................................15, 16

*Mark v. Borough of Hatboro*,
    51 F.3d 1137 (3d Cir. 1995)..................................................................................9

*McFadden v. Apple Inc.*,
    785 F. App'x 86 (3d Cir. 2019) ........................................................................20, 21

*McLaughlin v. Watson*,
    271 F.3d 566 (3d Cir. 2001)................................................................................14

*Mirabella v. Villard*,
    853 F.3d 641 (3d Cir. 2017)................................................................................14

*Missouri v. Biden*,
    83 F.4th 350 (5th Cir. 2023), *cert. granted sub nom. Murthy v. Missouri*, 144
    S. Ct. 7 (2023), *rev'd & remanded*, 144 S. Ct. 1972 (2024)....................................12

*Murthy v. Missouri*,
    144 S. Ct. 1972 (2024)....................................................................................6, 8

*Parker v. Wolf*,
    506 F. Supp. 3d 271 (M.D. Pa. 2020), *aff'd sub nom. Parker v. Governor of*
    *Pennsylvania*, 2021 WL 5492803 (3d Cir. Nov. 23, 2021) ......................................8

*Pik v. University of Pennsylvania*,
    2010 WL 3933275 (E.D. Pa. Oct. 7, 2010)..............................................................10

*R.C. Maxwell Co. v. Borough of New Hope*,
    735 F.2d 85 (3d Cir. 1984)..................................................................................14

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011)..................................................................................6, 7

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982).......................................................................................10, 11

*Robert S. v. Stetson School, Inc.*,
    256 F.3d 159 (3d Cir. 2001)................................................................................10

*Rogalinski v. Meta Platforms, Inc.*,
    2023 WL 7876519 (9th Cir. Nov. 16, 2023), *cert. denied*, 144 S. Ct. 1066 (2024)............13

*Rosenberger v. Rector & Visitors of University of Virginia*,
    515 U.S. 819 (1995)..........................................................................................13

*Shaughnessy v. Duke University*,
2020 WL 4227545 (M.D.N.C. July 23, 2020) ...........................................................................18

*Thomas v. Independence Township*,
463 F.3d 285 (3d Cir. 2006)...................................................................................................14

*Thorne v. Pep Boys Manny Moe & Jack Inc.*,
980 F.3d 879 (3d Cir. 2020)......................................................................................................7

*United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott*,
463 U.S. 825 (1983).................................................................................................................19

*Vuyanich v. Smithton Borough*,
2022 WL 207608 (W.D. Pa. Jan. 24, 2022)............................................................................11

*Watkins v. United States*,
354 U.S. 178 (1957).................................................................................................................12

*Watson v. Rozum*,
834 F.3d 417 (3d Cir. 2016)....................................................................................................15

**Statutes**

42 U.S.C. § 1985(3) ........................................................................................................19, 20, 21

## NOTICE OF MOTION AND MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Penn moves to dismiss the amended complaint.  Penn's Motion to Dismiss is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, and the declaration of David Gringer, dated September 30, 2024, and the exhibits attached thereto.

## INTRODUCTION

This Court granted Penn's motion to dismiss Plaintiffs' opening complaint because it was clear from the face of the complaint that Plaintiffs' claims all turn on speculation as to what *might* happen or what third parties *might* do.  Thus, they failed to plausibly allege that their claimed injury was "certainly impending."  The Court allowed Plaintiffs to file a curative amendment.  ECF No. 32 ("MTD Order") at 7.

Plaintiffs amended, but they cured none of the original complaint's deficiencies.  Instead, they added irrelevant tangents about McCarthyism and speculation about what third parties might do.  Missing from Plaintiffs' amended complaint is any semblance of a cognizable injury.

And even if the amended complaint plausibly alleged standing—and it does not—it suffers from the same flaws on the merits as the original complaint: Plaintiffs' constitutional claims all fail to plead state action and actual violations of the U.S. and Pennsylvania Constitutions; Plaintiffs' breach of contract claim fails to identify any contractual obligation Penn owed and which its production to HEW breached; and Plaintiffs' new conspiracy claim fails to adequately allege a conspiracy and disregards binding Third Circuit precedent shutting down Plaintiffs' only theory.  Plaintiffs' sole issue with Penn remains its decision to comply with HEW's investigation, and their claims all continue to turn irrevocably on their grievances and concerns with HEW's conduct.  Penn is not HEW and cannot be held responsible for what Plaintiffs fear it might do.

The issues Plaintiffs raise are important.  Penn—like other universities around the country—must navigate balancing core principles of academic freedom with its earnest commitment to ensuring that all members of its community are safe and can participate in university life.  And while it seems like everyone with a perspective on these debates has found their way to this federal court, these are not issues aided through the lens of civil litigation.  The Court should dismiss the amended complaint with prejudice.

## **BACKGROUND**

Plaintiffs are two Penn professors, Huda Fakhreddine and Eve Troutt Powell, and an alleged organization, Penn Faculty for Justice in Palestine, that purports to represent Fakhreddine, Troutt Powell, and other unspecified Penn faculty members, students, and staff.  ECF No. 35 ("AC") ¶¶ 9-11, 61.  They sued on March 9, 2024 over Penn's decision to cooperate with informational requests from HEW.

