UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HUDA FAKHREDDINE, EVE TROUTT POWELL, and PENN FACULTY FOR JUSTICE IN PALESTINE,<br><br>        Plaintiffs,<br> v.<br><br>THE UNIVERSITY OF PENNSYLVANIA,<br><br>        Defendant. | No. 2:24-cv-01034 (MSG)<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM IN SUPPORT OF PENN'S MOTION TO DISMISS THE AMENDED COMPLAINT WITH PREJUDICE**

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

ARGUMENT ..........................................................................................................................2

I. All Of Plaintiffs' Claims Fail For Lack Of Standing............................................2

II. Plaintiffs' Complaint Should Be Dismissed Pursuant To Rule 12(b)(6) .............4

    A. Plaintiffs Still Have Not Pled That Penn Is A State Actor ......................4

    B. Plaintiffs Still Have Not Adequately Pled Either Retaliation or Viewpoint Discrimination Under The First Amendment ...........................................6

    C. Plaintiffs Still Have Not Adequately Pled A Privacy Claim Under the Fourteenth Amendment Or Pennsylvania Constitution ...........................7

    D. Plaintiffs Still Fail To State A Breach Of Contract Claim......................7

    E. Plaintiffs Have Not Stated A Plausible Conspiracy Claim......................9

CONCLUSION.....................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abdulhay v. Bethlehem Medical Arts, L.P.*,
    2004 WL 620127 (E.D. Pa. Mar. 29, 2004)..................................................................10

*Baker v. Lafayette College*,
    504 A.2d 247 (Pa. Super. Ct. 1986), *aff'd*, 532 A.2d 399 (Pa. 1987) .................................8

*Borse v. Piece Goods Shop, Inc.*,
    963 F.2d 611 (3d Cir. 1992)...............................................................................................5

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)........................................................................................................2, 3

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)...........................................................................................................3

*David v. Neumann University*,
    187 F. Supp. 3d 554 (E.D. Pa. 2016) .............................................................................7, 8

*Davis v. Wigen*,
    82 F.4th 204 (3d Cir. 2023) ...............................................................................................6

*Doe v. University of the Sciences*,
    961 F.3d 203 (2020)........................................................................................................8, 9

*Farber v. City of Paterson*,
    440 F.3d 131 (3d Cir. 2006)...............................................................................................9

*Foglesong v. Somerset County*,
    2013 WL 795064 (W.D. Pa. Mar. 4, 2013) .....................................................................10

*Hickey v. University of Pittsburgh*,
    77 F.4th 184 (3d Cir.), *amended & superseded*, 81 F.4th 301 (3d Cir. 2023)....................9

*In re Retreat Behavioral Health LLC*,
    2024 WL 1016368 (E.D. Pa. Mar. 7, 2024).......................................................................2

*Jackson v. Wright*,
    82 F.4th 362 (5th Cir. 2023) ..............................................................................................3

*Johnson v. TD Bank National Ass'n*,
    2023 WL 2203572 (3d Cir. Feb. 24, 2023).......................................................................6

*Kach v. Hose*,
    589 F.3d 626 (3d Cir. 2009)...............................................................................................6

*Kortyna v. Lafayette College*,
　2017 WL 1134129 (E.D. Pa. Mar. 27, 2017), *aff'd*, 726 F. App'x 934 (3d Cir. 2018).......7

*Leshko v. Servis*,
　423 F.3d 337 (3d Cir. 2005)...................................................................................................5

*Lugar v. Edmondson Oil Co.*,
　457 U.S. 922 (1982)................................................................................................................5

*Lujan v. Defenders of Wildlife*,
　504 U.S. 555 (1992)................................................................................................................2

*Lutter v. JNESO*,
　86 F.4th 111 (3d Cir. 2023) ....................................................................................................2

*Max v. Republican Committee of Lancaster County*,
　587 F.3d 198 (3d Cir. 2009)...................................................................................................5

