## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HUDA FAKHREDDINE** *et al.*, | |
| *Plaintiffs*, | **Civil Action** |
| *v.* | **No. 24-cv-1034** |
| **THE UNIVERSITY OF PENNSYLVANIA,** | |
| *Defendant*. | |

**Goldberg, J.**                                                    **January 30, 2025**

### MEMORANDUM OPINION

University of Pennsylvania ("Penn") professors Huda Fakhreddine and Eve Trout Powell, as well as unnamed students and faculty who are members of Penn Faculty for Justice in Palestine ("PFJP") bring federal and state constitutional, breach of contract, and conspiracy claims against Penn arising from the University's decision to comply with a Congressional documents request. On June 24, 2024, I dismissed the original Complaint for lack of standing. With leave of the Court, Plaintiffs amended their claims. Penn once again moves to dismiss. Because the Amended Complaint fails to establish standing, and because amendment would be futile, I will dismiss this case with prejudice.

## I.    FACTS[1]

The following facts are taken from the Amended Complaint and are viewed in the light most favorable to Plaintiffs:

---

[1]  In deciding a motion under Federal Rule of Civil Procedure 12(b), the Court must accept all factual allegations in the Complaint as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief.  Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp.

Plaintiffs Huda Fakhreddine and Trout Powell are professors at Penn focusing on Arabic literature and history and Africana studies, respectively.  (Am. Compl. ¶¶ 9-10.)  Plaintiffs are "tenured Penn professors who have been threatened, accused, and doxed for the subject matter they teach, and their First Amendment protected criticism of Israel."  (Id. ¶ 5.)  PFJP is a collective of faculty, students, staff, researchers, and graduate employees at Penn supporting Palestinian human rights and "liberation from Israeli occupation."  (Id. ¶ 11.)

On December 5, 2023, the House Committee on Education and the Workforce ("the Committee") held a hearing where former Penn President Elizabeth Magill was questioned.  The Committee demanded Magill explain "[h]ow Jewish students in Fakhreddine's classes [are] supposed to receive fair treatment when she endorses hatred?"  (Id. ¶ 17.)  The Committee also asked why Fakhreddine was still employed.  (Id. ¶ 18.)  In using her name, Plaintiffs allege the Committee "doxed"[2] her, leading to "substantial" death threats and hate speech from "anonymous Internet trolls."  (Id. ¶¶ 37, 77.)

On January 24, 2024, the Committee sent Penn an "Information Letter" accusing Penn of failing to address antisemitism on campus and requesting 25 categories of documents relating to Penn's handling of antisemitic activity.[3]  (Id. ¶¶ 19-29; Comm. Ltr. January 24, 2024 (ECF No. 47-2) at 10 of 15.)  "Many" of the documents responsive to this request "might mention Plaintiff

---

2d 591, 596 (E.D. Pa. 2010).  I may also consider documents "integral to or explicitly relied upon in the complaint." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).  Both Parties have, filed competing declarations—not previously attached to the Amended Complaint—which I will not consider.  See Bruni v. City of Pittsburgh, 824 F.3d 353, 361 (3d Cir. 2016) (concluding that the district court erred in granting motion to dismiss where district court based its decision in part on declarations filed by the Parties).

[2]  Webster's defines "dox" as: "to publicly identify or publish private information about (someone) especially as a form of punishment or revenge."  Dox, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/dox (last visited on January 30, 2025).

[3]  Although the Letter is not attached to the Amended Complaint, it is integral to and explicitly relied upon by Plaintiffs. Accordingly, I consider it in dismissing this action.  See Schmidt, 770 F.3d at 249.

Fakhreddine."  (Am. Compl. ¶ 29.)  Plaintiffs fear that the Committee's publication of "any documents received by Penn about [] Fakhreddine will encourage anonymous Internet trolls to send [Fakhreddine] death threats and hate speech."  (<u>Id.</u> ¶ 37.)  The letter is "not a subpoena."  (<u>Id.</u> ¶ 7.)

Penn has complied and produced some documents to the Committee.  (Am. Compl. ¶¶ 30-32.)  Although it is still unclear what documents have been produced, Plaintiffs now allege broad categories of documents Penn *may* have sent that are "*likely*" responsive to the Letter.  (<u>Id.</u> ¶ 45 (emphasis added).)  These include "emails," "postal addresses," or "letters" which could contain personal identifiable information.  (<u>See</u> <u>id.</u> ¶¶ 44-45.)  The Organizational Plaintiffs—some of whom are students—may have had their rights violated under the Family Educational Rights and Privacy Act ("FERPA").  (<u>Id.</u> ¶ 62.)[4]

Plaintiffs seek damages "as to documents . . . already produced to the House Committee," a permanent injunction precluding Penn from complying with future requests, and a declaration of their rights.  Penn moves to dismiss for lack of standing and failure to state a claim.

