**Jonathan Wallace, Esq.**
**PO #728**
**Amagansett, New York 11930**
**917-359-6234**
**jonathan.wallace80@gmail.com**

February 15, 2025

Hon. Mitchell Goldberg
Chief Judge
United States District Court
Eastern District of Pennsylvania

*By electronic filing*

                                    Re: *Fakhreddine v. University of Pennsylvania*
                                    No. 2:24-cv-01034-MSG

Dear Judge Goldberg:

      At the emergency telephone conference we held on August 22, 2024, I recall saying that the House Committee lacked any legitimate legislative purpose. My recollection is that Your Honor replied, somewhat annoyed, that you thought you had disposed of that issue in your June 14 order. You had not mentioned legislative intent in that ruling, however.

      My avocation involves a lot of research into the history of free speech in this country, and I find striking similarities between the contemporary House Committee on Education and the Workforce and the House Un-American Activities Committee (HUAC) created in 1938. Here are three cases I found, set forth in reverse chronological order, all of which involve the good or bad faith of HUAC.

      By 1970, HUAC had been renamed the "House Internal Security Committee" and was a mere shadow of its former self. The House later terminated the Committee in January 1975, the opening day of the 94th Congress.

      However, despite all the changes taking place around it, the Committee in 1970 continued to function largely as it had in 1950. It had issued a report listing people whom it characterized as Communist sympathizers, who had been invited to speak on college campuses, publishing their names, honorariums, and the organizations with which they were affiliated. Journalist Nat Hentoff, one of the speakers listed, sued to enjoin the Congressional Printing Office from printing and distributing the report to the public, on the grounds it was a defamatory document, issued purely to chill the freedoms of speech and association of the people listed, *Hentoff v. Ichord,* 318 F. Supp. 1175 (1970). [1]

---

[1] It seems possible the Committee chose not to assert its own First Amendment prior restraint defense, because of the obvious irony involved.

***I have no help to send, therefore I must go myself***

Judge Gerhard Gesell[2] quotes the introduction by Rep. Ichord, Committee chairman and lead defendant: "Early this year, I became concerned -- as did many of my colleagues -- with frequent news accounts of inflammatory speeches which were being made to large audiences on college and university campuses by the radical rhetoricians of the New Left promoting violence and encouraging the destruction of our system of government. At times, reference was made in these reports to the fact that the speakers who preached such a message of hate for America and its institutions often received substantial appearance fees. A question which persistently confronts our committee is the one of how and where revolutionary movements in the United States obtain the financing for their activities."

The Judge comments: "The Report presents the results of a survey conducted by the Committee's staff without use of any formal process....The Report raised the inference, without any positive evidence or any effort to obtain such evidence, that the sums paid for the speeches might have been made available, in whole or in part, to the organizations....No legislation is mentioned or recommended. The Report is exclusively concerned with speakers on college campuses who appeared there by invitation or otherwise and discussed issues of current importance in our society. It is not suggested in the Report that the speeches in any instance presented any clear or immediate danger, but simply that the speakers are 'Pied Pipers of pernicious propaganda.' They are listed in the so-called 'blacklist' merely because they spoke and are believed to have been at some time associated with an organization distasteful to the Committee."

Judge Gesell concluded: "[T]he Report not only fails to indicate any legitimate legislative purpose, but on its face contradicts any assertion of such a purpose...The conclusion is inescapable that the Report neither serves nor was intended to serve any purpose but the one explicitly indicated in the Report: to inhibit further speech on college campuses by those listed individuals and others whose political persuasion is not in accord with that of members of the Committee."

"If a report has no relationship to any existing or future proper legislative purpose and is issued solely for sake of exposure or intimidation, then it exceeds the legislative function of Congress; and where publication will inhibit free speech and assembly, publication and distribution in official form at government expense may be enjoined. This is such a report." He issued the injunction.

My next case is *United States v. Yarus,* 198 F. Supp. 425 (S.D.N.Y. 1961). Judge Sidney Sugarman was apparently as willing as Judge Gesell later to limit HUAC's authority, but he did it more circumspectly, on a minute technicality. The defendant in this criminal contempt proceeding, subpoenaed by the Committee, had simply declined to answer questions, apparently without invoking his Fifth Amendment privilege. Judge Sugarman found that HUAC had authority to conduct its investigation, and that the questions defendant declined to answer were pertinent to the subject matter. However, the Judge said, "I am obliged to acquit the defendant," because "The bill of particulars is silent in regard to the resolution of July 27, 1955, a vital link in the prosecution's evidence...Without this vital link, the prosecution cannot succeed."

My third case is *United States v. Dennis,* 72 F. Supp. 417 (D.D.C. 1947), *affirmed* 171 F.2d 986 (D.C. Cir. 1948), *affirmed* 339 U.S. 162 (1950)[3], a criminal contempt proceeding in which the

---

2   In 1973, Judge Gesell ruled that President Nixon had illegally terminated assistant AG Archibald Cox. In 1974, he presided over a Watergate criminal trial. Judger Gesell's courage and effectiveness were among the factors which motivated me to apply to law school (where, a few years later, Cox was my constitutional law professor).
3   In my view, the appellate history merely confirms, as the history books now indicate,  that our entiire Court system was

**I have no help to send, therefore I must go myself**

defendant, having refused to answer questions, also challenged the legitimacy and authority of the Committee. The defendant asserted that "the Committee, in more than ten years of existence, has never suggested a single constitutional measure for adoption by the Congress." Judge Richmond Keech responded with a shrug: "That no proposed legislation is pending or may result therefrom, is of no concern. The fact, if such be the case, that no legislation has emanated from the Committee in no wise affects its validity....It might well be that as the result of such investigation or inquiry Congress would be so advised as to prevent enactment of detrimental legislation. On occasions Congress desires to look into the advisability of proposed amendments to the Constitution.[4] To take this vital step certainly requires adequate investigation and inquiry."