### A.      HEW's Document Requests

In late 2023, HEW started investigating how universities have responded to a rise in on-campus antisemitism.  On January 24, 2024, HEW sent Penn a letter demanding Penn's production of documents in response to 25 requests for information.  Ex. 1.[1]  Most of HEW's requests concern Penn's  policies and procedures, including how it handles oversight and compliance with Title VI's protections for shared national ancestry; what policies and guidelines are in place to ensure that all students, regardless of race, ethnicity, or national ancestry, have full access to Penn's renowned academic opportunities; and Penn's policies and procedures for handling disciplinary matters.

---

[1] Unless otherwise noted, "Ex." citations reference exhibits to the Declaration of David Gringer filed concurrently.

Penn has responded to some of HEW's information requests and, in doing so, Penn has affirmed its intent to comply with all legal obligations, including the privacy protections guaranteed to students under the Family Educational Rights and Privacy Act ("FERPA").

**B.      The Court Dismisses Plaintiffs' First Complaint**

On June 24, 2024, this Court granted Penn's motion to dismiss the original complaint for lack of standing.  The Court observed that "Plaintiffs lack standing to bring this challenge" because all they claim is that "Penn might produce documents that could subject them to public harassment."  MTD Order at 5-6.  The Court further observed that Plaintiffs "have not alleged what information Penn will disclose or how it will harm them," and while recognizing the possibility that "some produced documents might be about [Fakhreddine], … there is no allegation that those documents would contain defamatory statements or reveal private details such as her home address."  *Id*. at 6.  It then emphasized that "[t]he fact that Plaintiffs were harassed before is not enough; Plaintiffs need to show that Penn's documents would contribute to that harassment." *Id.*  The Court granted Plaintiffs leave to file an amended complaint, "remind[ing] their counsel that an amended complaint should only be filed if Plaintiffs can, in good faith, allege facts to support standing."  *Id.* at 7.  Plaintiffs filed their amended complaint on July 8, 2024.  ECF No. 35.

**C.      HEW's Recent Requests For Additional Information**

Since the dismissal of the original complaint, Penn has informed Plaintiffs' counsel of productions that might pertain to them.  In July 2024, HEW demanded that Penn remove redactions, other than those for student names, from its productions.  Penn has voluntarily cooperated with this demand, to the extent the request to remove redactions does not conflict with any laws or regulations (such as FERPA).  ECF No. 40 at 1 n.1; Gringer Decl. ¶ 6.  Penn promptly notified Plaintiffs in advance.  *See* ECF No. 40 at 1 n.1; Gringer Decl. ¶ 7.  HEW has also requested Fakhreddine's C.V., syllabi since the fall 2022 semester, course-wide correspondence for courses

since the fall 2023 semester, and communications since August 2023 regarding the Gaza Solidarity Encampment, Faculty for Justice in Palestine, and/or the Palestine Writes Festival.  ECF No. 41. Penn informed Plaintiffs' counsel, also in advance, that it intended to produce Fakhreddine's C.V.s and syllabi for courses since the fall 2022 semester, and asked if Fakhreddine would be willing to voluntarily provide other responsive materials for production.  *Id.*  Fakhreddine declined, and Plaintiffs requested emergency relief to prevent Penn from producing Fakhreddine's C.V. and syllabi.  *Id.*  On August 22, 2024, the Court held a telephonic hearing, heard from Plaintiffs, and rejected Plaintiffs' requested relief.  *See* Aug. 22, 2024 Hearing Tr. 7:22-24 ("I'm not going to change my mind and enjoin Penn from producing [Fakhreddine's] CV and syllabus."), 9:1-4 (similar), 10:2-3 (similar).

## **ARGUMENT**

### I.   **Plaintiffs' Claims Still Fail For Lack Of Standing**

Plaintiffs have cured none of the standing deficiencies identified by the Court.  Plaintiffs' theory of injury remains that *if* Penn's productions include any of their sensitive or confidential information, and *if* HEW does not maintain the confidentiality requested by Penn, some third parties like "Canary Mission and other hateful sites" (AC ¶ 136) *may* use those documents to harass them.  That theory is irredeemably speculative and does not even purport to allege wrongdoing *by Penn*.  It assumes without basis—and contrary to the facts of which Plaintiffs are aware—that Penn's productions include sensitive or confidential information, and it necessarily turns on what parties other than Penn might do.  The Court correctly rejected this theory in its June 24 ruling. *See* MTD Order at 6.  The Court granted leave to amend only if Plaintiffs could "in good faith … allege facts to support standing."  *Id.* at 7.  Plaintiffs did not even try to do so, and the case should be dismissed with prejudice.

*First*, Plaintiffs have not plausibly alleged that Penn has produced (or will produce) documents containing information that, if disclosed, would harm them.  In its prior order, this Court observed that Plaintiffs lacked standing because "[t]hey have not alleged what information Penn will disclose or how it will harm them.  While the House Committee's letter does mention Plaintiff Fakhreddine by name and thus could suggest that some produced documents might be about her, there is no allegation that those documents would contain defamatory statements or reveal private details such as her home address."  MTD Order at 6.  That remains the case.