*McFadden v. Apple Inc.*,
　785 F. App'x 86 (3d Cir. 2019) ............................................................................................10

*Monell v. Department of Social Services of New York*,
　436 U.S. 658 (1978)................................................................................................................5

*Murthy v. Missouri*,
　603 U.S. 43 (2024)..............................................................................................................2, 3

*Nolt v. City of Philadelphia*,
　2024 WL 1355139 (E.D. Pa. Mar. 29, 2024).........................................................................6

*Parson v. Farley*,
　352 F. Supp. 3d 1141 (N.D. Okla. 2018)...............................................................................3

*Pernell v. Florida Board of Governors of the State University System*,
　641 F. Supp. 3d 1218 (N.D. Fla. 2022)..................................................................................3

*Pik v. University of Pennsylvania*,
　2010 WL 3933275 (E.D. Pa. Oct. 7, 2010)............................................................................5

*Raines v. Byrd*,
　521 U.S. 811 (1997)................................................................................................................3

*Reilly v. Ceridian Corp.*,
　664 F.3d 38 (3d Cir. 2011).....................................................................................................2

*Rendell-Baker v. Kohn*,
　457 U.S. 830 (1982)................................................................................................................4

*Tannous v. Cabrini University*,
    697 F. Supp. 3d 350 (E.D. Pa. 2023) ...................................................................................8

*Trump v. Mazars USA, LLP*,
    591 U.S. 848 (2020) ............................................................................................................5

*Trump v. Twitter, Inc.*,
    602 F. Supp. 3d 1213 (N.D. Cal. 2022) ..............................................................................5

*United States v. American Telephone & Telegraph Co.*,
    551 F.2d 384 (D.C. Cir. 1976) ............................................................................................4

*Yarnall v. Philadelphia School District*,
    2013 WL 1389757 (E.D. Pa. Apr. 4, 2013) ........................................................................7

**STATUTES, RULES, AND REGULATIONS**

42 U.S.C. § 1985(3) ................................................................................................................9, 10

**INTRODUCTION**

Plaintiffs' opposition brief confirms that they still lack a cognizable claim against Penn.

This Court dismissed the original complaint for lack of standing because it failed to allege that Penn would share sensitive, confidential details or defamatory information about Plaintiffs, and because it turned on speculation about what might happen or what third parties might do, rather than alleging certainly impending injury from anything Penn had in fact done. Plaintiffs' brief demonstrates that the amended complaint has not cured these deficiencies. Instead of addressing the Court's prior order and issues raised in Penn's motion to dismiss, Plaintiffs argue in inapposite hypotheticals that have no relation to the alleged facts. This should come as no surprise, because in the intervening time, nothing has changed that would give rise to any claims Plaintiffs could bring against Penn. The House Committee on Education and the Workforce (HEW) has requested things like Fakhreddine's CV, syllabi, and course descriptions—information that is neither private nor defamatory—and Plaintiffs' grievances still concern the conduct of HEW and other third parties not before the Court. If anything, Plaintiffs' claims are even weaker than the last time this case was before the Court, as HEW has since released its report. Contrary to the parade of horribles that Plaintiffs speculated might occur, none of the Plaintiffs was named in the report, and none of their information was disclosed to the public.

Plaintiffs fare no better in trying to save their claims from dismissal on the merits. Plaintiffs continue to turn the federal and Pennsylvania constitutions on their head in arguing that they do not need to plead state action for their three constitutional claims. And they make no serious effort to show that their amended complaint alleges facts sufficient to allow their constitutional, breach of contract, and conspiracy claims to proceed.

The Court should dismiss the amended complaint with prejudice.