## II.    <u>LEGAL STANDARDS</u>

"Article III standing is an issue of subject matter jurisdiction and, therefore, a defendant may properly move to dismiss for lack of standing under Rule 12(b)(1)."  <u>Buckley v. Early Warning Servs., LLC</u>, No. 20-5265, 2021 WL 5413887, at *1 n.i (E.D. Pa. Sept. 28, 2021) (citing <u>Constitution Party of Pa. v. Aichele</u>, 757 F.3d 347, 357 (3d Cir. 2014)).  Because Penn has filed

---

[4]  To the extent Plaintiffs allege that FERPA violations constitute a separate cause of action, they are incorrect. <u>Doroshin v. Drexel Univ.</u>, No. 22-5158, 2024 WL 4349948, at *3 (E.D. Pa. Sept. 30, 2024) (citing <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 287-89 (2002)) ("FERPA's privacy provisions do not give rise to a private right of action for an individual to sue a school for privacy violations.")

its Motion before answering, I consider its Motion a "facial challenge" to jurisdiction.  See id. (internal quotations and citations omitted).[5]  I apply the same standard of review under Rule 12(b)(6).  Id.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  The United States Supreme Court has recognized that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  Id.

## III.    STANDING

"To invoke the jurisdiction of a federal court, a plaintiff must meet the 'irreducible constitutional minimum' of Article III standing."  Potter v. Cozen & O'Connor, 46 F.4th 148, 154 (3d Cir. 2022) (quoting Lujan v. Defs. Of Wildlife, 504 U.S. 555, 560 (1992)).  Specifically, a plaintiff must allege: (1) injury in fact, (2) causation or traceability, and (3) redressability.  See id.

---

[5]  I must "consider the allegations of the complaint as true and consider only those allegations in the complaint and the attached documents."  Ingrao v. Addshoppers, Inc., No. 24-1022, 2024 WL 4892514, at *5 (E.D. Pa. Nov. 25, 2024).

The injury claims can be neither "conjectural [n]or hypothetical." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009).

### A. Injury In Fact[6]

Plaintiffs' injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotations and citations omitted). An actual injury is "a concrete loss as the result of [the defendant's] actions." Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 190 (3d Cir. 2006). A plaintiff may base standing on a future injury only if such injury is "certainly impending, or there is a substantial risk that the harm will occur." Reading v. North Hanover Twp., N.J., 124 F. 4th 189, 196 (3d Cir. 2024) (citing Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)).

Plaintiffs seek damages for the documents already produced and injunctive relief prohibiting future disclosure.

First, as it relates to the documents already produced, Plaintiffs have once again failed to allege the nature or contents contained therein. In dismissing Plaintiffs' Complaint, I held that they lacked standing because they did not "allege[] what information Penn will disclose or how it will harm them" and because they failed to allege that the documents requested by the Committee "would contain defamatory statements or reveal private details such as home address[es]." (ECF No. 32 at 6.) Instead of curing this deficiency, Plaintiffs now argue that my finding was "beside the point." (Am. Compl. ¶ 39.) I disagree and reiterate that Plaintiffs must allege that Penn's decision to produce documents did or would contribute to their harassment. (See ECF No. 32 at 6

---

[6] Because Plaintiffs do not adequately allege "injury in fact," I do not address the other two standing requirements.

(citing <u>Already, LLC v. Nike, Inc.</u>, 568 U.S. 85, 98 (2013)).  Plaintiffs have not done so and instead point only to the alleged harassment Fakhreddine started receiving prior to the January 24, 2024 documents request.  (<u>See</u> Am. Compl. ¶ 37 (describing hate speech Fakhreddine "has been receiving in substantial amounts since the Congresspeople mentioned her in December" 2023).)