"The defendant in this cause is without authority to challenge the validity of the Committee merely by virtue of certain utterances by it or its members". Contrast Judge Gesell, gleefully quoting "Pied Pipers of pernicious propaganda". Judge Keech denied the defendant's motion to dismiss.

Alexander Hamilton said in *Federalist* #78: "The complete independence of the courts of justice is peculiarly essential in a limited Constitution. By a limited Constitution, I understand one which contains certain specified exceptions to the legislative authority; such, for instance, as that it shall pass no bills of attainder, no ex-post-facto laws, and the like. Limitations of this kind can be preserved in practice no other way than through the medium of courts of justice, whose duty it must be to declare all acts contrary to the manifest tenor of the Constitution void. Without this, all the reservations of particular rights or privileges would amount to nothing". Judges Gesell and Sugarman performed this role. Judge Keech did not.

One thing Judge Keech avoided, however, was to deny that the HUAC was capable of causing terrible damage to the people it targeted. Your Honor did that, regarding the House Committee on Education and the Workforce: "The January 20, 2024, documents request states the following: 'To assist the Committee in understanding the antisemitism crisis at Penn, *please produce* the following items....' I do not find that language coercive". Those are Your Honor's italics. Your Honor, pleased by the use of the word "please", failed to note that the letter takes a bullying and abusive tone through-out towards UPenn ("failure to protect Jewish students... grave concerns ...evasive and indirect answers...institutional failures...pervasive antisemitism...harshly and widely rebuked.... failed leadership...deeply troubling incidents ...disgraceful record" and so on). In so doing, the Committee made abundantly clear that it had already prejudged the University, and was in no way conducting a dispassionate inquiry into the truth or falsity of the assertions of antisemitism. As the Amended Complaint notes, the letter also made false and highly injurious statements about Professor Fakhreddine personally. And the Complaint quotes the gratuitous way in which she had already been pilloried and defamed at the December 5, 2023 hearing, at which Rep. Banks demanded to know why Professor Fakhreddine "still [has] a job at your university" and Rep. Mills said, "How are Jewish students in Fakhreddine's classes supposed to receive fair treatment when she endorses hatred?"

The Committee does not have the right to stigmatize and destroy named individuals it does not like, *United States v. Lovett,* 328 U.S. 303, 314 (1946) ("Were this case to be not justiciable, congressional action, aimed at three named individuals, which stigmatized their reputation and seriously impaired their chance to earn a living, could never be challenged in any court. Our

---

for some years complicit with McCarthyism. Judge Keech's legal and moral choices still bear examination. However, the appellate decisions largely concern a collateral issue, of jury composition.

4    Such as one repealing the First Amendment, I suppose.

**I have no help to send, therefore I must go myself**

Constitution did not contemplate such a result").

I refer Your Honor also to the transcript of the Committee's April 17, 2024 hearing, in which it interrogated Columbia President Minouche Shafik, who is Egyptian, Muslim, and a person of color. Committee member Rick Allen of Georgia asked the witness this highly rhetorical question: "[A]re you familiar with Genesis 12:3? ... It was a covenant that God made with Abraham and that covenant was real clear. If you bless Israel, I will bless you. If you curse Israel, I will curse you....Do you want Columbia University to be cursed by [the] God of the Bible?"[5] (Transcript of the April 17, 2024 hearing before the U.S. House Committee on Education and the Workforce, titled "Columbia in Crisis: Columbia University's Response to Antisemitism", available at https://www.congress.gov/event/118th-congress/house-event/116973 )

Judge Gesell said: "[I]t is important to emphasize that this litigation unquestionably presents an immediate issue of free speech and assembly". I stand with Judge Gesell. Your January 30 memorandum, however, reminds me of Judge Keech.

HUAC, founded in 1938, exercised monstrous power over Americans by the end of the 1940's, and began to fade away by the end of the 1950's, when the federal courts began to set some limits on it. It was a joke by 1970, out of business by 1975. As a 70-year-old retired attorney working alone, for free, representing clients "distasteful" to those exercising power, I will probably not live to see the pendulum swing back towards freedom. But I believe it will. Dr. King said that "the arc of the moral universe is long, but it bends toward justice". He knew those words were aspirational; but in his lexicon, that did not indicate they were meaningless.

                                                Sincerely,

                                                Jonathan Wallace

---

[5] Rep. Allen's extraordinary outburst also calls into further question whether the Committee had a proper legislative purpose, *Edwards v. Aguillard,* 482 U.S. 578, 592 (1987) ("The legislative history documents that the Act's primary purpose was to change the science curriculum of public schools in order to provide persuasive advantage to a particular religious doctrine").

**I have no help to send, therefore I must go myself**