Plaintiffs continue to claim that it is "impossible for Plaintiffs to know, at this stage of the case, and prior to discovery, what Penn has produced," AC ¶ 41, flouting the Court's earlier order rejecting the argument that Plaintiffs "should not have to allege what only Penn knows."  MTD Order at 6 (holding that "the burden on the person invoking the court's jurisdiction to allege facts supporting standing, and does not require the opposing party to allege facts refuting standing").  But in all events, as the Court recognized at the hearing on August 22, 2024, Penn has communicated with Plaintiffs' counsel regarding what it is producing.  Aug. 22, 2024 Hearing Tr. at 11:10-20.  Plaintiffs know Penn is redacting personal addresses and phone numbers.  *See* Gringer Decl. ¶ 7.  Plaintiffs also know that the documents Penn is producing are not defamatory.  Indeed, notwithstanding Plaintiffs' emergency request that the Court enjoin Penn's production of Fakhreddine's CV and syllabi to HEW, Fakhreddine herself has written that it would be HEW's "privilege to look through my CV, a record of which I am extremely proud.  As they comb through my syllabi, I can only hope they recognize the privilege of this invitation to the vast and generous world of Arabic poetry."  Gringer Decl., Ex. 2.

Plaintiffs openly quarrel with the Court's determination that they had not alleged the documents Penn will produce contain private details, arguing (incorrectly) that whether they allege

that Penn's productions will disclose personal contact information or personal details "is beside the point" and that "even if Penn's disclosures contained no personal contact information for Plaintiffs, … that would not affect or undermine Plaintiff;'s (sic) claims in any way."  AC ¶¶ 38-39, 48.  Plaintiffs' rejection of the Court's ruling concedes that they lack any good-faith basis to allege Penn's productions will harm them—confirming they lack standing and warranting dismissal with prejudice.

*Second*, Plaintiffs have not plausibly alleged any "certainly impending" injury arising from Penn's productions.  "[D]isclosure of personal information does not amount to injury-in-fact where there are no specific allegations that a plaintiff's personal information has been used in a way that caused harm or that such use is certainly impending."  *In re Retreat Behav. Health LLC*, 2024 WL 1016368, at *2 (E.D. Pa. Mar. 7, 2024).  Plaintiffs' refrain that disclosure *might* result in misuse of the information by third parties—whether HEW or other entities like "Canary Mission and other hateful sites," AC ¶ 136—cannot satisfy Plaintiffs' Article III obligations.

Just last Term, the Supreme Court reaffirmed courts' "reluctan[ce] to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment."  *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013)).  That principle is well established.  In *Clapper*, the Supreme Court rejected as "conjectural" assumptions about what third parties might do or how third parties might "exercise their discretion."  568 U.S. at 412.  And in *Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011), the Third Circuit found no standing to sue a payroll processing firm that was hacked after observing that plaintiffs could only speculate as to what the hacker might do with the information.  As explained there, "we cannot now describe how [plaintiffs] will be injured in this case without beginning our explanation with the word 'if': *if* the hacker read, copied, and

understood the hacked information, and *if* the hacker attempts to use the information, and *if* he does so successfully, only then will [plaintiffs] have suffered an injury." *Id.* at 43.  The same is true here: Plaintiffs could only conceivably suffer an injury in any way linked to Penn's conduct *if* Penn's productions include their personal and confidential information; *if* HEW declines to treat Penn's productions as confidential, even though Penn requested the same; *if* HEW either publishes the information or disseminates it to other third parties; and *if* those third parties use the Penn-produced documents to harass Plaintiffs.  Even if "[t]his chain of conceivable events poses some new non-zero risk" to Plaintiffs—and nothing in the amended complaint suggests as much—their "absolute chances of harm are miniscule." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 894 (3d Cir. 2020).

Lacking any plausible allegation that this chain of possibilities is likely to result, Plaintiffs instead point to past occurrences with no ties to Penn to bolster their allegations of future injury, but that argument likewise runs into settled precedent.  "[P]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983); *Lundy v. Hochberg*, 91 F. App'x 739, 743 (3d Cir. 2003) (same).  It is not enough for Plaintiffs to allege that they subjectively fear repetition of past harms; for standing purposes, "[i]t is the *reality* of the threat of repeated injury that is relevant … , not the plaintiff's subjective apprehensions." *Lyons*, 461 U.S. at 107 n.8.  The claim here is even weaker than in *Lyons* because none of the "past wrongs" here had ties to Penn or its conduct, and as a result Plaintiffs fear a reprisal of something that has not happened before (misuse of Penn-produced information to further third-party harassment claims).

In addition, to the extent Plaintiffs claim injury by pointing to any alleged "chill" of their constitutional rights (*see* AC ¶¶ 85, 176), it is well settled that they "cannot manufacture standing

merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Murthy*, 144 S. Ct. at 1995 (quoting *Clapper*, 568 U.S. at 416). "[B]oth the Supreme Court and Third Circuit have rejected such a theory of Article III injury-in-fact— where plaintiffs self-incur certain costs or injuries without a concrete showing that a violation of their rights is 'certainly impending,' there is no Article III standing." *Parker v. Wolf*, 506 F. Supp. 3d 271, 285 (M.D. Pa. 2020), *aff'd sub nom. Parker v. Governor of Pennsylvania*, 2021 WL 5492803 (3d Cir. Nov. 23, 2021).