**ARGUMENT**

I.   **All Of Plaintiffs' Claims Fail For Lack Of Standing**

Plaintiffs largely fail to respond to Penn's arguments that they lack standing, including the requirement of a "certainly impending" injury. *See* Dkt. 29 ("Mot.") 6-11; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Without ever addressing this Court's prior order, Plaintiffs once more advocate for a relaxed pleading standard (*see* Opp. 18) and essentially disclaim the need to satisfy their burden to clearly allege enough facts to establish that any injury is certainly impending. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). But this Court already held that "this is not a fraud case, and the requirement to allege a factually supported claim applies to all cases," finding that "the law places the burden on the person invoking the court's jurisdiction to allege facts supporting standing, and does not require the opposing party to allege facts refuting standing." ECF No. 32 at 6.

Plaintiffs' theory of injury remains unclear, despite multiple rounds of briefing. To the extent Plaintiffs argue that disclosure alone will injure them, Plaintiffs once more fail to identify any specific piece of information disclosed by Penn that might cause them injury if produced. *See* Opp. 17; ECF No. 32 at 6 (granting Penn's first motion to dismiss because Plaintiffs "have not alleged what information Penn will disclose or how it will harm them."); *see also In re Retreat Behav. Health LLC*, 2024 WL 1016368, at *2 (E.D. Pa. Mar. 7, 2024). To the extent Plaintiffs claim an injury based on what third parties might do (*see* Opp. 16-17), their theory "require[s] guesswork as to how independent decisionmakers will exercise their judgment"—a disfavored standing theory, as the Supreme Court reaffirmed just last term. *Murthy v. Missouri*, 603 U.S. 43, 57-58 (2024); *see also Lutter v. JNESO*, 86 F.4th 111, 127 (3d Cir. 2023) (plaintiffs cannot rely on injuries that "result from 'the independent action of some third party not before the court'" for standing) (citation omitted); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41-46 (3d Cir. 2011) (no

2

standing where injury "stems from an indefinite risk of future harms inflicted by unknown third parties"). And to the extent Plaintiffs claim injury because their speech is being chilled (*see* Opp. 19), the Supreme Court likewise rejected this theory last term, finding that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Murthy*, 603 U.S. at 73 (quoting *Clapper*, 568 U.S. at 416).

Instead of identifying a concrete injury, Plaintiffs point to unrelated cases arising under far different circumstances, such as a statute banning professors from expressing certain viewpoints (*Pernell v. Florida Board of Governors of the State University System*, 641 F. Supp. 3d 1218, 1250-61 (N.D. Fla. 2022)); a university prohibiting a professor from working on a specific journal (*Jackson v. Wright*, 82 F.4th 362, 369 (5th Cir. 2023)); and various cases involving public access to judicial records, where the asserted injury was denial of that access (*e.g.*, *Parson v. Farley*, 352 F. Supp. 3d 1141, 1148 (N.D. Okla. 2018) (subsequent history omitted)). *See* Opp. 14-16. The plaintiffs in each of those cases pled concrete and particularized injuries; none supports Plaintiffs here, where (as this Court already found, *see* ECF No. 32 at 6) the crux of Plaintiffs' injury is incurably speculative. Other plaintiffs asserting different injuries cannot support the issue now before the Court: Whether "the[se] particular plaintiff[s]" are "entitled to an adjudication of the particular claims asserted" and for "each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Nor do the affidavits Plaintiffs submitted with their opposition cure their standing troubles. For one, two of the affidavits are from non-parties. Because the standing inquiry requires that *plaintiffs* show they have "a 'personal stake' in the alleged dispute" and "that the alleged injury suffered is particularized as to [them]," *Raines v. Byrd*, 521 U.S. 811, 819 (1997), the non-party

3

affidavits are irrelevant. In any case, the affidavits merely double down on Plaintiffs' flawed theories that third parties have harassed Plaintiffs, which is not traceable to Penn's production of documents, and that Plaintiffs have self-censored due to subjective fear of third-party harassment. As discussed, none of those theories is viable as a matter of law.