In urging that they should not be required to allege what only Penn knows—the exact documents produced to the Committee—Plaintiffs rely on the same inapplicable arguments I previously rejected.  Their continued failure to cure these deficiencies bolsters my conclusion that Plaintiffs lack standing.  Moreover, Plaintiffs allege Penn produced documents to the Committee as early as February 27, 2024, yet they do not allege such disclosures contributed to or exacerbated their harassment by third parties.  (<u>See</u> Am. Compl. ¶ 31.)  Instead, Plaintiffs continue only to allege that compliance "woulkd [sic] inevitably lead to 'increased harassment, hate,causing [sic] Dr. Fakhreddine and her family to fear for her safety.'"  (<u>Id.</u> ¶ 57; <u>see also id.</u> ¶ 166.)  Such conclusory allegations, without more, is insufficient.

Next, Plaintiffs' injunctive relief claims sound primarily in prospective harm: (1) that emails or other documents considered responsive to the Committee's letter *may* include personal information such as home addresses, telephone numbers, emails, or social media; and (2) that Congress's request and Penn's compliance will lead to threats and hatred from "[s]ociopathic [i]nternet trolls."  (<u>See</u> ECF No. 35 ¶¶ 16–69.)

Plaintiffs once again fail adequately to allege any injury rising above speculative harm.  Indeed, Plaintiffs' claims rely on the following chain of possibilities: (1) *if* Penn sends unredacted documents containing personal identifiable information to the Committee; (2) *if* the Committee publishes that unredacted information to the public; (3) *if* unknown and unnamed third parties obtain that information; then (4) those third parties *may* use the information to harass Plaintiffs.

This is not enough to make out standing.  See Roma v. Prospect Med. Holdings, Inc., No. 23-3216, 2024 WL 3678984, at *4 (E.D. Pa. Aug. 6, 2024) (quoting Reilly v. Ceridian Corp., 664 F.3d 38, 42 (3d Cir. 2011) ("As pleaded, the future injuries alleged were 'dependent on entirely speculative, future actions of an unknown third-party.'").  Because I cannot describe Plaintiffs' potential injuries without using the word "if," I must dismiss for want of standing.  See Reilly, 664 F.3d at 43.

I note that Plaintiffs have also cited to non-binding and overruled case law to urge a lower standing burden for the Organizational Plaintiffs.  (See ECF No. 50 at 15-16 (citing Sabra v. Maricopa Cnty. Cmty. Coll. Dist., 44 F.4th 867, 873 (9th Cir. 2022)).)  Plaintiffs cite Sabra for the proposition that an organizational plaintiff has "direct standing to sue where it establishes that the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose."  Sabra, 44 F.4th at 879 (internal quotations and citations omitted); (see ECF No. 50 at 15-16.)  But the Ninth Circuit—in overruling Sabra—held that holding "irreconcilable" with Supreme Court precedent.  Arizona Alliance for Retired Americans v. Mayes, 117 F.4th 1165, 1178 (9th Cir. 2024).  Sabra was overruled on September 20, 2024, yet Plaintiffs cited to that case in its November 18, 2024 filing.  See id.; (ECF No. 50.)

For the aforementioned reasons, I will dismiss for want of standing.  Typically, such dismissals must be without prejudice.  See Cottrell v. Alcon Laboratories, 874 F.3d 154, 164 n.7 (3d Cir. 2017); but see Mancini v. Delaware Cnty., PA., No. 24-2425, 2024 WL 4680034, at *4 (E.D. Pa. Nov. 5, 2024) ("Plaintiffs have already had two chances to plead standing, and accordingly, the Court finds that further amendment to the complaint in an attempt to allege

standing would be futile.").  Nevertheless, because Plaintiffs have failed to state a claim upon

which relief can be granted, I will dismiss with prejudice as amendment would be futile.[7]

## IV.    **FAILURE TO STATE A CLAIM**

Plaintiffs bring federal and state constitutional claims (Counts I-III), a breach of contract

claim (Count IV), and a conspiracy claim under 42 U.S.C. § 1985(3) (Count V).

### A. **Constitutional Claims**

To establish their constitutional claims, Plaintiffs must allege that Penn is a state actor.  See

American Freedom Defense Initiative v. Southeastern Pa. Trans. Auth., 92 F. Supp. 314, 323 (E.D.

Pa. 2015) (citing Hurley v. Irish-American Gay Grp. Of Boston, 515 U.S. 557 (1995)) ("The First

Amendment guarantees freedom of expression against infringement by the state, not by private

actors."); Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 620 (3d Cir. 1992) (predicting that "the

Pennsylvania Supreme Court would hold that the right of privacy protected by the Pennsylvania

Constitution does not encompass invasions of privacy committed by private actors").  Thus, the

pertinent question is whether Penn's conduct can be considered "state action."