Finally, even if Plaintiffs had alleged a plausible injury-in-fact (and they have not), their claim of standing would still falter for failure to satisfy the traceability or redressability requirements. "[T]he risk of future harm traceable to [Penn] is minimal," as "[i]t is 'no more than conjecture' to assume that" Penn's productions may cause third parties (including HEW) to "dox" Plaintiffs. *Murthy*, 144 S. Ct. at 1994. Plaintiffs admit that such "doxing" happened well before Penn produced any documents, substantially undermining their theory that future "doxing" can be traced to Penn's productions. *See* AC ¶¶ 79-80 (alleging that Fakhreddine "has already been 'doxxed' by [HEW]" independent of anything Penn has ever done); *id.* ¶¶ 129, 131 (alleging that Canary Mission "doxxed" Plaintiffs independent of anything Penn has ever done); *see also Murthy*, 144 S. Ct. at 1993 ("The failure to establish traceability for past harms … 'substantially undermines the plaintiffs' standing theory'" (quoting *Clapper*, 568 U.S. at 411)). And as to redressability, "it is a bedrock principle that a federal court cannot redress 'injury that results from the independent action of some third party not before the court.'" *Murthy*, 144 S. Ct. at 1986. But that is exactly what Plaintiffs seek here: a prevention of possible future harm caused by third parties and not Penn.

III. **Plaintiffs' Constitutional Claims Continue To Fail Because Penn Is Not A State Actor And Plaintiffs Plead No Plausible Violation Of The U.S. And Pennsylvania Constitutions**

Plaintiffs' free speech and privacy constitutional claims (*see* AC ¶¶ 171-83) continue to be implausible on the face of the amended complaint and should be dismissed. First, Plaintiffs have not adequately pled that Penn is a state actor, as they must for all three constitutional claims. Second, even assuming the Court could reach the constitutional claims, Plaintiffs have failed to state plausible claims under the U.S. Constitution and the Pennsylvania Constitution.

A. **Plaintiffs Still Do Not Adequately Plead That Penn Is A State Actor**

Plaintiffs' constitutional claims fail because Penn is a private actor and the U.S. and Pennsylvania Constitutions protect individuals from only *state* interference in free speech and privacy. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) ("Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State."); *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 620-21 (3d Cir. 1992) (Pennsylvania Constitution).

To state a plausible constitutional claim against Penn, Plaintiffs would have to allege facts sufficient to show that (1) Penn "has exercised powers that are traditionally the exclusive prerogative of the state"; (2) that Penn "has acted with the help of or in concert with state officials"; or (3) that "the [s]tate has so far insinuated itself into a position of interdependence with [Penn] that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995)). But nothing in the amended complaint plausibly suggests, as it must to find Penn to be a state actor, that Penn's production of records to Congress is an exercise of traditional state power or that Penn is acting in concert with HEW or as a joint participant in HEW's activities.

9

1.  **Plaintiffs do not plausibly allege Penn is exercising powers that are traditionally the prerogative of the state.**

Plaintiffs' amended complaint does nothing to cure their failure to allege that Penn is exercising powers that are traditionally the prerogative of the state under the first state-action test. Nor would they be able to cure that failure.  The test "imposes a 'rigorous standard' that is 'rarely … satisfied.'"  *Robert S. v. Stetson School, Inc.*, 256 F.3d 159, 164-66 (3d Cir. 2001) (private school was not a state actor even though it provided the same services to students who had difficulty completing public school that a state agency was required by law to provide); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 839-43 (1982) ("That a private entity performs a function which serves the public does not make its acts state action.").  Courts in this circuit regularly find that Penn (like other private universities) is not a state actor.  *See, e.g., Karakozova v. Trustees of University of Pennsylvania*, 2011 WL 1754468, at *5 (E.D. Pa. May 9, 2011) ("The University of Pennsylvania is a private institution whose actions are not fairly attributable to the state and cannot be sued under section 1983." (cleaned up)); *Pik v. University of Pennsylvania*, 2010 WL 3933275, at *7 (E.D. Pa. Oct. 7, 2010) (dismissing plaintiff's constitutional claims because "Penn's challenged actions are … not fairly attributable to the State" (cleaned up)).[2]

Plaintiffs offer no reason to depart from the case law.  The amended complaint continues to focus not on Penn's conduct but on Congress' actions and larger (and irrelevant) issues plaguing the country and the world at large.  AC ¶¶ 16-47, 83-85, 86-127.  Plaintiffs' bare allegations that Penn has produced documents responsive to HEW's requests are not enough to establish state

---

[2] The exception that proves the rule is *Fleck v. Trustees of University of Pennsylvania*, 995 F. Supp. 2d 390 (E.D. Pa. 2014), where the court concluded that the conduct of the Penn Police Department was state action because "Pennsylvania law endows the Penn Police Department with the plenary authority of a municipal police department in the patrol-zone territory, once the 'exclusive prerogative' of the City of Philadelphia."  *Id.* at 402-03.  None of Plaintiffs' allegations comes close to the facts in *Fleck*.