## II.     Plaintiffs' Complaint Should Be Dismissed Pursuant To Rule 12(b)(6)

### A.     Plaintiffs Still Have Not Pled That Penn Is A State Actor

Plaintiffs again seek a supposed "workaround" to their inability to plead the constitutional prerequisite that Penn is a state actor. None of the cases they cite (Opp. 19-21) excuses them from the state action requirement.

Plaintiffs continue to argue that *United States v. American Telephone & Telegraph Co.*, 551 F.2d 384 (D.C. Cir. 1976), and its unspecified "progeny" support their argument that state action is not required for their constitutional claims.[1] Not so. *AT&T* involved the Department of Justice's suit, on national security grounds, to enjoin AT&T from complying with a congressional subpoena seeking records of the FBI's wiretap requests to AT&T. 551 F.2d at 385, 388. The D.C. Circuit remanded, directing Congress and the Department to negotiate given their competing constitutional interests. *Id.* at 394-95. The facts of *AT&T* implicated the balancing of congressional and executive powers, and the case did not involve a claim that a private party was violating a constitutional right. Thus, *AT&T* does not speak to Plaintiffs' pleading requirements for their First and Fourteenth Amendment claims, much less their state constitution privacy claim. Plaintiffs' reading is also inconsistent with the ample case law dismissing lawsuits against private parties for lack of state action with no consideration of whether the plaintiffs have alternative

---

[1] To the extent Plaintiffs contend that they need only federal jurisdiction to bring constitutional claims, this misses the point. State action is a pleading requirement that establishes standing, that must be met in addition to jurisdictional requirements that empower federal courts to consider the claims.

avenues to sue. *See, e.g.*, *Rendell-Baker v. Kohn*, 457 U.S. 830, 839-43 (1982) (affirming dismissal for lack of state action where plaintiffs claimed violations of First, Fifth, and Fourteenth Amendment rights); *Max v. Republican Comm. of Lancaster Cnty.*, 587 F.3d 198, 200 (3d Cir. 2009); *Leshko v. Servis*, 423 F.3d 337, 340-41 (3d Cir. 2005); *Pik v. University of Pennsylvania*, 2010 WL 3933275, at *5 (E.D. Pa. Oct. 7, 2010).

Plaintiffs' attempt to compare this case to *Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020), is similarly unhelpful. That case involved President Trump's attempt to prevent an accounting firm and banks from complying with congressional subpoenas on the basis that the subpoenas lacked legislative purpose and violated the separation of powers. *Id.* at 857-58. Trump did not claim a violation of his constitutional rights, which Plaintiffs here ask the Court to find without first finding that Penn was state actor, as required for their constitutional claims. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (U.S. Constitution); *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 620-21 (3d Cir. 1992) (Pennsylvania Constitution). Other district courts have recognized this critical distinction, correctly interpreting *Mazars* as a case about the limitations of *Congress's* investigative authority, not (as Plaintiffs urge) the limitations of the state action doctrine. *See, e.g.*, *Trump v. Twitter, Inc.*, 602 F. Supp. 3d 1213, 1224 (N.D. Cal. 2022).[2]

Nor do Plaintiffs substantiate their contention that they "might be able to" prove state control of Penn. Opp. 20. Plaintiffs say that Penn "is certainly acting in concert with the Committee, and may even be symbiotic with it," Opp. 21, but fail to amplify that naked legal conclusion with any plausible factual allegation made in their amended complaint. Controlling

---

[2] Plaintiffs briefly attempt to compare this "workaround" to "*Monell*'s solution to another sovereign immunity issue." Opp. at 20. To the extent they attempt to cite *Monell* as relevant case law, it is not. *Monell* provides an alternative *means* of pleading a constitutional injury against municipal actors. It does not excuse a pleading *requirement* for constitutional injuries. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 663 (1978) (finding an exception to a previous holding that local governments are wholly immune from suit under 42 U.S.C. § 1983).