Plaintiffs disagree with this starting place.  They urge the state actor question is a "non

sequitur" because of the District of Washington D.C.'s holding in United States v. American Tel.

& Tel. Co. (ECF No. 50 at 19-20 (citing 419 F. Supp. 454 (D.D.C. 1976.).)  This case is inapposite

and non-binding.  The AT&T Court held that the Executive Branch (a third-party to the subpoena)

could sue AT&T (the target of the subpoena) to quash a Congressional subpoena.  That is not the

question here.  Penn was not subpoenaed by Congress.  Penn does not contest Plaintiffs' ability to

---

[7] Plaintiffs appear to request discovery on the standing question.  Because Defendant's Motion presents a facial attack—that is the Complaint is facially deficient for standing purposes—discovery on the matter is inappropriate.

sue them as the third-party to the Information Letter.  Instead, Penn challenges whether it can be considered a state actor for the purposes of this lawsuit.

To determine whether Plaintiff has sufficiently pled that Penn—a private university—has engaged in state action, I ask the following: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials" (the "close nexus test"); and (3) whether "the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity" (the "symbiotic relationship" test).  Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) (alterations, internal quotations, and citations omitted.)

Plaintiffs appear only to claim that Penn is a state actor under tests two and three.  (See ECF No. 50 at 21 ("Defendant is certainly acting in concert with the Committee, and may even be symbiotic with it.").)  Accordingly, I address only those tests.

### 1.  The Close Nexus Test

To make out state action under this test, Plaintiffs must show "a sufficiently close 'nexus' between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself."  Blum v. Yaretsky, 457 U.S. 991, 1004 (1981).  Thus, the state is "responsible for a private decision when it has 'exercised coercive power or has provided such significant encouragement [], that the choice must in law be deemed that of the state.'"  Monteleone v. United Concordia Companies, No. 09-1114, 2010 WL 653928, at *3 (W.D. Pa. Feb. 19, 2010) (quoting Blum, 457 U.S. at 1004).  In addressing this test, the Monteleone Court

found no state action where the plaintiff did not allege that the Commonwealth "coerced or encouraged" the complained of acts.  Id. at *4.

The January 24, 2024 documents request states the following: "To assist the Committee in understanding the antisemitism crisis at Penn and the university's response, *please produce* the following items no later than February 7, 2024."  (Comm. Ltr. January 24, 2024 (ECF No. 47-2 at 10 of 15) (emphasis added).)  I do not find this language coercive and apparently, neither do Plaintiffs.  (See Am. Compl. ¶ 56 (Penn was "*[a]sked* by the House Committee for information" and "Penn is *voluntarily* complying."); see also id. ¶ 119 ("[T]he Information Letter is not a subpoena and has *no legal compulsory* effect.") (emphasis added).)  Plaintiffs have thus failed to make out state action under this test.

## 2.  The Symbiotic Relationship Test

This test "provides only a 'narrow' basis for finding that private action may be fairly attributable to the state."  Monteleone, 2010 WL 653928, at *4 (quoting Benn v. Universal Health System, 371 F.3d 165, 173 (3d Cir. 2004)).  Plaintiffs can meet this narrow exception if they allege "'the State has so far insinuated itself into a position of interdependence [with the private party] that it must be recognized as a joint participant in the challenged activity, which, on that account, cannot be considered to have been so 'purely private' as to fall without the scope of the Fourteenth Amendment.'"  Klavan v. Crozer-Chester Med. Ctr., 60 F. Supp. 2d 436, 441-42 (E.D. Pa. 1999) (quoting Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961)).  Indeed, "[u]nless the plaintiff alleges a tangible benefit flowing from the private agency to the state, we need not conduct the 'symbiotic relationship' test."  Smith v. Harrison, No. 21-5120, 2022 WL 445757, at *6 (E.D. Pa. Feb. 14, 2022) (citing Leshko v. Servis, 423 F.3d 337, 341 (3d Cir. 2005)).

Because Plaintiffs do not allege that some tangible benefit flowed to the Committee, they have not made out state action under this test.

## B. Breach of Contract

To make out their breach of contract claims, Plaintiffs must allege "(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract, and (3) resulting damages." Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc., 170 F. App'x. 805, 807 (3d Cir. 2006) (internal quotations and citations omitted).