action because producing documents is not an exercise of a traditional state power.  *Id.* at ¶¶ 117, 119, 156.  The involvement of governmental regulation or action alone does not convert private action into state action.  *See Blum v. Yaretsky*, 457 U.S. 991, 1011 (1982) (nursing homes were not performing exclusive state functions despite a state constitutional provision allowing the legislature to provide care for the needy); *Kach*, 589 F.3d at 647-48 (school security was not the exclusive province of the state even though state statute enabled targeted grants to schools to fund programs addressing school violence).  Private actors are also not held liable for alleged constitutional violations for acting "at the behest" of the state because that alone does not constitute the exercise of a power traditionally reserved to the state.  *See Vuyanich v. Smithton Borough*, 2022 WL 207608, at *4 (W.D. Pa. Jan. 24, 2022) (defendant tow truck subcontractor was not a state actor when it cleared vehicles "at the behest of law enforcement" because the "operation of tow trucks" is "not a function that is 'traditionally the exclusive prerogative of the state'" (citing *Kach*, 589 F.3d at 646)); *see also Rendell-Baker*, 457 U.S. at 842 (reasoning "[t]hat a private entity performs a function which serves the public does not make its acts state action").  Plaintiffs allege nothing to suggest that Penn's production of documents in response to a congressional request meets the rigorous threshold for conduct that is traditionally the exclusive prerogative of the state.

        **2.**       **Plaintiffs do not plausibly allege Penn is acting in concert with HEW or is a joint participant in HEW's activities.**

Nor do Plaintiffs allege enough to hold Penn liable on either of the two alternative grounds: "whether the private party has acted with the help of or in concert with state officials" or "whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."  *Kach*, 589 F.3d at 646 (cleaned up).  Under both tests, courts examine "whether the state has exercised control over the particular conduct that gave rise to the plaintiff's alleged constitutional deprivation" and whether

the state has "exercised coercive power" such "'that the choice must in law be deemed that of the State.'"  *Id.* at 648-49 (citation omitted).  Plaintiffs cannot meet either test.

As in other cases in this circuit, this Court should reject Plaintiffs' efforts to convert private entities' furnishing of information to the government into state action.  In *Johnson v. TD Bank Nat'l Ass'n*, 2023 WL 2203572 (3d Cir. Feb. 24, 2023), the Third Circuit found that TD Bank's decision to provide information to the police in aid of a criminal investigation was not enough to render it a state actor.  *Id.* at *1-2.  In *Cooper v. Muldoon*, 2006 WL 1117870 (E.D. Pa. Apr. 26, 2006), another court in this district found that "[m]erely calling the police, furnishing information to the police, or communicating with a state official does not rise to the level of joint action necessary to transform a private entity into a state actor."  *Id.* at *2.  This Court should not depart from those well-reasoned conclusions.  Finding that Penn's conduct here converted it into a state actor would threaten with constitutional litigation any private actor that complies with government investigations, which would cripple the vital function of legislative investigation.  *See Watkins v. United States*, 354 U.S. 178, 187 (1957) ("It is unquestionably the duty of all citizens to cooperate with the Congress in its efforts to obtain the facts needed for intelligent legislative action.").

Plaintiffs never actually allege that the government has exercised control over Penn's actions.  They allege the exact opposite: that *Penn* chose "voluntary compliance" rather than "refusing compliance."  AC ¶¶ 7-8, 56, 169.  It is well settled that action taken with "mere approval or acquiescence" of the government does not convert a challenged action into state action.  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).  Instead, Plaintiffs would have to show "entanglement in a party's independent decision-making or … direct involvement in carrying out the decision itself" such that the court "can fairly say it was the state's choice, not the private actor's," *Missouri v. Biden*, 83 F.4th 350, 375 (5th Cir. 2023), *cert. granted sub nom.*

*Murthy v. Missouri*, 144 S. Ct. 7 (2023), *rev'd & remanded*, 144 S. Ct. 1972 (2024), and Plaintiffs' bare allegations that HEW requested certain information from Penn in no way establishes that HEW is controlling Penn's response, *see, e.g.*, *Rogalinski v. Meta Platforms, Inc.*, 2023 WL 7876519, at *1 (9th Cir. Nov. 16, 2023) (Meta's flagging false information in posts was not state action where plaintiff alleged the government "flagg[ed] problematic posts" for Meta but did not allege the government did so with "any threat"), *cert. denied*, 144 S. Ct. 1066 (2024).

### B.  Plaintiffs Fail To State Plausible Claims Under The First And Fourteenth Amendments And The Pennsylvania Constitution

In any event, Plaintiffs fail to state plausible claims of viewpoint discrimination and retaliation under the First Amendment or of privacy violations under the Fourteenth Amendment and the Pennsylvania Constitution.

#### 1.  Plaintiffs fail to plausibly allege Penn committed viewpoint discrimination.

Plaintiffs' amended complaint does not, as it must for a viewpoint discrimination claim, allege that Penn restricted speech in a manner that targets a specific viewpoint. *See, e.g.*, *Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384 (1993) (holding that a school district could not forbid only views on family issues and child rearing that came from a religious perspective); *Rosenberger v. Rector & Visitors of University of Virginia*, 515 U.S. 819 (1995) (finding that the university's decision to deny funds to a student organization that published a newspaper with Christian editorial viewpoints amounted to viewpoint discrimination); *Good News Club v. Milford Cent. School*, 533 U.S. 98 (2001) (finding viewpoint discrimination where public school allowed nonreligious groups to meet at the school but excluded a Christian club).  Instead, Plaintiffs claim that Penn and HEW engaged in viewpoint discrimination by "privileging, protecting and endorsing pro-Israeli speech in the Penn academic community over pro-Palestinian speech," AC ¶ 177, through Penn's production of documents to HEW, *id.* ¶¶ 19, 24.  However,

HEW, not Penn, identified the subject matter of the demands. *See id.* ¶ 117. No other restriction is identified in Plaintiffs' amended complaint.