authority in this Circuit clearly establishes that Plaintiffs' theory requires them to show Congress "has exercised control over" Penn's production of documents such that Penn's production decisions "must in law be deemed that of [Congress]." *Kach v. Hose*, 589 F.3d 626, 648-49 (3d Cir. 2009). No facts to that effect are even alleged. In any event, courts in this Circuit reject efforts to convert a private entity's furnishing of information to the government into state action. *See, e.g.*, *Johnson v. TD Bank Nat'l Ass'n*, 2023 WL 2203572, at *1-2 (3d Cir. Feb. 24, 2023). Plaintiffs instead cite obviously inapposite cases, finding state action for a private prison operating on behalf of the government (*Davis v. Wigen*, 82 F.4th 204, 209 (3d Cir. 2023)), and finding a plaintiff to have not plausibly alleged a foster care agency to be a state actor (*Nolt v. City of Phila.*, 2024 WL 1355139, at *4 (E.D. Pa. Mar. 29, 2024)).

### B. Plaintiffs Still Have Not Adequately Pled Either Retaliation or Viewpoint Discrimination Under The First Amendment

Plaintiffs' opposition merely restates their claims that HEW and Penn are engaging in viewpoint discrimination and retaliation in violation of their First Amendment rights. Opp. 25; AC ¶¶ 176-177. Such cursory arguments fail to rescue their claims that *Penn* is violating their First Amendment rights not just because Penn is not a state actor bound by the First Amendment, but also because Penn did not restrict or disfavor speech targeting a specific viewpoint by cooperating with *HEW*'s information request. As to the alleged viewpoint discrimination, Plaintiffs' opposition does nothing to address the fact that Penn could not have engaged in viewpoint discrimination where HEW, not Penn, identified the subject matter of the demands. *See* AC ¶ 117. And as to the retaliation claim, Plaintiffs still fail to support an inference that Penn's compliance with HEW is an action directed toward them and their speech, and fully avoid addressing how compliance with a congressional request can rise to the level of threat, coercion,

or intimidation that would deter similarly situated individuals from engaging in expressive conduct. *See* Mot. 14.

### C. Plaintiffs Still Have Not Adequately Pled A Privacy Claim Under the Fourteenth Amendment Or Pennsylvania Constitution

Nothing in Plaintiffs' opposition cures their failure to plead a privacy claim under either the Fourteenth Amendment or Pennsylvania Constitution. As noted in Penn's motion to dismiss, none of HEW's requests mention personal information of the kind recognized as requiring protection under either constitution. Mot. 16. The case that Plaintiffs claim is "similar to" this one, *Yarnall v. Philadelphia School District*, only further supports this conclusion. *Yarnall* involved constitutionally protected privacy interests in "intimate" information, which in that case was shared for the recognized purpose of "find[ing] grounds for firing and harassing," including having Plaintiffs "follow[ed] … to their homes." 2013 WL 1389757, at *8-9 (E.D. Pa. Apr. 4, 2013). Plaintiffs have not substantively engaged with Penn's arguments that there are no such constitutionally protected privacy interests at issue here because the information Plaintiffs suggest Penn shared—documents maintained by Penn, attendance at public events, and public posts on Penn's social media, AC ¶¶ 24-29, 178-180—is not the type that the federal and state constitutions protect; *i.e.*, sexual information, medical information, some financial information, home addresses, and telephone numbers. Mot. 15-16.

### D. Plaintiffs Still Fail To State A Breach Of Contract Claim

Plaintiffs' opposition does not attempt to argue that the handbook statements referenced in their complaint (AC ¶ 188) created specific obligations that Penn owed them or that Penn's production of documents to HEW breached such obligations. That is fatal to their claim. *See Kortyna v. Lafayette Coll.*, 2017 WL 1134129, at *21 (E.D. Pa. Mar. 27, 2017) (dismissing breach of contract claim that failed "to offer plausible allegations that the College materially breached the

duties prescribed by the Handbook"), *aff'd*, 726 F. App'x 934 (3d Cir. 2018); *David v. Neumann Univ.*, 187 F. Supp. 3d 554, 561 (E.D. Pa. 2016) (dismissing breach of contract claim that failed "failed to identify a specific contractual duty imposed upon the University").