Pennsylvania law allows "a student to sue a private university for breach of contract, [but] 'the allegations must relate to a specific and identifiable promise that the school failed to honor.'" David v. Neumann Univ., 187 F. Supp. 3d 554, 558 (E.D. Pa. 2016) (quoting Vurimindi v. Fuqua Sch. Of Bus., 435 F. App'x 129, 133 (3d Cir. 2011)). "Under Pennsylvania law, the relationship between a private university and a student is contractual, the contract being 'comprised of the written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of his or her enrollment in the institution.'" Lee v. Seton Hill Univ., No. 16-1581, 2017 WL 7513319, at *3 (W.D. Pa. Aug. 25, 2017) (quoting David, 187 F. Supp. 3d at 558)). The Student Plaintiffs must thus "point to specific undertakings in the handbook [or guidelines] that were not provided." Miller v. Thomas Jefferson Univ. Hosp., 908 F. Supp. 2d 639, 655 (E.D. Pa. 2012). Similarly, a faculty handbook and its procedures may serve as the basis for a breach of contract action between faculty members and a private university. See Pourki v. Drexel Univ., No. 98-4231, 1999 WL 179755, at *4 (E.D. Pa. Mar. 24, 1999) (quoting Morosetti v. La. Land & Exploration Co., 564 A.2d 151, 152 (Pa. 1989)) ("Under Pennsylvania law, policies in employee handbooks can be binding on an employer because a 'handbook distributed to employees as an inducement for employment may be an offer and its acceptance a contract.'");

see also Kortyna v. Lafayette College, No. 15-4625, 2017 WL 1134129, at *21 (E.D. Pa. Mar. 27, 2017) (relying on faculty handbooks as evidence of a contract).

Plaintiffs' breach of contract claims center on statements made in various handbooks or materials provided by Penn.  Plaintiffs allege these policies were "promises" that they "accept[ed]" and that Penn breached by "cooperating with and disclosing information about them to the Committee." (Am. Compl. ¶¶ 185-90.)  Plaintiffs contend that these promises were made to both the Student Plaintiffs (unnamed graduate student members of PFJP) and the Faculty Plaintiffs.

As it relates to the Student Plaintiffs, Plaintiffs identify one passage from Penn's "Guidelines on Open Expression" to make out their breach of contract claim:

> The University of Pennsylvania, as a community of scholars, affirms, supports and cherishes the concepts of freedom of thought, inquiry, speech, and lawful assembly. The freedom to experiment, to present and examine alternative data and theories; the freedom to hear, express, and debate various views; and the freedom to voice criticism of existing practices and values are fundamental rights that must be upheld and practiced by the University in a free society.

(Id. ¶ 187.)  Plaintiffs allege that in providing documents to the Committee, Penn has violated or will violate this guideline by "intentionally exposing Plaintiffs to public threats, hate speech and physical danger, all as an act of retaliation and of viewpoint discrimination against them for their First Amendment-protected criricism [sic] of Israel and pro-Palestinian expression."  (Id. ¶ 190.)

The key question is whether this guideline creates a contractual duty.  I find it does not. Rather, the Guideline contains "[m]ere 'aspirational' language [] not sufficiently definite to create an enforceable obligation."  Doe v. Abington Friends School, No. 22-14, 2022 WL 16722322, at *3 (E.D. Pa. Nov. 4, 2022) (citing Figueroa v. Point Park Univ., 553 F. Supp. 3d 259, 272 n.23 (W.D. Pa. 2021)).  Accordingly, I will dismiss the Student Plaintiffs' breach of contract claim.

As to the Faculty Plaintiffs, Plaintiffs cite the following passage from the faculty handbook:

> It is the policy of the University of Pennsylvania to maintain and encourage
> freedom of inquiry, discourse, teaching, research, and publication and to protect
> any member of the academic staff against influences, from within or without the
> University, which would restrict a member of the academic staff in the exercise of
> these freedoms in their area of scholarly interest . . . . The teacher is entitled to
> freedom in the classroom in discussing their subject.

(Am. Compl. ¶ 186 (citing Penn Faculty Handbook § II.A (emphasis added)).)  Plaintiffs allege

that this handbook provision constituted a "serious, material, specific commitment[] made by Penn

to its faculty members."  (Id. ¶ 188.)  Plaintiffs contend that Penn breached this "commitment" by

cooperating with the Committee.  In support, Plaintiffs cite Doe v. University of Sciences, which

concerned a university's student handbook and the sexual misconduct policies contained therein.