### 2. Plaintiffs fail to plausibly allege Penn retaliated against them.

Nor do Plaintiffs properly plead a retaliation claim, which requires that they allege: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Plaintiffs allege only that Penn has chosen to comply with HEW's requests for information. Nothing in the amended complaint supports an inference that Penn's compliance with HEW is an action directed toward them and their speech.[3] Instead, it directly acknowledges that any actions by Penn follow a history of compliance with HEW requests. *See, e.g.*, AC ¶¶ 110-14 (alleging Penn's former president agreed to appear before HEW and testify).

In any event, any compliance with congressional requests in no way amounts to the type of threat, coercion, or intimidation that would deter similarly situated individuals from engaging in expressive conduct. *See Mirabella v. Villard*, 853 F.3d 641, 650-51 (3d Cir. 2017) (retaliatory conduct is a "threat, coercion, or intimidation" that "intimat[es] that punishment, sanction, or adverse regulatory action will follow" (quoting *McLaughlin v. Watson*, 271 F.3d 566, 573 (3d Cir. 2001))); *see also R.C. Maxwell Co. v. Borough of New Hope*, 735 F.2d 85, 88 (3d Cir. 1984) (no censorship where the town council requested third party to remove plaintiff's billboards, because the council could only pursue "civil or administrative proceedings" against the third party); *see*

---

[3] The Third Circuit has "been careful to note that, even at the pleading stage, '[the Court] need not accept as true unsupported conclusions and unwarranted inferences.'" *Finkelman v. Nat'l Football League*, 810 F.3d 187, 202 (3d Cir. 2016).

*also Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33 (2d Cir. 1983) (letters from state official asking stores not to carry objectionable board game not coercive).

Plaintiffs also cannot plausibly allege that their "'constitutionally protected conduct was a substantial or motivating factor' for" Penn's production of documents, i.e., "the retaliatory conduct." *Conard v. Pennsylvania State Police*, 902 F.3d 178, 184 (3d Cir. 2018) (quoting *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016)).  Plaintiffs' theory—that Penn complied with the requests because "its trustees [were] off balance and frightened by the accusations of anti-Semitism," AC ¶ 7—refutes any suggestion that their expressive conduct was a motivating factor for Penn's production of documents.

### 3.      Plaintiffs fail to state a plausible Fourteenth Amendment claim.

To state a Fourteenth Amendment claim, Plaintiffs must make allegations concerning information over which they have a constitutionally protected privacy interest.  *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  Plaintiffs do not have a cognizable federal constitutional right over the documents Plaintiffs suggest Penn is going to share—documents relating to potential disciplinary investigations, attendance at public events, and public posts on Penn's social media, AC ¶¶ 24-29, 178-180.  In determining whether information is entitled to protection, courts look "at whether it is within an individual's reasonable expectations of confidentiality." *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105, 112-13 (3d Cir. 1987).  Recognizing that this is a stringent test, the Third Circuit has found three general types of information to warrant Fourteenth Amendment protection: sexual information, medical information, and some financial information.  *See Malleus*, 641 F.3d at 564-65.  In *Malleus*, the Third Circuit observed that the Fourteenth Amendment concerned itself with "intimate facts about oneself" and declined to find that the case implicated any cognizable privacy rights even though the plaintiff "may not have intended wide-dissemination of her opinion": "she

volunteered it to others," and "[t]he information was voluntarily shared, non-intimate (it was not related to sexuality, medical records, or financial information), an opinion rather than fact, and about someone else." *Id.*  The same is true here.

> 4.    **Plaintiffs fail to state a plausible claim under the Pennsylvania Constitution.**

Plaintiffs also fail to state a plausible claim that Penn disclosed any protected personal information in violation of the Pennsylvania Constitution.  The Supreme Court of Pennsylvania interprets the right of privacy under Article I, Section 1 "to contain at least two often overlapping interests: the interest in avoiding disclosure of personal matters and the interest in having independence to make certain kinds of important decisions." *Allegheny Reproductive Health Ctr. v. Pennsylvania Dep't of Hum. Servs.*, 309 A.3d 808, 901 (Pa. 2024).  Despite Plaintiffs' focus on HEW's request for the "findings and results" of disciplinary processes, AC ¶¶ 26, 158-65, 183, they have not alleged facts to support an inference that any of their confidential disciplinary records are being disclosed, as Plaintiffs are faculty and they allege only that *student* records are confidential, *id.* ¶ 157.[4]  In any event, none of the requests (including those relating to disciplinary results) even mentions personal information of the kind the Supreme Court of Pennsylvania has recognized as requiring protection: "among other things, names, addresses, social security numbers, and telephone numbers." *Allegheny Reproductive Health*, 309 A.3d at 902-03.  Moreover, privacy protections extend only to "an individual's reasonable expectation that the information is of a personal nature," *City of Harrisburg v. Prince*, 288 A.3d 559, 575 (Pa. Commw. Ct. 2023) (citation omitted), and by Plaintiffs' own description of the documents the House

---

[4]    Plaintiffs' cursory claim that Penn Faculty for Justice in Palestine is a "collective of faculty, students, staff, researchers, and graduate employees," AC ¶ 11, is not a sufficient basis to infer that any Plaintiffs are students whose disciplinary records might be at issue.  Plaintiffs fail to allege any information about PFJP's members and their interest in this lawsuit.