Plaintiffs' arguments that Penn's productions to HEW breached the general implied duty to perform contractual obligations in good faith fail to rescue their claim. "The [University's] obligation to act in good faith extends only to the performance of those contractual duties it has chosen to assume," *Baker v. Lafayette Coll.*, 504 A.2d 247, 256 (Pa. Super. Ct. 1986), *aff'd,* 532 A.2d 399 (Pa. 1987), and Plaintiffs have not identified any specific contractual duty pertaining to compliance with government requests for information.  *See* Opp. 21-22; AC ¶ 188; *see also Neumann Univ.*, 187 F. Supp. 3d at 560-61 (no implied duty of good faith where plaintiffs have "failed to identify a specific contractual duty").  Nor does *Tannous v. Cabrini University* support Plaintiffs' effort to plead a breach of the implied duty of good faith and fair dealing based on general handbook statements about academic freedom (at Opp. 21).  There, the plaintiff identified provisions of the faculty handbook that expressly promised professors would be "free from … discipline" "[w]hen they speak or write as citizens" and alleged the university breached that promise by terminating Tannous for inflammatory personal tweets.  697 F. Supp. 3d 350, 362-63 (E.D. Pa. 2023).  Here, Plaintiffs do not allege Penn has promised not to share information about their public events, public social media posts, and academic activities, nor do they allege that Penn's sharing such information in response to a congressional request restricts any exercise of academic freedom, let alone that it restricts academic freedom that Penn promised to protect.

Once again, Plaintiffs cite decisions allowing breach of contract claims to survive a motion to dismiss that illustrate only the insufficiency of their allegations.  In *Doe v. University of the Sciences* (Opp. 22), a student expelled for assault alleged the school breached its promise to

8

conduct "reliable, impartial, prompt, fair, and equitable" investigations by failing to give him proper notice, an opportunity for a hearing, and an opportunity to cross-examine witnesses against him. 961 F.3d 203, 212, 215 (2020). And in *Hickey v. University of Pittsburgh* (Opp. 21), students alleged that access to in-person classes was part of their agreement to pay tuition in exchange for matriculation, and the Defendant's failure to refund those payments during the pandemic was a breach of those promises. 77 F.4th 184, 194 (3d Cir.), *amended & superseded*, 81 F.4th 301 (3d Cir. 2023). What distinguishes *Doe* and *Hickey* is that the plaintiffs in those cases alleged specific agreements that could plausibly prohibit the challenged university conduct. Here, Plaintiffs fail to point to any agreement that implicates the conduct they challenge (Penn's response to HEW), let alone allege that Penn's response breaches any promise Penn made to them.

E. **Plaintiffs Have Not Stated A Plausible Conspiracy Claim**

As Penn showed in its motion to dismiss, 42 U.S.C. § 1985(3) does not reach "conspiracies motivated by discriminatory animus directed toward [Plaintiffs'] political affiliation." *Farber v. City of Paterson*, 440 F.3d 131, 142-43 (3d Cir. 2006); Mot. 19-20. That is all Plaintiffs allege, and so the claim fails as a matter of law. *See* AC ¶¶ 199-200. Plaintiffs' opposition toggles between two alternative theories, neither of which is plausible. *First*, Plaintiffs suggest that the conspiracy is directed at Fakhreddine because she is Arab-American (Opp. 23). But that is irrelevant because Plaintiffs have alleged no facts showing racial animus against Arab Americans generally. And aside from the bare pleading deficiencies, Plaintiffs' belated efforts to turn the conspiracy claim into one of racial animus fails because they allege only that Fakhreddine is Arab American but plead a conspiracy against Eve Troutt Powell and PFJP members as well (without alleging they fall into the same racial group). The complaint makes clear this is not a case about racial animus; Plaintiffs specifically alleged "[t]he conspirators intended their actions to have adverse effects upon an identifiable group—namely, *pro-Palestinian activities and critics of*