961 F.3d 203, 212 (3d Cir. 2020).  Doe is inapposite.  There, the Third Circuit explained that a

university's promises of "'fair' and 'equitable' treatment to those accused of sexual misconduct

require[s]" certain due process protections.  Id. at 215.

This case is not like Doe, where the student policy at issue contained specific steps and

procedural safeguards for students accused of sexual misconduct.  Here, the policy provides only

a general promise to "protect . . . against influences, from within or without the University."  The

Honorable Gerald A. McHugh's holding in Landau v. Corporation of Haverford College is

instructive.  No. 24-2044, 2025 WL 35469, at *9 (E.D. Pa. Jan. 6, 2025).  The Landau plaintiffs

based in part their breach of contract claim on "three block quotes" from various Haverford

policies, providing "in general terms that students have a right to protest and express their views,

subject to an obligation to respect the dignity of others."  Id.  Judge McHugh held that such

"generalized assurance[s] [are] not the same as a specific contractual promise."  Id.  Moreover,

because the Landau plaintiffs did "not articulate any specific instances that demonstrate a clear

violation of any of the three excerpts," they did not adequately allege breach.  Id.

Here, because the faculty handbook provision contains no specific steps or procedures to "protect" the faculty, I find that the provision is nothing more than a "generalized assurance." Id. Moreover, Penn's compliance with the Committee's request cannot be considered a "clear violation of" the Policy. Id. Plaintiffs have not alleged how complying with the Committee's request has restricted the Faculty Plaintiffs from exercising their academic freedoms inside the classroom.

Under these circumstances, both breach of contract claims fail.

## C.  § 1985 Conspiracy

To make out their claim under 42 U.S.C. § 1985(3), Plaintiffs must allege: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property or the deprivation of any right or privilege of a citizen of the United States." Lake v. Arnold, 112 F.3d 682 685 (3d Cir. 1997). Plaintiffs must point to an "invidious, purposeful and intentional discrimination between classes or individuals." Smith v. Pa., No. 24-924, 2024 WL 5228072, at *5 (E.D. Pa. Dec. 26, 2024) (internal quotations and citations omitted).

Plaintiffs allege that Penn and the Committee targeted "pro-Palestinian activists and critics of Israel." (Am. Compl. ¶¶ 199-200.) The targeting of such political affiliations is insufficient to make out § 1985(3) conspiracy. See Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006) ("[U]nlike discrimination against a class on the basis of race, sex, or mental retardation, discrimination on the basis of political affiliation is not, as a matter of law, discrimination so invidious such that § 1985(3) would apply.").

Perhaps recognizing their pleading deficiency, Plaintiffs switch theories in response to Defendant's Motion, arguing for the first time that Dr. Fakhreddine is "the victim of a conspiracy motivated by race discrimination." (ECF No. 50 at 23 (internal quotations and citations omitted).) In support, Plaintiffs point to the fact that Fakhreddine is an "Arab American" and that "Congresspersons Bank [sic] and Wilson" questioned her employment at Penn. (Id. at 24; Am. Compl. ¶ 6.) Even when taken as true, this is not enough to plausibly allege that Penn's decision to turn over documents to the Committee was underpinned by some "invidious racial motivation." Frempong v. Sheriff of Phila., No. 24-1064, 2024 WL 3625174, at *4 (E.D. Pa. Aug. 1, 2024). There is no mention of Plaintiffs' race, ethnicity, or national origin in the documents request and Plaintiffs have not plausibly alleged that Penn's decision to turn over the documents was motivated by such considerations.

Accordingly, I will dismiss Plaintiffs' § 1985 claim.

## V.    **CONCLUSION**

Plaintiffs still lack standing, and because they have failed to state a claim upon which relief can be granted, I will dismiss the Amended Complaint. "Inasmuch as Plaintiffs have had multiple attempts to state a claim and have failed, [I find] that further amendment would be futile. As a result, the dismissal is with prejudice." M.U. v. Downingtown High School East, No. 14-4877, 2015 WL 4941816, at *1 (E.D. Pa. Aug. 19, 2015). See also ABEC, Inc. v. Eat Just, Inc., No. 23-1091, 2023 WL 8845327, at *4 (E.D. Pa. Dec. 21, 2023) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("a complaint may be dismissed with prejudice and plaintiff may be denied leave to further amend his claims if amendment would be inequitable or futile.").

An appropriate Order follows.