Committee supposedly requested about Plaintiffs, the information requested concerns public events, public statements, and public attendance, AC ¶¶ 24-29.  None of these qualifies as information over which an individual may have a "reasonable expectation that the information is of a personal nature." *City of Harrisburg*, 288 A.3d at 575.  There is no reasonable expectation of privacy when the information is public. *See id.*

## III.   Plaintiffs Still Fail To State A Breach Of Contract Claim

Plaintiffs' breach of contract claim should be dismissed because Plaintiffs still do not meet their burden to "identify the specific benefits [a plaintiff] was allegedly promised, the means by which he was promised them, and the manner in which Defendants allegedly reneged on those promises." *Gundlach v. Reinstein*, 924 F. Supp. 684, 689 (E.D. Pa. 1996), *aff'd*, 114 F.3d 1172 (3d Cir. 1997); *see also Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397, 401 (Pa. Super. Ct. 1992) (plaintiffs must allege "a specific contractual undertaking which was breached, clearly and directly resulting in at least some demonstrable damages").

*First*, Plaintiffs rely on Penn's statement on Academic Freedom and Guidelines on Open Expression, claiming that "[t]hese statements constitute serious, material, specific commitments made by Penn to its faculty members and students enforceable by law." AC ¶ 188.  But they again fail to "identify a specific contractual duty" Penn undertook, and thus fail to allege that Penn's productions to HEW have been in breach of any duty it owed to Plaintiffs.  *See David v. Neumann University*, 187 F. Supp. 3d 554, 559-61 (E.D. Pa. 2016) (where a plaintiff "fail[s] to identify a specific contractual duty" "the Court is unable to look at the University's actions or inactions to determine whether it has in fact adhered to those contractual duties").  Plaintiffs rely on purely aspirational language from the statements, such as Penn's "policy" is to "maintain and encourage freedom of inquiry, discourse, teaching, research, and publication" (Statement on Academic Freedom and Responsibility), and Penn "cherishes the concepts of freedom of thought, inquiry,

speech, and lawful assembly" (Penn's Guidelines on Open Expression).  *See* AC ¶¶ 186-87.  These indefinite statements of policies and values do not create contractual obligations.  *See David*, 187 F. Supp. 3d at 559-60 (determining that statements evincing school's general policy against harassment were not sufficiently definite to create an "affirmative, enforceable duty on the part of the University"); *Shaughnessy v. Duke University*, 2020 WL 4227545, at *5 (M.D.N.C. July 23, 2020) (finding that the university's policy on academic freedom could not "be the basis of a breach of contract claim" (citations omitted)).

*Second*, Plaintiffs do not show that any supposed duty owed to them was breached. Plaintiffs' complaint "must point to specific failures on the part of a university" to comply with the specified contract terms.  *Hart v. University of Scranton*, 2012 WL 1057383, at *3 (M.D. Pa. Mar. 28, 2012).  Plaintiffs' quoted provisions do not express any specific duty to Plaintiffs that prohibits Penn's cooperation with Congress' requests.  *See* AC ¶¶ 190-191 (alleging that by "cooperating with" Congress, Penn breached the "duties it assumed towards Plaintiffs"); *see also Kortyna v. Lafayette College*, 2017 WL 1134129, at *21 (E.D. Pa. Mar. 27, 2017) (dismissing breach of contract claims where professor failed to establish that cited sections of the Faculty Handbook "gave rise to a duty owed [to] him and/or that this duty was in fact breached"), *aff'd*, 726 F. App'x 934 (3d Cir. 2018).  Plaintiffs further allege that that Penn is purportedly "in derogation of academic freedom and its contractual duties to Plaintiff, and her Constitutional rights" by cooperating with Congress, AC ¶ 59, but fail to plausibly allege *how*.  Plaintiffs' continued failure to point to any contractual provision enforcing any duty on Penn to not cooperate with Congress' requests, and failure to allege how Penn's cooperation with Congress breaches such a duty, warrants dismissal of their breach of contract claims.