9

*Israel.*" AC ¶ 199 (emphasis added).³  But this is not a protected class under the statute.  *Second*, Plaintiffs confusingly suggest that the conspiracy is motivated by racial animus because "a minority of the American Jewish population" is allegedly being privileged "over all Jewish Americans who do not share their views."  Opp. 23 (quoting AC ¶ 102).  At most, that bizarre allegation suggests viewpoint discrimination (a claim which also fails, *supra* at 6-7); it has nothing to do with racial animus.  Under *Farber*, no such claim can lie under § 1985(3).

Plaintiffs likewise fail to persuasively distinguish *McFadden v. Apple Inc.*, 785 F. App'x 86 (3d Cir. 2019) (at Opp. 24).  In *McFadden*, the Third Circuit found the plaintiff failed to allege any facts showing the formation of a conspiracy, "alleg[ing] nothing more than his dissatisfaction with Apple's decision to comply with the Government's warrant."  *Id.* at 88-89.  The principle that one party's compliance with a government demand cannot by itself constitute a conspiratorial agreement governs here, and Plaintiffs' opposition fails to distinguish the two cases on that point.  Nor have Plaintiffs identified any other non-conclusory allegations sufficient "to allege the existence of a conspiracy," which requires that Plaintiffs "assert facts from which a conspiratorial agreement can be inferred."  *Foglesong v. Somerset Cnty.*, 2013 WL 795064, at *11 (W.D. Pa. Mar. 4, 2013).  Finally, Plaintiffs fail to respond to Penn's argument that their conspiracy claim fails because they have not "plausibly allege[d] that [Penn's] actions were motivated by any racial or invidious class-based discriminatory animus."  *McFadden*, 785 F. App'x at 89.

## CONCLUSION

For the foregoing reasons, the amended complaint should be dismissed with prejudice.

---

³ The cases Plaintiffs cite at Opp. 23-24 stand for the proposition that § 1985(3) claims can be brought to challenge conspiracies, where the *object* of the conspiracy is to discriminate based on race or ethnicity.  *See, e.g.*, *Abdulhay v. Bethlehem Med. Arts, L.P.*, 2004 WL 620127, at *9 (E.D. Pa. Mar. 29, 2004) (a pre-*Twombly* case allowing § 1985(3) claim to proceed where the plaintiff alleged "the object of defendants' conspiracy was to discriminate against [him] on the basis of his race, national origin or ethnicity").  None of those cases allowed § 1985(3) claims merely because the plaintiff was a racial or ethnic minority.

Dated: December 9, 2024

Respectfully submitted,

*/s/ David Gringer*
David Gringer (*pro hac vice*)
Alan Schoenfeld (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8864
Facsimile: (212) 230-8888
david.gringer@wilmerhale.com
alan.schoenfeld@wilmerhale.com

Seth P. Waxman (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
seth.waxman@wilmerhale.com

Sean V. Burke
Jason G. Canavan
Office of General Counsel
University of Pennsylvania
FMC Tower at Cira Centre South
2929 Walnut Street, Suite 400
Philadelphia, PA 19104-5099
Telephone: (215) 746-5254
Facsimile: (215) 746-5222

*Attorneys for Defendant University of Pennsylvania*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2024, a true and correct copy of the foregoing Reply Memorandum In Support Of Penn's Motion To Dismiss The Amended Complaint With Prejudice was filed electronically through the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated:  December 9, 2024                                  Respectfully submitted,

                                                                                 */s/ David Gringer*
                                                                                 David Gringer