## IV.     Plaintiffs' New Conspiracy Claim Fails

Last, Plaintiffs fail to state a claim under 42 U.S.C. § 1985(3) for conspiracy to violate civil rights.  To state such a claim, Plaintiffs must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983)).  And they must show "both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Id.* at 135 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

As an initial matter, Plaintiffs' conspiracy claim fails because the only discriminatory animus they identify concerns political ideology, which is nonactionable under § 1985(3).  In *Farber*, the Third Circuit held unambiguously that "§ 1985(3) does not provide a cause of action for individuals allegedly injured by conspiracies motivated by discriminatory animus directed toward their political affiliation."  *Farber*, 440 F.3d at 142-143.  Here, Plaintiffs state that the alleged conspiracy undergirding this claim is one "target[ing] protected rights of Plaintiffs, who are pro-Palestinian activists and critics of Israel," and they allege only that "[t]he conspirators intended their actions to have adverse effects upon … pro-Palestinian activists and critics of Israel."  AC ¶¶ 199-200.  These allegations are insufficient to state a § 1985(3) claim for two reasons, both already settled by *Farber*.  *First*, Plaintiffs allege no "specific, identifiable class" against whom Penn is alleged to have discriminated.  "[A] § 1985(3) claimant must allege 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action' in order to state a § 1985(3) claim," and the class must have "an independent

identifiable existence" such that "a reasonable person" could "readily determine by means of an objective criterion or set of criteria who is a member of the group and who is not." *Farber*, 440 F.3d at 135-136.  Plaintiffs' only theory—a class based on critics of Israel—is much like the "persons who support [political] candidates" class that the Third Circuit already described as insufficiently identifiable.  *Id.* at 136 (citing *Aulson v. Blanchard*, 83 F.3d 1, 4-5 (1st Cir. 1996)). *Second*, Plaintiffs cannot show that any discrimination here is so "invidious as to qualify for § 1985(3) protection" because the Third Circuit has already held that "discrimination on the basis of political affiliation is not, as a matter of law, discrimination so invidious such that § 1985(3) would apply." *Farber*, 440 F.3d at 135, 138.

Plaintiffs' § 1985(3) claim also fails because they have not properly pleaded the existence of a "conspiracy," as required.  As this Court has observed, "[a] conspiracy—an agreement to commit an unlawful act—is a necessary element of a claim under section 1985," and "it is not enough to use the term 'conspiracy' without setting forth supporting facts that tend to show an unlawful agreement." *Brayboy v. Johnson*, 2018 WL 6018863, at *17 (E.D. Pa. Nov. 16, 2018) (Goldberg, J.) (citation omitted).  Plaintiffs allege no such agreement here and instead base their entire claim on Penn's "voluntary" compliance with HEW's information request. *See* AC ¶¶ 197-198.  But the Third Circuit has already rejected the argument that voluntary compliance with the Government's request is enough to show a conspiracy.  In *McFadden v. Apple Inc.*, it held that no conspiratorial agreement could be inferred after observing that the complaint "alleges nothing more than [plaintiff's] dissatisfaction with Apple's decision to comply with the Government's warrant requiring the search of [his] phone." 785 F. App'x 86, 89 (3d Cir. 2019).  The same is true here.  Plaintiffs allege no agreement, much less an agreement to commit any unlawful act.

Plaintiffs' claim further fails for failure to plausibly allege that Penn has ever acted (or will ever act) with discriminatory animus.  In *McFadden*, the Third Circuit affirmed dismissal of the § 1985(3) claim in part because the plaintiff "failed to plausibly allege that Apple's actions were motivated by any racial or invidious class-based discriminatory animus."  785 F. App'x at 89. Plaintiffs allege only that HEW has acted with animus toward critics of Israel—not that Penn has ever acted (or even shares) that motivation.  *See, e.g.*, AC ¶¶ 194-96.  Finally, for the reasons described above, Plaintiffs have not plausibly alleged that they have been injured or otherwise "deprived of any right or privilege of a citizen of the United States."  *Farber*, 440 F.3d at 134.

## CONCLUSION

For the foregoing reasons, the amended complaint should be dismissed with prejudice.

Dated:  September 30, 2024                    Respectfully submitted,

                                             /s/ David Gringer
                                             David Gringer (*pro hac vice*)
                                             Alan Schoenfeld (*pro hac vice*)
                                             WILMER CUTLER PICKERING
                                                HALE AND DORR LLP
                                             7 World Trade Center
                                             250 Greenwich Street
                                             New York, NY 10007
                                             Telephone: (212) 230-8864
                                             Facsimile: (212) 230-8888
                                             david.gringer@wilmerhale.com
                                             alan.schoenfeld@wilmerhale.com

                                             Seth P. Waxman (*pro hac vice*)
                                             WILMER CUTLER PICKERING
                                                HALE AND DORR LLP
                                             2100 Pennsylvania Avenue, NW
                                             Washington, DC 20037
                                             Telephone: (202) 663-6000
                                             Facsimile: (202) 663-6363
                                             seth.waxman@wilmerhale.com

                                             Sean V. Burke
                                             Jason G. Canavan
                                             Office of General Counsel
                                             University of Pennsylvania
                                             FMC Tower at Cira Centre South
                                             2929 Walnut Street, Suite 400
                                             Philadelphia, PA 19104-5099
                                             Telephone: (215) 746-5254
                                             Facsimile: (215) 746-5222

                                             *Attorneys for Defendant University of
                                             Pennsylvania*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on September 30, 2024, true and correct copies of the foregoing Penn's Motion to Dismiss the Amended Complaint with Prejudice, the supporting Memorandum of Points and Authorities, and the Declaration of David Gringer were filed electronically through the CM/ECF system, which will send notification of such filing to all counsel of record.


Dated:  September 30, 2024                    Respectfully submitted,

                                              */s/ David Gringer*
                                              David Gringer